IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THOMPSON PRODUCTS, INC., )
a Delaware corporation, )
 )          05 - 11810 RGS
         Plaintiff )
 )          Bowler MJ
v. )
 )
GLENN THOMPSON, )
 )          C.A. NO. _____
and )                      RECEIPT # 66609
 )                         AMOUNT $ 250
THOMPSON ENTERPRISES, INC., )          SUMMONS ISSUED ✓
 )                         LOCAL RULE 4.1 ✓
         Defendants. )     WAIVER FORM _____
 )                         MCF ISSUED _____
                           BY DPTY. CLK. tom
                           DATE 9/2/05

## COMPLAINT

Plaintiff, Thompson Products, Inc. ("TPI"), by counsel, for its Complaint against Defendants, Glenn Thompson ("Thompson") and Thompson Enterprises, Inc. ("Enterprises"), says as follows:

### PARTIES, JURISDICTION AND VENUE

1.  TPI is a Delaware corporation with its principal place of business at 310 Kenneth W. Welch Drive, Lakeville, MA 02347. TPI is in the business of manufacturing, selling and importing photo albums, cardboard based gift boxes, easel backs for picture frames and related products.

2.  Thompson was the President, a director and a shareholder of TPI. He recently resigned as President and director but remains a shareholder. Thompson's residential address is 330 Rumstick Road, Barrington, RI 02806.

3.  Enterprises is a Rhode Island corporation with its principal place of business at 330 Rumstick Road in Barrington, RI 02806. Enterprises is a newly formed corporation

organized, on information and belief, for the purpose of serving as Thompson's operating entity for competitive activities described hereafter. Thompson is the Registered Agent of Enterprises.

4.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      Venue is proper in this jurisdictional district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

6.      Thompson, with other members of his family, started, developed and operated Thompson Paper Box Co., Inc., the predecessor to TPI, until 1997. In 1997, Thompson Paper Box Co., Inc. sold its assets to TPI. Thompson remained with TPI as its President, a director and as a shareholder.

7.      On January 5, 1998, incident to the sale of Thompson Paper Box Co., Inc.'s assets to TPI, TPI entered into an Employment Agreement with Thompson, (referred to hereinafter as the "1998 Agreement"). The 1998 Agreement provided for Thompson's employment by TPI as its President for consideration and contained in Section 9 certain restrictive covenants necessary to protect the best interests of TPI, including the following:

   (a)    that for a period of two years following termination of his employment with TPI, Thompson would neither divulge nor use any TPI Confidential Information (a defined term) without TPI's consent;

   (b)    that for a period of two years following termination of his employment with TPI, Thompson would not, directly nor indirectly solicit, employ or associate with

any person who was employed within six (6) months prior to Thompson's termination of employment with TPI; and

    (c)    that for a period of two years following termination of his employment with TPI, Thompson would not within the continental United States, directly or indirectly, assist in, engage in, have any financial interest in, or participate in any way in, as an owner, partner, employee, agent, officer, board member, consultant, independent contractor or shareholder, in any business that involves, in whole or in part, activities similar to, related to or competitive with the business of TPI.

8.    The 1998 Agreement had a two-year term, which expired on December 31, 2000. However, even though the 1998 Agreement terminated on that date, TPI and Thompson expressly agreed in paragraph 9(g) of that Agreement that

> Notwithstanding termination of this Agreement or any other termination of [Thompson's] employment with [TPI], [Thompson's] obligations under this Section 9 shall survive termination of [Thompson's] employment with [TPI] any time for any reason.

9.    On information and belief, on or about January 1, 2001, also incident to the 1997 sale of Thompson Box Co., Inc.'s assets to TPI, TPI and Thompson entered into a successor Employment Agreement (referred to hereinafter as the "2001 Agreement"). The 2001 Agreement also provided for Thompson's employment by TPI as its President in exchange for an annual compensation of $200,000, plus benefits.

10.    The 2001 Agreement, which also specifically referenced the company sale, had an initial term of one year, which expired on December 31, 2002. Unlike the 1998 Agreement, however, the 2001 Agreement provided for its automatic renewal for successive one-year renewal terms <u>unless</u> either party provided the other with "notice of desire to terminate or modify

[the 2001 Agreement] . . . at least ninety (90) days before the end of the Initial Term or the applicable Renewal Term."

