## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

THOMPSON PRODUCTS, INC.,  )
a Delaware corporation,  )
      Plaintiff,  )
  )
    v.  )    C.A. No. 05-11810-RGS
  )
GLENN THOMPSON and  )
THOMPSON ENTERPRISES, INC.,  )
      Defendants.  )

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

Defendants/Counterclaim-Plaintiffs Thompson Enterprises, Inc. (hereinafter "Splash")[1] and Glenn Thompson ("Thompson") submit this memorandum in opposition to the Rule 12(b)(6) motion of Plaintiff/Counterclaim-Defendant Thompson Products, Inc. ("TPI") to dismiss defendants' three-Count Counterclaim.

**I.     Introduction**

TPI, a Delaware corporation with its headquarters in Lakeville, Massachusetts, filed this suit against its former President, Thompson, and his newly-formed corporation, Splash. TPI seeks to enjoin Thompson and Splash from competing with it, on the basis of a bogus contention that Thompson is subject to a written non-compete restriction.[2] Part-and-parcel of TPI's determination to interfere with Thompson's new business, one of TPI's sales representatives recently made false and disparaging statements about Thompson to a mutual customer.  Those

---

[1] On September 6, 2005, Thompson Enterprises, Inc. changed its corporate name to Splash Creations, Inc.

[2] The Complaint alleges:  (a) that the restriction is found in a 1998 Employment Agreement, but that restriction expired by its own terms on December 31, 2002; (b) that the restriction is also found in a mere draft of a 2001 Employment Agreement that was never executed; and (c) that a fully-executed 2003 Employment Agreement, which eliminated all non-compete restrictions, was unauthorized and invalid.

statements are the basis for defendants' Counterclaim for tortious interference, defamation and violation of the Lanham Act, 15 U.S.C. §1125(a).

TPI has moved to dismiss the Counterclaim on the sole basis that a boilerplate sentence in its agreement with its sales representative, which states that he is an "independent contractor," precludes the Counterclaim as a matter of law. For the reasons set forth below, TPI's motion must be denied.

## II.   Defendants' Counterclaim

In their Counterclaim (a copy of which is appended as **Exhibit A**), Splash and Thompson allege in pertinent part:

> 4.   TPI employs as a commission sales agent for the sale of photo albums an individual named Robert Jackson, a resident of Minnesota. Jackson's responsibilities for TPI include calling on certain mass market merchandisers to solicit photo album orders for TPI.
>
> 5.   In or around September 2005, while communicating with a customer on behalf of TPI, Jackson made false, defamatory and disparaging statements about counterclaim-plaintiffs, including but not limited to the following:
>
> a)   that counterclaim-plaintiff Glenn Thompson is operating the business of counterclaim-plaintiff Splash illegally;
>
> b)   that counterclaim-plaintiffs will be forced to go out of business by the claims that TPI has asserted in this lawsuit;
>
> c)   that TPI has an enforceable non-compete agreement with counterclaim-plaintiff Glenn Thompson; and
>
> d)   that the customer should not do business with counterclaim-plaintiffs because this lawsuit will take years to resolve and Splash will not be able to ship any product in fulfillment of any orders that the customer might place with it.

**Exhibit A** at ¶¶ 4, 5.

TPI moved to dismiss, rather than admitting or denying those allegations.

### III.     TPI's Sole Argument for Dismissal

TPI has attached to its motion to dismiss a copy of its Sales Agreement with an entity named Jackson Group, Inc., of which Jackson apparently is the President. (That Agreement is neither attached to, nor incorporated in, the Counterclaim.) TPI contends that "[g]iven Jackson's undisputed status as an independent contractor, there is no basis for holding TPI vicariously liable for his alleged defamatory statements or other negligent actions." (TPI's Memorandum at 5). "Undisputed" by whom?  Defendants have not yet had an opportunity to discover the background behind Mr. Jackson's statements, and in particular whether TPI may have "scripted" those statements, in order to interfere with defendants' new business. As explained in the following sections of this Memorandum, that prospect is fatal to TPI's motion. It simply is not the law that a boilerplate sentence in an employment agreement  provides blanket immunity to TPI for Jackson's misconduct.

