UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMPSON PRODUCTS, INC., a Delaware corporation, Plaintiff, <br><br> v. <br><br> GLENN THOMPSON and THOMPSON ENTERPRISES, INC., Defendants. | ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 05-11810-RGS |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY

Defendants Glenn Thompson ("Glenn") and Splash Creations, Inc. ("Splash") respectfully request that this Court deny Plaintiff Thompson Products, Inc.'s ("TPI") motion for entry of an order disqualifying Matthew F. Medeiros ("Medeiros") and his firm, Little Medeiros Kinder Bulman & Whitney, P.C. from continuing to represent Glenn and Splash in the present litigation. For the reasons set forth below, TPI has failed to carry its heavy burden of proving that this matter (the "Current Litigation") is substantially related to a prior matter in which Medeiros represented TPI (the "Prior Litigation").

### INTRODUCTION

TPI's Motion to Disqualify is fatally flawed. It offers only conclusory, unsupported insinuations, in the face of case law that mandates a clear factual basis for TPI's position. TPI has not demonstrated, nor could it, that any of the information Mr. Medeiros may have obtained in the Prior Litigation, confidential or otherwise, is relevant to the Current Litigation, nor that any such information would assist him in defending Glenn in this case. Although the factual foundations and key issues will be discussed in

more detail below, the Prior Litigation is not substantially related to the Current Litigation because:

- The Current Litigation alleges that Glenn has divulged and used TPI's confidential information—**the Prior Litigation involved no such issue.**

- The Current Litigation alleges that Glenn has breached a contractual duty not to solicit or hire TPI employees—**the Prior Litigation involved no such issue.**

- The Current Litigation alleges that Glenn's contractual duty not to compete with TPI did not expire two years after his Employment Agreement expired, but continues even today—**the Prior Litigation involved no such issue.**

- The Current Litigation alleges that Glenn breached an alleged 2001 Employment Agreement–**the Prior Litigation involved no such issue.**

- The Current Litigation alleges that Glenn's 2003 Employment Agreement, which contained no restrictive covenants, is invalid and unenforceable—**the Prior Litigation involved no such issue.**

- The Current Litigation alleges that Glenn breached a contractual duty not to pay himself an annual salary greater than $200,000—**the Prior Litigation involved no such issue.**

Furthermore, TPI's decision to file this motion, nearly six weeks after it learned of Mr. Medeiros' representation of Glenn, and after numerous communications *directly to him as counsel for Glenn* concerning the Current Litigation, can only be characterized as a dilatory tactic designed to harass Glenn and deprive him of his counsel of choice.

## FACTS

In 1906, Glenn's grandfather founded Thompson Paper Box Company, the predecessor of TPI, a company that manufactures, sells, and imports photo albums and related products. Affidavit of Glenn Thompson ("Thompson Aff.") ¶ 5. Glenn's father was the President of Thompson Paper Box Company until his sudden death in 1979. Thompson Aff. ¶ 5. Following his father's death, Glenn, who was nineteen years old,

dropped out of Stonehill College in Easton, Massachusetts and took over operation of the business. Thompson Aff. ¶ 6.

Glenn bought the business from his mother in 1981, incorporated it that same year as Thompson Paper Box Co., Inc., and became the President. Thompson Aff. ¶ 7. In the nearly twenty-seven years he worked for Thompson Paper Box and its successor, TPI, sales increased from $200,000 annually to approximately $30 million annually. Thompson Aff. ¶¶ 8-9.

## I. The Prior Litigation

Glenn hired his brother, Mark Thompson, to work at Thompson Paper Box in or around 1983. Thompson Aff. ¶ 10. Several years later, in 1988 or 1989, Glenn gave Mark 10% of the stock in the Company and regularly promoted Mark, until, by 1995, he had become the Vice President of Sales. Thompson Aff. ¶ 10.

On April 9, 2002, after he stopped working for TPI, Mark filed suit in Plymouth County Superior Court against Glenn, Thompson Paper Box, and TPI (the "Prior Litigation"). Thompson Aff. ¶ 11. A true and accurate copy of that Complaint is attached to Glenn's Affidavit as **Exhibit A**. In mid-April 2002, Glenn retained Matthew F. Medeiros and his law firm to represent Glenn and the other defendants in Mark's lawsuit. Thompson Aff. ¶ 12. Mr. Medeiros served in that capacity for over 2 ½ years, through the settlement of the Prior Litigation in December 2004. Thompson Aff. ¶ 12. The Prior Litigation was the only matter on which Mr. Medeiros has ever provided legal representation to TPI. Thompson Aff. ¶ 12.

