# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

THOMPSON PRODUCTS, INC.,    )
a Delaware corporation,    )
       Plaintiff,    )
   )
     v.    )    C.A. No. 05-11810-RGS
   )
GLENN THOMPSON and    )
THOMPSON ENTERPRISES, INC.,    )
       Defendants.    )

## AFFIDAVIT OF GLENN THOMPSON IN OPPOSITION
## TO MOTION TO DISQUALIFY

Glenn Thompson, having first been duly sworn on oath, deposes and states as follows:

1.     My name is Glenn Thompson, and I live in Barrington, Rhode Island. I am the President of defendant Splash Creations, Inc. ("Splash") (f/k/a Thompson Enterprises, Inc.).

2.     I am submitting this Affidavit in opposition to the motion of plaintiff, Thompson Products, Inc. ("TPI"), to disqualify my long-time counsel, Matthew F. Medeiros, from representing me and Splash in this case.

3.     I have personal knowledge that all of the statements contained in this Affidavit are true.

4.     I am 45 years old.

5.     My great-grandfather founded Thompson Paper Box Company in approximately 1906. That company was the predecessor of TPI. My father was the President of Thompson Paper Box Company until his sudden death in 1979.

6.     When my father died, I was a student at Stonehill College. I dropped out of school and took over the operation of the business at the age of 19.

7.      I purchased the business from my mother in 1981, incorporated it that same year, as Thompson Paper Box Co., Inc., and became President.

8.      I worked for Thompson Paper Box and its successor, TPI, my entire business career, spanning some 27 years, until I left in the summer of 2005 to start a new business, Splash.

9.      At the time I joined Thompson Paper Box its annual sales were approximately $200,000.  Within 4 years, the sales had grown to $2 million.  By the time TPI purchased the assets of Thompson Paper Box in 1997, annual sales had grown to approximately $30 million.

10.     In approximately 1983 I hired my brother, Mark Thompson, to work at Thompson Paper Box.  In approximately 1988 or 1989, I gave Mark 10% of the stock of that Company.  I also regularly promoted him until, by 1995, he had become Vice President of Sales.

11.     On April 9, 2002, Mark filed suit in Plymouth County Superior Court against me, Thompson Paper Box and TPI.  A true and accurate copy of that Complaint is appended as **Exhibit A**.

12.     In mid-April 2002, I retained Matthew F. Medeiros and his law firm to represent me and the other defendants in Mark's lawsuit.  Mr. Medeiros served in that capacity for over 2 ½ years, through the settlement of Mark's litigation in December 2004.  That was the only matter on which Mr. Medeiros or his firm has ever provided legal representation to TPI.

13.     During that period of more than 2 ½ years, the oral and written communications with Mr. Medeiros about Mark's litigation took place with me, and I was the source of the information and documents that Mr. Medeiros required for that litigation (with occasional assistance from other employees).  I also personally reviewed and became familiar with all filings in that case.

14.     Mark alleged in his Complaint that:

a.     I had defrauded him about the Company's photo album sales, thereby allegedly depriving him of a 25% ownership interest in a subsidiary that should have been formed to carry on that business, under a 1993 letter agreement of which he was a third-party beneficiary;

b.     I had breached an alleged agreement to pay Mark's contractual share of a settlement of a lawsuit that a former employee, Lafond, had brought;

c.     I and the Company had wrongfully and without cause terminated his employment;

d.     I had breached my fiduciary duty, as majority shareholder, to him;

e.     I and the Company had breached their contractual obligations of good faith and fair dealing to Mark; and

f.     I and the Company had engaged in unfair or deceptive acts or practices toward him in violation of Mass G.L. c. 93A, § 11.

15.     **None of those claims has any relationship to any of the allegations contained in the Complaint in this case.**

16.     On July 26, 2002, the corporate defendants filed their Answer and Counterclaims against Mark (copy appended as **Exhibit B**).

17.     The First Counterclaim alleged that in connection with the sale of the Company in 1997, Mark had made representations and warranties that there were no undisclosed obligations or liabilities and that he had breached those representations and warranties by his assertion of his claim that he was entitled to a 25% ownership interest in a to-be-formed photo album subsidiary. **That First Counterclaim has no relationship to any of the allegations contained in the Complaint in this case.**

18.     The Second Counterclaim alleged that Mark had breached the non-compete provision of his Employment Agreement with TPI dated January 5, 1998 (copy appended as **Exhibit C**).  The term of that Agreement was 3 years, ending December 31, 2000, when it automatically expired (¶ 5).  The non-compete provision remained in effect for "two (2) years following termination of Employee's employment hereunder…." (¶ 9(a)).

19.     At the time TPI asserted the Second Counterclaim, it was just 18 months since Mark's employment under **Exhibit C** had ended, by reason of that Agreement expiring by its own terms. So at that time he was still within the 2-year period of paragraph 9(a).  Because the expiration of the Employment Agreement and the end of Mark's employment by the Company were virtually simultaneous, the only non-compete period that I ever considered or discussed with anyone was the two-year period after the expiration of his Agreement, ending December 31, 2002.

20.     In particular, it never occurred to me that TPI might argue, as it now does with respect to the identical provision of my own Employment Agreement, that the clear 2-year non-compete provision of ¶ 9(a) might be overridden by a subsequent provision of the Agreement.  I never discussed with Mr. Medeiros any such interpretation of the Agreement.  As I understand it, TPI is arguing in this case that the identical provision of my Employment Agreement means that the two-year restriction period runs from whenever I might leave TPI (even if it had been 40 years from now), rather than from the expiration of the Agreement. The first time that I ever heard such a suggestion was when TPI filed its complaint in this case.  I consider such an interpretation indefensible.  **In any event, there is no relationship between the issues presented in the Second Counterclaim in the Mark Thompson litigation and TPI's entirely**

**new claim against me in this case as to when the two-year period begins to run, which was never in issue in the Mark Thompson litigation.**

21.      On September 13, 2002, Mark filed his Answer to TPI's Counterclaim (copy appended as **Exhibit D**).

22.      I filed my own Answer and Counterclaim against Mark on December 31, 2002 (copy appended as **Exhibit E**).  My Counterclaim asserted Mark's breach of the Contribution Agreement that he had entered into in connection with the settlement of the Lafond litigation, which specified the portion of that settlement that he was personally obligated to pay.

23.      On January 9, 2003, Mark filed a Reply to my Counterclaim (copy appended as **Exhibit F**).

24.      **There is no relationship between my Counterclaim against Mark and any of the allegations contained in the Complaint in this case.**

25.      At the time TPI asserted its Counterclaim against Mark for alleged breach of his non-compete restriction, I believed that Mark had established a relationship with Malden Picture Frames and may have been making sales calls to customers of TPI (within the two-year period of paragraph 9(a)).  However, I was never able to substantiate that information, and Mark denied it.

26.      TPI therefore never pursued the Second Counterclaim.  The Second Counterclaim was never even mentioned in the dispositive motion papers that were filed, nor in Judge Troy's ruling on that motion (copy appended as **Exhibit G**).  And when the parties participated in the mediation that resulted in the settlement of Mark's lawsuit, TPI did not even mention the Second Counterclaim in its written submission to the mediator.  TPI had effectively abandoned it, for lack of proof.  **For that reason, there were never any communications with Mr. Medeiros, confidential or otherwise, regarding whether the non-compete restriction meant what it**

**said -- namely, that it expired two years after the Agreement itself expired.  Nor did Mr.**

**Medeiros ever provide TPI with any opinion as to the enforceability of Mark's non-**

**compete.**

27.    The primary focus of the Mark Thompson litigation was: (a) his 25% ownership

claim, which Mark valued at more than 6 million dollars in his Civil Action Cover Sheet; and (b)

his claim for wrongful termination and for the $500,000 Lafond settlement payment that he

alleged I had promised to make for him, which together he valued at over 1 million dollars in his

Civil Action Cover Sheet. (See **Exhibit H** appended).  The non-compete Counterclaim simply

never got beyond the initial pleading stage.

28.    There were no issues in the Mark Thompson litigation about misuse of any

allegedly proprietary, confidential information, solicitation of TPI employees, or the other claims

that TPI asserts against me in this case.

29.    In its Memorandum in support of its Motion to Disqualify Mr. Medeiros, TPI is

critical of me and Mr. Medeiros for allegedly "deny[ing] even the existence of the Restrictive

Covenants in paragraph 9 of [my Employment] Agreement."  (TPI's Memorandum at 4.)  That is

false.  The basis for my denial of paragraph 7 of TPI's Complaint is that TPI materially misstated

each and every one of the provisions of paragraph 9 of my Employment Agreement.  In addition,

I denied paragraph 8 of TPI's Complaint because it alleged, erroneously, that my Agreement had

a 2-year term, and because TPI had deleted, without indicating it, critical words from its

purported quote from paragraph 9(g) of the Agreement.  I was unwilling to admit allegations that

I knew were materially false.

