## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMPSON PRODUCTS, INC., | ) | |
| a Delaware corporation, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-11810-RGS |
| | ) | |
| GLENN THOMPSON and | ) | |
| THOMPSON ENTERPRISES, INC., | ) | |
| Defendants. | ) | |
| | ) | |

### AFFIDAVIT OF GLENN THOMPSON IN OPPOSITION
### TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Glenn Thompson, having first been duly sworn on oath, deposes and states as follows:

1.     My name is Glenn Thompson, and I live in Barrington, Rhode Island.  I am the President of defendant Splash Creations, Inc. ("Splash") (f/k/a Thompson Enterprises, Inc.).

2.     I am submitting this Affidavit in opposition to the motion of plaintiff, Thompson Products, Inc. ("TPI"), for a preliminary injunction against me and Splash in this case.

3.     I have personal knowledge that all of the statements contained in this Affidavit are true.

4.     I am 45 years old.

5.     My great-grandfather founded Thompson Paper Box Company in approximately 1906.  That company was the predecessor of TPI.  My father was the President of Thompson Paper Box Company until his sudden death in 1979.

6.     When my father died, I was a student at Stonehill College.  I dropped out of school and took over the operation of the business at the age of 19.

7.      I purchased the business from my mother in 1981, incorporated it that same year as Thompson Paper Box Co., Inc., and became President.

8.      I worked for Thompson Paper Box and its successor, TPI, my entire business career, spanning some 27 years, until I left in the summer of 2005 to start a new business, Splash.

9.      At the time I joined Thompson Paper Box its annual sales were approximately $200,000.  Within 4 years, the sales had grown to $2 million.  By the time TPI purchased the assets of Thompson Paper Box in 1997, annual sales had grown to approximately $30 million.

**My Employment Agreements**

10.     On or about January 5, 1998, I entered into an Employment Agreement with TPI, a copy of which is appended as **Exhibit A**.[1]  Mr. Victor Kiarsis, a Board member, signed that agreement on behalf of TPI.

11.     Paragraph 5 of Exhibit **A**, entitled "Term", provides: "The term of this Agreement shall commence on the Closing and shall expire on December 31, 2000 unless sooner terminated pursuant to Section 8 hereof (the "Employment Term.")".

12.     Paragraph 9 of Exhibit **A** is entitled "Restrictive Covenants."  Subparagraph (a) provides in part that "during the Employment Term of this Agreement and for a period of two (2) years following termination of Employee's employment hereunder," I would not divulge or use confidential information of TPI.  Subparagraphs (b) and (c), dealing with solicitation of TPI employees and non-competition respectively, contain the same expiration date: "two (2) years following termination of Employee's employment hereunder..."

---

[1]      TPI's motion papers attached merely an unexecuted draft dated November 1997.

13.     According to paragraph 5 of **Exhibit A**, the "termination of [my] employment hereunder" (i.e., under **Exhibit A**) occurred on December 31, 2000.  It always was my understanding that the two-year restrictive covenants in paragraph 9 therefore expired on December 31, 2002.  No one ever indicated to me otherwise.

14.     I have read TPI's submissions in support of its Motion for Preliminary Injunction, which are based on my alleged violations of the restrictive covenants contained in paragraph 9 of Exhibit **A**. TPI appears to be arguing that those covenants did not expire on December 31, 2002, but were to remain in effect until 2 years after I left the employ of TPI, rather than 2 years after termination of my employment under **Exhibit A**.

15.     TPI had never taken that position before filing its Complaint in this action.  In fact, TPI had proposed to me in 2002 a new employment agreement that would have modified paragraph 9 by extending the period of the restrictions to two years after I left TPI, whenever that might occur, but I rejected it.  On November 22, 2002, I received from David Jansen, a then-director of TPI, a proposed draft of a new employment agreement, a copy of which is appended as **Exhibit B**.  That agreement bears the initials "PCSF", which I know refers to the law firm Pryor Cashman Sherman & Flynn, the same law firm that had drafted my original Employment Agreement, **Exhibit A,** on behalf of TPI.  Paragraph 9 of **Exhibit B** is entitled "Restrictive Covenants."  Subparagraph 9 (b) sought to impose a non-solicitation restriction "[d]uring the Employment Term and for a period of two (2) years following a termination of the Employee's employment...."  The word "hereunder", which appears in paragraph 9(b) of **Exhibit A**, was deleted from paragraph 9(b) of **Exhibit B**.

16.     **Exhibit A** also uses the same word, "hereunder", to qualify a number of other rights and obligations of both parties.

17.     TPI's Complaint (¶9) alleges that I entered into a "successor Employment Agreement" on or about January 1, 2001, and purports to recite certain provisions of that agreement (Complaint, ¶¶10-15).  That is incorrect.  No such agreement was ever entered into. TPI has not attached a copy to either its Complaint or its motion papers, because it does not exist.

18.     After **Exhibit A** expired on December 31, 2000, I continued to work for TPI as an employee at will.

19.     As of early 2003 the duly-appointed directors of TPI were Victor Kiarsis, James Conlon and myself.  During that time I had ongoing discussions with the other directors about the terms of a new employment agreement for me.  In connection with those discussions, Mr. Kiarsis hired Cameron Read, Esq., as new outside counsel for TPI, because regular corporate counsel also represented me in personal matters such as estate planning.  Mr. Kiarsis also commissioned an independent salary survey, a copy of which is appended as **Exhibit C**.

20.     Eventually a new Employment Agreement was prepared, a copy of which is appended as **Exhibit D**.  A TPI Board of Directors meeting was held on April 21, 2003, to discuss whether to approve that agreement.  I personally attended, as did Messrs. Kiarsis, Conlon and Read.  The Directors discussed the reasons why **Exhibit D** was in the best interest of TPI. During that meeting, Mr. Kiarsis, on behalf of TPI, asked Mr. Read whether, if the agreement were signed, it would be valid and enforceable.  Mr. Read, on behalf of TPI, responded "Yes." TPI's Complaint (¶19) incorrectly alleges that TPI's counsel "advised the three-member Board that the 2003 Agreement should <u>not</u> be executed."  The directors then voted to approve it.  Mr. Kiarsis (who had signed my original employment agreement, **Exhibit A**, on behalf of TPI) then signed it on behalf of TPI and handed it to me for signature.  I stated that I wanted to review it

with my legal counsel, which I did.  I then signed **Exhibit D** either that same day, April 21, 2003, or the following day, and immediately returned one fully-executed original to Mr. Kiarsis.

21.    Thereafter the parties proceeded to perform in accordance with **Exhibit D**.  For one thing, **Exhibit D** increased my salary from $200,000 per year to $280,000.  TPI paid me the increased salary of $280,000 for 2003, with the full knowledge and approval of its then-management.  Also, paragraph 3 of **Exhibit D** gave me for the first time the exclusive right to hire and fire employees -- a right that I exercised after **Exhibit D** was executed, with the full knowledge of TPI's then-management.

22.    **Exhibit D** contained none of the Restrictive Covenants to which I had been subject in **Exhibit A**.

23.    **Exhibit D** remained in effect until I left TPI earlier this year.  I resigned as a Director of TPI effective May 22, 2005 and as President on July 12, 2005 (see **Exhibit J** appended).

**TPI's Allegedly Confidential Customer Information**

24.    TPI's motion papers refer broadly to my having allegedly misappropriated TPI customer information.  That is untrue.

25.    There is no "customer list" at TPI.  At no time either before or after the sale to TPI were any efforts made to protect the identity of TPI's customers.  On the contrary, TPI's website disclosed that information to the world.  Attached as **Exhibit E** is a copy of TPI's website as it existed through mid-2002.[2]  Page 2 of that site contained links to the customer sites where TPI's products were available (**Exhibit E** includes copies of those links), and on page 3 identifies those customers by name: "Wal-Mart, Target, Costco, Shopko, BJ's Wholesale,

---

[2]    The site was reconstructed from Web archives, and some of the images are no longer functional.

Staples, Michael's and Sam's Club." Those customers accounted for an overwhelming percentage of TPI's total annual sales.

26.     Moreover, the identity of TPI's customers was readily determinable in the marketplace. Attached as **Exhibit F** are photos of a typical TPI photo album that was purchased at a Wal-Mart store in Massachusetts shortly after TPI filed this suit. On the back cover is printed the words "Made in China Thompson Products, Inc. Lakeville, MA 02347." Above that is another label, which reads "Made in China Distributed by Thompson Products, Inc. USA." Millions of such items were sold in thousands of Wal-Mart stores around the United States.

27.     The label on the back of **Exhibit F** also contains the UPC bar code "750807." The identical bar code number is used to identify TPI as the supplier of products that are found in its other retail chain store customers' stores, including Kmart, Target, Costco, etc.

28.     It was never the practice, at any time during my 27 years with TPI or its predecessor, to prepare or maintain any confidential "customer list." Various reports that identified TPI's customers were accessible to every other TPI employee without restriction. TPI did not impose any restrictions on such access when it acquired the assets of Thompson Paper Box.

29.     When I left TPI, I did not take any "confidential customer list" with me. I did not need to take any listing with me, because after 27 years I knew from memory who the retail chain sellers, including TPI's customers, were.

30.     TPI's motion papers refer to my alleged use of some unidentified "confidential customer account number" (Mem. at 7). I have no idea what TPI is referring to.

**TPI's Other Alleged Confidential or Proprietary Information**

31.     TPI also asks that the court enjoin me from "divulging or using any TPI confidential information."  TPI does not identify any such information, and there is none.

32.     TPI sells photo albums, a sample of which is shown in the photos in **Exhibit F**. Those albums consist of individual plastic sleeves that are heat-sealed together at the binding.  A card containing a photograph or design is inserted in the front and retail information on another card at the back.

33.     There is no proprietary or confidential information involved in the manufacture of such albums.  TPI has no patents on its photo album products.  The component sleeves are a commodity, and the heat-sealing process is rudimentary.  The only custom component is the front card, which each supplier designs to be attractive to the customer.  Splash prides itself on the talents of its designers, and has never used a TPI design.

34.     The raw materials used in the manufacture of albums such as the one shown in **Exhibit F** are well known in the industry.

35.     The other product that TPI refers to in its motion papers is photo storage boxes that Splash is manufacturing in Rhode Island and selling to the Christmas Tree Shops retail chain.  Attached as **Exhibit G** are photos of a sample box that TPI sold to Wal-Mart.  The label on **Exhibit G** identifies TPI as the supplier: "Manufactured by Thompson Products, Inc. Lakeville, MA 02347."  It also contains the same UPC bar code identifier seen earlier on the photo albums.

36.     Attached as **Exhibit H** are photos of the photo storage box that Splash is selling to Christmas Tree Shops.  The label clearly identifies Splash as the manufacturer and does not mention TPI.

37.     Splash's sales to Christmas Tree Shops are not attributable to the misuse of any confidential information.  Rather, the buyer for Christmas Tree Shops informed me that TPI's price for its photo storage boxes had been $1.50; that TPI was planning to increase its price to $1.65; and that if Splash would agree to a price of $1.25, Christmas Tree Shops would order from Splash.  I agreed to the $1.25 price, and thereafter began receiving orders.  Splash does not have a long-term supply contract with Christmas Tree Shops, so if TPI wants to compete for that business it is free to do so.

38.     There is no proprietary or confidential information involved in the manufacture of photo storage boxes.  TPI has no patents on its photo storage boxes.  They are cardboard boxes (essentially like a shoe box) with a metal pull on the front.  Similar to the photo albums, the only customized aspect is the design on the outside of the box.  Splash prides itself on the talents of its designers, and has never used a TPI design.

39.     The raw materials used in the manufacture of photo storage boxes such as the one shown in **Exhibit G** are well known in the industry.

40.     There is nothing proprietary about the machinery that TPI uses to manufacture either photo albums or photo storage boxes.  All of that machinery has been commonly used for many years in this industry, and is available for purchase on the open market.  In fact, during the year before I left TPI, I purchased for TPI some such equipment at public auction.

41.     There are more than 50 competing suppliers of photo albums and photo storage boxes in the United States market.

42.     To my knowledge, the employees of TPI have never been asked to sign any confidentiality agreement, either before or after TPI acquired the assets of Thompson Paper Box.

43.     There never were any restrictions placed on access by TPI employees to any reports about TPI's products or customers, either before or after TPI acquired the assets of Thompson Paper Box.  Those reports included information about costing, pricing, margins, sales volume, production schedules, delivery dates, customers, suppliers and virtually every other aspect of the business.  To take just one example, any production line employee was free to look at such reports if he felt it would assist him in carrying out his workflow planning responsibilities, and I personally observed that those employees, and others, did so.  TPI never had a business practice of marking such reports "Confidential", nor did TPI ever publish any policies limiting access to any such reports.  They were filed in openly-accessible, unlocked file cabinets.

44.     All or virtually all of the information identified above was known to me before TPI acquired the assets of Thompson Paper Box at the end of 1997.  Yet paragraph 5(a) of my then-Employment Agreement (**Exhibit A**), upon which TPI is basing its request for preliminary injunction, defines "Confidential Information" as limited to information "obtained by Employee during his employment with the Employer", and "Employer" is defined on page 1 as TPI, as distinguished from Thompson Paper Box, which is referred to by the term "Seller."

45.     Thompson's motion papers also suggest, without explanation, that I used confidential information of TPI in establishing manufacturing facilities in China and an office in Hong Kong.  That is incorrect.

46.     After leaving TPI and before establishing those facilities, I traveled to China and Hong Kong and toured approximately 10 existing manufacturing plants (none owned by TPI), to come up with designs and ideas for Splash's manufacturing plant.  The owners of those businesses welcomed me to visit their plants, observe their machinery and equipment, and ask

any questions I wanted to.  Based on those visits I placed equipment orders on the open market and selected appropriate locations for each facility.  I did not use, and did not need, any confidential information of TPI in doing so.

**Hiring of TPI Employees**

47.     I have hired a total of 5 former employees of TPI, out of a total TPI work force of over 100.

48.     None of the employees I hired had an employment contract with TPI, nor was any of them subject to non-compete restrictions.

49.     One of my first hires was Richard Orsi, as Vice President of Operations of TPI, nearly 4 months ago.  Mr. Orsi had decided to seek other employment because TPI had changed his job responsibilities in a way that was unacceptable to him.  After he submitted his resignation letter in order to come to work for Splash, TPI offered him a 5-year employment contract, a very substantial salary increase, stay bonuses and other benefits.  He nevertheless decided to leave TPI, and was told to depart immediately after he announced his decision.

**Declaration of Emerson Talbot Briddell**

50.     I have read the Declaration of Emerson Talbot Briddell that TPI submitted in support of its Motion.  Mr. Briddell has no personal knowledge of the matters contained in his Declaration.

51.     He arrived at TPI for the first time on July 11, 2005 (the day before I left TPI).  In one of our initial conversations I asked Mr. Briddell what background he had in the photo album industry or related industries such as paper or plastics.  Mr. Briddell admitted to me that he had none.

52.     In paragraph 2 of his Declaration, he makes statements about my negotiations to buy TPI.  But Mr. Briddell was not involved in any of those negotiations, and hadn't even arrived at TPI yet by the time they concluded.  In fact I reached an agreement with TPI's parent to buy TPI -- an agreement that TPI's own Directors have admitted -- but TPI's parent ultimately reneged, which is the reason why I left to form my own company.  I believe that this litigation is part of a strategy by TPI's parent to leverage a higher purchase price for the Company.  It is my understanding that TPI's ultimate parent, Bahrain International Bank, has billions of dollars of deposits, which it believes will enable it to exhaust my resources in expensive litigation.

53.     In paragraphs 6 and thereafter of his Declaration, Mr. Briddell makes statement after statement about which he has no personal knowledge.  For example, he has never visited the Hong Kong or China offices of either TPI or Splash, and therefore has no first-hand information about any activities there.  He also has never visited the box-making factory that Splash has set up in Rhode Island, and I doubt that he would even know how to find his way there.  He has absolutely no personal knowledge as to whether TPI ever treated any information as supposedly "confidential."

54.     The statements in paragraphs 9 and thereafter of Mr. Briddell's Declaration are pure hearsay, and are false.  To the best of my knowledge, Mr. Briddell has never even traveled to the location of a single customer or outside sales representative.

55.     I never had a conversation at any time with Mr. Briddell about the extent of my knowledge of the matters referred to in paragraphs 13 and thereafter of his Declaration.  He has no basis to make the statements, purportedly under oath, contained in those paragraphs.

