IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMPSON PRODUCTS, INC., <br> Plaintiff, <br><br> v. <br><br> GLENN THOMPSON, and THOMPSON ENTERPRISES, INC., <br> Defendants. | Civil Action <br> No. 05-11810-RGS |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF EMERSON TALBOT BRIDDELL

Defendants Glenn Thompson ("Glenn") and Splash Creations, Inc. ("Splash") (f/k/a Thompson Enterprises, Inc.) submit this Memorandum in support of their Motion To Strike the Declaration of Emerson Talbot Briddell ("Briddell Decl."). The Briddell Declaration, which plaintiff Thompson Products, Inc. ("TPI") filed in support of its Motion for a Preliminary Injunction, must be stricken because Briddell does not have personal knowledge of the facts underlying his vague, conclusory, and false allegations. His assertions are almost entirely inadmissible hearsay, which the Court should disregard.

### Legal Standards Governing the Content of Affidavits

The Briddell Declaration, like an affidavit, purports to be a "true and correct" sworn statement signed "under penalty of perjury." Briddell Decl. at 4.[1] However, it is axiomatic that an affidavit must be stricken or disregarded if it is not made on personal knowledge, if it contains

---

[1] 28 U.S.C. §1746, entitled "Unsworn Declarations Under Penalties of Perjury," provides that a Declaration is the functional equivalent of an Affidavit, the difference being that a Declaration is not sworn to before a notary public.

statements that would be inadmissible in evidence, or if the affiant is not competent [2] to testify to the assertions contained in the affidavit. For instance, under Rule 56(e), which governs motions for summary judgment,

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed. R. Civ. P. 56(e); see also Perez v. Volvo Car Co., 247 F.3d 303, 315 (1st Cir. 2001) (affidavit based on conclusory assertions and statements of "facts" lacking in personal knowledge deemed insufficient to prevent summary judgment); Santiago v. Canon, U.S.A., Inc., 138 F.3d 1, 6 (1st Cir. 1998)(explaining the object of Rule 56(e) "is not to replace conclusory allegations of the complaint with conclusory allegations of an affidavit"); Posadas de Puerto Rico, Inc. v. Radin, 856 F.2d 399, 401 (1st Cir. 1988)(vague and conclusory affidavits insufficient to defeat summary judgment).

The First Circuit has not specifically articulated the requirements for preliminary injunction affidavits. However the court has stressed repeatedly the requirements of Rule 56(e) and has cited that rule with a "cf." reference where the question of an affidavit's probative weight has arisen in other contexts. See, e.g., General Contracting & Trading Co. v. Interpole, Inc., 899 F.2d 109, 115 (1st Cir. 1990). Moreover, in assessing whether to strike or disregard affidavits filed in the context of preliminary injunction motions, state courts in Massachusetts (as well as in other jurisdictions) long have applied standards analogous to those set forth in federal

---

[2] Rule 601 of the Federal Rules of Evidence provides that "[e]very person is competent to be a witness except as otherwise provided in these rules." F.R.E. 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Rule 56(e). *See* UBS Paine Webber Inc. v. Dowd, 14 Mass. L. Rptr. 212, 2001 WL 1772856 at *2 (Mass. Super. Ct. 2001)("In considering the several affidavits, this Court has applied the test included in Mass. R. Civ. P. Rule 56(e), which seems particularly apt when what the plaintiff seeks is an order that is enforceable by contempt penalties."); Levin v. Meyers, 86 S.E.2d 283, 285 (Ga. 1955)("It was not error for the trial court to exclude certain affidavits made by the defendant, for the reason that the affidavits contained hearsay and irrelevant and immaterial matter, and were argumentative."); Riviello v. Journeymen Barbers, Hairdressers & Cosmetologists' Intern. Union of Am., Local No. 148, 199 P.2d 400, 403 (Cal. App. 1948)("It is well settled that affidavits made upon information and belief as to facts that have transpired are hearsay and must be disregarded."); James E. Pepper Distrib. Co. v. Alexander, 137 Ill. App. 369, 1907 WL 2303 at *3 (Ill. App. 1907)(affidavit held insufficient to warrant or support injunction where affiant lacked personal knowledge).[3]

Those requirements are particularly important where, as here, defendants dispute virtually all of Briddell's assertions. Although Rule 65 does not compel a full evidentiary hearing for all preliminary injunction motions, the First Circuit has made clear that an evidentiary hearing should be held where the material facts are genuinely in dispute: "To be sure, when the parties' competing versions of the pertinent factual events are in sharp dispute, such that the propriety of injunctive relief hinges on determinations of credibility, 'the inappropriateness of proceeding on affidavits [alone] attains its maximum." Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir. 1995)(quoting SEC v. Frank, 388 F.2d 486, 491 (2d Cir. 1968)); cf. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1312 (11th Cir. 1998)("[W]here facts are bitterly contested and

---

[3] If TPI argues that the Federal Rules of Evidence do not apply in preliminary injunction proceedings, that would be erroneous. See F.R.E. 1101 (b), (d).

credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held.").[4] In an evidentiary hearing, Briddell's proffered testimony would be totally inadmissible. Therefore, striking his Declaration accomplishes the same thing.