11. Pursuant to paragraph 9(a) of the 2001 Agreement, the parties again agreed upon terms for TPI's protection of "Confidential Information" in the possession of Thompson, and defined "Confidential Information" as:

> . . . all nonpublic information concerning the Employer's business relating, without limitation, to its products, customer lists, pricing, trade secrets, intellectual property, business methods, financial and cost data, business plans, budgets, strategies, competitive analysis, the substance of agreements with customers, marketing and concession arrangements, or other confidential agreements, which was obtained from the Employer or its predecessors or which was learned, discovered, developed, conceived, originated or prepared during or as a result of the performance of any services by Employee on behalf of the Employer or its predecessors. For purposes of this definition, the Employer shall be deemed to include any entity which is controlled, directly or indirectly, by the Employer and any entity of which a majority of the economic interest is owned, directly or indirectly, by the Employer.

12. Pursuant to paragraph 9(b) of the 2001 Agreement, the parties again agreed upon terms to protect TPI from Thompson's possible pirating of TPI employees:

> During the Employment Term and for a period of two (2) years following termination of Employee's employment hereunder, the Employee will not, directly or indirectly, solicit, employ or associate in any business relationship with any person, who was employed within six (6) months prior to the termination of Employee's employment by the Employer or any business in which Employer has a material interest, direct or indirect, as an officer, partner, shareholder or beneficial owner.

13. Pursuant to paragraph 9(c) of the 2001 Agreement, the parties again agreed upon terms to protect TPI from Thompson's possible competition with TPI, both during his tenure with TPI and following his termination from TPI:

> During the Employment Term or period of two (2) years following termination of Employee's employment hereunder, Employee will not within the continental United States, directly or indirectly, assist in, engage in, have any financial interest in, or participate in any way in, as an

4

owner, partner, employee, agent officer, board member, consultant, independent contractor or shareholder, in any business that involves, in whole or in part, activities similar to, related to or competitive with (a) the Business of the Employer or (b) the business of any affiliate of the Employer as carried on during the term of Executive's employment hereunder. Nothing herein shall prohibit Employee from being a passive owner of not more than five percent (5%) of the outstanding stock of any class of securities of a corporation or other entity engaged in such business which is publicly traded, so long as he has no active participation in the business of such corporation or other entity.

14. On January 1, 2003, the 2001 Agreement automatically renewed for an additional one-year term as neither party provided the other with the mandatory 90-day notice of termination before the initial term expired on December 31, 2002.

15. From January 1 through April 22, 2003, Thompson and TPI performed the 2001 Agreement by Thompson's continuation of services as President of TPI and by TPI's payment to Thompson of compensation and benefits in accord with paragraph 6.

16. In April 2003, Thompson was a director of TPI, along with James Conlan ("Conlan") and Victor Kiarsis ("Kiarsis"). At that time, Conlan and Kiarsis had been advised by TPI's majority shareholder that their relationships with TPI and with a number of other companies affiliated with and controlled by TPI's majority shareholder, were being severed for cause. The contentious relationship between Conlan and Kiarsis, on the one hand, and TPI, TPI's majority shareholder, and companies affiliated with TPI's majority shareholder, on the other, resulted in litigation commencing in 2003. Accordingly, in April 2003, Conlan and Kiarsis did not have the best interests of TPI at heart.

17. In collaboration with Thompson, Conlan, Kiarsis and/or Thompson prepared, or caused to be prepared, a new and very different Employment Agreement between TPI and Thompson. This new Employment Agreement (referred to hereinafter as the "2003 Agreement")

eviscerated all of the provisions that protected TPI, which had been included in both the 1998 Agreement and the 2001 Agreement.

18.    To Thompson's benefit and TPI's detriment, Conlan, Kiarsis and/or Thompson provided for the following in the 2003 Agreement:

(a)    the elimination of all restrictive covenants that had been an essential part of the 1998 Agreement and the 2001 Agreement;

(b)    the elimination of a definition of "business" that had been provided in the 1998 Agreement and the 2001 Agreement, which was pertinent to the restrictive covenants in those Agreements;

(c)    the substantial curtailment of the definition of "cause" that had been provided in the 1998 Agreement and the 2001 Agreement, which was pertinent to TPI's ability to terminate Thompson's employment with TPI;

(d)    the elimination of any definition for "disability" that had been defined in the 1998 Agreement and the 2001 Agreement, which was pertinent to TPI's termination of Thompson's employment;

(e)    the substantial modification of provisions in the 1998 Agreement and the 2001 Agreement that defined Thompson's employment responsibilities and provided for the TPI Board of Directors' control over Thompson's responsibilities;

(f)    the elimination of the right of the TPI Board of Directors to require Thompson to relocate from his Lakeville, MA location if in the best interest of the company, which was provided for in the 1998 Agreement and the 2001 Agreement;