### IV.     Standard of Review

For purposes of evaluating TPI's motion, the Court must treat the Counterclaim allegations as true, draw all reasonable inferences in Counterclaim-Plaintiffs' favor, and "determine whether the [Counterclaim], so read, limns facts sufficient to justify recovery on any cognizable theory." LaChappelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). The critical inquiry on a Rule 12(b)(6) motion is not whether the claimant will ultimately prevail, but whether, based on the allegations of the claims at issue, the claimant is entitled to develop and offer evidence in furtherance of his or her claims. See Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004); Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 507 (1st Cir. 2002).  At this embryonic stage of the litigation, "[d]ismissal is proper only if 'it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim that would entitle him

to relief.'"  Moss, 312 F.3d at 507 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957));

Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998).

## V.    The Law of Vicarious Liability for "Independent Contractors"

The determination whether Jackson was an "independent contractor" for purposes of his

tortious conduct directed against Thompson and Splash is a highly fact-intensive inquiry.

Moreover an employer can be held vicariously liable even for the conduct of an independent

contractor, depending on all of the surrounding circumstances.

Under Massachusetts law,[3] employers are vicariously liable for the tortious acts of

employees, servants, and agents committed within the scope of their employment or agency.

Dias v. Brigham Medical Assocs., 438 Mass. 317, 319–20, 780 N.E.2d 447, 449 (2002);

Kansallis Finance, Ltd. v. Fern, 421 Mass. 659, 665, 659 N.E.2d 731, 734 (1996).  On the other

hand, an employer generally is not liable for the tortious conduct of an independent contractor

unless "the employer retained some control over the manner in which the work was performed."

Herbert A. Sullivan, Inc. v. Utica Mutual Ins. Co., 439 Mass. 387, 407, 788 N.E.2d 522, 539

(2003); Lyon v. Morphew, 424 Mass. 828, 834, 678 N.E.2d 1306, 1310 (1997); see also

Restatement (2d) of Torts § 414 (A.L.I. 1965).  The underlying principle is "that as between two

innocent parties -- the [employer] and the third party -- the [employer] who for his own purposes

places another in a position to do harm to a third party should bear the loss."  Kansallis, 421

Mass. at 664, 659 N.E.2d at 734.

---

[3]  Jackson uttered his false and defamatory statements in Minnesota.  However, for purposes of evaluating TPI's
motion to dismiss, there is no substantive difference between the laws of Minnesota and Massachusetts.  In the
vicarious liability context, Minnesota, like Massachusetts, employs a fact-intensive, multi-factor analysis drawn
from § 220 of the Restatement (Second) of Agency.  See Boland v. Morrill, 132 N.W.2d 711 715–16 (Minn. 1965).

The Supreme Judicial Court has observed, "The rule is simple; the difficulty is in its application." Hohenleitner v. Quorum Health Resources, Inc., 435 Mass. 424, 434, 758 N.E.2d 616, 624 (2001). First, the court must determine whether an employer-employee or principal-agent relationship exists with respect to Jackson's alleged conduct. Massachusetts courts apply the analytical framework set forth in § 220 of the Restatement (Second) of Agency to make such determinations. See Dias, 438 Mass. at 322, 780 N.E.2d at 451; Konick v. Berke, Moore Co., 355 Mass. 463, 465, 245 N.E.2d 750, 751 (1969); Chase v. Independent Practice Ass'n, Inc., 31 Mass. App. Ct. 661, 665, 583 N.E.2d 251, 253–54 (1991). That section provides, in relevant part,

> In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and
>
> (j) whether the principal is or is not in business.