Over the course of his representation, Mr. Medeiros communicated primarily with Glenn, and, with occasional assistance from other TPI employees, Glenn was the source

of the information and the documents that Mr. Medeiros needed for that litigation. Thompson Aff. ¶ 13. Glenn personally reviewed and became familiar with all the filings in the Prior Litigation. Thompson Aff. ¶ 13.

1. <u>Claims in The Prior Litigation</u>

In his Complaint, Mark alleged: (a) that Glenn defrauded him about the Company's photo album sales, thereby depriving him of a 25% ownership interest in a subsidiary that should have been formed to carry on that business; (b) breach of an alleged agreement to pay Mark's contractual share of the settlement of a lawsuit that a former employee, Geoffrey Lafond, had brought; (c) wrongful termination; (d) breach of fiduciary duty; (e) breach of the contractual obligations of good faith and fair dealing; and (f) unfair or deceptive acts or practices in violation of Mass. Gen. Laws c. 93A, § 11. Thompson Aff. ¶ 14. Not a single one of the facts or issues concerning those claims has any relationship whatsoever to any of the allegations in the Complaint in the Current Litigation. Thompson Aff. ¶ 15.

2. <u>Counterclaims In The Prior Litigation</u>

TPI and Thompson Paper Box filed an Answer and Counterclaims in the Prior Litigation on July 26, 2002.[1] Thompson Aff. ¶ 16 and **Exhibit B**. TPI asserted two Counterclaims in the Prior Litigation. The First Counterclaim alleged that in connection with the sale of Thompson Paper Box to TPI in 1997, Mark had made representations and warranties that there were no undisclosed obligations or liabilities and that he had

---

[1] On December 31, 2002, Glenn separately filed his own Answer and Counterclaim in the Mark Thompson Litigation, alleging that Mark had breached the Contribution Agreement he had entered into in connection with the settlement of the Lafond litigation. Thompson Aff. ¶22 and **Exhibit E**. Mark then filed a Reply to Glenn's Counterclaim on January 9, 2003. Thompson Aff. ¶ 23 and **Exhibit F**. It is indisputable that there is absolutely no relationship whatsoever between the facts and issues in Glenn's Counterclaim against Mark in the Prior Litigation and TPI's claims alleged against Glenn in the Current Litigation. Thompson Aff. ¶ 24.

breached those representations and warranties by his assertion of his claim that he was entitled to a 25% ownership interest in a to-be-formed photo album subsidiary. Thompson Aff. ¶ 17. The facts and issues raised in the First Counterclaim are not in any way related to any of the allegations in the Complaint in the Current Litigation. Thompson Aff. ¶ 17.

The Second Counterclaim that TPI asserted in the Prior Litigation charged that Mark had breached the non-compete provision of his 1998 Employment Agreement ("Agreement") with TPI. Thompson Aff. ¶18 and **Exhibit C**. The term of that Agreement was three (3) years, ending December 31, 2000, when, according to ¶ 5, it automatically expired. Thompson Aff. ¶ 18. By the terms set forth in ¶ 9(a) of the Agreement, the non-compete provision remained in effect for "two (2) years following termination of Employee's employment hereunder . . . ." Thompson Aff. ¶ 18.

TPI asserted the Second Counterclaim against Mark only eighteen (18) months after Mark's employment had ended, by reason of the 1998 Employment Agreement expiring by its own terms. Thompson Aff. ¶ 19. Accordingly, Mark was still within the two-year period set forth in ¶ 9(a). Thompson Aff. ¶ 19. Furthermore, because the expiration of the Agreement and the end of Mark's employment by TPI were virtually simultaneous, the only non-compete period contemplated or discussed was the two-year period following the expiration of Mark's 1998 Employment Agreement, ending December 31, 2002. Thompson Aff. ¶ 19. Mark filed his Answer to TPI's Counterclaim on September 23, 2002 and denied that he was in breach. Thompson Aff. ¶ 21, and **Exhibit D**.