30.    I find suspect the timing of TPI's Motion to Disqualify. Many members of TPI's

management have had personal knowledge for years that Mr. Medeiros had represented all of the

defendants in the prior litigation.  I participated, along with Mr. Medeiros, in discussions of the

Mark Thompson litigation with two then and current Directors, Messrs. Sonuga and Gleason,

and also received emails that Mr. Medeiros sent to all three of us.  I also know from personal

observation that TPI's then and current Chief Financial Officer, Ruth Correia, had personal

knowledge that Mr. Medeiros was TPI's counsel in Mark's suit.  Finally, I have knowledge from

personal observation that TPI's then and current outside corporate counsel, Cameron Read, had

personal contact with Mr. Medeiros, by email and letter, in connection with the Mark Thompson

litigation.

     31.     **None of the communications referred to in paragraph 30, which took place**

**during the Mark Thompson litigation, has any relationship to any of the allegations**

**contained in the Complaint in this case.**

     32.     Mr. Medeiros filed the Answer on my behalf in this case on September 26, 2005.

TPI's counsel wrote to Mr. Medeiros the next day (copy appended as **Exhibit I**) to request that I

stay off all premises of TPI. That letter shows copies to Messrs. Sonuga and Gleason, two

directors of TPI who knew that Mr. Medeiros had represented TPI in the Mark Thompson

litigation.  TPI's counsel again wrote to Mr. Medeiros on September 27, 2005 (copy appended as

**Exhibit J**) to request that he and I agree to an expedited deposition. Mr. Medeiros responded by

letter dated September 28, 2005 (copy appended as **Exhibit K**). TPI's counsel again wrote to Mr.

Medeiros on October 5, 2005, to request that I preserve electronic evidence (copy appended as

**Exhibit L**). TPI's counsel again wrote to Mr. Medeiros on October 13, 2005 (copy appended as

**Exhibit M**), about the statements by Robert Jackson that are the basis for defendants'

Counterclaim in this case. TPI's counsel demanded that Mr. Medeiros retract certain allegations.

That letter is cc'd to Messrs. Sonuga and Gleason. On October 13, 2005, after extensive

consultation with me, Mr. Medeiros filed and served an Amended Answer and Counterclaim on defendants' behalf.  On November 2, 2005, TPI's counsel filed and served on Mr. Medeiros a Motion to Dismiss the Counterclaim. It was not until November 14, 2005 that TPI filed its Motion to Disqualify Mr. Medeiros from representing me in this case.  By that time I had already invested significant time and money in Mr. Medeiros' preparation of our defense. I had communicated with Mr. Medeiros repeatedly about the claims in this litigation, had provided a great deal of information for his review and analysis, had conferred with Mr. Medeiros about our opposition to TPI's Motion to Dismiss Counterclaim, had conferred with Mr. Medeiros about each of the demand letters that TPI's counsel had sent to him beginning in late September and continuing in October, and, in general, had worked closely with Mr. Medeiros to plan the defendants' overall defense of this suit.

33.     I believe that TPI has filed its delayed disqualification motion solely as a tactical ploy, not out of any legitimate concern about protection of client confidences.

34.     Based upon our close attorney/client working relationship since 2002, I have the utmost regard for Mr. Medeiros' abilities, judgment and service as a dedicated advocate.  It is my strong desire to continue to be represented by Mr. Medeiros in this matter.

Glenn Thompson

Subscribed and sworn to before me this 12th day of December, 2005.

Notary Public

VERONICA G. SZEWC, Notary Public
My Commission Expires ___10/20/2008___

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.

RECEIVED

APR  5 2002

PLYMOUTH SUPERIOR COURT

SUPERIOR COURT
Civil Action No. *02-0428*

MARK THOMPSON,
        Plaintiff,

v.

GLENN THOMPSON, THOMPSON
PAPER BOX COMPANY, INC., AND
THOMPSON PRODUCTS, INC.,
        Defendants.

## COMPLAINT AND JURY DEMAND

1.     Mark Thompson is a citizen of the Commonwealth of Massachusetts whose residence is in Bridgewater in our County of Plymouth.

2.     The defendant Thompson Paper Box Company, Inc. ("Thompson Paper") is a corporation organized under the laws of the Commonwealth of Massachusetts. In or about January, 1998 TPB changed its name to TPB Liquidation Co., Inc. ("TPB"), which has its place of business at 310 Kenneth Welch Drive, Lakeville, in our County of Plymouth.

3.     Defendant Thompson Products, Inc. ("Thompson Products") is a corporation organized and existing under the laws of Delaware with its principal place of business at 310 Kenneth Welch Drive, Lakeville, MA. (Thompson Products and its predecessor, Thompson Paper, are collectively referred to as the "Company.") Thompson Products Holdings, Inc. ("Holdings"), a Massachusetts corporation with a place of

ID # 288921v01/13167-2
4/9/2002

175.00
10.00
185.00

business in Lakeville, Massachusetts, owns 100% of the stock of Thompson Products.

Mark Thompson is a shareholder of Holdings.

4.     The defendant Glenn Thompson is a citizen of the Commonwealth of

Massachusetts.  Glenn Thompson was president of Thompson Paper and currently is

President of Thompson Products.  His principal place of business is at Thompson

Products' offices is in Lakeville, in our County of Plymouth.

5.     Mark Thompson joined the Company in approximately 1983.  He is a

descendant of the founder of the Company.  Through his efforts he became Vice-

President of Sales at the Company.

6.     Beginning in or about 1992, the Company began focusing on the

expansion of its photo album/photo storage product business.  To that end, in April 1993,

the Company retained a new employee, Geoffrey LaFond, to work for the Company as

President of the Company's photo album division.  In connection with the retention of

LaFond, Glenn Thompson, on behalf of himself and the Company, entered into a written

agreement with LaFond which provided that if the photo album division achieved

$10,000,000 in sales during any 12 month period, then the Company and Glenn

Thompson would cause a new corporation to be formed for the purpose of selling photo

album division products manufactured by the Company.  It was anticipated and agreed

that Mark Thompson would assist with LaFond's efforts to develop the photo album

division business.  Pursuant to the parties' agreement, if the $10,000,000 benchmark was

reached, LaFond would become president of the new corporation and would have either a

one-third or 25% interest in the issued and outstanding capital stock of the new

2

corporation (which was to be called "Tricor"), and a like share in the net profits of the new corporation. LaFond and Glenn Thompson both agreed and represented to Mark Thompson that Mark would have the same equity interest in Tricor as LaFond and Glenn Thompson.

7.      On April 15, 1993, LaFond joined the Company as president of the Company's photo album division. Mark Thompson worked with LaFond to expand the Company's photo album sales.

8.      Thereafter, and within three years after LaFond had been hired, sales of the Company's photo album division exceeded the $10 million benchmark required for the formation of Tricor.

9.      Despite numerous requests by LaFond, however, Thompson Paper and Glenn Thompson refused to form Tricor. During this time period, Glenn Thompson repeatedly represented to Mark Thompson that the "conditions" for the formation of Tricor had not been met, and that Tricor, if formed, would not be profitable. These representations were knowingly false.

10.     In mid-April, 1996, the defendants fired LaFond.

11.     In the years after the termination of LaFond, the Company, through the efforts of Mark Thompson, continued to increase the level of photo album sales. By the end of 1997, photo album sales reflected approximately 84% of the Company's business.

12.     On or about January 5, 1998 the Company sold substantially all of its operating assets to Thompson Products, an acquisition company formed by Dilmun Investments, Inc. The consideration for the sale was $45 million in cash and a $5 million

3

note payable by Holdings to the Company. At the time of the asset sale, Mark Thompson

held 10% of the stock of the Company and he received his proportionate share of the sale

proceeds. If the Company and Glenn Thompson had formed Tricor, however, Mark

Thompson would have owned a 25% equity interest in the separate photo album company

as well as a 10% interest in Thompson Paper. Up and until the time of the sale, Glenn

Thompson continued to misrepresent to Mark Thompson that the conditions for the

formation of Tricor had never been met.

13.    LaFond filed litigation against the Company and Glenn Thompson seeking

damages for the failure of the Company and Glenn Thompson to form Tricor.

Throughout this litigation, Glenn Thompson continued to represent to Mark Thompson

that the conditions necessary for the formation of Tricor had never been met.

14.    In connection with the asset sale, Glenn Thompson became a stockholder

of Holdings and an officer of Thompson Products. As a shareholder of Holdings and a

descendant of the founders of the Company, Mark Thompson believed and was assured

that he would continue to have employment with and receive compensation from the

Company absent just cause for his removal. Mark Thompson was to be compensated at a

base salary of $200,000 per year but was also entitled and expected to receive bonuses

consistent with the Company's performance.

15.    In or about December 1999, Glenn Thompson informed Mark Thompson

that he intended to settle LaFond's claims regarding Tricor. This was the first time that

Mark Thompson learned that the conditions for the formation of Tricor may have been

met. Glenn Thompson informed Mark Thompson that Mark would be required to make

4

certain contributions to the settlement which was to be paid over three years. The contributions were to be paid either directly by Mark or through the Company by reducing the bonus payments to which Mark would otherwise be entitled.