56.     In paragraphs 14 and 15 of his Declaration, Mr. Briddell makes representations to the Court about my purported contractual obligations to TPI.  The document upon which he

relies was entered into nearly 8 years before he ever set foot in TPI, and he therefore lacks personal knowledge to make any statements about any such contractual obligations.  In particular, he has no first-hand knowledge whatsoever about TPI's historic policies or practices with respect to designating anything as "confidential."  His assertion in paragraph 14 that I used "confidential" information of TPI to set up Splash is absolutely false.

**Prejudice To Splash from TPI's Delayed Filing of its Motion**

57.    TPI delayed significantly the filing of its Motion, to the prejudice of Splash.

58.    Splash has hired a total of 8 employees, whom TPI now would put out of work. TPI has known about these hirings from the very first one, nearly 5 months ago, yet took no action.

59.    TPI has had actual knowledge since September 2005 of my trips to Hong Kong and China to set up facilities for Splash, and yet did nothing.  TPI's counsel sent to my counsel a letter dated September 27, 2005 (copy appended as **Exhibit I**), which instructed me to stay out of TPI's "Hong Kong offices and its China factory."

60.    I have already invested over two million dollars in the meantime, in the Splash facilities in China, in headquarters offices in Rhode Island, the box-making facility in Rhode Island, the salaries of Splash employees, other overhead expenses and the significant travel expenses of multiple trips to the Far East and trips to meet with prospective customers.  If TPI had filed for an injunction in a timely manner, it could have been resolved before I made all of those commitments.

61.    If an injunction were entered against Splash and me, effectively putting Splash out of business pending the resolution of this litigation, I estimate that Splash could suffer the loss of $3,000,000.00 or more as a result.

62.    TPI's annual revenues are nearly 30 million dollars.

Glenn Thompson

Subscribed and sworn to before me this 21st day of December, 2005.

Notary Public

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), effective as of January 5, 1998 (the "Effective Date"), by and between Thompson Products, Inc., a corporation organized under the laws of Delaware and whose address is 310 Kenneth W. Welch Drive, Lakeville, MA 02347 ("Employer"), and Glenn Thompson, whose principal residence is 5 Assawompsett Court, Lakeville, MA 02347 ("Employee").

## W I T N E S S E T H:

WHEREAS, pursuant to the terms of an Asset Purchase Agreement dated November 24, 1997 between Employer and Thompson Paper Box Co., Inc. (the "Seller"), Mark A. Thompson, Frederick L. Weingeroff, Gregg Weingeroff and Employee (the "Asset Purchase Agreement"), Employer will acquire certain assets and properties of Seller as of the consummation of the transaction (the "Closing");

WHEREAS, the Employee is the owner of certain interests in the Seller which are being conveyed to Employer as of the date hereof;

WHEREAS, as a material inducement to the Employer to enter into the Asset Purchase Agreement and all related transactions and in consideration of the Employer's covenants and agreements therein and the significant payments being made pursuant to the Asset Purchase Agreement to the Employee and other owners of the Seller and in reflection of the fact that the Employer is making a substantial investment in the Company concurrently herewith in reliance on this Agreement, the Employee has agreed to execute and deliver this Agreement;

WHEREAS, the execution and delivery by the Employee of this Agreement is a material condition of the willingness of the Employer to consummate the transaction which is described herewith;

WHEREAS, Employee was an executive officer of Seller and as part of the transactions contemplated by the Asset Purchase Agreement and concurrently with the Closing contemplated thereby, Employer and Employee shall enter into this Employment Agreement upon the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein set forth and other good and valuable consideration, the receipt and adequacy of which is mutually acknowledged, it is agreed by and between the parties as follows:

1.    Definitions

For purposes of this Agreement, unless the context requires otherwise, the following words and phrases shall have the meanings indicated below:

[58205-v3]

"Business" means the manufacture and/or sales of photo albums, cardboard-based gift boxes, easelbacks for picture frames and related products.

"Cause" shall mean: (1) a felony conviction of the Employee (or a plea of no lo contendere in lieu thereof); (2) the unauthorized disclosure of confidential proprietary information of the Employer which disclosure the Employee knows or reasonably should have known would be reasonably likely to result in material damage to the Employer; (3) the breach by the Employee of any material provision of this Agreement, which breach, if curable, is not remedied within thirty (30) days after the Employee's receipt of written notice thereof provided, however, that the Employer need not permit the Employee to cure any breach which has been the subject of a prior written notice; (4) the engagement in self dealing in breach of fiduciary duties with respect to the Employer's assets or properties unless disclosed in writing to and approved by the Board; (5) an act of gross misconduct in connection with the Employee's duties hereunder; or (6) habitual or material neglect of the Employee's duties to the Employer (as determined in good faith by the Board, continuing after prior written notice to the Employee).

"Confidential Information" shall mean all nonpublic information concerning the Employer's business relating, without limitation, to its products, customer lists, pricing, trade secrets, intellectual property, business methods, financial and cost data, business plans, budgets, strategies, competitive analysis, the substance of agreements with customers, marketing and concession arrangements, or other confidential agreements , which was obtained from the Employer or its predecessors or which was learned, discovered, developed, conceived, originated or prepared during or as a result of the performance of any services by Employee on behalf of the Employer or its predecessors. For purposes of this definition, the Employer shall be deemed to include any entity which is controlled, directly or indirectly, by the Employer and any entity of which a majority of the economic interest is owned, directly or indirectly, by the Employer.

"Disability" shall mean the good faith determination by the Board that Employee has become physically or mentally incapable of performing his customary duties under this Agreement and such disability has disabled Employee for a cumulative period of one hundred twenty (120) days within any twelve (12) month period.

2.     **Representations and Warranties**

Employee represents and warrants that he is not subject to any restrictive covenants or other agreements or legal restrictions in favor of any person which would in any way preclude, inhibit, impair or limit his employment by the Employer or the performance of his duties, as contemplated herein.

3.     **Employment**

- 2 -

The Employer hereby employs Employee and Employee accepts such employment as President of the Employer. As its President, Employee shall render such services to the Employer consistent with those services theretofore provided by Employee to Seller and as required by the by-laws of the Employer or as reasonably directed by the Board of Directors of the Employer. Employee accepts such employment and, consistent with fiduciary standards which exist between an employer and an employee shall perform and discharge the duties that may be assigned to him from time to time by the Employer in an efficient, trustworthy and businesslike manner.

4.    Place of Employment

During the Term, the Employee's office and base from which he performs his duties hereunder shall be located at the Employer's office in Lakeville, Massachusetts; provided, however, at any time during the Employee's Employment Term (as hereinafter defined), the Board of Directors of the Employer reserves the right to determine and/or change the location of such office to an alternate location within a sixty (60) mile radius of Employer's office in Lakeville, Massachusetts or to such other location mutually acceptable to both the Employer and Employee. In conformance with the foregoing and not in limitation thereof, Employee agrees to take such trips as shall be consistent with or reasonably necessary in connection with his duties.

5.    Term

The term of this Agreement shall commence on the Closing and shall expire on December 31, 2000 unless sooner terminated pursuant to Section 8 hereof (the "Employment Term").

6.    Compensation and Benefits

(a)    As compensation for all services rendered and to be rendered by Employee hereunder and the fulfillment by Employee of all of his obligations herein, the Employer shall pay Employee an annual base salary (the "Base Salary") at the rate of $200,000 payable in accordance with the Employer's customary payroll practices;

(b)    Employee shall be entitled to participate in all of the employee benefit plans and programs (including without limitation pension and bonus plans which may be adopted or maintained by the Employer) made generally available to executives of the Employer;

(c)    Employee shall be entitled to participate in any health insurance, disability insurance, group life insurance or other welfare benefit program made generally available to executives of the Employer; and

(d)    The Employer agrees that the Employee is authorized to incur reasonable expenses in the performance of his duties hereunder and agrees that all reasonable

- 3 -

expenses incurred by Employee in the discharge and fulfillment of his duties for the Employer, as set forth in Section 3, will be promptly reimbursed or paid by the Employer upon written substantiation signed by Employee, itemizing said expenses in reasonable detail.

(e)     The Employer shall deduct from the compensation described above, any Federal, state or city withholding taxes, social security contributions and any other amounts which may be required to be deducted or withheld by the Employer pursuant to any Federal, state or city laws, rules or regulations.

7.     Vacation

Employee shall be entitled to an aggregate of four (4) weeks paid vacation during each year of the Term at time or times reasonably agreeable to both the Employee and the Employer, it being understood that any portion of such vacation not taken in such year shall not be available to be taken during any other year.

8.     Termination

(a)     Subject to the provisions of this Agreement, this Agreement may be terminated as follows: (i) by mutual consent of the parties; (ii) by the Employee on the one hundred twentieth (120th) day after receipt of written notice to the Employer of Employee's intent to terminate; (iii) by the Employer for Cause; (iv) by the Employer without Cause or (v) as a result of the death or Disability of the Employee.

(b)     If (i) the Employee terminates his employment pursuant to Section 8(a)(ii) hereof, (ii) the Employer terminates the employment of the Employee hereunder for Cause or (iii) employment is terminated due to death or Disability, the Employer's only obligations hereunder shall be to pay to the Employee his accrued but unpaid Base Salary and vacation pay as of the date of termination.

(c)     If the Employer terminates employment of the Employee hereunder without Cause, the Employer shall: (i) continue to pay to the Employee his Base Salary through December 31, 2000 payable in accordance with the Employer's normal payroll practices; (ii) continue Employee's health coverage through December 31, 2000 on the same basis as health coverage is provided by the Employer for active employees and as may be amended from time to time; and (iii) pay to Employee any earned but unpaid bonuses.

9.     Restrictive Covenants

(a)     Employee understands and acknowledges that during his employment with the Seller, he was, and during his employment with the Employer, he will be exposed to Confidential Information, all of which is proprietary and which will rightfully belong to the Employer. The Employee shall hold in a fiduciary capacity for the benefit of the Employer such Confidential Information obtained by Employee during his employment with the Employer and shall not, directly or indirectly, at any time, during the Employment Term of

-4-

this Agreement and for a period of two (2) years following termination of Employee's employment hereunder, the Employee divulge or use any Confidential Information without the prior written consent of a duly empowered officer of the Employer, except (i) as required in the performance of his duties for the Employer, (ii) as otherwise required by law; provided that prior to any such disclosure, notice of such requirement of disclosure is provided to Employer and Employer is afforded the reasonable opportunity to object to such disclosure, and (iii) as and to the extent such information is either not unique to the Employer or generally available to the public and became generally available to the public other than as a result of a disclosure by Employee in violation of this Agreement. Employee shall take all reasonable steps to safeguard such Confidential Information and to protect such Confidential Information against disclosure, misuse, loss or theft.

(b)     During the Employment Term and for a period of two (2) years following termination of Employee's employment hereunder, the Employee will not, directly or indirectly, solicit, employ or associate in any business relationship with any person, who was employed within six (6) months prior to the termination of Employee's employment by the Employer or any business in which Employer has a material interest, direct or indirect, as an officer, partner, shareholder or beneficial owner.

(c)     During the Employment Term and for a period of two (2) years following termination of Employee's employment hereunder, Employee will not within the continental United States, directly or indirectly, assist in, engage in, have any financial interest in, or participate in any way in, as an owner, partner, employee, agent, officer, board member, consultant, independent contractor or shareholder, in any business that involves, in whole or in part, activities similar to, related to or competitive with (a) the Business of the Employer or (b) the business of any affiliate of the Employer as carried on during the term of Executive's employment hereunder. Nothing herein shall prohibit Employee from being a passive owner of not more than five percent (5%) of the outstanding stock of any class of securities of a corporation or other entity engaged in such business which is publicly traded, so long as he has no active participation in the business of such corporation or other entity.

(d)     Employee represents and admits that (i) in the event of termination of this Agreement, Employee's experience and capabilities are such that Employee can obtain employment in a business engaged in other lines and/or of a different nature than the business of the Employer, and that the enforcement of a remedy by way of injunction will not prevent the Employee from earning a livelihood, and (ii) this Employee covenant and non-competition provision is being entered into in connection with the Employee's sale of his ownership interest in the Employer and in the absence of this provision Employee understands and has been advised by Employer that the sale would not be consummated.

(e)     If, at the time of enforcement of this Section 9, a court shall hold that the duration, scope, area or other restrictions stated herein are unreasonable, the parties agree that reasonable maximum duration, scope, area or other restrictions may be substituted by such court for the stated duration, scope, area or other restrictions and upon substitution by such court, this Agreement shall be automatically modified without further action by the parties

- 5 -

hereto.

(f)     Employee hereby agrees that damages at law, including, but not limited to, monetary damages, will be an insufficient remedy to Employer in the event that the restrictive covenants contained in this Section 9 are violated and that, in addition to any remedies or rights that may be available to Employer, all of which other remedies or rights shall be deemed to be cumulative, retained by Employer and not waived by the enforcement of any remedy available hereunder, including, but not limited to, the right to sue for monetary damages, Employer shall also be entitled, upon application to a court of competent jurisdiction, to obtain injunctive relief, including, but not limited to, a temporary restraining order or temporary, preliminary or permanent injunction, to enforce the provisions contained in this Section 9, all of which shall constitute rights and remedies to which Employer may be entitled.

(g)     Notwithstanding termination of this Agreement as provided in Section 8 herein or any other termination of Employee's employment with the Employer, the Employee's obligations under this Section 9 shall survive any termination of the Employee's employment with the Employer at any time and for any reason.

10.     **Return of Documents**

Except for such items which are of a personal nature to Employee (e.g., daily business planner), all writings, records, computer disks, databases, and other documents including, without limitation, those containing any Confidential Information shall be the exclusive property of the Employer, shall not be copied, summarized, extracted from, or removed from the premises of the Employer, except in pursuit of the business of the Employer and at the direction of the Employer, and shall be delivered to the Employer, without retaining any copies, upon the termination of Employee's employment or at any time as requested by the Employer.

11.     **Binding Effect**

This Agreement shall inure to the benefit of and be binding upon the Employer and its successors. This Agreement is fully assignable by Employer to its successors whether direct or indirect, by purchase, merger, consolidation or otherwise, to all or substantially all of its assets provided each such successor expressly assumes and agrees to perform this Agreement in the same manner and to the same extent that the Employer would be required to perform it if no such succession had taken place or with or into which the Employer may consolidate or merge. Employee agrees that this Agreement is personal to him and may not be assigned by him otherwise than by will or laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Employee's legal representatives.

12.     **Miscellaneous**

(a)     If any provision of this Agreement, or portion thereof, shall be held invalid or unenforceable by a court of competent jurisdiction, such invalidity or

- 6 -

unenforceability shall attach only to such provision or portion thereof, and this Agreement shall be carried out as if any such invalid or unenforceable provision or portion thereof were not contained herein.

(b)    This Agreement, and all of the rights and obligations of the parties in connection with the employment relationship established hereby shall be construed and enforced in accordance with the laws of Massachusetts without giving effect to any rules of conflicts of law. Each of the parties hereto hereby (a) irrevocably and unconditionally submits to the non-exclusive jurisdiction of any Massachusetts State or Federal court sitting in Suffolk County, Massachusetts in any action or proceeding arising out of or relating to this Agreement, (b) irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding, and (c) irrevocably and unconditionally consents to the service of any and all process in any such action or proceeding by the mailing of copies of such process by certified mail to such party and its counsel at their respective addresses specified in Section 12(c) below.

(c)    All notices, requests, demands, and other communications provided for hereunder shall be in writing and shall be given or made when (i) delivered personally; (ii) three (3) business days following mailing by first class postage prepaid, registered or certified mail, return receipt requested, to the party to be notified at its or his address set forth herein; or (iii) sent by telecopier, if the addressee has compatible receiving equipment and provided the transmittal is made on a business day during the hours of 9:00 a.m. to 6:00 p.m. of the receiving party and if sent at other times, on the immediately succeeding business day, or (iv) on the first business day immediately succeeding delivery to an express overnight carrier for the next business day delivery. Copies of all notices delivered to Employee shall also be delivered to: Carl I. Freedman, Chace, Ruttenberg & Freedman, 1 Park Row, Suite 300, Providence, R.I. 02903, telecopier no. 401-457-3732; and copies of all notices to the Employer shall be delivered to: Victor Kiarsis, Dilmun Investments, Inc., Metro Center, One Station Place, Stamford, CT, 06902, telecopier no. 203-353-5707 and to Selig D. Sacks, Pryor, Cashman, Sherman & Flynn, 410 Park Avenue, New York, NY 10022, telecopier no. 212-326-0806.