**Briddell Is Incompetent to Attest to the Statements Contained in His Declaration**

The words "personal knowledge" are conspicuously absent from the Briddell Declaration, as well they should be. He does not have personal knowledge of any of the matters he attests to, other than his name and current job title.

For example, he first arrived at TPI on July 11, 2005 -- just one day before Glenn left TPI to start his own business (Glenn Aff. at ¶ 51)[5] -- but that did not stop Briddell from attesting to Glenn's alleged negotiations to buy TPI (Briddell Decl. ¶ 2), which had concluded before Briddell ever arrived. (Glenn Aff. at ¶ 52). Even more extreme, Briddell attested to the circumstances surrounding the execution of Glenn's 1998 employment agreement (Briddell Decl. ¶¶ 14-15), which happened more than seven years before Briddell first came to TPI and about which Briddell has no personal knowledge at all (Glenn Aff. at ¶ 56). Similarly, Briddell repeatedly attested to Glenn's alleged misuse of confidential information of TPI (Briddell Decl. ¶¶ 3, 8, 11, 12, 13), even though he has absolutely no personal knowledge of what information TPI historically treated as confidential (compare Glenn Aff. at ¶¶ 53, 54, 55) and even though he

---

[4] Defendants respectfully refer the Court to their Memorandum in Opposition to TPI's Motion for Preliminary Injunction. That Memorandum explains why TPI's Motion must be denied because TPI cannot demonstrate that it is likely to prevail on the merits of its claim that Glenn is subject to any restrictive covenants under his 1998 Employment Agreement. If the Court agrees that that contract does not, as a matter of law, contain any extant restrictions on Glenn, the Court can deny TPI's Motion without an evidentiary hearing (thereby rendering moot the flaws in the Briddell Declaration).

[5] "Glenn Aff." refers to the Affidavit of Glenn Thompson in opposition to TPI's Motion for Preliminary Injunction, which is being filed contemporaneously with this Motion.

has admitted having absolutely no familiarity with the photo album industry or any related industries before joining TPI (Glenn Aff. at ¶ 51). If Briddell's accusations were supportable, why didn't TPI present to the Court affiants with first-hand knowledge of those activities, instead of hiding behind Briddell's unattributed, conclusory and unsupported allegations (particularly in view of the fact that TPI has had over three months since filing its Complaint to prepare such submissions)? Briddell also attested to Glenn's supposed activities in China (Briddell Decl. ¶ 7), even though he has never visited either TPI's or Splash's facilities there (Glenn Aff. at ¶ 53). The infirmities in Briddell's Declaration go on and on.

As the following table illustrates, the entire Briddell Declaration is replete with these and other grounds for exclusion. (The last column in the table references the corresponding paragraphs of the Glenn Thompson Affidavit that refute the foundation for Briddell's Declaration.)

| Decl. | Statement | Grounds for Exclusion | Glenn Aff. ¶ |
|---|---|---|---|
| 2 | "Thompson negotiated with the boards of directors of TPHI and TPI to buy TPI but was unsuccessful" | -No personal knowledge<br>-Hearsay | 52 |
| 3 | "Thompson left the employ of TPI with full knowledge of every aspect of TPI's business, including its material and labor costs, other manufacturing and distribution costs, secured and unsecured debt, profit margins, customers, and customer identification numbers used to do business with customers, among others" | -No personal knowledge<br>-Hearsay | 50 |
| 4 | "Thompson ... promptly began to act through [Thompson Enterprises, Inc.] to establish a business in direct competition with TPI" | -No personal knowledge<br>-Hearsay<br>-Conclusory | 50 |
| 6 | "Since his resignation from TPI and his formation of Splash, Thompson has solicited at least nine TPI or TPI affiliated employees...." | -No personal knowledge<br>-Hearsay | 53 |