(g) the elimination of the automatic renewal provision from the 2001 Agreement and substitution of a 3-year term, which coincided with Thompson's intended retirement from TPI;

(h) an increase of Thompson's annual salary from $200,000 to $280,000;

(i) the modification of Thompson's right to terminate his employment with TPI for cause, making it easier for him to do so;

(j) the elimination of TPI's right to terminate the 2003 Employment Agreement for cause, in contrast to the 1998 Agreement and the 2001 Agreement, which contained "for cause" termination provisions;

(k) the provision of a complete release of Thompson by TPI and its parent company from past, present and future claims;

(l) the elimination of TPI's right to assign Thompson's employment agreement, which had been provided for in the 1998 Agreement and the 2001 Agreement; and

(m) the elimination of all references to the sale of Thompson Box Company as the basis for Thompson's employment with TPI.

19. The 2003 Agreement was discussed at a TPI Board meeting held in April 2003 and attended by Conlon, Kiarsis, Thompson and counsel for TPI. Counsel advised the three-member Board that the 2003 Agreement should <u>not</u> be executed. After counsel departed the meeting, Kiarsis nevertheless signed the 2003 Agreement on behalf of TPI and gave it to Thompson, who did not sign it. Board minutes were prepared by Conlon, Kiarsis and/or Thompson, or by another at their direction, to reflect the approval of the transaction.

20. Not only did Conlon, Kiarsis and Thompson lack the authority to act on behalf of TPI in this conflict of interest situation, but they also deliberately and willfully breached their fiduciary duties of loyalty to TPI when Kiarsis executed the 2003 Agreement for TPI with the consent of Conlon and Thompson, and when all three Board members voted to approve the transaction on behalf of TPI.

21. Thompson did not immediately execute the 2003 Agreement following the April 2003 Board meeting. Instead he continued to negotiate with new TPI board of director members on his employment terms for the remainder of 2003.

22. In May 2003, TPI's controlling shareholder terminated Conlon's and Kiarsis's employment with TPI and with all of TPI's related or affiliated companies.

23. Two new Board members were elected to replace Conlon and Kiarsis after their termination.

24. Upon learning of the 2003 Agreement and its execution by Kiarsis, one or both of the new Board members advised Thompson that, in their view, the 2003 Agreement was prepared and executed without proper TPI authority and that its terms were unacceptable to TPI. With this notice, TPI effectively withdrew the unsigned 2003 Agreement from further consideration.

25. Despite receipt of this communication, Thompson nonetheless signed the 2003 Agreement on or about November 17, 2003.

26. On January 1, 2004, Thompson caused TPI to begin paying him on the basis of $280,000 annual salary for his services as President of TPI.

27. In July 2005, Thompson resigned as an officer, director and employee of TPI.

28. Shortly after his resignation from TPI, Thompson formed Enterprises, which, on information and belief, was formed by Thompson to become a direct competitor of TPI. Thompson is now competing directly with TPI through Enterprises or Thompson is positioning himself or Enterprises to compete directly with TPI. Thompson was the incorporator, and is the registered agent and, on information and belief, sole shareholder of Enterprises.

29. Upon information and belief, in the course of forming and either commencing operation or positioning Enterprises to commence operation of a competing business, Thompson has removed confidential and proprietary documents and information from TPI; he has used his knowledge of TPI's confidential information to identify and contact TPI customers in hopes of eventually persuading them to leave TPI and become customers of Thompson's or Enterprises's competitive business; he has utilized TPI's confidential financial information to attempt to gain an unfair competitive advantage in the marketplace; and he has solicited, with promises of employment, valuable TPI employees to work in his competitive business, causing them to resign their employment with TPI, all to the great detriment of TPI.

30. To the extent that Thompson and Enterprises have not already used TPI's Confidential Information in connection with a competing business, TPI reasonably believes that Thompson and/or Enterprises will use its confidential information soon, and that said use will be to the great detriment of TPI. Indeed, before resigning from TPI, Thompson made efforts to purchase TPI but was unable to do so, and all of his recent conduct, including his resignation from TPI, his formation of Enterprises to compete with TPI, his contact of TPI customers and his solicitation of TPI employees has been for the purpose of devaluing TPI and causing TPI to sell its stock or assets to him at a price well below market value. His conduct has, in fact, devalued TPI for sale in the marketplace.

31. On January 1, 2004, the 2001 Agreement automatically renewed for an additional one-year term as neither party provided the other with the mandatory 90-day notice of termination before the renewal term expired on December 31, 2003.