5

Restatement (2d) of Agency § 220(2) (A.L.I. 1957). As the Dias court recognized, other factors may also be considered and "the task of determining what constitutes an employer-employee relationship is *fact dependent*." 438 Mass. at 322, 780 N.E.2d at 451 (emphasis added). The fact-intensive nature of this inquiry ordinarily precludes summary judgment, let alone resolution under Rule 12(b)(6). *See* Kelley v. Rossi, 395 Mass. 659, 665, 481 N.E.2d 1340, 1344 (1985); Dalton v. Shen-Hsieh, 2002 WL 31379866 at *3 (Mass. Super. Ct. Sept. 11, 2002). Accordingly it is premature to attempt to apply §220(2) at this early, pleadings stage, before the record has been developed as to the relationship between TPI and Jackson.

Self-serving language contained in an employment agreement is not by itself dispositive of one's status as an employee or independent contractor. For example, this Court explained in Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221 (D. Mass. 1990), that a contract provision specifying independent contractor status is merely one of many factors that properly influence the fact-finder's ultimate decision. Such contractual language "deserves consideration, but is not determinative." *Id.* at 228.

Instead, courts dealing with this issue must evaluate the degree of control that an employer had the right to exercise in light of the nature of the employee's work and the nature of his tortious conduct. "An employer of a service company may lack the pervasive control that would cause the service company to be a servant rather than an independent contractor *while yet maintaining sufficient control over an aspect of the particular task to incur liability*." Paradoa v. CNA Ins. Co., 41 Mass. App. Ct. 651, 654, 672 N.E.2d 127, 130 (1996)(emphasis added).

## VI.     The Counterclaim Should Not be Dismissed

TPI asserts that the Counterclaim must be dismissed simply because a Sales Agreement executed by Jackson and TPI recites that the parties to that agreement "acknowledge" that Jackson is TPI's "independent contractor." TPI's position would give any employer an absolute "free pass" from even the most egregious conduct of its employees, by the simple expedient of inserting the words "independent contractor" in every employment agreement. But such a formalistic, single-factor argument is not the law in Massachusetts. *See* <u>Bolen</u>, 754 F. Supp. at 228.

TPI cannot dispute that Jackson is a Minnesota resident engaged as an outside salesman and has no first-hand knowledge or responsibilities with respect to any of the statements he made to the customer in question: neither the legality of defendants' business (**Exhibit A**, ¶5(a)); nor the allegations in TPI's Complaint (**Exhibit A**, ¶5(b)); nor the interpretation or enforcement of any alleged non-compete agreements between TPI and Thompson (**Exhibit A**, ¶5(c)); nor evaluation of the possible outcome of this litigation (**Exhibit A**, ¶5(d)). How then did Jackson come to make the statements attributed to him? What if discovery shows (as Thompson and Splash expect it will) that TPI gave him the "script" to follow with customers, to try to induce them not to do business with defendants? That clearly would equate to sufficient "control" to impose vicarious liability on his employer, as TPI itself acknowledges:

> [A]n employer of an independent contractor is not liable for harm caused to another by the independent contractor's negligence, <u>unless</u> the employer retained some control over the manner in which the work was done.

TPI's Memorandum at 5.[4]

---

[4] The Court has no idea at this point whether Jackson would agree with <u>any</u> of TPI's characterizations of their relationship. Written and oral discovery should be illuminating as to whether Jackson concurs with TPI's decision to hang him out to dry.

Viewed in a light most favorable to Counterclaim-Plaintiffs, other provisions of the Sales Agreement actually tend to support the conclusion that Jackson was TPI's employee, agent, or servant. Specifically, the Sales Agreement provides that Jackson is to be paid his commissions monthly and that he is forbidden from carrying any product lines that compete with TPI's lines. *See, e.g.,* <u>Boland</u>, 132 N.W.2d, at 716 ("That a salesman selling on commission can be an employee can hardly be open to doubt."). Moreover, contrary to TPI's assertion, the Sales Agreement does not circumscribe the entire relationship between Jackson and TPI. For instance, although the Sales Agreement states that Jackson does not have the authority to bind TPI to a contract, it is completely silent with respect to TPI's rights over the content of Jackson's communications with potential customers. Here, it is the content of his communications to others that gives rise to the Counterclaim.