At the time TPI asserted the Second Counterclaim for breach of the non-compete restriction in the Agreement, Glenn sincerely believed that Mark had established a relationship with Malden Picture Frames and may have been making sales calls to customers of TPI within the two-year period of ¶ 9(a). Thompson Aff. ¶ 25. But Mark denied this charge and Glenn ultimately was unable to substantiate this belief. Thompson Aff. ¶ 25. Consequently, Mr. Medeiros never pursued the Second Counterclaim. Thompson Aff. ¶ 26. It was never mentioned in any of the dispositive motion papers that were filed with the court or in the Superior Court's (Troy, J.) Memorandum of Decision and Order on Defendants' Motion for Summary Judgment. Thompson Aff. ¶ 26 and **Exhibit G**. Furthermore, when the parties participated in the mediation that resulted in the settlement of Mark's remaining claims, Mr. Medeiros did not discuss, or even mention, the Second Counterclaim in the Confidential Case Review he submitted to the mediator, nor was this Counterclaim discussed at mediation. Thompson Aff. ¶ 26. In effect, Mr. Medeiros, on TPI's behalf, and after consultation with Glenn about the lack of supporting evidence, abandoned the claim for lack of proof. Thompson Aff. ¶ 26. As a result, there were never any communications between TPI and Mr. Medeiros, confidential or otherwise, regarding whether the non-compete restriction in ¶ 9(a) of the Employment Agreement meant what it said—that it expired two years after the Agreement itself expired. Thompson Aff. ¶ 26. Nor were there any conversations between TPI and Mr. Medeiros, confidential or otherwise, concerning the validity and enforceability of the Agreement. Thompson Aff. ¶ 26.

3.  <u>The Focus Of The Prior Litigation</u>

As is evident from the claims and counterclaims detailed above, the primary focal points of the Prior Litigation were Mark's 25% ownership claim, which Mark valued at over $6 million on the Civil Action Cover Sheet, and his claim for wrongful termination and for the Lafond settlement payment that Glenn purportedly promised to make on his behalf, which Mark valued at over $1 million. Thompson Aff. ¶ 27 and **Exhibit H**. Though asserted, the Second Counterclaim simply never progressed beyond the initial pleading stage. Thompson Aff. ¶ 27. In addition, there were absolutely no issues whatsoever concerning the misuse of proprietary or confidential information or the solicitation of TPI employees. Thompson Aff. ¶ 28.

## II.   The Current Litigation

On September 1, 2005, TPI sued Glenn and Splash, seeking injunctive relief and damages. In the Complaint, TPI alleges that Glenn breached a 1998 Employment Agreement and a purported 2001 Employment Agreement by, among other things, forming and operating a competitive business within the effective period of his covenant against competition, contacting customers of TPI, soliciting and employing employees of TPI, and using TPI's confidential information to gain a competitive advantage in the marketplace. <u>See</u> Compl. ¶¶ 29, 40. TPI also charged Glenn with breach of fiduciary duty for, among other things, accepting increased annual compensation rather than the compensation to which TPI argues he was entitled. Compl. ¶ 43.

The primary focus of the Current Litigation is whether Glenn's activities in forming and operating Splash divulged and used TPI's confidential information and improperly solicited TPI's customers and employees. Central to this issue is the validity

and enforceability of not one, but three different employment agreements addressed in TPI's Complaint: the 1998 Agreement, the alleged 2001 Agreement, and the 2003 Agreement. TPI contends that the 1998 Agreement and/or the 2001 Agreement, and the restrictive covenants contained therein, are valid, enforceable, and still in effect as to Glenn. See Compl. ¶¶ 7-15. Glenn, however, maintains that the 1998 Agreement expired by its terms, that he never signed the 2001 Agreement, and that the 2003 Agreement, which contains no restrictive covenants, is a fully-integrated document that was validly executed by TPI, and is therefore the operative agreement.

### III.  The Timing of TPI's Motion For Disqualification

TPI did not file its Motion to Disqualify until November 14, 2005. By then, Mr. Medeiros had become heavily engaged in this case.