16.     When Mark Thompson thereafter protested to his brother about the unfairness of having to contribute to the LaFond settlement, Glenn Thompson agreed to indemnify and/or reimburse Mark for any settlement contributions which Mark paid directly or by forgoing bonus payments. Consistent with that agreement, when the first contribution from Mark Thompson came due on or about December 29, 1999, Glenn Thompson arranged for payment of Mark Thompson's share.

17.     Glenn Thompson thereafter reneged on his promise to cover Mark's share of the LaFond settlement contributions.

18.     Although he had received a $200,000 bonus in 1998, Mark Thompson was paid no bonus during 1999, 2000 and 2001. Some or all of the bonus payments Mark Thompson should have received were diverted to pay for the LaFond settlement.

19.     In or about October 2001, the Company terminated Mark Thompson without cause. Glenn Thompson conspired with other officers of Thompson Products and with the shareholders and officers of Holdings to effect the termination.

20.     Thompson Products wrongfully terminated Mark Thompson's employment with the Company, and, by firing him, deprived him of the employment, salary and bonus which he had come to expect and to which he was entitled.

21.     The defendants have breached their contractual obligations to Mark Thompson including their obligations of good faith and fair dealing.

5

22.    Each of the defendants have breached their fiduciary obligations to the plaintiff.

23.    Defendant Thompson Products is liable to Mark Thompson under common law principles of successor corporate liability for Thompson Paper's failure to form Tricor.

24.    By reason of their conduct, the defendants are required to account to Mark Thompson for the net profits of the photo album division of the Company prior to the asset sale and to pay him 25% of said net profits.  Defendants are also required to account to Mark Thompson for the proceeds which he would have received on account of the asset sale if he had received his 25% equity share in the photo album division of the Company as promised.

25.    The defendants' conduct toward Mark Thompson constitutes unfair or deceptive acts or practices in violation of Mass. G.L. c. 93A, § 11, entitling Mark Thompson to treble the amount of his damages plus a reasonable attorneys' fee.

WHEREFORE, plaintiff Mark Thompson demands judgment as follows:

1.    In the amount of his actual damages incurred through the date of trial of this action;

2.    That his actual damages be doubled or trebled in accordance with the provisions of Mass. G.L. c. 93A, § 11;

3.    That he be awarded, pursuant to Mass. G.L. c. 93A, § 11, his attorneys' fees incurred in pursuing this action;

6

ID # 288921v01/13167-2
4/9/2002

4.    That the Court enter an order requiring the Company and Thompson

Products to account to the plaintiff Mark Thompson for the net profits of the photo album

division and the lost bonus payments of which he has been deprived;

5.    For the costs of this action;  and

6.    For such other and further relief as this Court shall deem meet and just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

MARK THOMPSON
By his attorneys,

_____

Nicholas J. Nesgos, Esq., BBO No. 553177
Posternak, Blankstein & Lund
100 Charles River Plaza
Boston, MA  02114
(617) 973-6100


Dated: April 9, 2002

7

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                          SUPERIOR COURT

| | | |
|---|---|---|
| MARK THOMPSON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action |
| | ) | No. 02-0428 |
| GLENN THOMPSON, THOMPSON PAPER | ) | |
| BOX COMPANY, INC., and THOMPSON | ) | |
| PRODUCTS, INC., | ) | |
| Defendants. | ) | |

### ANSWER AND COUNTERCLAIMS OF DEFENDANTS
### THOMPSON PAPER BOX COMPANY, INC.
### AND THOMPSON PRODUCTS, INC.

Defendants Thompson Paper Box Company, Inc. and Thompson Products, Inc.

("defendants"), for their Answer and Counterclaims state as follows:

### ANSWER

### First Defense

1.      Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 1 of the Complaint.

2 -3.    Defendants admit the allegations contained in paragraphs 2 and 3 of the

Complaint.

4.      Defendants deny the allegations contained in the first sentence of paragraph 4 of

the Complaint, but admit the remaining allegations contained in that paragraph.

5.      Defendants admit the allegations contained in the first two sentences of

paragraph 5 of the Complaint, but deny the remaining allegations contained in that paragraph.

6.      Defendants deny the allegations contained in the first sentence of paragraph 6 of

the Complaint; admit the allegations contained in the second sentence; deny the allegations

contained in the third and fourth sentences; and as to the fifth and sixth sentences, respond that the document speaks for itself and that those sentences contain an incomplete and therefore incorrect statement of the contents of that agreement.

7.      Defendants admit the allegations contained in the first sentence of paragraph 7 of the Complaint.  As to the second sentence, defendants admit that it became necessary from time to time for Glenn Thompson or Mark Thompson to assist LaFond's sales efforts.

8.      In response to paragraph 8 of the Complaint, defendants admit that the Company sold 10 million dollars of photo albums in 1995, but otherwise deny the allegations contained in paragraph 8.

9-10.   Defendants deny the allegations contained in paragraphs 9 and 10 of the Complaint.

11.     Defendants deny the allegations contained in the first sentence of paragraph 11 of the Complaint, but admit the allegations contained in the second sentence.

12.     Defendants admit the allegations contained in the first sentence of paragraph 12; deny the allegations contained in the second sentence; admit the allegations contained in the third sentence; and deny the allegations contained in the fourth and fifth sentences.

13.     In response to paragraph 13 of the Complaint, defendants state that the complaint in LaFond's lawsuit speaks for itself and deny the allegations contained in the second sentence of paragraph 13.

14.     Defendants admit the allegations contained in the first sentence of paragraph 14 of the Complaint.  Defendants deny the allegations contained in the second and third sentences.

15.     Defendants admit the allegations contained in the third sentence of paragraph 15 of the Complaint, but deny all of the remaining allegations contained in that paragraph.

16-25.    Defendants deny the allegations contained in paragraphs 16 through 25 of the

Complaint.

## Second Defense

Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

## Third Defense

Plaintiff's claims are barred by the doctrine of laches.

## Fourth Defense

Plaintiff's claims are barred by the doctrine of estoppel.

## Fifth Defense

Plaintiff's claims are barred in whole or in part by the Contribution Agreement that he

entered into.

## Sixth Defense

Plaintiff's claims are barred in whole or in part by his written employment agreement.

## Seventh Defense

Plaintiff's claims are barred by his own fraud or unclean hands.

## Eighth Defense

Plaintiff's claims are barred in whole or in part by the parol evidence rule.

## Ninth Defense

Plaintiff's claims are barred in whole or in part by the statute of frauds.

## Tenth Defense

Plaintiff's claims under Mass. G.L. c. 93A are barred by plaintiff's noncompliance with

the procedural requirements of that statute.

### Eleventh Defense

Plaintiff has failed to mitigate his damages, if any.

WHEREFORE, defendants pray that the Complaint as against them be dismissed and that they be awarded their costs and such other and further relief as the Court deems proper.

### COUNTERCLAIMS

Defendants ("counterclaim-plaintiffs") for their counterclaims against plaintiff ("counterclaim-defendant"), state as follows:

### First Counterclaim

1.      On or about November 24, 1997, counterclaim-defendant, Mark Thompson, executed an Asset Purchase Agreement in connection with the sale of the assets of Thompson Paper Box Co., Inc.

2.      In Section 4.7 of that Agreement (entitled Absence of Undisclosed Liabilities), counterclaim-defendant Mark Thompson represented and warranted that there were no obligations or liabilities other than as set forth in Schedule 4.7.

3.      Counterclaim-defendant Mark Thompson did not disclose in Schedule 4.7 either LaFond's claim or his own alleged claim for an alleged 25% equity interest in the net profits of the photo album division.

4.      Counterclaim-defendant Mark Thompson's breach of the foregoing obligations was material to the Asset Purchase Agreement, such that if he had made the required disclosure, he never would have been paid the approximately $4 million that he personally received from the sale.

5.    Counterclaim-plaintiffs have been damaged by counterclaim-defendant Mark Thompson's breach of his representations and warranties, in the amount of the sale proceeds that were paid to him, together with interest, costs and attorneys' fees.

6.    It would be unjust and inequitable to allow counterclaim-defendant to retain his sale proceeds and simultaneously assert his damages claims against counterclaim-plaintiffs.

7.    Counterclaim-plaintiffs have also been damaged by counterclaim-defendant Mark Thompson's breach, in the amount of the sums that counterclaim-plaintiffs paid to settle the LaFond Litigation.

### Second Counterclaim

8.    On or about January 5, 1998, counterclaim-defendant Mark Thompson executed a written Employment Agreement with Thompson Products, Inc.

9.    Paragraph 9 of that Agreement (entitled "Restrictive Covenants") contained a non-compete provision that remained effective for two years after counterclaim-defendant Mark Thompson ceased to be employed by Thompson Products, Inc.

10.    Upon information and belief, counterclaim-defendant Mark Thomson has breached, and is continuing to breach, the non-compete obligation.

11.    Counterclaim-plaintiffs have been damaged by counterclaim-defendant Mark Thompson's breach of his non-compete obligations.  Damages are unlikely to be an adequate remedy for that breach, thereby entitling counterclaim-plaintiffs to injunctive and other equitable relief against Mark Thompson.