(d)    This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement represents the entire understanding of the parties with reference to the subject matter hereof and neither this Agreement nor any provisions hereof may be modified, discharged or terminated except by an agreement in writing signed by the party against whom the enforcement of any waiver, charge, discharge or termination is sought. Any waiver by either party of a breach of any provision of this Agreement must be in writing and no waiver of a particular breach shall operate as or be construed as waiver of any subsequent breach thereof.

IN WITNESSETH WHEREOF, the parties hereto have executed and have caused this Employment Agreement to be executed as of January 5, 1998.

THOMPSON PRODUCTS, INC.

By: _Victor Kiarsis_

Name: Victor Kiarsis
Title:  President

_Glenn Thompson_
Glenn Thompson

- 8 -

**PCSF Draft 11/22/02**

## EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), effective as of **[DATE]**, 2002 (the "Effective Date"), by and between Thompson Products, Inc., a corporation organized under the laws of Delaware and whose address is 310 Kenneth W. Welch Drive, Lakeville, MA 02347 ("Employer"), and Glenn Thompson, whose principal residence is 330 Rumstick Road, Barrington, Rhode Island 02806 ("Employee").

### W I T N E S S E T H :

WHEREAS, the Employee has served as President of the Employer for many years; and

WHEREAS, the Employer desires to continue to employ the Employee as President of the Employer and the Employee desires to continue to be employed by the Employer as its President;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein set forth and other good and valuable consideration, the receipt and adequacy of which is mutually acknowledged, it is agreed by and between the parties as follows:

1.    **Definitions**

For purposes of this Agreement, unless the context requires otherwise, the following words and phrases shall have the meanings indicated below:

"Board" shall mean the Employer's Board of Directors.

"Business" means the manufacture and/or sales of photo albums, cardboard-based gift boxes, easelbacks for picture frames and related products.

"Cause" shall mean: (1) a felony conviction of the Employee (or a plea of no lo contendere in lieu thereof); (2) the unauthorized disclosure of confidential proprietary information of the Employer which disclosure the Employee knows or reasonably should have known would be reasonably likely to result in material damage to the Employer; (3) the breach by the Employee of any material provision of this Agreement, which breach, if curable, is not remedied within thirty (30) days after the Employee's receipt of written notice thereof provided, however, that the Employer need not permit the Employee to cure any breach which has been the subject of a prior written notice; (4) the engagement in self dealing in breach of fiduciary duties with respect to the Employer's assets or properties unless disclosed in writing to and approved by the Board; (5) an act of gross misconduct in connection with the Employee's duties hereunder; or (6) habitual or material neglect of the Employee's duties to the Employer (as determined in good faith by the Board, continuing after prior written notice to the Employee).

"Change in Control" shall mean a sale of all of the stock of the Employer or all or substantially all of the Employer's assets whether by purchase, merger, consolidation or otherwise to a third party.

"Confidential Information" shall mean all nonpublic information concerning the Employer's business relating, without limitation, to its products, customer lists, pricing, trade secrets, intellectual property, business methods, financial and cost data, business plans, budgets, strategies, competitive analysis, the substance of agreements with customers, marketing and concession arrangements, or other confidential agreements, which was obtained from the Employer or its predecessors or which was learned, discovered, developed, conceived, originated or prepared during or as a result of the performance of any services by the Employee on behalf of the Employer or its predecessors. For purposes of this definition, the Employer shall be deemed to include any entity, which is controlled, directly or indirectly, by the Employer and any entity of which the Employer owns a majority of the economic interest, directly or indirectly.

"Disability" shall mean the good faith determination by the Board that the Employee has become physically or mentally incapable of performing his duties under this Agreement and such disability has disabled the Employee for a cumulative period of one hundred twenty (120) days within any twelve (12) month period.

2.     **Representations and Warranties**

The Employee represents and warrants that he is not subject to any restrictive covenants or other agreements or legal restrictions in favor of any person which would in any way preclude, inhibit, impair or limit his employment by the Employer or the performance of his duties, as contemplated herein.

3.     **Employment**

The Employer hereby employs the Employee as the President of the Employer. As President, the Employee shall render such services to the Employer consistent with those services heretofore provided by the Employee to the Employer and as required by the by-laws of the Employer or as reasonably directed by the Board. The Employee accepts such employment as President and, consistent with fiduciary standards which exist between an employer and an employee, shall perform and discharge the duties that may be assigned to him from time to time by the Employer in an efficient, trustworthy and businesslike manner. The Employee shall (subject to oversight by the Board) retain control over the following:

(i)     the day to day operations of the Employer; and

(ii)    hiring and firing of personnel; provided however the following individuals may not be hired or fired without Board approval: (i) employees who have an employment agreement with the Employer; (ii) employees whose

58205.8

- 2 -

aggregate compensation is in excess of $150,000, (iii) employees with any of the following titles: Chief Executive Officer, Chief Financial Officer, or Chief Operating Officer; (iv) consultants or advisors; or (v) auditors or attorneys.

During the Employment Term (as hereinafter defined), the Employee shall devote substantially all of his business time, energy and experience to his employment hereunder and shall not engage in any other business activities, as an employee, director, consultant or in any other capacity, whether or not he receives any compensation therefor, without the written permission of the Board.

### 4.    Place of Employment

During the Term, the Employee's office and base from which he performs his duties hereunder shall be located at the Employer's office in Lakeville, Massachusetts; provided, however, at any time during the Employment Term (as hereinafter defined), the Board reserves the right to determine and/or change the location of such office to an alternate location within a sixty (60) mile radius of the Employer's office in Lakeville, Massachusetts or to such other location mutually acceptable to both the Employer and the Employee. In conformance with the foregoing and not in limitation thereof, the Employee agrees to take such trips as shall be consistent with or reasonably necessary in connection with his duties.

### 5.    Term

The term of this Agreement shall commence on the Effective Date and shall expire on [DATE], 2005 unless sooner terminated pursuant to Section 8 hereof (the "Employment Term"). Upon any termination of the Employee's employment, the Employee shall resign from any position the Employee may hold as an officer or director of the Employer or any affiliate of the Employer.

### 6.    Compensation and Benefits

(a)    The Employer shall pay the Employee a base salary (the "Base Salary") at an annual rate of $300,000 payable in accordance with the Employer's customary payroll practices;

(b)    The Employee may be eligible to receive an annual bonus (the "Annual Bonus") in respect of each calendar year during the Employment Term based upon the attainment by the Employer of certain operating results; provided, however, that the Employee remains in the continuous employ of the Employer through December 31st of the calendar year in respect of which the bonus is being paid. The Annual Bonus shall be payable as soon as practicable following the determination of the applicable operating results. The Employee's Annual Bonus shall be determined in accordance with Exhibit A attached hereto.

58205.8

(c)    The Employee shall be entitled to participate in all of the employee benefit plans and programs (including, without limitation, pension and bonus plans which may be adopted or maintained by the Employer) made generally available to employees of the Employer, as the same may be amended from time to time;

(d)    The Employee shall be entitled to participate in any health insurance, disability insurance, group life insurance or other welfare benefit programs made generally available to employees of the Employer, as the same may be amended from time to time; and

(e)    The Employee is authorized to incur reasonable expenses in the performance of his duties hereunder. The Employer agrees that all reasonable expenses incurred by the Employee in the performance of his duties for the Employer will be promptly reimbursed or paid by the Employer upon written substantiation signed by the Employee, itemizing said expenses in reasonable detail.

(f)    The Employer shall deduct from the compensation described above, any Federal, state or city withholding taxes, social security contributions, deductions and any other amounts which may be required to be deducted or withheld by the Employer pursuant to any Federal, state or city laws, rules or regulations or other agreement.

### 7.    Vacation

The Employee shall be entitled to an aggregate of five (5) weeks paid vacation during each year of the Employment Term to be taken at a time or times reasonably agreeable to both the Employee and the Employer, it being understood that any portion of such vacation not taken in such year shall not be available to be taken during any other year.

### 8.    Termination/Change in Control

(a)    Subject to the provisions of this Agreement, this Agreement may be terminated as follows: (i) by mutual consent of the parties on an agreed upon date; (ii) by the Employee upon one hundred twenty (120) days' notice; (iii) by the Employer for Cause; (iv) by the Employer without Cause, with or without notice or (v) immediately upon the death or Disability of the Employee.

(b)    If (i) the Employee's employment is terminated by mutual consent, (ii) the Employee voluntarily terminates his employment pursuant to Section 8(a)(ii) hereof, or (iii) the Employer terminates the employment of the Employee hereunder for Cause, the Employer's only obligations hereunder shall be to pay to the Employee his accrued but unpaid Base Salary and accrued but unused vacation pay, each as of the date of such termination.

(c)    If the Employee's employment is terminated due to his death or Disability, the Employer's only obligations hereunder shall be to pay to the Employee, (or in the case of Employee's death, Employee's estate) his accrued but unpaid Base Salary and accrued

but unused vacation pay, each as of the date of such termination. In addition, the Employer shall continue providing the Employee and his family (or in the case of Employee's death, the Employee's family) with continuing healthcare coverage during the two year period immediately following the date of such termination on the same basis as health coverage is then provided by the Employer to its active employees, as the same may be amended from time to time.

(d)     If the Employer terminates employment of the Employee without Cause, the Employer shall: (i) continue to pay to the Employee his Base Salary through September 30, 2005 payable in accordance with the Employer's normal payroll practices; (ii) continue the Employee's and his family's health coverage through September 30, 2005 on the same basis as health coverage is then provided by the Employer to its active employees, as the same may be amended from time to time; and (iii) pay to the Employee any earned but unpaid Annual Bonus.

(e)     If the Employee's employment is terminated by the Employer for any reason other than by the Employer for Cause during the twelve (12) month period immediately following a Change in Control (as hereinafter defined), the Employer shall: (i) pay to the Employee is one lump sum his Base Salary that would have been payable during the longer of (x) the two (2) year period following the date of such termination or (y) the period beginning on the date of such termination and ending on September 30, 2005; (ii) continue the Employee's and his family's health coverage (on the same basis as health coverage is then provided by the Employer to its active employees, as the same may be amended from time to time) through the later of (x) the second anniversary of the date of such termination or (y) September 30, 2005; and (iii) pay to the Employee any earned but unpaid Annual Bonus.

9.     **Restrictive Covenants**

(a)     The Employee understands and acknowledges that during his employment with the Employer prior to the Effective Date, he was, and during his continuing employment with the Employer, he will be exposed to Confidential Information, all of which is proprietary and which rightfully belongs or will belong to the Employer. The Employee shall hold in a fiduciary capacity for the benefit of the Employer such Confidential Information obtained by the Employee during his employment with the Employer and shall not, directly or indirectly, at any time, during or after the Employment Term, divulge or use any Confidential Information without the prior written consent of a duly empowered officer of the Employer, except (i) as required in the performance of his duties for the Employer, (ii) as otherwise required by law; provided that prior to any such disclosure, notice of such requirement of disclosure is provided to the Employer and the Employer is afforded the reasonable opportunity to object to such disclosure, and (iii) as and to the extent such information is either not unique to the Employer or becomes generally available to the public and became generally available to the public other than as a result of a disclosure by the Employee or any other individual or entity in violation of this Agreement or any other agreement to which the Employer is a party. The Employee shall take all reasonable steps to safeguard such Confidential Information and to protect such Confidential Information against disclosure, misuse, loss or theft.

(b)    During the Employment Term and for a period of two (2) years following a termination of the Employee's employment, the Employee shall not, in any capacity, whether directly or indirectly, with or without compensation, for his own account or for any other person (i) solicit, retain, employ, offer to employ, or entice away any person who was within six (6) months prior to the termination of the Employee's employment an officer, employee, or agent of the Employer or in any manner persuade or attempt to persuade such person to discontinue his or her relationship with the Employer or (ii) solicit or otherwise interfere with any person who was within six (6) months prior to the termination of the Employee's employment a supplier, customer or other person with a business relationship with the Employer or persuade or attempt to persuade such person to discontinue or alter his or her relationship with the Employer.

(c)    During the Employment Term and for the longer of (x) the one year period following termination of the Employee's employment hereunder or (y) the period during which Employee is receiving or has received continuation of his Base Salary (including, any period for which Base Salary was paid upon termination pursuant to Section 8(e)), the Employee shall not within the continental United States, directly or indirectly, assist in, engage in, have any financial interest in, or participate in any way in, as an owner, partner, employee, agent, officer, board member, consultant, independent contractor or shareholder, in any business that involves, in whole or in part, activities similar to, related to or competitive with (a) the Business of the Employer or (b) the business of any affiliate of the Employer as carried on during Employment Term. Nothing herein shall prohibit the Employee from being a passive owner of not more than five percent (5%) of the outstanding stock of any class of securities of a corporation or other entity engaged in such business which is publicly traded, so long as he has no active participation in the business of such corporation or other entity.

(d)    The Employee represents and admits that in the event of termination of this Agreement, the Employee's experience and capabilities are such that the Employee can obtain employment in a business engaged in other lines and/or of a different nature than the business of the Employer, and that the enforcement of a remedy by way of injunction will not prevent the Employee from earning a livelihood.

(e)    If, at the time of enforcement of this Section 9, a court shall hold that the duration, scope, area or other restrictions stated herein are unreasonable, the parties agree that reasonable maximum duration, scope, area or other restrictions may be substituted by such court for the stated duration, scope, area or other restrictions and upon substitution by such court, this Agreement shall be automatically modified without further action by the parties hereto.

(f)    The Employee hereby agrees that damages at law, including, but not limited to, monetary damages, will be an insufficient remedy to the Employer in the event that the restrictive covenants contained in this Section 9 are violated and that, in addition to any remedies or rights that may be available to the Employer, all of which other remedies or rights shall be deemed to be cumulative, retained by the Employer and not waived by the enforcement of any remedy available hereunder, including, but not limited to, the right to sue for monetary damages, the Employer shall also be entitled, upon application to a court of competent jurisdiction, to obtain injunctive relief, including, but not limited to, a temporary restraining

order or temporary, preliminary or permanent injunction, to enforce the provisions contained in this Section 9 without the necessity of proving damages, or posting a bond or other security.

(g)    Notwithstanding termination of this Agreement as provided in Section 8 herein or any other termination of the Employee's employment with the Employer, the Employee's obligations under this Section 9 shall survive any termination of the Employee's employment with the Employer at any time and for any reason.

(h)    For purposes of this Section 9, the Employer shall be deemed to include any entity, which is controlled, directly or indirectly, by the Employer and any entity of which the Employer owns a majority of the economic interest, directly or indirectly.

10.    **Return of Documents**

Except for such items which are of a personal nature to the Employee (e.g., daily business planner), all writings, records, computer disks, databases, and other documents including, without limitation, those containing any Confidential Information shall be the exclusive property of the Employer, shall not be copied, summarized, extracted from, or removed from the premises of the Employer, except in pursuit of the business of the Employer and at the direction of the Employer, and shall be delivered to the Employer, without retaining any copies, upon the termination of the Employee's employment or at any time as requested by the Employer. For purposes of this Section 10, the Employer shall be deemed to include any entity, which is controlled, directly or indirectly, by the Employer and any entity of which the Employer owns a majority of the economic interest, directly or indirectly.

11.    **Indemnification**

**[TO BE INSERTED]**

12.    **Binding Effect**

This Agreement shall inure to the benefit of and be binding upon the Employer and its successors. This Agreement is fully assignable by the Employer to its successors whether direct or indirect, by purchase, merger, consolidation or otherwise, to all or substantially all of its assets provided each such successor expressly assumes and agrees to perform this Agreement in the same manner and to the same extent that the Employer would be required to perform it if no such succession had taken place. The Employee agrees that this Agreement is personal to him and may not be assigned by him otherwise than by will or laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Employee's legal representatives.

13.    **Miscellaneous**

(a)    If any provision of this Agreement, or portion thereof, shall be held invalid or unenforceable by a court of competent jurisdiction, such invalidity or unenforceability

58205.8

- 7 -

shall attach only to such provision or portion thereof, and this Agreement shall be carried out as if any such invalid or unenforceable provision or portion thereof were not contained herein.