| 7 | "To establish his U.S. competitive business, Thompson visited Hong Kong in the late summer and rented space for his newly created China manufacturing operations in the very same city, on the same street and even in the same building where TPI's China-affiliated company has its offices" | -No personal knowledge<br>-Hearsay | 53 |
|---|---|---|---|
| 8 | "Thompson is using a box factory in Providence, RI to produce and sell photo boxes in direct competition with TPI and, specifically, to a former customer of TPI who was well known to Thompson while he was employed by TPI" | -No personal knowledge<br>-Hearsay | 53 |
| 9 | "Thompson has solicited at least one of TPI's customer representatives to leave the employ of TPI and serve in the same position with Thompson/Splash in an effort to give Thompson/Splash the benefit of the representative's good relationship with one or more TPI customers, earned over time and with much effort and expense" | -No personal knowledge<br>-Hearsay<br>-Conclusory | 54 |
| 10 | "Thompson has contacted one of TPI's primary independent contractor manufacturer's representatives for the purpose of soliciting his abandonment of TPI and representation of Thompson/Splash with TPI's very valuable customer." | -No personal knowledge<br>-Hearsay | 54 |
| 11 | "Thompson has recently used TPI's confidential customer account number to gain access to a TPI customer and solicit business from that customer" | -No personal knowledge<br>-Hearsay<br>-Vague | 53, 54 |
| 12 | "Thompson has solicited and obtained an opportunity to submit product samples to a TPI customer, with the knowledge of every aspect of TPI's business and its relationship with the customer, in an effort to obtain an unfair competitive advantage over TPI in the marketplace." | -No personal knowledge<br>-Hearsay | 54, 55 |
| 13 | "In the incredibly short span of three to four months, Thompson has created a business directly competitive with TPI as to certain products, which is almost its mirror-image, and with the current capacity to compete head-to-head for TPI's valuable customers." | -No personal knowledge<br>-Hearsay<br>-Conclusory | 55 |

| 13 | "Thompson's incredible feat has been made possible by his knowledge of TPI's confidential financial and customer information and by his use of that knowledge...." | -No personal knowledge<br>-Hearsay<br>-Conclusory<br>-Vague | 55 |
| --- | --- | --- | --- |
| 14 | "Thompson contracted to abide by certain Restrictive Covenants set out in the November 24, 1997 Asset Purchase Agreement, and he was paid handsomely by TPHI and TPI for those personal covenants" | -No personal knowledge<br>-Hearsay | 56 |
| 15 | "Since his resignation from TPHI and TPI, Thompson has violated almost every one of the Restrictive Covenants...." | -No personal knowledge<br>-Hearsay | 56 |

The Court justifiably should look askance at such a flimsy, totally inadmissible foundation for the drastic remedy TPI is seeking -- ordering Splash and Glenn out of business.

**Conclusion**

Personal knowledge is the "touchstone" of any affidavit, and "personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise." Perez, 247 F.3d at 315–16. Here, Briddell's Declaration contains little more than vague, conclusory allegations regarding matters about which Briddell has absolutely no personal knowledge. The Court should strike the

C:\Documents and Settings\zsherwin\Local Settings\Temporary Internet Files\Content.IE5\W92ZS5Q7\memo in support of mtn to strike briddell decl.doc

- 7 -

Briddell Declaration and give it no consideration in connection with TPI's Motion for a Preliminary Injunction.

                Respectfully submitted,

                GLENN THOMPSON and THOMPSON ENTERPRISES, INC.

                By their attorneys,

                */s/ Matthew Medeiros (By MLC)*
                Matthew F. Medeiros (BBO #544915)
                LITTLE MEDEIROS KINDER BULMAN & WHITNEY, PC
                72 Pine Street
                Providence, RI 02903
                Tel: (401) 272-8080
                Fax: (401) 272-8195

                */s/ Michael Chinitz*
                Michael L. Chinitz (BBO # 552915)
                Lisa A. Tenerowicz (BBO # 654188)
                ROSE & ASSOCIATES
                29 Commonwealth Avenue
                Boston, MA 02116
                Tel: (617) 536-0040
                Fax: (617) 536-4400

DATED: December 22, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2005, I caused to be delivered by hand the within Memorandum in Support of Defendants' Motion to Strike the Declaration of Emerson Talbot Briddell to Terence P. McCourt, Esq. and Andrew D. Kang, Esq., Greenberg Traurig, LLP, One International Place, Boston, MA 02110, and a copy was also sent via overnight mail to Sandy Tucker, Esq., Williams Mullen, A Professional Corporation, 1021 East Cary Street (23219) P.O. Box 1320, Richmond, VA 23218-1320.

                */s/ Michael Chinitz*