32. Assuming *arguendo* that the 2001 Agreement did not automatically renew for an additional one-year term on January 1, 2004, the restrictive covenants set forth in either the 1998 Agreement or the 2001 Agreement nonetheless are in effect for a two-year period following Thompson's termination of employment with TPI.

33. Thompson's breaches of the 2001 Agreement, his breach of his fiduciary duties of loyalty and good faith to TPI and his unauthorized disclosure and use of TPI's confidential information have damaged and continue to damage TPI; and his and Enterprises's future disclosure and use of TPI's confidential information in competition with TPI will damage TPI as well.

## COUNT I
### (Injunctive Relief)

34. TPI repeats and realleges paragraphs 1-33 above as if fully set forth herein.

35. By his actions described above, Thompson breached either the 1998 Agreement or the 2001 Agreement, specifically Sections 9(a), 9(b) and 9(c) of each Agreement, and he continues to breach the 1998 Agreement and the 2001 Agreement to the substantial detriment of TPI.

36. Pursuant to Section 9(f) of the 1998 Agreement and the 2001 Agreement, Thompson agreed that:

> . . . damages at law, including, but not limited to, monetary damages, will be an insufficient remedy to Employer in the event that the restrictive covenants contained in this Section 9 are violated and that, in addition to any remedies or rights that may be available to Employer, all of which other remedies or rights shall be deemed to be cumulative, retained by

Employer and not waived by the enforcement of any remedy available hereunder, including, but not limited to, the right the sue for monetary damages, Employee shall also be entitled, upon application to a court of competent jurisdiction, to obtain injunctive relief, including, but not limited to, a temporary restraining order or temporary preliminary or permanent injunction, to enforce the provisions contained in Section 9, all of which shall constitute rights and remedies to which Employer may be entitled.

37. Pursuant to Section 9(g) of the 1998 Agreement and the 2001 Agreement, Thompson further agreed that:

Notwithstanding termination of this Agreement as provided in Section 8 herein or any other termination of Employee's employment with the Employer, the Employee's obligations under this Section 9 shall survive any termination of the Employee's employment with the Employer at any time and for any reason.

38. Thompson's breaches of the 1998 Agreement and/or the 2001 Agreement have caused, and continue to cause, irreparable harm to TPI for which there is no adequate remedy at law.

WHEREFORE, TPI respectfully requests entry of preliminary and permanent injunctions:

(a) compelling Thompson and Enterprises to cease and desist from all competitive business activities for a period of two (2) years from entry of the order;

(b) prohibiting Thompson's and Enterprises's use of TPI's confidential information either to gain a competitive advantage over TPI or generally to TPI's detriment;

(c) prohibiting Thompson and Enterprises from, directly or indirectly, soliciting or employing any person who was employed by TPI within the six-month period prior to Thompson's resignation from TPI for a period of two (2) years from entry of the order; and

11

(d) for such other and further general relief as equity may deem meet.

## COUNT II
### (Breach of Contract)

39. TPI incorporates paragraphs 1 through 33 above as if fully set forth herein.

40. Thompson has breached the 1998 Agreement and/or the 2001 Agreement in the following ways:

(a) by forming and operating a competitive business within the effective period of his covenant against competition;

(b) by contacting customers of TPI with intent to cause them, now or later, to become customers of Thompson Enterprises;

(c) by soliciting and/or employing employees of TPI;

(d) by using TPI's confidential information to gain a competitive advantage in the marketplace; and

(e) by paying to himself an annual compensation of $280,000 rather than $200,000.

41. TPI has been damaged by Thompson's breaches of contract, and to the extent damages for any one or more breaches may be reasonably measured, TPI is entitled to an award of such damages.

WHEREFORE, TPI respectfully requests entry of judgment against Thompson in the amount of TWO MILLION DOLLARS ($2,000,000.00) or in such lesser amount as the evidence may show, plus interest and costs.

## COUNT III
### (Breach of Fiduciary Duty)

42. TPI repeats and realleges here paragraphs 1 through 33 above as if fully set forth herein.

43. Prior to his resignation from TPI, Thompson breached his fiduciary duties of loyalty and good faith to TPI with the following actions:

   (a) by engaging in self-serving conduct in the preparation, approval and execution of the 2003 Agreement;

   (b) by accepting increased annual compensation of $280,000 under the 2003 Agreement, rather than the $200,000 annual compensation to which he was entitled;

   (c) by voting as a director of TPI to approve the 2003 Agreement;

   (d) by preparing to form and/or forming a business in competition with TPI;

   (e) by confiscating TPI customers; and

   (f) by soliciting valuable TPI employees to leave TPI and work for him.