Even if, after discovery, the evidence shows that Jackson truly was an "independent contractor" generally, that would not necessarily bar the Counterclaim. The question of control is a factual matter to be determined by such indicia as the directions TPI may have given Jackson in responding to questions about Thompson or the litigation, communications and patterns of past dealing between Jackson and TPI, TPI's awareness of Jackson's actions, and the nature and extent of TPI's review and supervision of Jackson's interaction with TPI's customers. *See, e.g.,* <u>Paradoa,</u> 41 Mass. App. Ct. at 654–55, 672 N.E.2d at 130. Where there is a dispute as to the existence or extent of control, the dispute presents "a question of fact for the jury." <u>Corsetti v. Stone Co.</u>, 396 Mass. 1, 11, 483 N.E.2d 793, 798 (1985).

Finally, contrary to TPI's argument (Memorandum at 4-5), the fact that the contract was with Jackson's apparent one-person corporation, The Jackson Group, Inc. ("TJG"), does not insulate TPI from vicarious liability if TPI exerted -- or simply had the right to exert -- the

8

necessary degree of control over Jackson himself.  *See* Kelley, 395 Mass. at 661, 481 N.E.2d at 1342.  Splash and Thompson have alleged that Jackson was TPI's "commission sales agent" and that he made the statements giving rise to the Counterclaim while acting "on behalf of TPI."  *See* **Exhibit A** at ¶¶ 4–5.  Paradoa confirms that a defendant can be held vicariously liable for the actions of a *corporate* independent contractor.  *Id.*, 41 Mass. App. Ct. at 654, 672 N.E.2d at 130.  A corporation such as TJG can only act through its officers, agents, and employees.  TPI acknowledges that Jackson was an officer of TJG.  Thus, it makes no difference whether TPI's "independent contractor" was TJG or Jackson personally.  In either event, TPI may be liable for Jackson's false and defamatory statements.  Alternatively, the evidence uncovered in discovery might show that Jackson was a "borrowed servant," lent or hired by TJG to perform sales work on behalf of TPI.  *See* Hohenleitner, 435 Mass. at 433–34, 758 N.E.2d at 624; Coughlan v. Cambridge, 166 Mass. 268, 277, 44 N.E. 218, 219 (1896).  Again, under Rule 12(b)(6), the Court must, for now, draw all such inferences and resolve any doubts in favor of Splash and Thompson.

## VII.  Conclusion

TPI has not shown "beyond doubt" that Splash and Thompson "can prove no set of facts" that would entitle them to relief.  Moss, 312 F.3d at 507.  It is plain on the face of the Counterclaim that Splash and Thompson have alleged facts that, if true, would render TPI

vicariously liable for Jackson's tortious conduct.  Therefore, the Counterclaim withstands a

motion to dismiss, and TPI's motion must be denied.

Respectfully submitted,

GLENN THOMPSON AND THOMPSON
ENTERPRISES, INC.

By their attorneys,

*Matthew F. Medeiros (by LAT)*

_____
Matthew F. Medeiros (BBO #544915)
LITTLE MEDEIROS KINDER BULMAN &
WHITNEY, PC
72 Pine Street
Providence, RI  02903
Tel:  (401) 272-8080
Fax:  (401) 272-8195

*Michael L. Schnitz*

_____
Michael L. Chmitz (BBO # 552915)
Lisa A. Tenerowicz (BBO # 654188)
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA  02116
Tel:  (617) 536-0040
Fax:  (617) 536-4400