On September 26, 2005, Mr. Medeiros filed an Answer on behalf of Glenn in the Current Litigation. TPI's counsel then wrote to Mr. Medeiros the very next day, September 27, 2005, to request that Glenn stay off TPI's property. Thompson Aff. ¶ 32 and **Exhibit I**. Mr. Yemi Sonuga and Mr. Brian Gleason were carbon copied on that letter. Thompson Aff. ¶ 32. TPI's counsel wrote to Mr. Medeiros again on September 27, 2005, seeking Mr. Medeiros' agreement to an expedited deposition. Thompson Aff. ¶ 32 and **Exhibit J**. Mr. Medeiros responded the next day. Thompson Aff. ¶ 32 and **Exhibit K**. TPI's counsel next wrote to Mr. Medeiros on October 5, 2005, asking that Glenn preserve electronic evidence. Thompson Aff. ¶ 32 and **Exhibit L**. On October 13, 2005, TPI's counsel again wrote to Mr. Medeiros concerning the statements by Robert Jackson that are the basis for Defendants' Counterclaim in the Current Litigation, threatening Mr. Medeiros with personal liability and demanding that he retract his

allegations. Thompson Aff. ¶ 32 and **Exhibit M**. Mr. Sonuga and Mr. Gleason were also carbon copied on that letter. Thompson Aff. ¶ 32.

On October 13, 2005, after extensive consultation with Glenn, Mr. Medeiros filed and served an Amended Answer and Counterclaim on Defendants' behalf. Thompson Aff. ¶ 32. TPI's counsel then filed and served on Mr. Medeiros a Motion to Dismiss the Counterclaim on November 2, 2005. Thompson Aff. ¶ 32. Finally, on November 14, 2005, after Glenn had invested significant time and money in Mr. Medeiros' preparation of a defense, TPI filed the present Motion to Disqualify Mr. Medeiros from representing Glenn and Splash in the Current Litigation. Thompson Aff. ¶ 32.

Throughout that entire time, several current members of TPI's management and its current corporate counsel knew that Mr. Medeiros had represented both TPI and Glenn in the Prior Litigation. In fact, during the Prior Litigation, current directors Sonuga and Gleason participated in discussions with Mr. Medeiros and Glenn, and received emails that Mr. Medeiros sent to them, concerning the Prior Litigation. Thompson Aff. ¶ 30. Moreover, TPI's then and current Chief Financial Officer, Ruth Correia, had personal knowledge that Mr. Medeiros was TPI's counsel in the Prior Litigation. Thompson Aff. ¶ 30. Finally, TPI's then and current outside corporate counsel, Cameron Read, had personal contact with Mr. Medeiros, by email and letter, in connection with the Prior Litigation. Thompson Aff. ¶ 30.

TPI and its counsel thus had actual notice that Mr. Medeiros represented Glenn in the Current Litigation for six dispute-filled weeks before it filed the present Motion to Disqualify. Moreover, TPI simultaneously has required defendants' chosen counsel, Mr.

Medeiros, to aggressively defend them against TPI's Motion to Dismiss, Motion to Amend and Motion for Preliminary Injunction.

## ARGUMENT

I.  **Standard of Review of Motions to Disqualify**

A motion to disqualify must be considered in light of the principle that courts "should not lightly interrupt the relationship between a lawyer and her client." *Adoption of Erica*, 426 Mass. 55, 58 (1997). Hence, because "[d]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure . . . courts should hesitate to impose [it] except when absolutely necessary." *Id.* (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)); *Masiello v. Perini Corp.*, 394 Mass. 842, 848 (1985). Disqualification motions should thus be "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman*, 689 F.2d at 722; *see Moss v. TACC Int'l Corp.*, 776 F. Supp. 622, 624 (D. Mass. 1991); *Estrada v. Cabrera*, 632 F. Supp. 1174, 1175 (D.P.R. 1986) (noting that "[m]otions to disqualify should be approached with cautious scrutiny").[2]

The bar for disqualification is set high, and requires that "the record [be] clear that there is a substantial risk of a material and adverse effect on the interests of the present or former client." *Limbach Co. v. Alstom Power, Inc.*, 2003 WL 21500580, *2 (Mass. Super. May 28, 2003) (quoting *Erica*, 426 Mass. at 65). The party seeking disqualification must therefore "meet a heavy burden of proof before a court will disqualify an attorney or a law firm." *Rohm & Haas Co. v. American Cyanamid Co.*, 187 F. Supp.2d 221, 226-27 (D.N.J. 2001).

---

[2] The district court in *Estrada* also noted that courts should not be oblivious to the fact that "[i]t has been a recent practice to use disqualification motions for purely strategic purposes," because such practice would "unfairly deny a litigant the counsel of his choosing." 632 F. Supp. at 1175 (and cases cited).

Rule 1.9(a) of the Massachusetts Rules of Professional Conduct[3] provides that

> a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or **a substantially related matter** in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.[4]

(Emphasis added).