WHEREFORE, counterclaim-plaintiffs pray that the Court enter judgment in their favor:

a)    on the First Counterclaim, in an amount consisting of the return of all sums that counterclaim-defendant received in connection with the asset sale and reimbursement of all sums that counterclaim-plaintiffs paid to settle the LaFond Litigation;

b)    on the Second Counterclaim, for damages, an injunction and other equitable relief;

c)    on both Counterclaims, for interest, costs and attorneys' fees; and

d)    for such other and further relief as the Court deems proper.

_____
Matthew F. Medeiros, Esq. (#544915)
Little, Bulman, Medeiros & Whitney, P.C.
72 Pine Street
Providence, RI  02903
Tel:  (401) 272-8080
Fax: (401) 521-3555

**Attorneys for Defendants**


## JURY DEMAND

Counterclaim-plaintiffs demand a trial by jury on all aspects of their counterclaims that are triable of right by a jury.

_____
Matthew F. Medeiros, Esq. (#544915)
Little, Bulman, Medeiros & Whitney, P.C.
72 Pine Street
Providence, RI  02903
Tel:  (401) 272-8080
Fax: (401) 521-3555

**Attorneys for Defendants**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of July, 2002, I caused to be served by first class U.S. mail a copy of the within Answer and Counterclaims of Defendants Thompson Paper Box Company, Inc. and Thompson Products, Inc. to Nicholas J. Nesgos, Esq., Posternak, Blankstein & Lund, L.L.P., 100 Charles River Plaza, Boston, MA 02114.

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), effective as of January 5, 1998 (the "Effective Date"), by and between Thompson Products, Inc., a corporation organized under the laws of Delaware and whose address is 310 Kenneth W. Welch Drive, Lakeville, MA 02347 ("Employer"), and Mark A. Thompson, whose principal residence is 230 Grange Park, Bridgewater, MA 02324 ("Employee").

## W I T N E S S E T H :

WHEREAS, pursuant to the terms of an Asset Purchase Agreement dated November 24, 1997 between Employer and Thompson Paper Box Co., Inc. (the "Seller"), Glenn Thompson, Frederick L. Weingeroff, Gregg Weingeroff and Employee (the "Asset Purchase Agreement"), Employer will acquire certain assets and properties of Seller as of the consummation of the transaction (the "Closing");

WHEREAS, the Employee is the owner of certain interests in the Seller which are being conveyed to Employer as of the date hereof;

WHEREAS, as a material inducement to the Employer to enter into the Asset Purchase Agreement and all related transactions and in consideration of the Employer's covenants and agreements therein and the significant payments being made pursuant to the Asset Purchase Agreement to the Employee and other owners of the Seller and in reflection of the fact that the Employer is making a substantial investment in the Company concurrently herewith in reliance on this Agreement, the Employee has agreed to execute and deliver this Agreement;

WHEREAS, the execution and delivery by the Employee of this Agreement is a material condition of the willingness of the Employer to consummate the transaction which is described herewith;

WHEREAS, Employee was an executive officer of Seller and as part of the transactions contemplated by the Asset Purchase Agreement and concurrently with the Closing contemplated thereby, Employer and Employee shall enter into this Employment Agreement upon the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein set forth and other good and valuable consideration, the receipt and adequacy of which is mutually acknowledged, it is agreed by and between the parties as follows:

1. **Definitions**

For purposes of this Agreement, unless the context requires otherwise, the following words and phrases shall have the meanings indicated below:

[60363]

Thompson v. Thompson
Defendants' Documents      0144

"Business" means the manufacture and/or sales of photo albums, cardboard-based gift boxes, easelbacks for picture frames and related products.

"Cause" shall mean: (1) a felony conviction of the Employee (or a plea of no lo contendere in lieu thereof); (2) the unauthorized disclosure of confidential proprietary information of the Employer which disclosure the Employee knows or reasonably should have known would be reasonably likely to result in material damage to the Employer; (3) the breach by the Employee of any material provision of this Agreement, which breach, if curable, is not remedied within thirty (30) days after the Employee's receipt of written notice thereof provided, however, that the Employer need not permit the Employee to cure any breach which has been the subject of a prior written notice; (4) the engagement in self dealing in breach of fiduciary duties with respect to the Employer's assets or properties unless disclosed in writing to and approved by the Board; (5) an act of gross misconduct in connection with the Employee's duties hereunder; or (6) habitual or material neglect of the Employee's duties to the Employer (as determined in good faith by the Board, continuing after prior written notice to the Employee).

"Confidential Information" shall mean all nonpublic information concerning the Employer's business relating, without limitation, to its products, customer lists, pricing, trade secrets, intellectual property, business methods, financial and cost data, business plans, budgets, strategies, competitive analysis, the substance of agreements with customers, marketing and concession arrangements, or other confidential agreements , which was obtained from the Employer or its predecessors or which was learned, discovered, developed, conceived, originated or prepared during or as a result of the performance of any services by Employee on behalf of the Employer or its predecessors.  For purposes of this definition, the Employer shall be deemed to include any entity which is controlled, directly or indirectly, by the Employer and any entity of which a majority of the economic interest is owned, directly or indirectly, by the Employer.

"Disability" shall mean the good faith determination by the Board that Employee has become physically or mentally incapable of performing his customary duties under this Agreement and such disability has disabled Employee for a cumulative period of one hundred twenty (120) days within any twelve (12) month period.

2.    **Representations and Warranties**

Employee represents and warrants that he is not subject to any restrictive covenants or other agreements or legal restrictions in favor of any person which would in any

- 2 -

Thompson v. Thompson    0145
Defendants' Documents

way preclude, inhibit, impair or limit his employment by the Employer or the performance of his duties, as contemplated herein.

3.      **Employment**

The Employer hereby employs Employee and Employee accepts such employment as Vice-President of the Employer.  As its Vice-President, Employee shall render such services to the Employer consistent with those services theretofore provided by Employee to Seller and as required by the by-laws of the Employer or as reasonably directed by the Board of Directors of the Employer.  Employee accepts such employment and, consistent with fiduciary standards which exist between an employer and an employee shall perform and discharge the duties that may be assigned to him from time to time by the Employer in an efficient, trustworthy and businesslike manner.

4.      **Place of Employment**

During the Term, the Employee's office and base from which he performs his duties hereunder shall be located at the  Employer's office in Lakeville, Massachusetts; provided, however, at any time during the Employee's Employment Term (as hereinafter defined), the Board of Directors of the Employer reserves the right to determine and/or change the location of such office to an alternate location within a sixty (60) mile radius of Employer's office in Lakeville, Massachusetts or to such other location mutually acceptable to both the Employer and Employee. In conformance with the foregoing and not in limitation thereof, Employee agrees to take such trips as shall be consistent with or reasonably necessary in connection with his duties.

5.      **Term**

The term of this Agreement shall commence on the Closing and shall expire on December 31, 2000 unless sooner terminated pursuant to Section 8 hereof (the "Employment Term").

6.      **Compensation and Benefits**

(a)      As compensation for all services rendered and to be rendered by Employee hereunder and the fulfillment by Employee of all of his obligations herein, the Employer shall pay Employee an annual base salary (the "Base Salary") at the rate of $200,000 payable in accordance with the Employer's customary payroll practices;

(b)      Employee shall be entitled to participate in all of the employee benefit plans and programs (including without limitation pension and bonus plans which may be adopted or maintained by the Employer) made generally available to executives of the Employer;

Thompson v. Thompson
Defendants' Documents      0146

- 3 -

(c)    Employee shall be entitled to participate in any health insurance, disability insurance, group life insurance or other welfare benefit program made generally available to executives of the Employer; and

(d)    The Employer agrees that the Employee is authorized to incur reasonable expenses in the performance of his duties hereunder and agrees that all reasonable expenses incurred by Employee in the discharge and fulfillment of his duties for the Employer, as set forth in Section 3, will be promptly reimbursed or paid by the Employer upon written substantiation signed by Employee, itemizing said expenses in reasonable detail.

(e)    The Employer shall deduct from the compensation described above, any Federal, state or city withholding taxes, social security contributions and any other amounts which may be required to be deducted or withheld by the Employer pursuant to any Federal, state or city laws, rules or regulations.

## 7.    Vacation

Employee shall be entitled to an aggregate of four (4) weeks paid vacation during each year of the Term at time or times reasonably agreeable to both the Employee and the Employer, it being understood that any portion of such vacation not taken in such year shall not be available to be taken during any other year.

## 8.    Termination

(a)    Subject to the provisions of this Agreement, this Agreement may be terminated as follows: (i) by mutual consent of the parties; (ii) by the Employee on the one hundred twentieth (120th) day after receipt of written notice to the Employer of Employee's intent to terminate; (iii) by the Employer for Cause; (iv) by the Employer without Cause or (v) as a result of the death or Disability of the Employee.

(b)    If (i) the Employee terminates his employment pursuant to Section 8(a)(ii) hereof, (ii) the Employer terminates the employment of the Employee hereunder for Cause or (iii) employment is terminated due to death or Disability, the Employer's only obligations hereunder shall be to pay to the Employee his accrued but unpaid Base Salary and vacation pay as of the date of termination.