(b)     This Agreement, and all of the rights and obligations of the parties in connection with the employment relationship established hereby shall be construed and enforced in accordance with the laws of Massachusetts without giving effect to any rules of conflicts of law. Each of the parties hereto hereby (a) irrevocably and unconditionally submits to the non-exclusive jurisdiction of any Massachusetts State or Federal court sitting in Suffolk County, Massachusetts in any action or proceeding arising out of or relating to this Agreement, (b) irrevocably waives, to the fullest extent it may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding, and (c) irrevocably and unconditionally consents to the service of any and all process in any such action or proceeding by the mailing of copies of such process by certified mail to such party and its counsel at their respective addresses specified in Section 12(c) below.

(c)     All notices, requests, demands, and other communications provided for hereunder shall be in writing and shall be given or made when (i) delivered personally; (ii) three (3) business days following mailing by first class postage prepaid, registered or certified mail, return receipt requested, to the party to be notified at its or his address set forth herein; or (iii) sent by telecopier, if the addressee has compatible receiving equipment and provided the transmittal is made on a business day during the hours of 9:00 a.m. to 6:00 p.m. of the receiving party and if sent at other times, on the immediately succeeding business day, or (iv) on the first business day immediately succeeding delivery to an express overnight carrier for the next business day delivery. Copies of all notices to the Employee shall be delivered to the Employee's address set forth above or if different, the Employee's address as set forth in Employer's records; and copies of all notices to the Employer shall be delivered to: Dilmun Investments, Inc., Metro Center, One Station Place, Stamford, CT, 06902, telecopier no. 203-353-5707, Attention David Jansen with a copy to Selig D. Sacks, Pryor, Cashman, Sherman & Flynn LLP, 410 Park Avenue, New York, NY 10022, telecopier no. 212-326-0806.

(d)     This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement represents the entire understanding of the parties with reference to the subject matter hereof and supercedes all prior agreements related to the subject matter hereof, including, without limitation, the Employment Agreement between the Employee and the Employer dated January 5, 1998 which is null and void. Neither this Agreement nor any provisions hereof may be modified, discharged or terminated except by an agreement in writing signed by the party against whom the enforcement of any waiver, charge, discharge or termination is sought. Any waiver by either party of a breach of any provision of this Agreement must be in writing and no waiver of a particular breach shall operate as or be construed as waiver of any subsequent breach thereof.

58205.8

IN WITNESSETH WHEREOF, the parties hereto have executed and have caused this Employment Agreement to be executed effective as of October 1, 2002.

THOMPSON PRODUCTS, INC.

By:_____
  Name:
  Title:

_____
Glenn Thompson

58205.8

## EXHIBIT A

## <u>ANNUAL BONUS</u>

### [INSERT EBITDA BASED BONUS FORMULA]

# GK PARTNERS
## MANAGEMENT CONSULTANTS

GREGORY KESHISHIAN
MANAGING PARTNER
212-535-5617

**CONFIDENTIAL**
March 12, 2003

Mr. Glenn Thompson
President
Thompson Products Inc.
310 Kenneth W. Welch Drive
Lakeville, MA 02347

Dear Mr. Thompson:

You recently retained GK Partners to conduct an analytical review of competitive levels of non-employee Directors' compensation for Thompson Products Inc. ("the Company"). We conducted this review with the cooperation of the Company (which was our sole source of information related to the Company). We understand that you have commissioned this review in an effort to secure certain information that will be helpful in establishing compensation levels for your non-employee Directors. In our view, this effort is consistent with marketplace "best practices" in the administration of executive and Board-level compensation.

Enclosed you will find our report entitled *"Thompson Products Inc. CEO and Directors' Compensation Review – Proxy Compensation Analysis"*. This report summarizes our detailed analysis of compensation amounts and pay practices among a relevant comparator group of publicly-held companies (based on their respective proxy statements and annual reports). Since our work entailed a detailed analysis of proxy statement compensation disclosures, we also took it upon ourselves to provide you with an analysis of Chief Executive Officer compensation among the comparator group companies. This additional marketplace data is included in our report at no additional cost.

## Methodology

Our task was to analyze the 2001 cash and stock compensation levels of the Chief Executive Officers and non-employee Directors of twelve selected comparator companies based on their 2002 proxy statement disclosures. Please note that 2001 is the most recent year for which comprehensive proxy compensation information is currently available. (In those cases where more recent information was available, it was included with appropriate footnotes). Our analysis provides you with relevant marketplace information that can serve as a basis for comparison with the current and proposed compensation levels of Thompson Products' chief executive and external Board members.

The twelve companies included in our analysis were selected by us (after reviewing many potential comparators) from various reliable published sources of corporate financial information and from other online sources of public company information including the

**401 EAST 74TH STREET • 18TH FLOOR • NEW YORK, NY 10021 • FAX (212) 452-1168**

# GK PARTNERS

Mr. Glenn Thompson                    -2-                    March 12, 2003

Securities and Exchange Commission database. The names of these selected comparator companies are provided on Page 3 of the enclosed *"Proxy Compensation Analysis"* report along with their geographical location and lines of business. We selected only publicly-traded companies for the comparator group to ensure the availability and comparability of relevant compensation data. We have also provided a chart of the comparator companies' 2001 revenues, 2001 net income, current market capitalization and number of employees on page 4 of the enclosed *"2002 Proxy Compensation Analysis"*.

We should acknowledge that the comparator group companies are not (in most cases) direct business competitors of Thompson Products. This was necessitated by the fact that there aren't a sufficient number of publicly-held photo album and photo accessory companies to comprise a useful comparator group. We have therefore utilized other companies of the appropriate size that are engaged in non-durable-goods manufacturing and related services (including companies in the photo printing, consumer products, specialty printing, decorative paper and packaging industries). Several of these companies sell through channels that are the same or similar to those used by Thompson Products.

Let me also point out that the average size of the comparator group companies (in terms of revenues and number of employees) is somewhat larger than that of Thompson Products (see page 4 of the report). However, we believe that the comparator group companies are (on average) very similar to Thompson Products in terms of profitability and market value (i.e., market capitalization). In our view, the financial sophistication, technical competency and business experience required to serve on the Board of a $37 million revenue company is not significantly different from that required to serve in a similar capacity with a somewhat larger company. Overall, we are quite comfortable with the composition of the comparator group.

Page 5 of the enclosed *"Proxy Compensation Analysis"* presents our findings with respect to the position of Chief Executive Officer including 2001 cash compensation (salary and annual bonus) and 2001 stock option awards. We reported the average value for each element of CEO compensation. For your additional perspective in concerning cash compensation, we separately calculated the marketplace average excluding the highest and lowest cash values found among the comparator group companies.

With respect to stock compensation, we reported the so-called "face value" of stock option awards which is calculated by multiplying the number of options granted by the weighted average exercise price of each option. This method is useful in understanding the relative size of stock option grants in relation to current cash compensation. It does not, however, give any insight into the potential future compensation value of these option grants which (as recent marketplace experience has shown) is essentially unknown.

Page 6 of the enclosed *"Proxy Compensation Analysis"* presents our findings concerning non-employee Directors' compensation.

# GK PARTNERS

Mr. Glenn Thompson                    -3-                    March 12, 2003

## Overall Pay Practices

Based on our review of their respective proxy disclosures, we found that the selected comparator companies continue to use a combination of base salary and annual cash bonuses to compensate their senior executives, and continue to use a combination of cash retainers, meeting fees and stock options to compensate their non-employee Directors. If earned, management incentive (i.e., "annual bonus") awards are typically paid in cash following the end of each fiscal year and are generally based on the financial and operational performance of the company using such criteria as revenue growth, EBITDA and net income, operational milestones and/or the achievement of longer-term strategic objectives. In some cases, the comparator companies actually establish and quantify specific performance objectives and individual bonus award opportunities, and in other cases, performance levels and annual bonuses are determined by the Board on a discretionary basis at year-end. We believe that it is one of the basic functions of the Board to establish appropriate performance standards and to hold management accountable for performing up to these standards. Directors' compensation, however, is rarely tied to corporate performance in the short term, but is often affected by stock price performance over the longer term.

## Chief Executive Officer Compensation

Based on our analysis (presented on Page 5 of the enclosed *"Proxy Compensation Analysis"* report), we found the average 2001 base salary for the position of Chief Executive Officer among the comparator group companies was $272,800. If the highest and lowest base salaries are excluded from the calculation, the average 2001 base salary was $255,800. 2001 CEO total cash compensation (i.e., salary plus bonus) among these twelve companies was $324,900 on average (and was $310,300 on average if you exclude the highest and lowest compensation values).

In 2001, ten of the twelve comparator companies also provided an award of stock options to their respective Chief Executive Officers in spite of unfavorable market conditions. The average "face value" of these option awards (i.e., the number of options granted multiplied by the option exercise price) represented approximately 36% of total cash compensation in that year. These options were typically awarded as a combination of incentive stock options (ISOs) and non-qualified stock options (NQs). As you may know, ISOs convey certain tax advantages to the executive while the company forgoes its tax deduction. In spite of (or perhaps because of) the depressed state of equity values, there continues to be an emphasis on the use of stock options in many of these companies.

## Non-Employee Directors' Compensation

With respect to non-employee Directors' compensation, we found that all twelve of our comparator companies provided some form of cash and/or stock compensation to each of its outside, non-employee Directors during 2001. Our findings in this regard are presented on Page 6 of the enclosed *"Proxy Compensation Analysis"* report. Since Directors'

# GK PARTNERS

Mr. Glenn Thompson                    -4-                    March 12, 2003

compensation tends to be reviewed and adjusted periodically and infrequently, we are confident that the average pay practices of this group of companies did not change significantly during 2002.

From our years of experience in assisting client companies with Director pay programs, we know that companies typically utilize a mix of cash retainers, meeting fees and/or stock options to compensate their non-employee Directors. The exact proportions of these pay elements is unique to each organization based upon a number of variables including industry segment, organizational history, overall pay philosophy, the company's ability to pay, existing level of Director stock ownership and (to some degree) the Directors' personal preferences. Among the twelve comparator companies in our selected group, we found that ten companies paid annual Board cash retainers ranging from $6,000 to $26,500 per Director. The average cash retainer was $13,800. The other two companies in the group paid no fixed cash retainer.

We found that nine of the twelve companies paid Board meeting fees (eight of which paid these fees in addition to the cash retainer), and that eight companies also paid Committee meeting fees. Board meeting fees ranged from $200 to $1,500 per meeting and Committee meeting fees ranged from $150 to $1,500 per meeting. (*When a Directors' compensation program includes both Board and Committee meeting fees, the Committee meeting fee is typically waived if the Committee meeting takes place on the same day as the Board meeting. In other words, Committee meeting fees would only be paid if the Committee meeting was held - either in person or telephonically - on a day during which no Board meeting was held*). Therefore, Committee meeting fees do not (in general) add much to the total Directors' compensation package. Board meeting fees, however, can contribute significantly to the total. On average, the Boards of our comparator group companies met seven times during 2001 which resulted in average total Board meeting fees of $5,378. When combined with the average cash retainer of $13,800, this resulted in total cash compensation of $19,178 (on average) per non-employee Director.

In our analysis, we also found that eight of the twelve comparator companies have a policy of granting stock options to non-employee Directors. Seven of these companies provide options in addition to cash compensation. One company (Plato Learning Inc.) provided only stock options to its non-employee Directors and in this company, the number of stock options awarded upon initial Board election was somewhat higher than the number of options awarded annually thereafter. Additional details of Board compensation practices are contained in the footnotes on page 6 of the enclosed report.

The average number of stock options awarded to each non-employee Director was 6,984 shares (as shown on page 6). If one assumes that the average option exercise (i.e., "strike") price of these 2001 Board-level options was equal to the $3.64 weighted average strike price of all CEO stock options granted during 2001 by these companies (see page 5 of the report), one could arbitrarily assign a conservative ("Black-Scholes") present value (PV) estimate for these stock options at 25% of the strike price or $0.91 per option. As you may know, Black-Scholes is a generally-accepted method of calculating option PVs.

# GK PARTNERS

Mr. Glenn Thompson                    -5-                    March 12, 2003

We could therefore assume that the "equivalent economic" compensation value of the 6,984 share (average) stock option award was $6,355. Adding this to the average total cash compensation described above would result in total annual Directors' compensation of $25,533. In our view, this figure represents a reasonable estimate of the marketplace average level of total annual compensation for non-employee Directors among this group of comparator companies.

It is important to note that the majority of the comparator companies in our analysis were found to utilize all three elements of the typical Directors' pay package (i.e., cash retainers, cash meeting fees and stock options). If Thompson Products wishes to provide fully competitive compensation to its non-employee Directors, its Board compensation policy should reflect the economic value of each of these pay elements. In other words, Thompson Products' annual Directors' compensation could certainly be set at the (approximately) $25,000 marketplace average value of the combined pay elements presented in our findings as described above. Of course, the actual amount of Directors' pay is a business decision which should also reflect the participation, involvement and contributions of Thompson Products' outside Directors. From a recordkeeping perspective, a fixed annual retainer (without meeting fees) would be the simplest program to administer. This retainer amount could be paid in one or more installments on an annual, semi-annual or quarterly basis.

Since the Company's current non-employee Directors are minority shareholders, and given that the Company is privately held, we believe that cash compensation (rather than any additional equity opportunity) would be the most effective approach to recognize these Directors' value and time commitment. It is our professional opinion that Thompson Products' payment of annual cash compensation in the range of $20,000 to $25,000 to its non-employee Directors would be reasonable and competitive.

Please feel free to call me with any questions or comments that you may have concerning any of this material. I look forward to discussing our analytical report with you and your Board in the near future.

Respectfully submitted,

Greg Kennishian

GK:dlb
Enclosure

## EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement"), effective as of April 22, 2003 (the "Effective Date"), by and between Thompson Products, Inc., a corporation organized under the laws of Delaware and whose address is 310 Kenneth W. Welch Drive, Lakeville, MA 02347 ("Employer"), and Glenn Thompson, whose principal residence is 330 Rumstick Road, Barrington, Rhode Island 02806 ("Employee").

### W I T N E S S E T H :

WHEREAS, Employee has served for many years as President of Employer; and

WHEREAS, Employer desires to continue to employ Employee as its President and Employee desires to continue to be employed by Employer as its President;

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein set forth and other good and valuable consideration, the receipt and adequacy of which is mutually acknowledged, it is agreed by and between the parties as follows:

1.    **Definitions**

For purposes of this Agreement, unless the context requires otherwise, the following words and phrases shall have the meanings indicated below:

"Cause" shall mean: (1) a felony conviction of Employee involving a crime of moral turpitude (or a plea of no lo contendere in lieu thereof); or (2) an act of gross misconduct not undertaken in good faith in connection with Employee's duties hereunder;.

"Confidential Information" shall mean all nonpublic information concerning the Employer's business relating, without limitation, to its products, customer lists, pricing, trade secrets, intellectual property, business methods, financial and cost data, business plans, budgets, strategies, competitive analysis, the substance of agreements with customers, marketing and concession arrangements, or other confidential agreements , which was obtained from the Employer or its predecessors or which was learned, discovered, developed, conceived, originated or prepared during or as a result of the performance of any services by Employee on behalf of the Employer or its predecessors. For purposes of this definition, the Employer shall be deemed to include any entity which is controlled, directly or indirectly, by the Employer and any entity of which a majority of the economic interest is owned, directly or indirectly, by the Employer.

2.    **Representations and Warranties**

Employee represents and warrants that he is not subject to any restrictive covenants or other agreements or legal restrictions in favor of any person which would in any way preclude, inhibit, impair or limit his employment by Employer or the performance of his duties, as contemplated herein.

3.    **Employment**

Employer hereby employs Employee and Employee accepts such employment as President of Employer. As the President of Employer, Employee shall be the chief executive

officer and shall have control over the management of the business and operations of Employer. Without limiting the scope of such authority, Employee shall have the exclusive authority, in the exercise at his sole discretion, (a) to hire and fire any employees, advisors, consultants, and other independent contractors and (b) to disclose or decline to disclose to any third party any information which Employee, in his sole discretion, determines to be proprietary concerning the business and operations of Employer. Employee accepts such employment and agrees to use his reasonable efforts to perform and discharge his duties in an efficient and businesslike manner. Employer waives any claims is has or may have against Employee for poor performance, conflict of interest or breach of fiduciary duty.