44. TPI has been damaged by Thompson's breaches of his fiduciary duties to TPI, and to the extent that damages for any one or more breaches may be reasonably measured, TPI is entitled to an award of such damages.

WHEREFORE, TPI respectfully requests entry of judgment against Thompson in the amount of TWO MILLION DOLLARS ($2,000,000.00), or in such lesser amount as the evidence may show, plus interest and costs.

## COUNT IV
### (Accounting)

45. TPI repeats and realleges paragraphs 1 through 33 above as if fully set forth herein.

46.  Upon information and belief, Thompson's and Enterprises's unlawful competitive activities have produced income and/or profits for Thompson and/or Enterprises which must be disgorged as a measure of TPI's damages.

47.  Absent a full accounting by Thompson and Enterprises of all sales and profits that they made in their conduct of unlawful competitive activities, TPI cannot accurately measure its damages.

48.  Accordingly, TPI is entitled to a full accounting by Thompson and Enterprises of all such sales and profits.

WHEREFORE, TPI respectfully requests entry of an order compelling Thompson and Enterprises to account fully for all sales of products in competition with TPI since Thompson's departure from TPI and for all profits made on such sales and any other unlawful business activities in competition with TPI.

### COUNT V
### (Violation of M.G.L. c. 93A §11)

49.  TPI repeats and realleges paragraphs 1 though 33 above as if fully set forth herein.

50.  TPI, a corporation with its principal place of business in the Commonwealth, is a person within the meaning of M.G.L. c. 93A, § 11.

51.  On information and belief, Thompson and Enterprises are currently in (or are preparing to be in) the trade or business of manufacturing, selling and or importing good substantially similar in nature to those of TPI.

52.  Following his resignation from TPI, Thompson established Enterprises for the specific purpose of unfairly competing with TPI, in Massachusetts and elsewhere, by stealing

TPI's customers, and utilizing TPI's trade secrets, confidential business information, and other proprietary or protected information and knowledge possessed by him and owned by TPI.

53. Thompson and Enterprises have engaged in unfair and deceptive acts, undertaken willfully and knowingly in violation of M.G.L. c. 93A §11.

54. As a result of the foregoing, TPI has been damaged, and continues to suffer damages as the unfair competition continues unchecked, in the amount of TWO MILLION DOLLARS and 00/100 ($2,000,000.00), or in such other amount as the evidence may show, plus interest, multiple damages, attorney's fees and costs.

WHEREFORE, TPI respectfully requests entry of judgment against Thompson and Enterprises for willful and knowing violation of M.G.L. c. 93A and award actual damages, doubled or trebled, plus interest, costs, expenses and attorneys' fees.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

THOMPSON PRODUCTS, INC.

By its attorneys,

_____
Terence P. McCourt (BBO #555784)
Andrew T. Kang (BBO #637476)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Tel: 617.310.6000
Fax: 617.310.6001

and

Sandy T. Tucker
Monica McCarroll
WILLIAMS MULLEN, A PROFESSIONAL CORPORATION
1021 East Cary Street (23219)
Post Office Box 1320
Richmond, VA 23218-1320
Tel: 804.783.6418
Fax: 804.783.6507

DATED: September 1, 2005

bos-fs1\kanga\171249v01\9/1/05\99917.377855

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Thompson Products, Inc. v. Glenn Thompson__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   05-11810-RGS

   ☐ I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   ☐ II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
          740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases

   ☒ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

   ☐ IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
          690, 810, 861-865, 870, 871, 875, 900.

   ☐ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐    NO ☒
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐    NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☒    NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☒    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Andrew D. Kang and Terence P. McCourt__
ADDRESS __Greenberg Traurig, LLP__
TELEPHONE NO. __One International Place__
              __Boston, MA  02110   617-310-6000 Tel__
              __                    617-310-6001 Fax__

(CategoryForm.wpd - 5/2/05)

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
THOMPSON PRODUCTS, INC.

(b) County of Residence of First Listed Plaintiff  **Plymouth**
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Andrew D. Kang
Terence P. McCourt
Greenberg Traurig, LLP
One International Place, Boston, MA 02110
617-310-6000

## DEFENDANTS
GLENN THOMPSON and THOMPSON ENTERPRISES, INC.

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**TORTS — PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332
Brief description of cause:
Contract action relating to breach of employment agreement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ $2 Million
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
None
JUDGE _____
DOCKET NUMBER _____

DATE: September 1, 2005
SIGNATURE OF ATTORNEY OF RECORD: Andrew D. Kang

**FOR OFFICE USE ONLY**
RECEIPT # ____  AMOUNT ____  APPLYING IFP ____  JUDGE ____  MAG. JUDGE ____