DATED: November 30, 2005

## **Certification**

I, Lisa A. Tenerowicz of Rose & Associates, hereby certify that on this 30th day of November, 2005, I caused to by first class mail the within Defendants' Amended Answer and Counterclaim to Terence P. McCourt, Esq. and Andrew T. Kang, Esq., Greenberg Traurig, LLP, One International Place, Boston, MA 02110, and a copy was also sent via overnight mail to Sandy Tucker, Esq., Williams Mullen, A Professional Corporation, 1021 East Cary Street (23219) P.O. Box 1320, Richmond, VA 23218-1320.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMPSON PRODUCTS, INC.,<br>a Delaware corporation,<br>Plaintiff,<br><br>v.<br><br>GLENN THOMPSON and<br>THOMPSON ENTERPRISES, INC.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)    C.A. No. 05-11810-RGS<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIM

### ANSWER

Defendants, Glenn Thompson and Thompson Enterprises, Inc., answer the correspondingly numbered paragraphs of plaintiff Thompson Products, Inc.'s ("TPI") Complaint as follows.

### FIRST DEFENSE

1.       Defendants admit the allegations contained in paragraph 1 of the Complaint.

2.       Defendants deny the allegations contained in paragraph 2 of the Complaint, except admit that defendant Glenn Thompson lives at 330 Rumstick Road, Barrington, Rhode Island, 02806.

3.       In response to paragraph 3 of the Complaint, defendants admit that Thompson Enterprises, Inc. was incorporated in the State of Rhode Island on July 18, 2005, that its initial registered office was 330 Rumstick Road in Barrington, Rhode Island, and that Glenn Thompson was its Registered Agent.  In further response to paragraph 3, defendants state that the corporate name is now Splash Creations Inc.  Defendants deny all other allegations contained in paragraph 3.

4.       In response to paragraph 4 of the Complaint, defendants admit that this Court has diversity jurisdiction over this action but deny that plaintiff is entitled to any relief whatsoever.

5.       Paragraph 5 of the Complaint consists of legal conclusions, as to which no response is required.

Facts

6.-15.       Defendants deny the allegations contained in paragraphs 6 through 15 of the Complaint.

16.       In response to paragraph 16 of the Complaint, defendants admit that Glenn Thompson, James Conlon and Victor Kiarsis constituted the duly-appointed Board of Directors of Thompson Products, Inc. as of April 2003. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 16.

17.-18.       Defendants deny the allegations contained in paragraphs 17 and 18 of the Complaint.

19.       Defendants admit the allegations contained in the first sentence of paragraph 19 of the Complaint. Defendants deny the allegations contained in the second sentence of paragraph 19, and further state that the corporation's legal counsel, Cameron Read, was asked during that meeting whether the proposed employment agreement, if executed by Kiarsis, Conlon and Thompson, would be valid and enforceable, and he stated that it would be. Defendants deny the allegations contained in the third sentence of paragraph 19. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of paragraph 19.

20.       Defendants deny the allegations contained in paragraph 20 of the Complaint.

21.     Defendants admit that Glenn Thompson did not sign the employment agreement on the day of the April 2003 Board meeting, but defendants deny the remaining allegations contained in paragraph 21.

22.-23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 22 and 23 of the Complaint.

24.-27.     Defendants deny the allegations contained in paragraphs 24 through 27 of the Complaint.

28.     In response to paragraph 28 of the Complaint, defendants admit that on July 18, 2005, Glenn Thompson was the incorporator, registered agent and sole shareholder of Thompson Enterprises, Inc. (now Splash Creations Inc.), which is engaged in the sale of photo albums. Defendants deny the remaining allegations contained in paragraph 28.

29.-33.     Defendants deny the allegations contained in paragraphs 29 through 33 of the Complaint.

### Count I
### (Injunctive Relief)

34.     Defendants incorporate their answers to paragraphs 1 through 33 as if stated fully herein.

35.-38.     Defendants deny the allegations contained in paragraphs 35 through 38 of the Complaint.

Defendants deny that plaintiff is entitled to any of the relief sought in its prayer for relief.

### Count II
### (Breach of Contract)

39.     Defendants incorporate their answers to paragraphs 1 through 33 as if stated fully herein.

3

40.-41.     Defendants deny the allegations contained in paragraphs 40 and 41 of the Complaint.