In *Adoption of Erica*, the Supreme Judicial Court explicitly adopted the "substantial relationship" test for determining whether disqualification is appropriate in situations involving successive representation.[5] 426 Mass. at 61. The party moving for disqualification bears the burden of proving that the two matters are "substantially related." *ebix.com*, 312 F. Supp.2d at 90-91. Disqualification is not justified when the grounds are "vague or tenuous." *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 501 F. Supp. 326, 328 (D.D.C. 1980). Although there are no precise guidelines for determining what makes two matters substantially related, courts in the District of Massachusetts have applied the substantial relationship test by determining "whether either the facts or the issues are so similar between the current and prior representations that disqualification is warranted." *ebix.com*, 312 F. Supp.2d at 93; *see also Estrada*, 623 F. Supp. at 1176 ("The proper disposition of a motion to disqualify requires a careful examination of the allegedly conflicting representations" and a focus on "the precise nature of the relationship between the present and former representation"). Hence, only when the party seeking disqualification "delineates with specificity the subject matter,

---

[3] The United States District Court for the District of Massachusetts has adopted the Massachusetts Rules of Professional Conduct as embodied by the SJC in Rule 3:07. See Local Rule 83.64(4)(B); *ebix.com, Inc. v. McCracken*, 312 F. Supp. 82, 88-89 (D. Mass. 2004).

[4] Defendants agree that Mr. Medeiros formerly represented TPI, and that Defendants and TPI are now "adverse." The sole question, therefore, is whether the Current Litigation is "substantially related" to the Mark Thompson Litigation.

[5] The First Circuit employs the substantial relationship test in resolving conflict of interest issues. *See Borges v. Our Lady of the Sea Corp.*, 935 F.2d 436, 439 (1st Cir. 1991).

issues and causes of action presented in former representation" can the court determine that there is a substantial relationship between the former and current matters. *Somascan Plaza, Inc. v. Siemens Med. Sys., Inc.*, 187 F.R.D. 34, 39-40 (D.P.R. 1999)(quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1029 (5th Cir. 1981) *overruled on other grounds*, *Gibbs v. Paluk*, 724 F.2d 181 (5th Cir. 1984)). The mere possibility of a conflict thus will not support a motion to disqualify. *See Estrada*, 632 F. Supp. at 1175.

**II.    TPI's Motion to Disqualify Should Be Denied Because It Has Not Demonstrated That The Current Litigation Is "Substantially Related" To The Prior Litigation**

It is undisputed that Mr. Medeiros represented TPI in just one matter—the Prior Litigation. Hence, disqualification would only be appropriate if the Prior Litigation is "substantially related" to the Current Litigation. A careful and thorough analysis of the facts and issues in the Prior Litigation and those in the Current Litigation reveal, however, that the two matters are not related at all, and in fact, are strikingly dissimilar. TPI offers little more than the unsubstantiated conclusion that "there can be no question" that Mr. Medeiros was "privy to confidential information from TPI, including confidential information relating to the validity, enforceability and consequences to TPI of breach of the Restrictive Covenants," TPI's Mem at 4-5. But that bare insinuation is simply inadequate to support its argument that the facts and issues in the Prior Litigation are "substantially related" to the facts and issues in the Current Litigation and that disqualification is therefore warranted. *See Somascan Plaza*, 187 F.R.D. at 40 (explaining that plaintiffs' "conclusory allegations regarding a sharing of confidences . . .

are not enough to support their burden"); *Estrada*, 632 F. Supp. at 1175 (explaining that the mere possibility of a conflict will not support a motion to disqualify).