(c)    If the Employer terminates employment of the Employee hereunder without Cause, the Employer shall: (i) continue to pay to the Employee his Base Salary through December 31, 2000 payable in accordance with the Employer's normal payroll practices; (ii) continue Employee's health coverage through December 31, 2000 on the same basis as health coverage is provided by the Employer for active employees and as may be amended from time to time; (iii) pay to Employee any earned but unpaid bonuses and (iv) pay to Employee $100,000 with such amount payable in equal monthly installments over a period

- 4 -

of two (2) years following the termination of Employee's employment hereunder; provided, that in the event that the restrictive covenants contained in Section 9 are violated by Employee, such payments shall cease.

(d)    If Employee's employment with the Employer is not extended by mutual agreement of the parties after the expiration of this Agreement on December 31, 2000, the Employer shall pay to Employee $100,000 with such amount payable in equal monthly installments over the period of two (2) years following the termination of Employee's employment hereunder; provided, that in the event that the restrictive covenants contained in Section 9 are violated by Employee, such payments shall cease. In the event Employee is receiving payments pursuant to Section 8(c) above, Employee shall be precluded from receiving payments under this Section 8(d).

9.    **Restrictive Covenants**

(a)    Employee understands and acknowledges that during his employment with the Seller, he was, and during his employment with the Employer, he will be exposed to Confidential Information, all of which is proprietary and which will rightfully belong to the Employer. The Employee shall hold in a fiduciary capacity for the benefit of the Employer such Confidential Information obtained by Employee during his employment with the Employer and shall not, directly or indirectly, at any time, during the Employment Term of this Agreement and for a period of two (2) years following termination of Employee's employment hereunder, the Employee divulge or use any Confidential Information without the prior written consent of a duly empowered officer of the Employer, except (i) as required in the performance of his duties for the Employer, (ii) as otherwise required by law; provided that prior to any such disclosure, notice of such requirement of disclosure is provided to Employer and Employer is afforded the reasonable opportunity to object to such disclosure, and (iii) as and to the extent such information is either not unique to the Employer or generally available to the public and became generally available to the public other than as a result of a disclosure by Employee in violation of this Agreement. Employee shall take all reasonable steps to safeguard such Confidential Information and to protect such Confidential Information against disclosure, misuse, loss or theft.

(b)    During the Employment Term and for a period of two (2) years following termination of Employee's employment hereunder, the Employee will not, directly or indirectly, solicit, employ or associate in any business relationship with any person, who was employed within six (6) months prior to the termination of Employee's employment by the Employer or any business in which Employer has a material interest, direct or indirect, as an officer, partner, shareholder or beneficial owner.

(c)    During the Employment Term and for a period of two (2) years following termination of Employee's employment hereunder, Employee will not within the continental United States, directly or indirectly, assist in, engage in, have any financial interest in, or participate in any way in, as an owner, partner, employee, agent, officer, board

- 5 -

Thompson v. Thompson
Defendants' Documents    0148

member, consultant, independent contractor or shareholder, in any business that involves, in whole or in part, activities similar to, related to or competitive with (a) the Business of the Employer or (b) the business of any affiliate of the Employer as carried on during the term of Executive's employment hereunder. Nothing herein shall prohibit Employee from being a passive owner of not more than five percent (5%) of the outstanding stock of any class of securities of a corporation or other entity engaged in such business which is publicly traded, so long as he has no active participation in the business of such corporation or other entity.

(d)    Employee represents and admits that (i) in the event of termination of this Agreement, Employee's experience and capabilities are such that Employee can obtain employment in a business engaged in other lines and/or of a different nature than the business of the Employer, and that the enforcement of a remedy by way of injunction will not prevent the Employee from earning a livelihood, and (ii) this Employee covenant and non-competition provision is being entered into in connection with the Employee's sale of his ownership interest in the Employer and in the absence of this provision Employee understands and has been advised by Employer that the sale would not be consummated.

(e)    If, at the time of enforcement of this Section 9, a court shall hold that the duration, scope, area or other restrictions stated herein are unreasonable, the parties agree that reasonable maximum duration, scope, area or other restrictions may be substituted by such court for the stated duration, scope, area or other restrictions and upon substitution by such court, this Agreement shall be automatically modified without further action by the parties hereto.

(f)    Employee hereby agrees that damages at law, including, but not limited to, monetary damages, will be an insufficient remedy to Employer in the event that the restrictive covenants contained in this Section 9 are violated and that, in addition to any remedies or rights that may be available to Employer, all of which other remedies or rights shall be deemed to be cumulative, retained by Employer and not waived by the enforcement of any remedy available hereunder, including, but not limited to, the right to sue for monetary damages, Employer shall also be entitled, upon application to a court of competent jurisdiction, to obtain injunctive relief, including, but not limited to, a temporary restraining order or temporary, preliminary or permanent injunction, to enforce the provisions contained in this Section 9, all of which shall constitute rights and remedies to which Employer may be entitled.

(g)    Notwithstanding termination of this Agreement as provided in Section 8 herein or any other termination of Employee's employment with the Employer, the Employee's obligations under this Section 9 shall survive any termination of the Employee's employment with the Employer at any time and for any reason.

10.    **Return of Documents**

Except for such items which are of a personal nature to Employee (e.g., daily business planner), all writings, records, computer disks, databases, and other documents

- 6 -

Thompson v. Thompson    0149
Defendants' Documents

including, without limitation, those containing any Confidential Information shall be the exclusive property of the Employer, shall not be copied, summarized, extracted from, or removed from the premises of the Employer, except in pursuit of the business of the Employer and at the direction of the Employer, and shall be delivered to the Employer, without retaining any copies, upon the termination of Employee's employment or at any time as requested by the Employer.

11.    **Binding Effect**

This Agreement shall inure to the benefit of and be binding upon the Employer and its successors. This Agreement is fully assignable by Employer to its successors whether direct or indirect, by purchase, merger, consolidation or otherwise, to all or substantially all of its assets provided each such successor expressly assumes and agrees to perform this Agreement in the same manner and to the same extent that the Employer would be required to perform it if no such succession had taken place or with or into which the Employer may consolidate or merge. Employee agrees that this Agreement is personal to him and may not be assigned by him otherwise than by will or laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Employee's legal representatives.

12.    **Miscellaneous**

(a)    If any provision of this Agreement, or portion thereof, shall be held invalid or unenforceable by a court of competent jurisdiction, such invalidity or unenforceability shall attach only to such provision or portion thereof, and this Agreement shall be carried out as if any such invalid or unenforceable provision or portion thereof were not contained herein.

(b)    This Agreement, and all of the rights and obligations of the parties in connection with the employment relationship established hereby shall be construed and enforced in accordance with the laws of Massachusetts without giving effect to any rules of conflicts of law. Each of the parties hereto hereby (a) irrevocably and unconditionally submits to the non-exclusive jurisdiction of any Massachusetts State or Federal court sitting in Suffolk County, Massachusetts in any action or proceeding arising out of or relating to this Agreement, (b) irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding, and (c) irrevocably and unconditionally consents to the service of any and all process in any such action or proceeding by the mailing of copies of such process by certified mail to such party and its counsel at their respective addresses specified in Section 12(c) below.

(c)    All notices, requests, demands, and other communications provided for hereunder shall be in writing and shall be given or made when (i) delivered personally; (ii) three (3) business days following mailing by first class postage prepaid, registered or certified mail, return receipt requested, to the party to be notified at its or his address set forth herein; or (iii) sent by telecopier, if the addressee has compatible receiving

Thompson v. Thompson    0150
Defendants' Documents

equipment and provided the transmittal is made on a business day during the hours of 9:00 a.m. to 6:00 p.m. of the receiving party and if sent at other times, on the immediately succeeding business day, or (iv) on the first business day immediately succeeding delivery to an express overnight carrier for the next business day delivery. Copies of all notices delivered to Employee shall also be delivered to: Carl I. Freedman, Chace, Ruttenberg & Freedman, 1 Park Row, Suite 300, Providence, R.I. 02903, telecopier no. 401-457-3732; and copies of all notices to the Employer shall be delivered to: Victor Kiarsis, Dilmun Investments, Inc., Metro Center, One Station Place, Stamford, CT, 06902, telecopier no. 203-353-5707 and to Selig D. Sacks, Pryor, Cashman, Sherman & Flynn, 410 Park Avenue, New York, NY 10022, telecopier no. 212-326-0806.

        (d)    This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement represents the entire understanding of the parties with reference to the subject matter hereof and neither this Agreement nor any provisions hereof may be modified, discharged or terminated except by an agreement in writing signed by the party against whom the enforcement of any waiver, charge, discharge or termination is sought. Any waiver by either party of a breach of any provision of this Agreement must be in writing and no waiver of a particular breach shall operate as or be construed as waiver of any subsequent breach thereof.

        IN WITNESSETH WHEREOF, the parties hereto have executed and have caused this Employment Agreement to be executed as of January 5 , 1998.

THOMPSON PRODUCTS, INC.