### 4.    Place of Employment

During the Term, the Employee's office and base from which he performs his duties hereunder shall be located at the  Employer's office in Lakeville, Massachusetts; provided, however, Employee agrees to take such trips as shall be consistent with or reasonably necessary in connection with his duties.

### 5.    Term

The term of this Agreement shall be three (3) years, shall commence on the Effective Date, and shall expire on December 30, 2005 unless sooner terminated pursuant to Section 8 hereof (the "Employment Term").

### 6.    Compensation and Benefits

(a)    As compensation for all services rendered and to be rendered by Employee hereunder and the fulfillment by Employee of all of his obligations herein, Employer shall pay Employee an annual base salary (the "Base Salary") at the rate of $280,000, payable in accordance with the Employer's customary payroll practices. Such Base Salary shall be effective January 1, 2003;

(b)    Except as specifically provided herein, Employee shall be entitled to a continuation of all of the employee benefits he currently receives and shall be entitled to participate or receive such additional benefits as may be adopted or maintained by Employer and made generally available to executives of Employer;

### 7.    Vacation

Employee shall be entitled to an aggregate of four (4) weeks paid vacation during each year of the Term at time or times reasonably agreeable to both the Employee and Employer, it being understood that any portion of such vacation not taken in such year shall be available to be taken during any other year.

### 8.    Termination

(a)    Subject to the provisions of this Agreement, this Agreement may be terminated as follows: (i) by mutual consent of the parties; (ii) by Employer for Cause; (iii) as a result of the death of Employee, (iv) by Employee after a Change in Control, as

hereinafter defined, in Employer or (v) or by Employee for good reason.

(b)    For purposes of this Section 8, the term "Change in Control" refers to the transfer of more than fifty (50%) percent of the issued and outstanding stock of Employer or Thompson Products Holdings, Inc., a Massachusetts corporation ("TPH"), or a merger or other reorganization pursuant to which the current holders of the issued and outstanding stock of Employer or TPH retain less than fifty (50%) percent of the issued and outstanding stock of the surviving entity, or the sale of substantially all of the assets of the Employer or TPH.

(c)    If Employer terminates the employment of Employee for Cause or Employee terminates pursuant to 8(a)(v), Employer's sole obligations hereunder shall be to pay to Employee his accrued but unpaid Base Salary and vacation pay as of the date of termination.

(d)    If the employment of Employee is terminated due to the death of Employee, Employer's sole obligations hereunder shall be to pay to the estate of Employee his accrued but unpaid Base Salary and vacation pay as of the date of termination and to continue the health coverage for Employee's family for two (2) additional years on the same basis as health coverage is provided by Employer for active employees and as may be amended from time to time.

(e)    If Employee terminates his employment pursuant to the provisions of Section 8(a)(iv), Employer's sole obligations hereunder shall be to continue the health coverage for Employee and his family for two (2) additional years on the same basis as health coverage is provided by Employer for active employees and as may be amended from time to time and to pay to Employee, in a lump sum, an amount equal to the balance of Employee's Base Salary to which Employee would have been entitled had Employee not terminated this Agreement (the "Severance Amount"). Employer shall pay the Severance Amount required hereunder within sixty (60) days after Employee notifies Employer of the termination of this Agreement.

9.    **Release and Indemnification**

(a)    Employer and Thompson Products Holdings, Inc. ("TPH") release Employee from any claim, demand, cause of action, liability, or theory of recovery which Employer or TPH now have, ever had, or in the future may have against Employee arising out of or relating to any event or occurrence which took place prior to the Effective Date, including, without limitation, any such claim, demand, cause of action, liability, or theory of recovery against Employee relating to or arising out of the civil action brought against Employer and others by Geoffrey Lafond (the "Lafond Litigation") and the civil action brought against Employer and others by Mark Thompson (the "Thompson Litigation").

10.    **Return of Documents**

Except for such items which are of a personal nature to Employee (e.g., daily business planner), all writings, records, computer disks, databases, and other documents including, without limitation, those containing any Confidential Information shall be the

- 3 -

exclusive property of Employer, shall not be copied, summarized, extracted from, or removed from the premises of Employer, except in pursuit of the business of Employer and at the direction of Employer, and shall be delivered to Employer, without retaining any copies, upon the termination of Employee's employment or at any time as requested by Employer.

### 11.  Binding Effect

This Agreement shall inure to the benefit of and be binding upon Employer and its successors.  Employer shall cause any successor, whether direct or indirect, by purchase, merger, consolidation or otherwise, to all or substantially all of its assets, to expressly assume and agree to perform this Agreement in the same manner and to the same extent that Employer would be required to perform it if no such succession had taken place or with or into which Employer may consolidate or merge.  Employee agrees that this Agreement is personal to him and may not be assigned by him otherwise than by will or laws of descent and distribution. This Agreement shall inure to the benefit of and be enforceable by the Employee's legal representatives.

### 12.  Miscellaneous

(a)    If any provision of this Agreement, or portion thereof, shall be held invalid or unenforceable by a court of competent jurisdiction, such invalidity or unenforceability shall attach only to such provision or portion thereof, and this Agreement shall be carried out as if any such invalid or unenforceable provision or portion thereof were not contained herein.

(b)    This Agreement, and all of the rights and obligations of the parties in connection with the employment relationship established hereby shall be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts without giving effect to any rules of conflicts of law.

(c)    All notices, requests, demands, and other communications provided for hereunder shall be in writing and shall be given or made when (i) delivered personally; (ii) three (3) business days following mailing by first class postage prepaid, registered or certified mail, return receipt requested, to the party to be notified at its or his address set forth herein; or (iii) sent by telecopier, if the addressee has compatible receiving equipment and provided the transmittal is made on a business day during the hours of 9:00 a.m. to 6:00 p.m. of the receiving party and if sent at other times, on the immediately succeeding business day, or (iv) on the first business day immediately succeeding delivery to an express overnight carrier for the next business day delivery.

(d)    This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement represents the entire understanding of the parties with reference to the subject matter hereof and neither this Agreement nor any provisions hereof may be modified, discharged or terminated except by an agreement in writing signed by the party against whom the enforcement of any waiver, charge, discharge or termination is sought.  Any waiver by either party of a breach of any provision of this Agreement must be in writing and no waiver of a particular breach shall operate as or be construed as waiver of any subsequent breach thereof.

- 4 -

IN WITNESSETH WHEREOF, the parties hereto have executed and have caused this Employment Agreement to be executed as of the Effective Date.

THOMPSON PRODUCTS, INC.

By: _Victor Kiarsis_ _____
   Name: VICTOR KIARSIS
   Title: Vice President

THOMPSON PRODUCTS HOLDINGS, INC.

By: _Victor Kiarsis_ _____
   Name: VICTOR KIARSIS
   Title: President

_____
Glenn Thompson

- 5 -

Thompson Products Inc

Page 1 of 3

SHOPA

## Quality Products Since 1906.........For the best in Photo Storage Solutions look

Contacts | Feedback | News | Search
Retail Accounts

THOMPSON PRODUCTS, INC. Wins "TARGET Bulls Eye 2000 Award"!    See our News Page.

Thompson Products established in 1906 has been providing the Photographic Imaging Industry with the finest quality American made Photo Storage solutions available. Thompson Products offers a complete line of Archival Quality Photo Albums, Photo/Video Storage Boxes, Scrapbook Kits, Page Refill Packs and Accessories.

Our Mission is to provide you the customer with the highest quality products and services in the industry. Our attention to detail, our commitment to our customers and the belief that our success is a measure of our customer's success, clearly has driven us to be the industry leader.

Thompson's graphic designers combine innovative designs and beauty delivering the most desired and

Thompson Products Inc

sought after albums in the market. Our new Flavia, and "THE BIG BOOK" designs are trendsetters in the industry.

Thompson engineers and manufactures its products from the highest quality materials available. Our quality control guarantees there are no compromises for quality in any of our products. Our Archival Quality Pages are 100% Acid, Lignin and PVC Free ensuring a lifetime of enjoyment. If you like to use Magnetic Pages, but cringe at the fact that they are not archival quality, fear no more. At Thompson we produce the ONLY Magnetic Page in the industry that is 100% Acid, Lignin and PVC Free guaranteed.

Please browse our site to view some of the products mentioned above. We encourage Feedback and Comments from our customers. Feel free to send us an email with any ideas or information regarding our products. Refer to the "Contacts" link for our contact information. Thank you for visiting our website at www.tp-inc.com.

Visitor # 

## PROUDLY MADE IN AMERICA!

Look for our Quality Products at the following retail outlets:











Click on the Retailer's Logos above to shop at their on-line web sites.

*Imported items are clearly marked on product packaging.*







Authorized Sales Agent

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft

Thompson Products Inc

Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

*Copyright © 2001 Thompson Products, Inc.*
*Last modified: July 12, 2001*

12/2/2005

 SHOPA

**Home** | **Contacts** | **News** | **Feedback** | **Retail Accounts**

# Albums

## Here is a sampling of what is available to our Retail-On-Line customers.



**Mini Assorted Fashion**



**Mini Marble**



**Mini Flavia Sienna**



**Iris Memo**



**Flavia Magnetic**



**Metallic Marble Memo**



**Soft Brag Flavia**



**Families Metal Front**



**Flavia Mini Ribbon Tied**



**Hubbed Leatherette Memo**



**High Capacity Floral Patchwork**

Become a  **"Retailers-On-Line"** customer and let Thompson show you a New World of Profitability.

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





Authorized Sales
Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

*Copyright © 2000 Thompson Products, Inc.*
*Last modified: November 10, 2000*

 SHOPA

Home | Contacts | News | Feedback | Retail Accounts

# Photo Storage Boxes

## Here is a sampling of what is available to our Retail-On-Line customers.

  

## Become a  "Retailers-On-Line" customer and let Thompson show you a New World of Profitability.

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

  

Authorized Sales
Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

Copyright © 2001 Thompson Products, Inc.
Last modified: November 10, 2000



Home |Contacts | News | Feedback | Retail Accounts

# Scrapbook Kits

### Here is a sampling of what is available to our Retail-On-Line customers.







**Jumbo Scrapbook**          **Classic Memories Kit**          **String Tied Scrapbook**

# Create your own Unique Memory Book!

### Become a  "Retailers-On-Line" customer and let Thompson show you a New World of Profitability.

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.







Authorized Sales Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

### Copyright © 2000 Thompson Products, Inc.
### Last modified: November 10, 2000



**Home** | **Search**

# Order Refill Pages On-Line!



## All Orders are Shipped within 48 Hours!







**"Build Your Own Album!" with our Album Works Album Pages. All pages are equally sized to fit together in the Album Works Binder.**

**With four different page styles available, you can be sure to protect all your valuable items. All our Big Book Pages are Archival Quality!**

**Look for the "Thompson Logo" on our Standard Photo Album Line. Our Photo Albums and Refills will provide years of protection for your photos.**

[×]  [×]  [×]

## All our Archival Quality Pages are ACID, LIGNIN and PVC FREE....GUARANTEED!

**Privacy Policy   Return Policy**

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

*Copyright* © *2000 Thompson Products, Inc.*
*Last modified: October 28, 2002*



Your Memories For Life

**Home |Contacts**

# *Order Photo Albums On-Line!*



## *All Orders are Shipped within 48 Hours!*



Click here or on the logo above to Order your Album Works Albums!

**"Build Your Own Album!" with our Album Works Binders and Pages. All page styles are equally sized to fit together in the Album Works Binders.**

**All our Archival Quality Pages are ACID, LIGNIN and PVC FREE....GUARANTEED!**

**Privacy Policy   Return Policy**

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

*Copyright © 2000 Thompson Products, Inc.*
*Last modified: October 28, 2002*



**Home** | **Refill Index** | **Contacts**

# Album Works Refill Packs



### Album Works 3.5" x 5" Refill Pack
This Refill Pack contains 10 Archival Quality Photo Safe  sheets (20 pages) Each sheet can hold 10  3.5" x 5" photos.

Page dimensions: 9.5" x 12.75"

**P/N RF0001        $4.99 ea**

Quantity: [＿＿＿]    [x] Add To Cart

[x] Save To Cart    [x]

### Album Works 4" x 6"/ 7"  Refill Pack
This Refill Pack contains 34 Archival Quality Photo Safe  sheets (68 pages). Each sheet can hold six  4" x 6" photos or six 4" x 7" photos.
Page dimensions: 9.5" x 12.75"

**P/N RF0002        $4.99 ea**

Quantity: [＿＿＿]    [x] Add To Cart

[x] Save To Cart    [x]

### Album Works Combo Refill Pack
This Refill Pack contains 10 Archival Quality Photo Safe  sheets (20 pages). Five 5" x 7" sheets and five 8" x 10"



sheets.
Each 5" x 7" sheet can hold four 5" x 7" photos.
Each 8" x 10" sheet can hold two 8" x 10 " photos.
Page dimensions: 9.5" x 12.75"

**P/N RF0731**    **$4.99 ea**

Quantity: [____]    [x] Add To Cart

[x] Save To Cart    [x]



## Album Works Magnetic Refill Pack

This Refill Pack contains 25 Archival Quality Photo Safe Magnetic sheets (50 pages).
Each page can hold two 5" x 7" photos or four 4" x 6" photos or five 3" x 5" photos.
You can also take advantage of arranging any combination with the self-adhesive pages.
Page dimensions: 9.5" x 12.75"

**P/N RF0006**    **$4.99 ea**

Quantity: [____]    [x] Add To Cart

[x] Save To Cart    [x]



## Album Works Panoramic

This Refill Pack contains 5 Archival Quality Photo Safe Panoramic Sheets (10 pages) which can hold 20 photos.
Each sheet can hold four 4" x 12" photos.
Page dimensions: 9.5" x 12.75"

**P/N RF0031**    **$2.49 ea**

Quantity: [____]    [x] Add To Cart

Save To Cart

**Privacy Policy**   **Return Policy**

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**Copyright © 2000 Thompson Products, Inc.**
**Last modified: October 28, 2002**



☒

your needs.
<u>Accepts Album Works Refills</u>
**In Stock**

**P/N RC3641B**      **$7.99 ea**

**Qty To Order:** |1

Add to Shopping Cart

☒

**Green Marble Binder**
This album cover features rich green marbleized design.
Like all our Album Works Binders you can order any Album Works pages to customize your album to your needs.
<u>Accepts Album Works Refills</u>
**In Stock**

**P/N RC3641G**      **$7.99 ea**

**Qty To Order:** |1

Add to Shopping Cart

☒

**Blue Traditional Binder**
This album cover features a rich blue cover accented with fine gold hot stamping.
Like all our Album Works Binders you can order any Album Works pages to customize your album to your needs.
<u>Accepts Album Works Refills</u>
In Stock

**P/N RC3658B**      **$7.99 ea**

**Qty To Order:** |1

Add to Shopping Cart

**Green Traditional Binder**

This album cover features a rich green cover accented with fine gold hot stamping.
Like all our Album Works Binders you can order any Album Works pages to customize your album to your needs.
<u>Accepts Album Works Refills</u>
In Stock

**P/N RC3658G       $7.99 ea**

Qty To Order: |1

**Add to Shopping Cart**

**<u>Burgundy Traditional Binder</u>**
This album cover features a rich burgundy cover accented with fine gold hot stamping.
Like all our Album Works Binders you can order any Album Works pages to customize your album to your needs.
<u>Accepts Album Works Refills</u>
In Stock

**P/N RC3658R       $7.99 ea**

Qty To Order: |1

**Add to Shopping Cart**

---

**<u>Privacy Policy</u>   <u>Return Policy</u>**

**View My Shopping Cart**

This will show you what
you have placed

in your shopping cart so far!