Defendants deny that plaintiff is entitled to any of the relief sought in its prayer for relief.

Count III
(Breach of Fiduciary Duty)

42.     Defendants incorporate their answers to paragraphs 1 through 33 as if stated herein.

43.-44.     Defendants deny the allegations contained in paragraphs 43 and 44 of the Complaint.

Defendants deny that plaintiff is entitled to any of the relief sought in its prayer for relief.

Count IV
(Accounting)

45.     Defendants incorporate their answers to paragraphs 1 through 33 as if stated fully herein.

46.-48.     Defendants deny the allegations contained in paragraphs 46 through 48 of the Complaint.

Defendants deny that plaintiff is entitled to any of the relief sought in its prayer for relief.

Count V
(Violation of M.G.L. c. 93A § 11)

49.     Defendants incorporate their answers to paragraphs 1 through 33 as if stated fully herein.

50.     The allegations in paragraph 50 state a legal conclusion as to which no response is required.

51.    In response to paragraph 51 of the Complaint, defendants admit that Splash Creations Inc. is engaged in the sale of photo albums.  Defendants deny the remaining allegations contained in paragraph 51.

52.-54.    Defendants deny the allegations contained in paragraphs 52 through 54 of the Complaint.

Defendants deny that plaintiff is entitled to any of the relief sought in its prayer for relief.

SECOND DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

THIRD DEFENSE

Plaintiff is estopped from asserting some or all of its claims.

FOURTH DEFENSE

Plaintiff has waived some or all of its claims.

FIFTH DEFENSE

Plaintiff ratified some or all of the conduct that it now seeks to challenge.

SIXTH DEFENSE

Plaintiff's claims in Count V are outside the scope and reach of M.G.L. c. 93A §11, and these claims should be dismissed.

SEVENTH DEFENSE

Plaintiff's claims against defendant Glenn Thompson are barred in whole or in part by plaintiff's own articles of organization and by-laws.

EIGHTH DEFENSE

Plaintiff's claims are barred in part due to its unclean hands.

5

<u>NINTH DEFENSE</u>

Plaintiff's claims are barred in part by application of the business judgment rule and by defendant Glenn Thompson's good faith.

<u>TENTH DEFENSE</u>

Plaintiff's claims are barred at least in part by laches and its acquiescence to conduct and events alleged in its Complaint.

Wherefore, defendants request that plaintiff's Complaint be dismissed and that defendants be awarded their costs and attorneys' fees incurred in defending against plaintiff's Complaint.

## **<u>COUNTERCLAIM</u>**

Defendants counterclaim as follows against plaintiff.

1.     Counterclaim-plaintiff Thompson Enterprises, Inc. (now named Splash Creations Inc.) is a Rhode Island corporation in good standing with its principal place of business in Rhode Island.  Splash is in the business, among other things, of manufacturing, selling and importing photo albums.

2.     Counterclaim-plaintiff Glenn Thompson is a Rhode Island resident and is the President and sole shareholder of Splash Creations Inc.

3.     Counterclaim-defendant Thompson Products, Inc. ("TPI") is a Delaware corporation with its principal place of business in Massachusetts.  It is in the business, among other things, of manufacturing, selling and importing photo albums.

4.     TPI employs as a commission sales agent for the sale of photo albums an individual named Robert Jackson, a resident of Minnesota.  Jackson's responsibilities for TPI include calling on certain mass market merchandisers to solicit photo album orders for TPI.

5.    In or around September 2005, while communicating with a customer on behalf of TPI, Jackson made false, defamatory and disparaging statements about counterclaim-plaintiffs, including but not limited to the following:

    a)    that counterclaim-plaintiff Glenn Thompson is operating the business of counterclaim-plaintiff Splash illegally;

    b)    that counterclaim-plaintiffs will be forced to go out of business by the claims that TPI has asserted in this lawsuit;

    c)    that TPI has an enforceable non-compete agreement with counterclaim-plaintiff Glenn Thompson; and

    d)    that the customer should not do business with counterclaim-plaintiffs because this lawsuit will take years to resolve and Splash will not be able to ship any product in fulfillment of any orders that the customer might place with it.