Moreover, TPI's attempt to satisfy its burden by arguing that a single counterclaim in the Prior Litigation—a counterclaim that was abandoned and never litigated—is sufficient to create a substantial relationship with the Current Litigation should be rejected. No Massachusetts case has held that such a minimal overlap of facts and issues is sufficient to establish that two matters are substantially related. *See Masiello*, 394 Mass. at 848-49 (attorney's representation of construction company in obtaining permits for subway construction project not substantially related to later representation of property owners in suit against company for damage due to project); *Gerzof v. Cignal Global Commc'ns, Inc.*, 2001 WL 721622 (Mass. Super. June 5, 2001) (no substantial relationship where first case concerned sale and disposition of real estate not substantially and second case focused on breach of investment contract); *Chauahn v. Dana Farber Cancer Inst., Inc.*, 2001 WL 241493 (Mass. Super. Feb. 28, 2001) (no substantial relationship where first case concerned malpractice involving irradiated platelets and second case concerned lost or destroyed stem cells); *Forgue v. Forgue*, 2000 WL 282454 (Mass. Super. Feb. 23, 2000) (no substantial relationship between two lawsuits arising out of same automobile accident where first suit sought recovery of insurance funds and second sought damages for driver's negligence). To the contrary, in those cases granting motions to disqualify, courts have found a significant convergence of facts and issues that is not present here. *See G.D. Matthews & Sons Corp v. MSN Corp.*, 54 Mass. App. Ct. 18, 21 (2002) (substantial relationship found where agreement that was at core of first litigation was central to the second litigation); *Dee v. Conference*

*Holdings, Inc.*, 1998 WL 1247926 (Mass. Super. July 14, 1998) (substantial relationship found where information concerning plaintiff's compensation was central to first and second lawsuits).

In its Memorandum in support of its Motion to Disqualify, TPI describes the Second Counterclaim and then immediately thereafter asserts that "[t]he case was litigated for more than two years, ending in settlement and voluntary dismissal," suggesting that the Second Counterclaim was also litigated to settlement. TPI's Mem. at 3. Nothing could be further from the truth. Conveniently, TPI has ignored the fact that the Second Counterclaim was never pursued and instead relies on the mere pleading of this Counterclaim to support its charge that Mr. Medeiros must have acquired confidential information related to Glenn's 1998 Agreement.[6]

As demonstrated above, no information, confidential or non-confidential, relating to the validity, enforceability and consequences to TPI of a breach of any restrictive covenants was ever revealed to or discussed by Mr. Medeiros because these issues were not contemplated during the Prior Litigation. Glenn and Mr. Medeiros *never* discussed the enforceability of the restrictive covenants binding Mark in the Prior Litigation. Consequently, nothing he learned in the Prior Litigation could possibly assist him in defending Glenn in the Current Litigation.

Glenn denies under oath that he disclosed any information, confidential or otherwise, to Mr. Medeiros in the Prior Litigation that is pertinent to the issues in the Current Litigation. TPI has not presented any evidence to the contrary. Moreover, TPI's

---

[6] Curiously, TPI has not offered any sworn testimony or any other evidentiary support for its charges. *See ebix.com*, 312 F. Supp. 2d at 94 n.13. This is not at all surprising—TPI has no evidence whatsoever that Mr. Medeiros opined on the enforceability of Mark Thompson's 1998 Employment Agreement during the Prior Representation.

motion entirely ignores the fact that *any* attorney representing Glenn in the Current Litigation would have access to information from the Prior Litigation because Glenn is a party in both cases. Glenn, as the key source of any information that may have been revealed in the Prior Litigation, could now disclose the same information to any lawyer representing him in the Current Litigation, regardless of whether that lawyer had been involved in the Prior Litigation.

Furthermore, the cases upon which TPI relies are inapposite. For example, in <u>Smith v. Nephew</u>, the court evaluated whether an attorney who had drafted an employment contract on behalf of the employees in the former representation should be disqualified from representing their former employer who had sued them for breach of the same employment contract. 98 F. Supp.2d 106, 107 (D. Mass. 2000). Not surprisingly, the court granted defendants' motion to disqualify the lawyer because he drafted "the very contractual provisions that are at the crux of this litigation." <u>Id.</u> at 108. Although TPI concedes, as it must, that Mr. Medeiros did not draft the Employment Agreements at issue in either the Prior or Current Litigation, it nevertheless argues that under the reasoning of <u>Smith & Nephew</u>, Mr. Medeiros should be disqualified solely because he filed the Second Counterclaim against Mark in the Prior Litigation. This argument is flawed, however, because it requires the inferential leap that by merely filing a Counterclaim that was abandoned and never prosecuted, Mr. Medeiros somehow acquired confidential information that could be used against TPI in the Current Litigation. Yet, TPI has not shown, nor can it show, that Mr. Medeiros acquired confidential information regarding the validity and enforceability of Mark's Agreement in order to assert that Counterclaim or defend against Mark's claims.