By: _Victor Kiarsis_____
    Name:  Victor Kiarsis
    Title:  President

_Mark A. Thompson_____
Mark A. Thompson

Thompson v. Thompson    0151
Defendants' Documents

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                    SUPERIOR COURT
                                                Civil Action No. 02-0428

MARK THOMPSON,
        Plaintiff,
v.

GLENN THOMPSON, THOMPSON
PAPER BOX COMPANY, INC., AND
THOMPSON PRODUCTS, INC.,
        Defendants.

## PLAINTIFF'S ANSWER TO COUNTERCLAIM

1.    Plaintiff denies the allegations contained in paragraphs 4, 5, 6, 7, 10 and 11 of the

Counterclaim.

2.    Paragraphs 1-3 of the counterclaim make allegations regarding the terms of an Asset

Purchase Agreement which agreement speaks for itself.

3.    Plaintiff admits the allegation contained in paragraph 8 of the counterclaim.

4.    Paragraph 9 of the counterclaim makes allegations regarding the terms of the written

Employment Agreement which agreement speaks for itself.

## AFFIRMATIVE DEFENSES

### First Defense

The counterclaims are barred in whole or in part by the applicable statute of limitations.

### Second Defense

The counterclaims are barred by the doctrine of laches.

ID # 311217v01/13167-2/ 09.09.2002

### Third Defense

The counterclaims are barred by the doctrine of estoppel.

### Fourth Defense

The counterclaims are barred by the defendant's fraud or unclean hands.

### Fifth Defense

The counterclaims may be barred in whole or in part by the statute of frauds.

### Sixth Defense

The counterclaims may be barred for lack of consideration.

### Seventh Defense

Some or all of the counterclaims have been expressly or impliedly waived.

MARK THOMPSON
By his attorneys,

Nicholas J. Nesgos, Esq., BBO No. 553177
Erik Lund, P.C.    BBO No. 307500
Posternak, Blankstein & Lund
100 Charles River Plaza
Boston, MA  02114
(617) 973-6100

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY ~~HAND~~/MAIL ON:  9/13/02

ID # 311217v01/13167-2/ 09.09.2002

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                                          SUPERIOR COURT

|  |  |
|---|---|
| MARK THOMPSON, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GLENN THOMPSON, THOMPSON PAPER )<br>BOX COMPANY, INC., and THOMPSON )<br>PRODUCTS, INC., )<br>    Defendants. )<br>) | Civil Action<br>No. 02-0428 |

## ANSWER AND COUNTERCLAIM OF DEFENDANT GLENN THOMPSON

Defendant Glenn Thompson ("Glenn"), for his Answer and Counterclaim state as follows:

### ANSWER

#### First Defense

1.      Glenn lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Complaint.

2–3.    Glenn admits the allegations contained in paragraphs 2 and 3 of the Complaint.

4.      Glenn denies the allegations contained in the first sentence of paragraph 4 of the Complaint, but admits the remaining allegations contained in that paragraph.

5.      Glenn admits the allegations contained in the first two sentences of paragraph 5 of the Complaint, but denies the remaining allegations contained in that paragraph.

6.      Glenn denies the allegations contained in the first sentence of paragraph 6 of the Complaint; admits the allegations contained in the second sentence; denies the allegations contained in the third and fourth sentences; and as to the fifth and sixth sentences, responds that

the document speaks for itself and that those sentences contain an incomplete and therefore incorrect statement of the contents of that agreement.

7.      Glenn admits the allegations contained in the first sentence of paragraph 7 of the Complaint.  As to the second sentence, Glenn admits that it became necessary from time to time for Glenn or Mark Thompson to assist Geoffrey LaFond's sales efforts.

8.      In response to paragraph 8 of the Complaint, Glenn admits that the Company sold 10 million dollars of photo albums in 1995, but otherwise denies the allegations contained in paragraph 8.

9–10.   Glenn denies the allegations contained in paragraphs 9 and 10 of the Complaint.

11.     Glenn denies the allegations contained in the first sentence of paragraph 11 of the Complaint, but admits the allegations contained in the second sentence.

12.     Glenn admits the allegations contained in the first sentence of paragraph 12; denies the allegations contained in the second sentence; admits the allegations contained in the third sentence; and denies the allegations contained in the fourth and fifth sentences.

13.     In response to paragraph 13 of the Complaint, Glenn states that the complaint in Geoffrey LaFond's lawsuit speaks for itself and denies the allegations contained in the second sentence of paragraph 13.

14.     Glenn admits the allegations contained in the first sentence of paragraph 14 of the Complaint.  Glenn denies the allegations contained in the second and third sentences.

15.     Glenn admits the allegations contained in the third sentence of paragraph 15 of the Complaint, but denies all of the remaining allegations contained in that paragraph.

16–25.  Glenn denies the allegations contained in paragraphs 16 through 25 of the Complaint.

## Second Defense

Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

## Third Defense

Plaintiff's claims are barred by the doctrine of laches.

## Fourth Defense

Plaintiff's claims are barred by the doctrine of estoppel.

## Fifth Defense

Plaintiff's claims are barred in whole or in part by the Contribution Agreement that he entered into.

## Sixth Defense

Plaintiff's claims are barred in whole or in part by his written employment agreement.

## Seventh Defense

Plaintiff's claims are barred by his own fraud or unclean hands.

## Eighth Defense

Plaintiff's claims are barred in whole or in part by the parol evidence rule.

## Ninth Defense

Plaintiff's claims are barred in whole or in part by the statute of frauds.

## Tenth Defense

Plaintiff's claims under Mass. G.L. c. 93A are barred by plaintiff's noncompliance with the procedural requirements of that statute.

### Eleventh Defense

Plaintiff has failed to mitigate his damages, if any.

### Twelfth Defense

Plaintiff's claims are barred in whole or in part by a lack of consideration.

WHEREFORE, Glenn prays that the Complaint as against him be dismissed and that he be awarded his costs and such other and further relief as the Court deems proper.

### COUNTERCLAIM

Defendant and Counterclaim-Plaintiff Glenn Thompson ("Glenn") for his counterclaim against Plaintiff and Counterclaim-Defendant Mark Thompson ("Mark"), states as follows:

### Counterclaim

1.     · On or about December 29, 1999, Mark executed a Contribution Agreement in connection with the settlement of the lawsuit brought by Geoffrey LaFond (the "LaFond Litigation").

2.     In Section 1 of the Contribution Agreement (entitled "Contributions"), Mark promised to contribute a total of $500,000 to the payments required in settlement of the LaFond Litigation.  Mark breached this agreement by failing and refusing to pay the last $100,000 installment of the amount he agreed to contribute.  In order to prevent a breach of the settlement agreement in the LaFond Litigation, Glenn paid this $100,000 that should have been paid by Mark.

3.     In Section 6 of the Contribution Agreement (entitled "Mutual Release"), Mark agreed to release Glenn from all claims arising out of or relating to the LaFond Litigation.  Mark breached this agreement by filing the present lawsuit against Glenn in which Mark alleges, *inter alia*, that Glenn breached the agreement at issue in the LaFond Litigation, that the conditions

4

necessary for the formation of Tricor were met, and that Mark was entitled to an equity interest in Tricor.

     4.    As the proximate result of Mark's breaches of the Contribution Agreement, Glenn has been damaged.

     5.    Mark has been unjustly enriched by Glenn's payment of a substantial portion of Mark's share of the payments in settlement of the LaFond Litigation.

     WHEREFORE, Glenn prays that the Court enter judgment in his favor:

     a)    in an amount sufficient to reimburse Glenn of all sums that he paid on behalf of Mark to settle the LaFond Litigation;

     b)    for interest, costs, and attorneys' fees; and

     c)    for such other and further relief as the Court deems proper.

Matthew F. Medeiros, Esq.  (#544915)
Little, Bulman, Medeiros & Whitney, P.C.
72 Pine Street
Providence, RI  02903
Tel:  (401) 272-8080
Fax: (401) 521-3555

**Attorneys for Defendant Glenn Thompson**

**JURY DEMAND**

Counterclaim-Plaintiff Glenn Thompson demands a trial by jury on all aspects of his counterclaim that are triable of right by a jury.

_____
Matthew F. Medeiros, Esq.  (#544915)
Little, Bulman, Medeiros & Whitney, P.C.
72 Pine Street
Providence, RI  02903
Tel:  (401) 272-8080
Fax: (401) 521-3555

**Attorneys for Defendant Glenn Thompson**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of December, 2002, I caused to be served by first class U.S. mail a copy of the within Answer and Counterclaim of Defendant Glenn Thompson to Nicholas J. Nesgos, Esq., Posternak, Blankstein & Lund, L.L.P., 100 Charles River Plaza, Boston, MA  02114.

_____

scott/A064/05AD

6

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.                          SUPERIOR COURT
                                      Civil Action No. 02-0428

---

MARK THOMPSON,
        Plaintiff,

v.

GLENN THOMPSON, THOMPSON
PAPER BOX COMPANY, INC., AND
THOMPSON PRODUCTS, INC.,
        Defendants.