**Secure Checkout**

SECURE CHECKOUT
Most modern browsers

encrypt for secure transactions

**NON-Secure Checkout**

"In-the-Clear" option
for browsers which do

not support encryption

---

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





Authorized Sales
Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

*Copyright* © *2000 Thompson Products, Inc.*
*Last modified: June 28, 2000*

| ☒ | | ☒ 🏠 SHOPA |
|---|---|---|

**Home | Refill Index | Contacts | News**

# "THE BIG BOOK PAGES"

### *Four Available Page Styles...Order On-Line!*



## Also Order the "BIG BOOK" On-Line!

| ☒ | ☒ |
|---|---|
| **Holds Sixteen 4x6 Photos** | **Holds Eight 5x7 Photos** |

| | |
|---|---|
| P/N PG0110    $0.89 / Ea | P/N PG0111    $0.89 / Ea |
| Qty To Order: 1 | Qty To Order: 1 |
| Add to Shopping Cart | Add to Shopping Cart |



**Holds Four 8.5x11 Photos or Documents**

P/N PG0112      $0.89 / Ea

Qty To Order: |1

**Add to Shopping Cart**

**Holds Two 11x17 Documents**

P/N PG0113      $0.89 / Ea

Qty To Order: |1

**Add to Shopping Cart**

**"THE BIG BOOK" pages meet the same stringent requirements we impose on all our Archival Quality Pages. All are ACID, LIGNIN and PVC FREE....GUARANTEED!**

**Privacy Policy  Return Policy**

**View My Shopping Cart**

This will show you what
you have placed

in your shopping cart so far!

**Secure Checkout**

SECURE CHECKOUT
Most modern browsers

encrypt for secure transactions

**NON-Secure Checkout**

"In-the-Clear" option
for browsers which do

not support encryption

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





Authorized Sales
Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**Copyright © 2000 Thompson Products, Inc.**
**Last modified: October 27, 2000**



SHOPA

 

## BIG BOOK Binder With Pages

| | |
|---|---|
| <image placeholder> | **BIG BOOK with Pages**<br>**Includes: 1-Ringbound 15"x18" Scrapbook Album, 10-4x6 style pages, 5-5x7 style pages, 5-8.5x11 style pages and 5-11x17 style pages.**<br>In Stock<br>**Green Binder    P/N GS3893E-G    $19.99 ea**<br><br>Qty To Order: 1        Add to Shopping Cart |
| <image placeholder> | **BIG BOOK with Pages**<br>**Includes: 1-Ringbound 15"x18" Scrapbook Album, 10-4x6 style pages, 5-5x7 style pages, 5-8.5x11 style pages and 5-11x17 style pages.**<br>In Stock<br>**Maroon  Binder  P/N GS3893E-R    $19.99 ea**<br><br>Qty To Order: 1        Add to Shopping Cart |
| <image placeholder> | **BIG BOOK with Pages**<br>**Includes: 1-Ringbound 15"x18" Scrapbook Album, 10-4x6 style pages, 5-5x7 style pages, 5-8.5x11 style pages and 5-11x17 style pages.**<br>In Stock<br>**Blue Binder    P/N GS3893E-B    $19.99 ea** |


Qty To Order: |1          Add to Shopping Cart

## BIG BOOK Binder Only



### BIG BOOK without Pages
Includes: 1-Ringbound 15"x18" Scrapbook Album, Pages must be ordered separately.
In Stock
**Green Binder**   P/N RC2246-G        $14.99 ea

Qty To Order: |1          Add to Shopping Cart

### BIG BOOK without Pages
Includes: 1-Ringbound 15"x18" Scrapbook Album, Pages must be ordered separately.
In Stock
**Maroon Binder**   P/N RC2246-R        $14.99 ea

Qty To Order: |1          Add to Shopping Cart

### BIG BOOK without Pages
Includes: 1-Ringbound 15"x18" Scrapbook Album, Pages must be ordered separately.
In Stock
**Blue Binder**       P/N RC2246-B        $14.99 ea

Qty To Order: |1          Add to Shopping Cart

## *Four Available Page Styles...Order-On-Line!*

### Holds Sixteen 4x6 Photos
### Holds Eight 5x7 Photos
### Holds Two 11x17 Documents
### Holds Four 8.5x11 Photos or Documents

  **Welcome to "THE BIG BOOK". For the first time "THE BIG BOOK" allows you to protect and treasure those items that would not fit in your traditional scrapbook. With four different page styles available, you can be sure to protect all your valuable items. As always "THE BIG BOOK" pages meet the same stringent requirements we impose on all our Archival Quality Pages. All are <u>ACID, LIGNIN and PVC FREE</u>....GUARANTEED!**

  This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

  

**Authorized Sales Agent**

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

_Copyright_ © 2000 Thompson Products, Inc.
Last modified: October 27, 2000



**Home | Refill Index | Search**

# Standard Refill Packs

**Standard 9" x 11" Magnetic Refill Pack**
This Refill Pack contains 10 Archival Quality Photo Safe Magnetic style photo sheets (20 pages). Also included are FREE Caption Stickers to personalize your photos.
The pages contained in this pack will hold 3.5" x 5", 4" x 6", 4" x 7", 5" x 7" or 8" x 10" photos
Page dimensions: 9" x 11"
In Stock

**P/N RF2258**      **$4.99 ea**

**Qty To Order:** 1

**Add to Shopping Cart**

***Premium*** **9" x 11" H.D. Magnetic Refill Pack**
This Refill Pack contains 10 of our Premium Heavy Duty Archival Quality Photo Safe Magnetic style photo sheets (20 pages). These Pages are the finest Magnetic Pages available in the industry with a heavier card stock than our standard page.
Also included are FREE Caption Stickers to personalize your photos.
The pages contained in this pack will hold 3.5" x 5", 4" x 6", 4" x 7", 5" x 7" or 8" x 10" photos
Page dimensions: 9" x 11"
In Stock
     **P/N RF6375**      **$5.99 ea**

**Qty To Order:** 1

**Add to Shopping Cart**

**Standard 4" x 6" Memo Pocket Refill Pack**
This Refill Pack contains 10 Archival Quality



Photo Safe Pocket style photo sheets (20 pages). Also included are FREE Caption Stickers to personalize your photos.
The pages contained in this pack will hold a total of 40 - 4" x 6" or 40 - 3"x 5" photos. Each page has a memo slot for photo ID or negative storage.
Page dimensions: 6 7/8" x 10 3/16"
In Stock

P/N RF2364     $4.99 ea

Qty To Order: 1

**Add to Shopping Cart**



**Standard 4x6 Slimline Pocket Refill Pack**
This Refill Pack contains 10 Archival Quality Photo Safe Pocket style photo sheets (20 pages). Also included are FREE Caption Stickers to personalize your photos.
The pages contained in this pack will hold a total of 60 - 4" x 6" or 3"x 5" photos.
Page dimensions: 6 7/8" x 12 7/8"
In Stock

P/N RF2388     $4.99 ea

Qty To Order: 1

**Add to Shopping Cart**



**String Tied Scrapbook Refill**
10 sheets (20 Pages) to a package
Free Caption Stickers to personalize your memories
Page dimensions: 12" x 14"
In Stock

P/N RF2227     $4.99 ea

Qty To Order: 1

**Add to Shopping Cart**

**Jumbo Scrapbook Refill Pack**
Heavy Gauge Pages for Lifetime Durability



5 clear protective sheets (10 Pages), 5
colored paper sheets and 5 white paper
sheets to a package.
Page dimensions: 12"(W) x 12" (H)
In Stock

**P/N RF1165       $4.99 ea**

**Qty To Order:** 1

Add to Shopping Cart

**Privacy Policy   Return Policy**

| View My Shopping Cart | Secure Checkout | NON-Secure Checkout |
|---|---|---|
| This will show you what you have placed in your shopping cart so far! | SECURE CHECKOUT Most modern browsers encrypt for secure transactions | "In-the-Clear" option for browsers which do not support encryption |

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





**Authorized Sales Agent**

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

*Copyright © 2001 Thompson Products, Inc.*
*Last modified: July 03, 2001*



Home | Contacts | Refill Index

Home | Contacts | Refill Index

    

## What the heck are these things? And why are they so important?

### Why should I be concerned about these things?

The primary reason for concern is that you want to ensure that what you are trying to protect is protected for as long as possible. How materials react to each other is the primary cause of deterioration and the main concern of the archivist. Keep your work safe from environment extremes. Light, moisture, heat, and stray chemicals can cause unwanted reactions. Quality materials and a stable environment are the keys to controlling long-term stability.

### Lets take a quick look at what these terms mean.

**Lignin** is the glue that holds the fibers together in plant materials. It is a natural component found in the cell walls of all plants. The problem with Lignin is that it turns brown after a number of years. To eliminate the discoloration of the paper, the Lignin must be removed. Removing the lignin from the pulp used to produce paper lowers the yield of material to produce the finished paper product. This always means a higher cost to the consumer.

**Acid Free** in terms of papers means that the paper is guaranteed to have a minimum pH value of 7.0. The pH scale ranges from 0 to 14. A pH of 7.0 is considered neutral or "pH balanced". Below 7.0 is the acidic region, above 7.0 is the Alkaline region. If prepared properly, papers made from any fiber can be acid free. Acid Free is a term used to insure that materials are of archival quality. Archival quality assures that a reasonable effort has been made to ensure that the materials are stable. It is important that high quality materials are always used together to reduce the interactions between them.

**PVC (Polyvinyl Chloride)** is a material used to produce plastic films. The problem with PVC is that it can leach hazardous plasticizer additives over time. These plasticizers are known as phthalates. Because they are not chemically bound to the PVC, they can detach or leach from the PVC material. As with any chemical there are health risk concerns.

### At Thompson Products we test our products through independent

laboratories to ensure that you receive the highest quality products available. Our Archival Quality Pages are the finest in the industry surpassing any of our competition's pages.

# Guaranteed !

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

Copyright © 2000 Thompson Products, Inc.
Last modified: October 28, 2002

☒ | ☒ | 🏠 SHOPA

**Home | Feedback | News | Search**

## The Only _Photo Safe_ _Archival Quality_ Magnetic Page in the Industry!

☒

- **Lignin Free Photo Tag Cardstock**
- **PVC Free Polypropylene Overlay.**
- **Acid Free Non-Yellowing Tack Adhesive.**
- **Solid cover adhesive pattern.**
- **Easy peel Polypropylene Overlay.**
- **Re-Enforced three ring binder holes.**

**Acid Free!**

**Lignin Free!**

**PVC Free!**

**Click on Page Image to Purchase Our Mag P**

## If you like to use Magnetic Pages, but _cringe_ at the fact that they are not Archival Quality, fear no more!

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

  

Authorized Sales Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

_Copyright_ © 2001 Thompson Products, Inc.
_Last modified: November 10, 2000_



# STOCK EASEL BACKS

## *The Essentials*



**The Essentials** include five size offerings from 3½ x 5 to 11 x 14. These backs are ideal for lightweight channel frames. The Essentials provide a high-end appearance using an embossed paper laminate. Pad bottom edges are wrapped and easels are constructed of solid black chipboard for a quality-finished appearance.

.060 Pad Chipboard Laminated with Black Spanish Paper

.080 Easelback - Black-1-Side Chipboard Laminated with Black Spanish Paper

| Part # | Size | Hangers |
|--------|------|---------|
| EB0026 | 3½" x 5" | 1 |
| EB0027 | 4" x 6" | 1 |
| EB0028 | 5" x 7" | 1 |
| EB0029 | 8" x 10" | 2 |
| EB0030 | 11" x 14" | 2 |



## *Premium Collection*

Our **Premium Collection** offers you our finest quality stock.  The Premium Collection also provides two additional sizes that are not featured in The Essentials line: a 6 x 8 and 10 x 12.  A 33% thicker pad is utilized along with a 50% heavier easel constructed of solid black chipboard.

.080 Pad-Black-1-Side Chipboard Laminated with Black Spanish Paper

.120 Easel - Solid Black Chipboard Laminated with Black Spanish Paper

| Part # | Size | Hangers |
|--------|------|---------|
| EB0084 | 3 ½" x 5" | 1 |
| EB0047 | 4" x 6" | 1 |
| EB0050 | 5" x 7" | 1 |
| EB0051 | 6" x 8" | 2 |
| EB0052 | 8" x 10" | 2 |
| EB0053 | 10" x 12" | 2 |
| EB0054 | 11" x 14" | 2 |

**Condition of Sale:**

*All prices are in U.S. Dollars       FOB Lakeville*

*Items may be combined for quantity price breaks*

*Easels on all items are flush with bottom right corner of pad.  Drops or extensions and Doorbacks must be quoted as custom orders.  All orders require a written purchase order*

*Terms: Net 30 days with credit approval. Cash in advance prior to credit approval*

# CUSTOMIZED  EASEL BACKS



At Thompson Products, our artisans' long-established skills in hand crafted easel backs allow for the highest level of creativity in product design.  Highly unique frame designs, often call for customized backs.  We will collaborate with your designers in order to create a back of superlative quality that meets your exact specifications.

**Condition of Sale:**

*All prices are in U.S. Dollars        FOB Lakeville*
*All orders require a written purchase order*
*Terms: Net 30 days with credit approval. Cash in advance prior to credit approval*

# WAL★MART®

<u>Help</u> | <u>Your Account</u> | 🛒 <u>Cart & Che</u>

[×]

Search [Entire Site ▾] for: [_____] [Find]

<u>Simmons Beautyrest Mattresses</u> at Every Day Low Prices - DELIVERED Into Your Home

Home Page

**Electronics**
- <u>Computers & Printers</u>
- <u>Internet Service</u>
- <u>TV, DVD & Video</u>
<u>More...</u>

**Photo**
- <u>Digital Cameras</u>
- <u>Camcorders</u>
- <u>Photo Center</u>
<u>More...</u>

<u>Movies</u>[_____]

<u>Music</u> 80,000 CDs!

<u>Books</u> 500,000 Titles!

<u>Video Games</u>
- <u>PS2</u>
- <u>Xbox</u>
<u>More...</u>

<u>Toys</u>
- <u>Outdoor Play</u>
- <u>Bikes & Scooters</u>
<u>More...</u>

<u>Baby & Baby Registry</u>
- <u>Shop by Age or Stage</u>

<u>Home</u>
- <u>Furniture</u>
- <u>Appliances</u>
- <u>Bed & Bath</u>
<u>More...</u>

<u>Garden & Hardware</u>
- <u>Patio & Grilling</u>
- <u>Lawn Equipment</u>
- <u>Home</u>



**Find 300,000 Textbooks**
**Every Day Low Prices**

Find it by <u>ISBN</u> or <u>category.</u>
- <u>Business</u>     - <u>Medical</u>
- <u>Education</u>   - <u>Engineering</u>
- <u>Test Prep</u>   - <u>Computer</u>

<u>See all textbooks.</u>

Furnish the Dorm







Find the desk that fits your living space and study habits.
<u>See all desks.</u>

Sleep well with our low prices on futons and bedding.
<u>See all college bedding.</u>

Make dorm life easier with refrigerators, dishwashers and more.
<u>See all small appliances.</u>

Stay in Touch







<u>Get online</u> for only

Call anywhere,

Share family vacations.

New customer?
<u>Click here to get sta</u>

[×] Always Low Prices

Shop at Wal-Mart a save with <u>Every Da Low Prices, Rollba and more!</u>

**Back To Colleg**

<u>Computers</u>

<u>Cameras</u>

<u>Shopping Cards</u>

<u>See More</u>

[×] K - 12  7-25

<u>Clothing</u>

<u>School Supplies</u>

<u>Educational Toys</u>

<u>Children's Books</u>

<u>See More</u>



Unlimited
Internet & E
WAL★MART
**connect** $(
INTERNET SERVICE pe
<u>Free trial! Get started</u>



Improvement More...

Tires

Sporting Goods
- Exercise & Hot Tubs
- Camping & Hiking

More...

Gifts
- Specialty Foods
- Gift Registry
- Store Shopping Cards

More...

Jewelry & Watches

Vacations
- Cruises
- Hotels
- Car Rentals

Pharmacy

Store Finder

Enter a ZIP code to find your local Wal-Mart.

[_____] Find

Company Information
- Wal-Mart News
- Investor Relations
- Jobs at Wal-Mart

$9.94 a month.

anytime with phone cards.

Email your photos.

America on the Move



Find the right tire for your car or truck.



Fill up with our great rates on rental cars.



Book with us and save up to 20% on hotels.

What's in Store Now



Stock Up on School Supplies!

Check out the great values on back-to-school and back-to-college supplies at your local Wal-Mart store.