6.    At or around the time Jackson made those statements, counterclaim-plaintiffs had already had sales communications with that customer and had a reasonable expectancy of receiving photo album orders from that customer.

7.    As a result of Jackson's statements, the customer has informed counterclaim-plaintiffs that it is reluctant to do business with counterclaim-plaintiffs even though it likes counterclaim-plaintiffs' products and personnel, because it does not want to get involved in TPI's lawsuit against counterclaim-plaintiffs.

8.    TPI in all likelihood has made, or intends to make, similar statements to other prospective customers of counterclaim-plaintiffs.

<u>Count I</u>
(Tortious Interference with Prospective Advantageous Business Relationships)

9.    Counterclaim-plaintiffs incorporate paragraphs 1 through 8 of this Counterclaim as if stated herein.

10.     TPI knew, or should have known, that counterclaim-plaintiffs had a prospective contractual relationship with the customer in question.

11.     In spite of that knowledge, TPI made the material misstatements in question as a wrongful and improper means and/or with an improper purpose of interfering with that prospective business relationship.

12.     As a consequence of TPI's tortious conduct, counterclaim-plaintiffs have been damaged and will continue to be damaged.

Count II
(Defamation)

13.     Counterclaim-plaintiffs incorporate paragraphs 1 through 8 of this Counterclaim as if stated herein.

14.     TPI's statements regarding counterclaim-plaintiffs were false and defamatory.

15.     TPI knew those statements were false or failed to exercise reasonable care to determine whether they were true or false.

16.     As a consequence of TPI's tortious conduct, counterclaim-plaintiffs have been damaged and will continue to be damaged.

Count III
( Lanham Act violation )

17.     Counterclaim-plaintiffs incorporate paragraphs 1 through 8 of this Counterclaim as if stated herein.

18.     TPI's statements were intended to, and did, deceive the customers in question, for the purpose of influencing them to buy TPI's products instead of those of counterclaim-plaintiffs.

19.     Those statements constitute false advertising that is unlawful under §43 of the Lanham Act, 15 U.S.C. §1125(a).

8

## PRAYER FOR RELIEF

WHEREFORE, counterclaim-plaintiffs request that the Court enter judgment against TPI as follows:

     a)     order TPI to give an accounting of all sums it has received, will receive or anticipates receiving from the customers in question since the date of TPI's tortious statements;

     b)     award compensatory or restitutionary damages against TPI in an amount to be determined at trial;

     c)     award punitive damages against TPI in an amount to be determined at trial as required or allowed by law; and

     d)     award such other relief, including costs and attorney's fees, as the Court deems just and proper in the circumstances.

## JURY DEMAND

Counterclaim-plaintiffs demand a trial by jury of all issues so triable.

Respectfully submitted,

GLENN THOMPSON AND THOMPSON
ENTERPRISES, INC.

By their attorneys,

Matthew F. Medeiros (BBO #544915)
LITTLE MEDEIROS KINDER BULMAN &
    WHITNEY, PC
72 Pine Street
Providence, RI  02903
Tel:    (401) 272-8080
Fax:    (401) 272-8195

Michael L. Chinitz (BBO # 552915)
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA  02116
Tel:    (617) 536-0040
Fax:    (617) 536-4400

DATED: October 13, 2005

**<u>Certification</u>**

I, Lisa A. Tenerowicz of Rose & Associates,  hereby certify that on this 13th day of October, 2005, I caused to be delivered by hand the within Defendants' Amended Answer and Counterclaim to Terence P. McCourt, Esq. and Andrew T. Kang, Esq., Greenberg Traurig, LLP, One International Place, Boston, MA  02110, and a copy was also sent via overnight mail to Sandy Tucker, Esq., Williams Mullen, A Professional Corporation, 1021 East Cary Street (23219) P.O. Box 1320, Richmond, VA 23218-1320.