TPI's attempt to distinguish _ebix.com v. McCracken_, a case involving, among other things, the alleged breach of a non-compete provision, is equally unavailing. In denying plaintiff's motion to disqualify defendants' counsel, the district court in _ebix.com_ explained that the defendants' attorneys "did not draft [the] non-compete or any of the non-compete agreements at issue in this case or offer any opinion on the enforceability of those non-competes." 312 F. Supp. 2d at 92.

This is precisely the situation in the present case. Again, TPI concedes, as it must, that Mr. Medeiros had no role in drafting Mark's Employment Agreement or any of the Agreements at issue in the Current Litigation. Nonetheless, TPI guesses that Mr. Medeiros "must have inquired about and drawn conclusions about the validity and enforceability of the Restrictive Covenants contained in Mark's Employment Agreement in the Prior Litigation." TPI's Mem. at 9. Relying exclusively on this groundless hunch, TPI argues that unlike the attorneys in _ebix.com_, Mr. Medeiros has now "turned around" to argue in the Current Litigation that the Restrictive Covenants in Glenn's 1998 Agreement are unenforceable against him.[7] TPI's Mem. at 9.

TPI's arguments reflect a complete misunderstanding of the facts and issues in both the Prior Litigation and the Current Litigation. Where, as here, Mr. Medeiros acquired no confidences during the Prior Litigation that would be relevant in the Current

---

[7] Moreover, the prototypical "switching sides" cases involve one of two factual situations. The first occurs when a lawyer representing a party in a matter seeks to represent the adverse party while the matter is pending. _See, e.g., Norfolk Southern R. Co. v. Reading Blue Mountain & Northern Ry. Co._, 2005 WL 2792355 (M.D. Pa. Oct. 25, 2005) (disqualification of plaintiff's law firm warranted where defendant's former lead counsel joined law firm representing plaintiff during the proceedings). The second situation occurs when an attorney who has drafted or prepared a document on behalf of one party challenges that very same document in a subsequent proceeding. _See, e.g., Griffith v. Taylor_, 937 P.2d 297 (Alaska 1997) (attorney who drafted quitclaim deed intended to secure client's interest in property later sought to represent adverse party in attempt to regain control of that property). Clearly, neither of these situations is present here.

Litigation, there is no basis for disqualification and Glenn's choice of counsel should not be disturbed.[8] _Masiello_, 394 Mass. at 848.

### III. TPI's Motion to Disqualify Should Be Denied Because It is Tactical And Untimely

TPI's Motion to Disqualify suffers from an additional, equally fatal defect—it is an untimely, tactical ploy to harass Glenn and deprive him of the counsel of his choice. See _Erica_, 426 Mass. at 65; _Gorovitz v. Planning Bd. of Nantucket_, 394 Mass. 246, 250 & n.7 (1985) (noting that "[c]ourt resources are sorely taxed by the use of disqualification motions as harassment and dilatory tactics"). This Court has held that prejudice to the non-moving party is an independent ground for denying disqualification. See _ebix.com._, 312 F. Supp.2d at 90 n.8.

TPI did not file its motion promptly after learning that Mr. Medeiros and his law firm are representing Glenn and Splash in the Current Litigation. Instead, for weeks TPI engaged in negotiations with Mr. Medeiros, acting on behalf of Glenn, over numerous issues that obligated Mr. Medeiros to immerse himself in the defense of TPI's claims. See _Batchelor v. Batchelor_, 570 N.W.2d 568 (Wis. Ct. App. 1997) (finding nearly three month delay in moving for disqualification unreasonable where moving party was "continuously aware" of the representation). Only after Mr. Medeiros disagreed with

---

[8] TPI makes one final meritless point that can be readily dispatched. TPI faults Mr. Medeiros for Glenn's denial of certain allegations concerning his 1998 Agreement in his October 13, 2005 Amended Answer and Counterclaim. TPI's Mem. at 3-4. TPI also charges that Mr. Medeiros denied the allegations in ¶¶ 7 and 8 of the Complaint, thereby denying even the existence of restrictive covenants in ¶ 9 of the 1998 Agreement. That is not at all what happened. Glenn denied the allegations in ¶ 7 of TPI's Complaint because TPI materially misstated each and every one of the provisions in ¶ 9 of his 1998 Employment Agreement. Thompson Aff. ¶ 29. Similarly, Glenn denied the allegations in ¶ 8 of the Complaint because it erroneously charged that the 1998 Employment Agreement had a two-year term and because TPI misleadingly deleted critical language from its purported direct quotation of ¶ 9(g) of that Agreement. Thompson Aff. ¶ 29. Glenn was thus unwilling to admit allegations that he knew were materially false. Thompson Aff. ¶ 29.