---

## REPLY TO COUNTERCLAIM

Plaintiff and counterclaim-defendant Mark Thompson ("Mark") responds to the

counterclaim of defendant and counterclaim-plaintiff Glenn Thompson's ("Glenn") as

follows:

1.      Mark admits that he executed a "Contribution Agreement," the terms of

which speak for themselves.

2.      The first sentence of paragraph 2 purports to describe the terms of the

Contribution Agreement, which document speaks for itself.  Mark denies the remaining

allegations in paragraph 2 of the Counterclaim.

3.      Denied.

4.      Denied.

5.      Denied.

## First Affirmative Defense

Glenn's claims are barred by the doctrine of laches.

### Second Affirmative Defense

Glenn's claims are barred by the doctrine of estoppel.

### Third Affirmative Defense

Glenn has released or waived his claims against Mark.

### Fourth Affirmative Defense

Glenn's claims are barred by his own fraud, illegality or unclean hands.

### Fifth Affirmative Defense

Glenn's claims are barred in whole or in part by the statute of frauds.

### Sixth Affirmative Defense

Some or all of Glenn's claims are barred under the doctrines of payment, accord and satisfaction.

### Seventh Affirmative Defense

Glenn's claims fail for failure of consideration.

WHEREFORE, Mark prays that the Court enter judgment in his favor and/or dismiss the counterclaim.

MARK THOMPSON
By his attorneys,

Nicholas J. Nesgos, Esq., BBO No. 553177
Posternak, Blankstein & Lund
100 Charles River Plaza
Boston, MA 02114
Dated: January 9, 2003        (617) 973-6100

ID # 327870v01/13167-2/ 01.09.2003
1/9/2003

### Certificate of Service

I, Nicholas J. Nesgos, attorney for plaintiff, hereby certify that on this 9th day of January 2003, I served a copy of the within on the defendants by mailing same, postage prepaid, to:

Matthew F. Medeiros, Esquire
Little, Bulman, Medeiros & Whitney, P.C.
72 Pine Street
Providence, RI 02903

Nicholas J. Nesgos

ID # 327870v01/13167-2/ 01.09.2003
1/9/2003

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT
CIVIL ACTION
No. 02-0428

MARK THOMPSON,

Plaintiff,

vs.

GLENN THOMPSON, THOMPSON PAPER BOX COMPANY, INC., AND THOMPSON
PRODUCTS, INC.,

Defendants.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Mark Thompson ("plaintiff") brought suit against the defendants Glenn
Thompson, Thompson Paper Box Company, Inc., and Thompson Products, Inc. ("defendants"),
alleging that defendants had wrongfully terminated his employment, denied him bonus payments,
breached an oral contract to pay plaintiff's share of a contribution settlement, and breached an
agreement regarding the formation of a business. This matter is before the court on defendants'
motion for summary judgment under Mass. R. Civ. P. 56. For the reasons discussed below,
defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.

## DISCUSSION

A party moving for summary judgment has the burden of demonstrating that there is no
genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Cmty.
Nat'l Bank v. Dawes, 369 Mass. 550, 554 (1976). "The movant is held to a stringent standard . .

. any doubt as to the existence of a genuine issue of material fact will be resolved against [him].

Because the burden is on the movant, any evidence presented . . . always is construed in favor of

the party opposing the motion and he is given the benefit of all favorable inferences that can be

drawn from it." 10A Wright & Miller, Federal Practice and Procedure § 2727, at 124-25 (2d ed.

1983). "A court should not grant a party's motion for summary judgment 'merely because the

facts he offers appear more plausible than those tendered in opposition, or because it appears that

the adversary is unlikely to prevail at trial.'" Hayden v. First Nat'l Bank, 595 F.2d 994, 997 (5th

Cir. 1979), citing 10 C.A. Wright & A.R. Miller, Federal Practice and Procedure, § 2725, at 514

(1973). The court will now apply this standard to each of plaintiff's claims in turn.[1]

Plaintiff has established a factual issue as to whether his termination was the result of

defendant Glenn Thompson's actual malice. In a copy of an email attached as an exhibit to the

affidavit of Nicholas Nesgos, Thompson board member Victor Kiarsis, informing plaintiff of his

termination, makes reference to "the friction between you and Thompson's President" and

explains that "we are still mystified as to why you and Thompson's President have such a riff

[sic] created between yourselves." Based on this evidence, a rational and fair-minded jury could

find that actual malice motivated plaintiff's termination, and summary judgment on this claim is

therefore **DENIED**.

Plaintiff has established a genuine issue of material fact regarding his claim that

defendant Glenn Thompson breached his obligation to pay plaintiff's share of settlement

---

[1]The court notes, as did the defendants in the memorandum in support of their motion for
summary judgment, that plaintiff's complaint did not divide his claims into separate counts and
was vague as to the legal theory or theories upon which he relied. For the purposes of this
decision, the court has separated the claims.

contributions resulting from a recent lawsuit. Plaintiff claims in his affidavit that Glenn, in a telephone call to plaintiff, orally promised to "take care of" the amount plaintiff owed under that settlement. As such, summary judgment is **DENIED** as to plaintiff's breach of contract claim.

Using the appropriate standard, plaintiff has not established a genuine issue as to any material fact regarding whether defendants wrongfully denied him bonus payments. According to the present state of the record, plaintiff does not rebut but rather supports the defendants' assertion that plaintiff was never entitled to such bonuses. Plaintiff admits in his deposition that no defendant ever told him he would receive a bonus, nor did he see anything in writing to that effect. Finally, plaintiff admits that his expectation that he would receive a bonus was a mere assumption on his part. Given plaintiff's clear lack of evidence on this claim, summary judgment as to wrongful denial of bonus payments is **GRANTED**.

Using the appropriate standard, plaintiff's claims against defendant Thompson Products, Inc., arising out of its alleged breach of the Tricor agreement, are estopped as a matter of law due to plaintiff's warranties and representations in the 1997 Asset Purchase Agreement. Defendants' exhibits accompanying their motion for summary judgment demonstrate that plaintiff warranted that neither he, nor anyone else, had such a claim. (See Memorandum in Support of Defendants' Motion for Summary Judgment, Exhibit A, at §§ 4.2, 4.4, 4.7, 4.13, and 4.16). Also, plaintiff signed a contribution agreement releasing defendants from any and all claims "arising out of or relating to" the LaFond litigation. (See id., Exhibit G, at § 6). Summary judgment relating to plaintiff's claims for alleged breach of the Tricor agreement is therefore **GRANTED**.

## **ORDER**

3

For the foregoing reasons, it is hereby **ORDERED** that defendants' motion for summary judgment is **DENIED** as to plaintiff's claims regarding his allegedly wrongful termination and defendant Glenn Thompson's breach of promise to pay plaintiff's share of the contribution agreement, and **GRANTED** as to plaintiff's claims regarding unpaid bonuses and breach of the Tricor agreement.

Paul E. Troy
Justice of the Superior Court

DATED: January 28, 2004

Entered: Feb. 3, 2004

4

| CIVIL ACTION<br>COVER SHEET | DO. | Trial Court of Massachusetts<br>Superior Court Department<br>County:___Plymouth |
|---|---|---|

**PLAINTIFF(S)**
Mark Thompson

**DEFENDANT(S)** Glenn Thompson, Thompson Paper
Box Company, Inc. and Thompson Products
Inc.

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
Nicholas J. Nesgos, Esq.:617-973-6100
Posternak,Blankstein & Lund, LLP
100 Charles River Pl.,Boston, MA 02114
Board of Bar Overseers number: 553177

**ATTORNEY** (if known)

## Origin code and track designation

Place an x in one box only:

- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Contract | ( F ) | (xx) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

## TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
   2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
   3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
   4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
   5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
                                                                              **Subtotal $. . . . . . . . . . .**
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . $. . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . .
F. Other documented items of damages (describe)

                                                                              $. . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                              $. . . . . . . . . . .
                                                                   **TOTAL $. . . . . . . . . . .**

## CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Claim for breach of agreement to form spin-off company and for wrongful
termination. Damages from lost opportunity exceed $6 million. Other damages
related to wrongful termination and breaches of fiduciary duties exceed
$1 million.                                                  **TOTAL $over.$7mill**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR
COURT DEPARTMENT      N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on
Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute
resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____     DATE: 4/9/02

AOTC-6 mic005-11/99
A.O.S.C. 1-2000



WILLIAMS MULLEN

Direct Dial: 804.783.6418
stucker@williamsmullen.com

September 27, 2005

<u>BY FEDERAL EXPRESS</u>

Matthew F. Medeiros, Esq.
LITTLE MEDEIROS KINDER BULMAN
   & WHITNEY, P.C.
72 Pine Street
Providence, RI 02903

Michael L. Chintz, Esq.
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA 02116

     Re:   <u>Thompson Products, Inc. v. Thompson, et al.</u>

Gentlemen:

    As you know, we represent Thompson Products, Inc. and affiliated companies. Company management advises that your client, Mr. Glen Thompson, was recently on the premises of the company's Hong Kong offices and its China factory after the President of the company clearly instructed him to stay away from company facilities. **Please be advised that any entry onto company premises hereafter will be regarded as a trespass and the company will exercise all legal rights and remedies available to it for any future trespass.** Please pass this admonition along to Mr. Thompson.