 Upload Digita Photos

 Find a Gift Registry

 Find and Ord Tires

☒ Refill Prescri

☒ Get Online fo Only $9.94 a Month

☒ Item of the Week

Bissell CleanView Bagless Vacuum $94.48



---

Ordering Help
- Track Your Orders
- Questions About Your Order

Shipping & Returns Help
- Shipping Costs & Times
- Our Return Policy

Store Help
- Find a Store
- Wal-Mart Stores Info

Still Have Questions
- Online Customer Service
- Product Recall Info

Security & Privacy | Terms of Use | Wal-Mart Credit Cards | Join our Affiliate Program
Store Finder | Sam's Club | Company Information | Jobs at Walmart.com | See All Departme

⊙ **TARGET**

**gift**registries   **gift**card   **gift**search   **wish**list          search [          ]

SHOP   WHAT'S NEW   COMPANY   COMMUNITY   SERVICES   MY ACCOUNT

GIFTS

HOME FURNISHINGS

CLOTHES

ELECTRONICS

SPORTS + LUGGAGE

TOYS

lamp 39.99

end table 59.9

WEEKLY AD | WHAT'S NEW | GIFTS | TARGET.COM SPECIAL OFFER

Enter your e-mail address to receive special offers, news, and more!

[          ]
(jdoe@email.com)

CLUB WEDD
GIFT REGISTRY

LULLABY CLUB
*baby gift registry*

Log On, Look in
**& Win!**

Win a trip to a taping of Everybody Loves Raymond! Find out more in What's New.

All of us at Target Corporation are deeply saddened by the events of September 11. Please join us in support of the families and friends who have been affected.

*Donate blood to local blood banks.
*Contribute directly to the American Red Cross in the following ways:
- call 1-800-HELP-NOW
-
http://web.archive.org/web/20010917060817/http://www.re

- contact local Red Cross chapters
- mail contributions to:
American Red Cross, P.O. Box 37243, Washington D.C. 20013.


Costumes

Decorations


Wedding

Wedding Attendants

**SOLUTIONS**
Furnish Your Home

Update Your

**WE RECOMMEND**
Mattel:

Hot Wheels

Case 1:05-cv-11810-RGS    Document 24-6    Filed 12/21/2005    Page 38 of 67

Lighting

New Baby

Wardrobe

Matchbox

Harvest Decor

Housewarming

Get Wired

Barbie

Cook in Style

| SERVICES | ORDERING | STORE | ASSISTANCE | FAMILY OF SITES |
|---|---|---|---|---|
| Pharmacy | Shipping | Store Locator | Help | Marshall Fie |
| Financial Services | Order Status | Weekly Ad | Sitemap | |
| E*Trade | Checkout | Careers | Privacy | GiftCatalog |
| Target Corporation | Gift Receipts | SuperTarget | Advanced Search | |
| Wish List | Return Policy | Portrait Studio | Product Recalls | Signals |
| Gift Reminder | | | | Seasons |
| | | | | Wireless |
| | | | | Mervyn's |











A youth program from Target and the Tiger Woods Foundation

You're invited to take an interactive tour of the Target Town House.

Get 10% off at target.com for up to one year!

Register now for your chance to win $10,000!

Cool news, tip and advice for teens.

©2001 target.direct. All rights reserved. | Terms and Conditions 212 : 3

Welcome Home, BlueLight Shopper!  Check Out What's on Sale This Week!

0 items    ORDER STATUS    YOUR ACCOUNT    FIND A KM/

SALES & SPECIALS    KMART WEEKLY AD    TOP BRANDS    SITE

Search | Search  Music  Movies | Shop  by Department

# Valentine's Day ♥
## give gifts from the heart

Does your sweet deserve sweets? Make this Valentine's Day one to remember with thoughtful gifts from our Valentine's Day shop.
**View our Valentine's Shop**

30-Inch Plush Valentine Floppy Dog
**OUR PRICE: $19.99**

## TODAY'S BLUELIGHT SPECIALS
Limited-time savings on selected items.

Hamilton Beach Iron with Retractable Cord
list:  $34.99
now: **$24.99**

Harry Potter & the Sorcerer's Stone DVD (includes never before seen footage)
list:  $26.99
now: **$19.95**

## ELECTRONICS

### Add It Up
Ease your tax time stress with helpful electronics and software.
view all **Electronics**

Turbo Tax Deluxe($10 Rebate incl...
now: **$39.99** view all **PC Software**

## EVERYTHING KMART

Kmart MasterCard
Pharmacy Center
Store Locator
Product Recalls
Kmart Careers
Kmart School Spirit

## MARTHA STEWART EVERYDAY

### Winter Warmth
Warm yourself with soft blankets and bedding.

MARTHA

Martha Stewart Everyday Windowpane Fleece Throw

Home
Keeping
Kitchen
Baby Baby
...

## BABY & TODDLER

### Baby Buys
Find the brand names you trust in our baby and toddler goods.
view all **Baby & Toddler**

ChildESIGNS© Carrollton Sleigh ...
now: **$109.99** view all **Cribs, Cradles, & Bassinets**

## WEEKLY AD

Click here to see the ad exactly as you see it in the Sunday paper.
view **Feb 3 to Feb 9**

**SHOP OUR STOR|**
Martha Stewart Eve
Valentine's Shop
Americana Shop
Computer Shop
NFL Shop
Baby & Toddler
Beauty & Fitness
Books
Electronics
Flowers
Food
For the Home
Furniture
Jewelry
Photo Zone
Sports
Toys
Video Games
Clearance Store
Gift Cards
Music
Movies
**OUR TOP BRAND**
Martha Stewart Eve
Azura
Black & Decker
DeLonghi
George Foreman
Hewlett Packard
Hoover
Little Tikes
Nickelodeon
Olympus
Panasonic
Philips
Sesame Street
see all...

**EMAIL ME HOT D**

Welcome Home, BlueLight Shopper!  Check Out What's on Sale This Week!

0 items    ORDER STATUS    YOUR ACCOUNT    FIND A KM/

SALES & SPECIALS    KMART WEEKLY AD    TOP BRANDS    SITE

Search    |    Search  Music  Movies    |    Shop  by Department

## Valentine's Day
give gifts from the heart ♥

Does your sweet deserve sweets? Make this Valentine's Day one to remember with thoughtful gifts from our Valentine's Day shop.
**View our Valentine's Shop**

30-Inch Plush Valentine Floppy Dog
**OUR PRICE: $19.99**

### TODAY'S BLUELIGHT SPECIALS
Limited-time savings on selected items.

Hamilton Beach Iron with Retractable Cord
list:  $34.99
now: **$24.99**

Harry Potter & the Sorcerer's Stone DVD (includes never before seen footage)
list:  $26.99
now: **$19.95**

### ELECTRONICS

**Add It Up**
Ease your tax time stress with helpful electronics and software.
view all **Electronics**

Turbo Tax Deluxe($10 Rebate incl...
now: **$39.99** view all **PC Software**

### EVERYTHING KMART

Kmart MasterCard
Pharmacy Center
Store Locator
Product Recalls
Kmart Careers
Kmart School Spirit

### MARTHA STEWART EVERYDAY
**Winter Warmth**
Warm yourself with soft blankets and bedding.

MARTHA

Martha Stewart Everyday Windowpane Fleece Throw

Home
Keeping
Kitchen
Baby Baby
and more...

### BABY & TODDLER

**Baby Buys**
Find the brand names you trust in our baby and toddler goods.
view all **Baby & Toddler**

ChildESIGNS© Carrollton Sleigh ...
now: **$109.99** view all **Cribs, Cradles, & Bassinets**

### WEEKLY AD

Click here to see the ad exactly as you see it in the Sunday paper.
view **Feb 3 to Feb 9**

**SHOP OUR STORI**
Martha Stewart Eve
Valentine's Shop
Americana Shop
Computer Shop
NFL Shop
Baby & Toddler
Beauty & Fitness
Books
Electronics
Flowers
Food
For the Home
Furniture
Jewelry
Photo Zone
Sports
Toys
Video Games
Clearance Store
Gift Cards
Music
Movies
**OUR TOP BRAND**
Martha Stewart Eve
Azura
Black & Decker
DeLonghi
George Foreman
Hewlett Packard
Hoover
Little Tikes
Nickelodeon
Olympus
Panasonic
Philips
Sesame Street
see all...

**EMAIL ME HOT D**



**Shop with Confidence**
- Secure Shopping
- Shipping Information
- Terms of Use
- Gift Cards

**All About You**
- Your Account
- Find an Order
- Privacy Policy

**Need Help?**
- Bluelight Customer Care
- Kmart Customer Care
- ISP Technical Support
- Affiliate Program

**Company Inform**
- About BlueLight.c
- About Kmart
- Kmart Store Loca

*List price is for reference only. No sales may have occurred at this price.

Shop Securely @ BlueLight.com          © 2001-2002          BlueLight proudly ac



☒ Features

☒ ShopKo Story    ☒ Shops & Sales    ☒ Find a Store    **CONTACT US**

Search For:

☒ Go

Packers Store
Buy Online

☒ Rebates

☒ Career Opportunities

Investor Info
Press Releases and
Annual Report

Subsidiaries & Partners
Payless Shoe Source
Pamida

In-Store Sales

Copyright 2000 ShopKo Stores, Inc. All rights reserved.
Please read our legal notices.
Sitemap | E-Mail Us



**Home**  Membership  Locations  Products  Premier Benefits  What's New  About Us

- Vacations
- Custom Checks
- Optical
- Auto Buying
- Holiday Gift Baskets
- Payment Processing
- Embroidered Apparel

### Welcome to BJ's Wholesale Club

If you've never visited a BJ's Wholesale Club, you've missed out on the shopping phenomenon of the century -- and the savings of a lifetime!!!

### One-Stop Savings

Inside a huge warehouse, you'll find the equivalent of a supermarket (with a fresh bakery and deli meats), greeting cards, health and beauty products, hardware center, book store, optician, jeweler, tire center, and travel agency. Plus toys, office supplies, computers, software, electronics, appliances, cellular phones, and much, much more!

### Incredible Everyday Low Prices

Save hundreds on your annual grocery bill.* Up to 40% off retail stores,* 50% off greeting cards and wrap, 43% off NY Times Bestsellers, 150% jewelry appraisal guarantee, 26% off a market basket of groceries. Even 30% off the prices you'd find at "discount" stores.*

### America's Favorite Brand Names

Choose from the premium brands you trust, like Panasonic, Kodak, Sony, Disney, Michelin, Tide, Kraft, and more.

### Exceptional Member Services

At BJ's, we believe in offering our Members a lot more than merchandise. So, you'll also take advantage of exclusive savings on travel, car and home buying, and tire installation.

### A Cut Above Other Clubs

BJ's reputation for quality and value has made us one of the most successful warehouse clubs in the Eastern U.S. We're the only club that:

- Welcomes everyone to join
- Honors manufacturers' coupons

- Takes more forms of payment than any other wholesale club
- Includes a second Membership card for a household member at no extra charge

*On a market basket of items

© 2000 BJ's Wholesale Club, Inc.



Corporate Information | Find a Store | Apply for Credit | Customer Service | Contact Us

| Office Supplies | Furniture | Technology | Business Services |

**Click here for all your Back to School needs!**

Weekly Specials
Back to School Specials
Rebate Center
Clearance Center

Search categories by Keyword(s), Item No., or Brand.

All Areas

Search Help    Advanced Search

**Order by Catalog No.**
Request a Catalog

Login
New to Sta
Click to se

User Name

Company
(if applicable)

Password

For

Shop

Line items i

Qty.

Get free
spend $

Favori

---

Visit our Back to
School Center.

## Office Supplies

> Art Supplies & Drafting
> Binders & Binder Accessories
> Briefcases & Travel
> Calendars & Planners
> Clips, Tacks & Rubberbands
> Desk Accessories & Rolodex
> Envelopes
> File Folders & Filing
> Labels
> Mail & Ship
> Maintenance & Breakroom

> Paper
> Pens, Pencils & Correction
> Post-It Notes & Message Pads
> Pre-printed Forms & Stamps
> Presentation & Meeting Supplies
> Retail Sales Equipment
> Scissors, Rulers & Trimmers
> Staplers & Paper Punches
> Storage
> Tape, Glue & Adhesives

## Furniture

> Bookcases
> Chairs & Chairmats
> Desks & Collections
> File Cabinets
> Lighting

> Office Furnishings
> Panel Systems
> Printer/Machine Stands
> Shelving & Storage Systems
> Tables

## Technology

> Cartridges & Toner
> Computer Accessories
> Computers & Handhelds
> Digital Cameras & Scanners
> Disks, CDR & Data Storage
> Downloadable Software
> Office Machines

> Office Machines Supplies
> Peripherals
> Printers & Multifunction Machines
> Ribbons
> Software, Books & Training
> Telephones & Communication

## Business Services

Spending too much time trying to find the right services and information to run your business? Staples Business Services does the work for you by providing more than **85 Business Services**, over **21,000 Qualified Vendors** for RFQs, plus the opportunity to **sell your services**. You'll find leading service solutions, strategic know-how with practical tools, straightforward advice and rewarding connections to other small businesses, all in one place.

Services include:
> Office Operations
> Technology & Communications
> Money Management
> HR & Staffing
> Sales & Marketing
> Legal & Insurance

Plus, the new home for Business Cards and Printing

Weekly Specials
HP Multipurpose Paper
5000/Case
**Buy 1**
Get HP Printing
Paper Free
$6.18 value



Back to School Deals

AT&T 900MHz
Cordless Phone

Clearance Center

Clearance Center



**Get bi-weekly updates on Staples news & hot offers!**

Enter Email Address:

**Earn Cash With Your Site**
Click to learn how to earn cash with our Affiliate Program.

**Get the credit you deserve**
Click to apply for Staples Credit.

**Gain control and**

Shopping
Save lists
you buy m
Items. And
use Email
alerted wh
reorder.

Click on A
next to an
started.

Favo

Make brov
Use Favor
lists of the
categories

Create a F
above to g

**streamline procurement**
If you have 100+
employees click to learn
about StaplesLink.

Home | Office Supplies | Furniture | Technology | Business Services
Corporate Information | Find a Store | Apply for Credit | Customer Service | Contact Us

Staples Dividend$ Dollars | Affiliate Program

Questions? Call 1-800-3STAPLE or email | Privacy Policy & Security

Copyright 1999-2000 Staples, Inc. All Rights Reserved
Terms and Conditions



Home   My Account



SEARCH FOR [                    ] IN [ Entire Site    ▼ ]  GO

You have 0 item(s) in your 🛒 shopping cart

**SHOPPING & IDEAS**

- Art & Framed Prints
- Art Supplies
- Craft Painting
- Floral & Home Decor
- General Crafts
- Holidays & Occasions
- Kids
- Needlework
- Scrapbooking
- Wedding

**SITE FEATURES**

- Your Local Store
- Project Finder
- Shopping Directory
- Community & Forums
- Kids Club
- Customer Service
- Store Locator



Gift Cards


Magazine





Give th...

$50 $25 $10 GIFT CARD Michaels

To receive by 12-24, Order by 12-14 with standard shipping
or order by 12-18 with expedited shipping. Get more details.



**World's LARGEST Supplier**

**Over 20,000 Prints Available**


Bob Ross
Master Paint Set
$99.99

VIEW MORE BOB ROSS SIGNATURE
PRODUCTS

CHOOSE A PRINT NOW

## Books Go

**Over 8,000 Creative Titles**

One-Hour
Christmas Crafts
$14.99

VIEW MORE SEASONAL BOOKS

**Great Prices EVERYDAY**

50 Piece Tool
Decorating Set
$39.99

VIEW MORE GENERAL CRAFTS


The Gift Center
Great Gifts at Great Prices
Go shop now



View this
week's a...



More Gre...

Select a



This We...

- Create a F...
  Holiday
- Xyron, A G...
- Wilton Gin...
  Contest - s...
- Learn How...
  America

Discover...
ple...

Ideas & Inspiration    What's New In Stores    [            ]

- Discover the World

of Homemade
Paper
- **25 Newest Projects**
- **Read, Post, Win
Sweepstakes**
- **Community Home**
- **Got Questions?**



Find the inspiration
Get what you need at your
Local Store



**Decorate for the Holidays**

Privacy Policy | Legal Information | Terms of

Contact Us | Corporate Information | Career Opportunities

© 2001 Michaels Stores, Inc.,

  🏠 SHOPA

Home | News

## *Contact Information*

**Telephone**
    (800) 992-2228
    (508) 946-4500
**FAX**
    508) 947-8586

**Postal address**
310 Kenneth Welch Dr
Lakeville, MA 02347

**Electronic mail**
General Information: info@tp-inc.com
Customer Service: custserv@tp-inc.com
Sales: sales@tp-inc.com

**Directions:**
Rt-495 to Rt-18 Exit 5 Lakeville.
Exit toward Lakeville.
~ 1 mile turn left into Great Ponds Ind Park
Thompson is second building on left.