TPI's positions on those issues did TPI finally move for disqualification. In the meantime, TPI has filed a Motion for Preliminary Injunction, which TPI must have known would inject Mr. Medeiros even deeper in this litigation.[9]

A motion to disqualify should be "filed at the onset of litigation, or 'with promptness and reasonable diligence once the facts' upon which the motion is based have become known." _Glover v. Libman_, 578 F. Supp. 748, 767 (N.D. Ga. 1983). TPI's delay, coupled with its course of further immersing Mr. Medeiros in the defense of this case, shows that the purported conflict of interest and concerns about confidential information are not significantly related to the integrity of its case. _See id._

Where, as here, a motion to disqualify could have been made earlier in the litigation, but was not, it is very fair for this Court to assume that the conduct challenged in TPI's motion to disqualify poses no legitimate threat to its interests. "Waiver is a valid basis for the denial of a motion to disqualify; a former client who is entitled to object to an attorney's representation of an adverse party on the grounds of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." _Chemical Waste Mgmt., Inc. v. Sims_, 875 F. Supp. 501, 504-05 (N.D. Ill. 1995); _see also Trust Corp. v. Piper Aircraft Corp._, 701 F.2d 85, 87-88 (9th Cir. 1983).

In addition, although the length of the delay in bringing the motion to disqualify counsel is important, it is not dispositive. _Chemical Waste Mgmt._, 875 F. Supp. at 505. The court may also consider such factors as when the moving party learned of the conflict, whether the moving party was represented by counsel during the delay, whether there is an adequate explanation for the delay, and whether disqualification would result

---

[9] On November 2, 2005, prior to filing its Motion to Disqualify, TPI filed a Motion to Dismiss Defendants' Counterclaim, an action that further immersed Mr. Medeiros in this litigation.

- 18 -

in prejudice to the nonmoving party. See id.; ebix.com, 312 F. Supp.2d at 90 n.8 (explaining that the Massachusetts Superior Court has stated prejudice to the nonmoving party constitutes a separate ground for denying a disqualification motion). In this case, TPI learned of Mr. Medeiros' representation on September 26, 2005, when he filed an Answer on behalf of Glenn. TPI failure to offer an explanation for the delay thus "raises the specter of an inappropriate motive" and bad faith. Continental Holdings, Inc. v. U.S. Can Co., 1996 WL 385346, *2 (N.D. Ill. July 3, 1996), see also British Airways, PLC v. Port Authority of N.Y & N.J., 862 F. Supp. 889, 901 (E.D.N.Y. 1994) ("Where there is inordinate and inadequately explained delay, a finding of waiver or implied consent may be appropriate").

## CONCLUSION

Because TPI has failed to satisfy its burden of demonstrating that the Prior Litigation and the Current Litigation are "substantially related," and because its Motion to Disqualify is a tactic designed to harass Glenn, the Court should deny TPI's Motion to Disqualify Mr. Medeiros and his law firm Little Medeiros Kinder Bulman & Whitney, P.C. from continuing to represent Glenn and Splash in the present litigation.

Respectfully submitted,

GLENN THOMPSON AND THOMPSON ENTERPRISES, INC.

By their attorneys,


_____
Matthew F. Medeiros (BBO #544915)
LITTLE MEDEIROS KINDER BULMAN
& WHITNEY, PC
72 Pine Street
Providence, RI 02903
Tel:    (401) 272-8080
Fax:    (401) 272-8195


_____
Michael L. Chinitz (BBO # 552915)
Lisa A. Tenerowicz (BBO# 654188)
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA 02116
Tel:    (617) 536-0040
Fax:    (617) 536-4400

December 12, 2005


### Certificate of Service

I, Lisa A. Tenerowicz, hereby certify that on December 12, 2005, I served a true and accurate copy of the above Motion to Extend Time by U.S. Mail to Terrence P. McCourt, esq. and Andrew T. Kang, Esq., Greenberg Traurig, LLP, One International Place, Boston, MA 02110, and a copy was also sent via overnight mail to Sandy Tucker, Esq., Williams Mullen, A Professional Corporation, 1021 East Cary St. (23219) P.O. Box 1320, Richmond, VA 23218-1320.

_____
Lisa A. Tenerowicz