             Sincerely,

             Sandy T. Tucker

STT/gcw
cc:   Yemi Sonuga (by email to ysonuga@dilmun.com)
      Brian Gleason (by email to bgleason@phoenixmanagement.com)
      Tal Briddell (by email to tbriddell@phoenixmanagement.com)
1197835v2

*A Professional Corporation*

VIRGINIA • WASHINGTON, D.C. • LONDON
Two James Center  1021 East Cary Street (23219)  P.O. Box 1320  Richmond, VA 23218-1320  Tel: 804.643.1991  Fax: 804.783.6507
www.williamsmullen.com



## WILLIAMS MULLEN

Direct Dial: 804.783.6418
stucker@williamsmullen.com

September 27, 2005

BY EMAIL AND FIRST CLASS MAIL

**mfm@lmkbw.com**
Matthew F. Medeiros, Esq.
LITTLE MEDEIROS KINDER BULMAN
 & WHITNEY, P.C.
72 Pine Street
Providence, RI  02903

**mlc@rose-law.net**
Michael L. Chintz, Esq.
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA  02116

       Re:    Thompson Products, Inc. v. Thompson, et al.

Gentlemen:

       We would like to depose Mr. Glenn Thompson as soon as possible.  We realize that leave of court is required if the deposition is to take place sooner than permitted under Rule 26(d), so this request is sent to you in compliance with Local Rule 7.1(a)(2) in a good faith effort to agree upon a date and time.  We believe that an early deposition will be beneficial to all parties.  Therefore, we propose that the deposition be held on any of the following dates in our local counsel's offices in Boston:  October 10, 11, 12, 13, 14, 24, 25, 26, 27 or 28.

       Please let me know if acceptable and which dates are available.

                              Sincerely,

                              Sandy T. Tucker

STT/gcw
cc:    Andrew D. Kang, Esq. (by email to kanga@gtlaw.com)

*A Professional Corporation*

VIRGINIA • WASHINGTON, D.C. • LONDON
Two James Center  1021 East Cary Street (23219)  P.O. Box 1320  Richmond, VA 23218-1320  Tel: 804.643.1991  Fax: 804.783.6507
www.williamsmullen.com

# LITTLE MEDEIROS KINDER
# BULMAN & WHITNEY PC



*Attorneys*

Christopher H. Little *
Matthew F. Medeiros *
Daniel K. Kinder *
John E. Bulman *
Christopher C. Whitney *
Henry R. Kates *
George H. Rinaldi *
Scott K. Pomeroy
Andrew S. Ullucci *
Matthew M. Riordan *+

John D. Deacon, Jr. *
*Of Counsel*

William R. Powers III
(1931-1998)

Thomas C. Keeney
(1946-1999)

* Also admitted in
  Massachusetts

+ Also admitted in New York
  and Connecticut

September 28, 2005

Sandy T. Tucker, Esq.
Williams Mullen
Two James Center
1021 East Cary Street
Richmond, VA 23219

**Re:** **Thompson Products, Inc. v. Glenn Thompson, et al.**

Dear Mr. Tucker:

I write in response to your letter of September 27, 2005, regarding your request to depose defendant Glenn Thompson "as soon as possible."

I am fully prepared to carry out my obligation to confer in good faith regarding your request, but your letter does not provide an adequate basis for such a conference. In particular, please advise:

(a)    what do you believe are the justifications for such an extraordinary request?

(b)    what are the subject matters you would propose to explore in such an expedited deposition?    **and**

(c)    do you have available for us the automatic disclosures under Local Rule 26.2(A) that are a prerequisite to any such discovery?

Thank you for your cooperation.

Sincerely yours,

*Matthew F. Medeiros* /s

Matthew F. Medeiros

MFM/vgs
cc: Michael L. Chinitz, Esq.

bcc:  Glenn Thompson

F:\MFM\Splash Creations\Tucker ltr 9-28-05.doc



## WILLIAMS MULLEN

Direct Dial: 804.783.6418
stucker@williamsmullen.com

October 5, 2005

<u>BY EMAIL AND FIRST CLASS MAIL</u>

***mfm@lmkbw.com***
Matthew F. Medeiros, Esq.
LITTLE MEDEIROS KINDER BULMAN
   & WHITNEY, P.C.
72 Pine Street
Providence, RI  02903

***mlc@rose-law.net***
Michael L. Chinitz, Esq.
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA  02116

     Re:    <u>Thompson Products, Inc. v. Thompson, et al.</u>

Gentlemen:

     On behalf of Thompson Products, Inc. we ask that your clients (Mr. Thompson and all individuals now or hereafter employed by or associated with Splash Creations, Inc., including Lina Au, Mr. Tsing or Ting, Mark Soloman, Richard Orsi, Gina Barley and Helen Li) preserve for discovery in this action all potentially relevant information contained or stored in an electronic medium or format.  The platforms on which, and places where, such electronic data may be found include databases, networks, computer systems, servers, archives, back up disaster recovery systems, tapes, discs, drives, cartridges and other storage media, laptops, personal computers, internet data and personal digital assistants.  Potentially relevant electronic data includes not only data that is or may be material to any issue raised by our complaint, but also by your responsive pleadings, as well as any data that might lead to the discovery of admissible evidence in the case.

*A Professional Corporation*

Virginia  •  Washington, D.C.  •  London
Two James Center  1021 East Cary Street (23219)  P.O. Box 1320  Richmond, VA 23218-1320  Tel: 804.643.1991  Fax: 804.783.6507
www.williamsmullen.com

WILLIAMS MULLEN

Matthew F. Medeiros, Esq.
Michael L. Chintz, Esq.
October 5, 2005
Page 2


Your anticipated cooperation is appreciated.

Sincerely,

Sandy T. Tucker

STT/gcw

cc:   Terrance P. McCourt, Esq. (by email to mccourtt@gtlaw.com)
      Andrew D. Kang, Esq. (by email to kanga@gtlaw.com)



## WILLIAMS MULLEN

Direct Dial: 804.783.6418
stucker@williamsmullen.com

October 13, 2005

BY FACSIMILE (401.521.3555)
FIRST CLASS MAIL

Matthew F. Medeiros, Esq.
LITTLE MEDEIROS KINDER BULMAN
    & WHITNEY, P.C.
72 Pine Street
Providence, RI  02903

      Re:    <u>Thompson Products, Inc. v. Thompson, et al.</u>

Dear Mr. Medeiros:

      This will respond to your October 5, 2005 letter to Robert Jackson.  Thank you for a copy.

      I am not privy to the statements made by Mr. Jackson to anyone, and I will rely on his good sense to recognize your response as nothing more than aggressive advocacy for Mr. Thompson.  Actually, however, it is more than that.  It exceeds permissible advocacy because, first, it is clearly an attempt to interfere with TPI's business relationship with Mr. Jackson at a time when your client is openly seeking to secure such relationships to establish his unlawfully competitive business.  TPI will not tolerate any such interference.

      Second, while your own argumentative statements to Mr. Jackson are themselves false, one of your statements clearly exceeds the scope of any permissible advocacy for Mr. Jackson.  In your letter, you have told him that "present management of TPI acknowledge [that the action] is meritless."  I have made an inquiry to "present management" and can find no one who has the slightest understanding of the source of your statement.  In fact, all members of "present management" unequivocally deny that they have ever stated, or even inferred, to anyone that the present suit is "meritless".

      Moreover, not only is your statement simply not true, it implies that TPI has filed litigation that it knows to be "meritless" AND it further implies that TPI's counsel, who actually

*A Professional Corporation*

VIRGINIA  •  WASHINGTON, D.C.  •  LONDON

Two James Center  1021 East Cary Street (23219)  P.O. Box 1320  Richmond, VA 23218-1320  Tel: 804.643.1991  Fax: 804.783.6507
www.williamsmullen.com



WILLIAMS MULLEN

Matthew F. Medeiros, Esq.
October 13, 2005
Page 2

signed and filed the Complaint, has violated our ethical responsibilities. If that is the reasonable
inference to be drawn from your statement (and I think it is), it is defamatory, outside the scope
of any privilege afforded to you as counsel for Mr. Thompson and, therefore, actionable.

TPI, Greenberg Traurig and we are considering what action to take in response to your
statement, but before taking any such action, I want to give you the opportunity either to provide
me with the source and factual support for your statement, if you have a good faith belief that
some member of TPI management actually made such a statement, or, in the alternative, to send
a retraction to Mr. Jackson.

I look forward to hearing from you immediately.

Sincerely,

Sandy T. Tucker

STT/gcw

cc:    Terence P. McCourt, Esq. (by email to mccourtt@gtlaw.com)
       Andrew D. Kang, Esq. (by email to kanga@gtlaw.com)
       Tal Briddell (by email to tbriddell@phoenixmanagement.com)
       Brian Gleason (by email to bgleason@phoenixmanagement.com)
       Yemi Sonuga (by email to ysonuga@dilmun.com)

1203470v1