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

  
Authorized Sales
Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

Copyright © 2001 Thompson Products, Inc.
Last modified: November 10, 2000

   SHOPA

**Home** | **Contacts**

# Thompson News

Welcome to our "Thompson News" page. Here we will keep you informed of ongoing changes to our product lines, events and shows we will be attending, and press releases regarding Thompson Products.

We hope that by keeping you informed we will continue to grow our relationships with you our customers.

- 10/06/99 -- **"Thompson Announced Wal-Mart Vendor of the Quarter for 1998"**
- 10/06/99 -- **"Visit our new booth at this years SHOPA SHOW 99"**
- 10/23/99 -- **"SHOPA SHOW 99 Success Update"**
- 12/06/99 -- **"See what we have in store for PMA 2000"**
- 09/20/00 -- **"Thompson Wins TARGET Vendor of the year award!"**

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.



GET Microsoft Internet Explorer

CREATED&MANAGED WITH Microsoft FrontPage 2000 CLICK HERE FOR MORE INFO

i bill Authorized Sales Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

*Copyright © 2001 Thompson Products, Inc.*
*Last modified: September 22, 2000*



# "Wal-Mart Vendor of the Quarter for 1998"



Thompson Products is pleased to share with you our Wal-Mart "Vendor Award of Excellence". This award demonstrates our commitment and dedication to you the consumer. As always we strive for perfection, providing you with the highest quality products at the best prices.

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**Copyright © 2000 Thompson Products, Inc.**
**Last modified: October 28, 2002**

 SHOPA

**Home**

# SHOPA SHOW 1999



Thompson Products is proud to be an Exhibitor at the <u>1999 SHOPA SHOW November 17-19</u> at the Ernest N. Morial Convention Center, New Orleans. We are excited and looking forward to having you stop by to meet our Sales and Marketing Team and review our new products. We will also be introducing our newly designed booth. Our booth will make it easier and more convenient to view our products and have private meetings with our Sales and Marketing team members. We will be located at **Booth 3163**.

As always we look forward to seeing you at SHOPA SHOW 1999.

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.




Authorized Sales Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

<u>Copyright</u> © 2001 Thompson Products, Inc.
*Last modified: November 10, 2000*

☒ ☒ 🏠SHOPA

**Home | News**



### February 3 - 6, 2000

    Thompson Products is proud to be an Exhibitor at the **Photo Marketing Association's PMA 2000** Conference from February 3-6 at the Las Vegas Convention Center. The PMA Show is always an exciting show for us. This year will be our biggest and most exciting PMA showing ever. Not only will be be introducing several new product lines, but will unveil a new ordering strategy for our customers.

We have improved upon our new booth we introduced at SHOPA 99 to provide the best possible atmosphere for our customers. Our booth will make it easier and more convenient to view our products and have private meetings with our Sales and Marketing team members. As always we are striving to be the best we can be and continuously improve upon our customer relationships.

We will be located at **Booth Q40**.

       As always we look forward to seeing you at **PMA 2000**.

 Show previews are coming!!

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

  

Authorized Sales Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**Copyright © 2001 Thompson Products, Inc.**
*Last modified: November 10, 2000*



☒ _____  ☒  🏠 SHOPA

**Home | News**

# "TARGET Vendor of the Year"



Thompson Products is very proud to have been selected "TARGET Vendor of the Year". Everyone at Thompson has worked very hard to earn this award. We would like to also thank all the TARGET employees who also helped make this award possible. Without everyone's efforts and the great relationships we have built with TARGET, this award would not be ours today.

As always we are committed to provide TARGET with the highest quality products in the market. We always look to bring the latest fashion trends into our product lines for the TARGET consumer. We are dedicated to delivering the products that the TARGET consumer wants.

We always invite any feedback regarding our products. Please use our feedback page to let us know what you the TARGET consumer is looking for in our products.

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





Authorized Sales
Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**_Copyright_ © 2001 Thompson Products, Inc.**

*Last modified: September 22, 2000*

SHOPA

Home | Contacts | News

*Destiny...*

*Dreams...*



*Believe...*

Some Flavia Products are Imported.

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





Authorized Sales Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

_Copyright_ © 2001 Thompson Products, Inc.
Last modified: November 10, 2000



**Home | Contacts**

Use the form below to search for documents in this web site containing specific words or combinations of words. The text search engine will display a weighted list of matching documents, with better matches shown first. Each list item is a link to a matching document; if the document has a title it will be shown, otherwise only the document's file name is displayed.

**Search for:** |

| Start Search | Reset |

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**Copyright © 2000 Thompson Products, Inc.**
**Last modified: October 28, 2002**

SHOPA

Home | Contacts | News

# *FEEDBACK*

## *Your Thoughts and Ideas are Important to us!!*

Please tell us what you think about our products, company, or web site. As the end users of our products, it is you who can help us improve upon, and develop new product lines.

If you provide us with your contact information, we will be able to reach you in case we have any questions.

*Thanks!*

**What kind of comment would you like to send?**

○ Complaint    ○ Problem    ● Suggestion    ○ Praise

**What about us do you want to comment on?**

[Products ▾] Other: [_____]

**Enter your comments in the space provided below:**

[                                        ]

**Tell us how to get in touch with you:**

Name [_____]

E-mail [_____]

Tel [_____]

FAX [_____]

☐ Please contact me as soon as possible regarding this matter.

[Submit Comments]    [Clear Form]

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.







Authorized Sales
Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**_Copyright_ © 2000 Thompson Products, Inc.**
**Last modified: March 28, 2000**

⊠ [                                        ]    ⊠    🏠 SHOPA

**Home | Contacts | News**

# Copyright Statement

None of the content or design on this site may be copied, downloaded, modified, retransmitted or redistributed other than for personal, non-commercial use by any means without the prior express written permission of Thompson Products, Inc. No right, title, or interest in any copying, downloading, or retransmission.

All text, photographs, images, designs, and icons on this site are subject to trademark, copyright, and or other intellectual property rights owned, controlled, or licensed by Thompson Products, Inc. The collection, arrangement, and assembly of the content of this site is the exclusive property of Thompson Products, Inc. and is also protected by the United States copyright laws. All rights reserved.

For questions regarding copyrights held on this site, please direct your mail to info@tp-inc.com

For more information on intellectual property and copyright law, please visit one of the links below.

U.S. Copyright Office
The Copyright Website

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





Authorized Sales
Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**Copyright © 2000 Thompson Products, Inc.**
**Last modified: November 10, 2000**

⊠ [                                      ] ⊠  🏠 SHOPA

**Home | Refill Index**

# Return Policy

To return a product you must obtain a Return Merchandise Authorization (RMA) number. RMA numbers will be issued within 15 calendar days from invoice date. The RMA number is valid for 10 calendar days from issue date. Products received by Thompson Products, Inc. with an expired RMA number will be refused and returned to Customer. NO returns of any type will be accepted without an RMA number.

Returned products must be in resalable condition (packaging has not been damaged or defaced), and include original packing material, manuals, blank warranty cards and other accessories provided by the manufacturer.

All defective products may be returned to Thompson Products, Inc. for replacement, at Thompson Products, Inc. 's discretion, within the stated time period. All opened and/or unopened non-defective returns for credit or exchange are subject to a 20% restocking fee and must be completed within the stated period.

All Freight and Insurance charges are non-refundable.

**To return a product follow these steps:**

1. Locate the packing slip included with your original shipment.
2. Contact our Customer Service Department at (800) 992-2228 Monday through Friday between 9:00am and 5:00pm EST
3. Write the RMA number issued by our representative on the shipping label of the package. Packages without RMA numbers will be refused.
4. Address your package to:

   Thompson Products, Inc.
   Attn: Customer Service Department / RMA#
   310 Kenneth Welch Dr.
   Lakeville, MA 02347

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





Authorized Sales Agent

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**Copyright © 2000 Thompson Products, Inc.**
**Last modified: March 29, 2000**

| ☒ | | ☒ | 🏠 SHOPA |
|---|---|---|---|

**Home | Refill Index**

# Our Privacy Policy

At Thompson Products, Inc., we believe that understanding what our customers want for products, services and information is an important part of building a relationship with our customers and providing an exciting web site. We are also committed to providing our customers a private and secure shopping experience. The following privacy policy will help our customers understand what information we collect and how we use that information.

**What information we collect online...**
In our site, we ask you to provide information by filling out and submitting an online form. These areas include:

- Checkout, where we ask for name, address, email, credit card and other information needed to complete your order.
- Our Feedback form to obtain suggestions from our customers.

**What sort of information we do not collect...**
When you visit our site, we do not collect your name, email address or any other personal information unless you provide it to us.

**How we use the information we collect...**
Thompson Products, Inc. has a strong tradition of providing quality products and excellent customer service. Our goal is to bring this tradition to the online environment, offering products and services that meet your needs. In order to make improvements to our site, we may gather information that helps show how customers use the site. For example, we might do research to determine which areas are accessed most frequently. Personal information, such as your name and email address, is not included in the analysis.

**How we use email...**
After you place an order on our site, you will receive an email confirmation.

---

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.





**Authorized Sales Agent**

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

**Copyright © 2000 Thompson Products, Inc.**
*Last modified: March 29, 2000*



Home | **Contacts** | News | Search



**If you currently have a Retailers-On-Line Account just click "Enter"**

**If you need an account please fill in the form below.**

**Enter**

*Have User ID and Password Ready!*

If you are a retail company interested in establishing an account with Thompson Products to order on-line, please fill in the form below to have a sales account representative contact you. By establishing an On-line Retail Account you will have access to our on-line catalog and special offering available to our web based customers. Ordering on line is simple and secure using a valid credit card. Ordering on-line allows you to proactively manage your inventory and be guaranteed a quick turnaround on your orders.

Once your account is established, you will receive confirmation by email with a "User ID" and "Password". We have taken extra precautions to protect the wholesale pricing information and your secure online ordering system from the consumer. All orders are placed over a secure web server to ensure privacy of your order.

We are confident that you will enjoy working with our friendly staff at Thompson Products.

**Company Name:**
**Last Name:**
**First Name:**
**Title:**
**Address 1:**
**Address 2:**
**City:**
**State:**

**Zip Code:**

**Telephone:**

**Fax:**

**E-Mail:**

## Have you purchased from Thompson in the past? NO

## If Yes, what was the last purchase date:

## If you have a Web Site please enter the URL:

Submit | Reset

This site is provided by Thompson Products, Inc. on an "as is" basis. Thompson Products makes no warranties or representations of any kind, expressed or implied, as to the operation of this site or the information, content, materials, or products included on this site. Thompson Products disclaims all warranties expressed or included, without limitation, warranty of title, merchantability and fitness for a particular purpose, arising from use of this site.

Microsoft, Microsoft Internet Explorer and FrontPage 2000 are registered trademarks of Microsoft
Flavia is copyright of Weedn Family Trust. Album Works and Classic Memories are trademarks of Thompson Products, Inc.
Wal-Mart, Target, Costco, Shopko, BJ's Wholesale, Staples, Michael's and Sam's Club are registered trademarks and owned by their legal entities.

### Copyright © 2000 Thompson Products, Inc.
### Last modified: October 28, 2002

**Thompson Products, Inc.**

# Your Saved Cart

Please review your Saved Cart items as shown below. To modify the quantity of any item, simply input the desired quantity and select the **Recalculate Saved Cart** button. To delete an item click on **DELETE**. To ADD an item to your order for purchase, click on **ADD**. If you want to add new items, you can do so by pressing RETURN TO SHOP and click on SAVE FOR LATER for the appropriate product. You can access your Saved Cart at any time.

| product | unit price | qty | price | action |
|---------|-----------|-----|-------|--------|

### Saved Cart Login

**E-Mail:** |

**Password:** |

Forgot your password?

View Cart   Return to Shop

**Home | Search | Current Order | Saved Cart**

Thompson Products, Inc. SF Shopping Cart Page/Begin Checkout Page    Page 67 of 67

**Thompson Products, Inc.**

# Order Summary

Please review your order as shown below. To modify the quantity of any item ordered, input the desired quantity and select the **Recalculate Order** button below. To delete an item click on **DELETE**. To save an item to return and purchase at a later time click on **Save**. If you want to add new items return to the correct page and select additional items to be added to your order. When you have completed your order, select the Check Out button below to connect to our secure directory and complete the order process.

| product | unit price | qty | price | action |
|---------|-----------|-----|-------|--------|

### No Items in Order

Please press continue to begin searching for items.

VIEW SAVED CART    ☒ Continue Search

**Home | Search | Current Order | Saved Cart**







**Item# R16053**



7 50807 03605 3

Made in China
Distributed by
Thompson Products, Inc  USA



Zoe is beautiful and when looking down
the camera sometimes i could imagine
her as a polar bear.



RACHAEL HALE

© Rachael Hale Photography Limited (New Zealand) 2002
All worldwide rights reserved.  Rachael Hale is registered trademark
of Rachael Hale Photography Limited.

www.rachaelhale.com

Made in China
Thompson Products, Inc.
Lakeville, MA 02347











## WILLIAMS MULLEN

Direct Dial: 804.783.6418
stucker@williamsmullen.com

September 27, 2005

<u>BY FEDERAL EXPRESS</u>

Matthew F. Medeiros, Esq.
LITTLE MEDEIROS KINDER BULMAN
   & WHITNEY, P.C.
72 Pine Street
Providence, RI 02903

Michael L. Chintz, Esq.
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA 02116

     Re:   <u>Thompson Products, Inc. v. Thompson, et al.</u>

Gentlemen:

     As you know, we represent Thompson Products, Inc. and affiliated companies. Company management advises that your client, Mr. Glen Thompson, was recently on the premises of the company's Hong Kong offices and its China factory after the President of the company clearly instructed him to stay away from company facilities. **Please be advised that any entry onto company premises hereafter will be regarded as a trespass and the company will exercise all legal rights and remedies available to it for any future trespass.** Please pass this admonition along to Mr. Thompson.

          Sincerely,

          Sandy T. Tucker

STT/gcw
cc:   Yemi Sonuga (by email to ysonuga@dilmun.com)
      Brian Gleason (by email to bgleason@phoenixmanagement.com)
      Tal Briddell (by email to tbriddell@phoenixmanagement.com)
1197835v2

*A Professional Corporation*

VIRGINIA • WASHINGTON, D.C. • LONDON
Two James Center 1021 East Cary Street (23219) P.O. Box 1320 Richmond, VA 23218-1320 Tel: 804.643.1991 Fax: 804.783.6507
www.williamsmullen.com

# CHOATE, HALL & STEWART LLP

EXCHANGE PLACE
53 STATE STREET
BOSTON, MASSACHUSETTS 02109-2804

T (617) 248-5000    F (617) 248-4000
www.choate.com

July 19, 2005

**By Overnight Delivery**

Glenn Thompson
330 Rumstick Road
Barrington, R. I. 02806

Dear Glenn:

The Board has asked me to write to acknowledge your resignation as a member of the Board of Directors and as an officer of Thompson Product Holdings, Inc. ("TPHI") and each of its subsidiaries. In accordance with your email to the other Board members of TPHI dated May 22, 2005, your resignation as a director is effective as of that date and, in addition to TPHI, covers your membership on the Boards of Thompson Products, Inc. ("TPI") and Thompson Products Hong Kong Limited ("TPHKL") and your position as a Manager of Harvest Holdings, LLC. Your resignation as President of TPHI, TPI and TPHKL, which was given orally on July 12, 2005, is effective on that date.

The Board has also asked me to remind you of your continuing fiduciary obligations to TPHI and its subsidiaries (together, the "Company") as a TPHI shareholder and as well as your continuing obligation not to contact any customers, suppliers, employees or other businesses or individuals which have contractual or other business relationships with the Company for the purpose of interfering with those relationships. In addition, you are obligated not to disclose or use any Confidential Information (as hereinafter defined) of the Company without the prior written consent of TPHI. "Confidential Information" means all non-public information concerning the Company or its business including, without limitation, information relating to products, customers, pricing, trade secrets and other intellectual property, business methods, financial and cost data, business plans, budgets, strategies, competitive analysis, agreements with customers, marketing and concession arrangements and other agreements.

Please feel free to contact me if you have any questions.

Sincerely yours,

Cameron Read

CR:jtm

cc:    Brian Gleason
       Adeyemi Sonuga
       Tal Briddell
       Ruth Correia

3958680v1