IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMPSON PRODUCTS, INC.,<br>　　　Plaintiff,<br><br>v.<br><br>GLENN THOMPSON, and THOMPSON<br>ENTERPRISES, INC.,<br>　　　Defendants. | Civil Action<br>No. 05-11810-RGS |

## DEFENDANTS' LOCAL RULE 56.1 STATEMENT

In accordance with Local Rule 56.1, defendants submit this Statement of the material facts as to Count III of the Amended Complaint as to which there is no genuine issue to be tried.

1.　On or about November 24, 1997, Glenn Thompson and the other shareholders of Thompson Paper Box Co., Inc. entered into an Asset Purchase Agreement with a newly-formed entity named Thompson Products, Inc. (the plaintiff in this case).  A true and accurate copy of that Agreement is appended as **Exhibit D**. (Glenn Aff. ¶ 4).

2.　On January 5, 1998, Glenn entered into his first Employment Agreement with TPI, a true and accurate copy of which is appended as **Exhibit F**.  Mr. Victor Kiarsis, a Board member, signed that agreement on behalf of TPI. (Glenn Aff. ¶ 5).

3.　**Exhibit F** provided in paragraph 5 that its term was through December 31, 2000.  In 2001 TPI proposed a new employment agreement, but Glenn rejected it as unacceptable, and he never signed it.  TPI has never produced a signed copy. (Glenn Aff. ¶ 6).

4.  **Exhibit F** also provided in paragraph 9 that certain restrictive covenants were to be in effect for "two (2) years following termination of Employee's employment hereunder." On November 22, 2002, approximately six weeks before those restrictive covenants were set to expire, David Jansen, who was then a TPI Director, proposed another version of a new employment agreement, a true and accurate copy of which is appended as **Exhibit H**. That agreement would have modified paragraph 9 by extending the period of the restrictive covenants to two years after Glenn left TPI, whenever that might occur, but Glenn rejected it. That proposed agreement bears the initials "PCSF", which refers to the law firm Pryor Cashman Sherman & Flynn, the same law firm that had drafted on behalf of TPI the Asset Purchase Agreement (**Exhibit D**) and Glenn's original Employment Agreement (**Exhibit F**). (Glenn Aff. ¶ 7).

5.  After **Exhibit F** expired on December 31, 2000, Glenn continued to work for TPI as an employee at will. (Glenn Aff. ¶ 8).

6.  As of early 2003 the duly-appointed directors of TPI were Victor Kiarsis, James Conlon and Glenn. During that time Glenn had ongoing discussions with the other directors about the terms of a new employment agreement. In connection with those discussions, Mr. Kiarsis hired Cameron Read, Esq., as new outside counsel for TPI, because regular corporate counsel also represented Glenn in personal matters such as estate planning. Mr. Kiarsis also commissioned an independent salary survey, a copy of which is appended as **Exhibit I**. (Glenn Aff. ¶ 9).

7.  Eventually a new Employment Agreement was prepared, a true and accurate copy of which is appended as **Exhibit J**. A TPI Board of Directors meeting was held on April 21, 2003, to discuss whether to approve that agreement. Glenn personally

attended, as did Messrs. Kiarsis, Conlon and Read. The Directors discussed the reasons why **Exhibit J** was in the best interest of TPI. During that meeting, Mr. Kiarsis, on behalf of TPI, asked Mr. Read whether, if the agreement were signed, it would be valid and enforceable. Mr. Read, on behalf of TPI, responded "Yes." The directors then voted to approve it, as recorded in TPI's official Board minutes (copy appended as **Exhibit K**). Mr. Kiarsis (who had signed Glenn's original employment agreement, **Exhibit F**, on behalf of TPI) then signed it on behalf of TPI and handed it to Glenn for signature. Glenn stated that he wanted to review it with his legal counsel, which he did. Glenn then signed **Exhibit J** either that same day, April 21, 2003, or the following day, and immediately returned one fully-executed original to Mr. Kiarsis. (Glenn Aff. ¶ 10).

8.  Thereafter the parties proceeded to perform in accordance with **Exhibit J**. For one thing, **Exhibit J** increased Glenn's salary from $200,000 per year to $280,000. TPI paid Glenn the increased salary of $280,000 from 2003 through his departure from TPI, with the full knowledge and approval of its then-management. (Glenn. Aff. ¶ 11).

9.  **Exhibit J** contained none of the Restrictive Covenants to which Glenn once had been subject in **Exhibit F**. (Glenn Aff. ¶ 12).

10. **Exhibit J** remained in effect until Glenn left TPI. Glenn resigned as a Director of TPI effective May 22, 2005 and as President on July 12, 2005 (see **Exhibit L** appended). (Glenn Aff. ¶ 13).

11. Splash has never entered into any agreements of any kind with TPI. (Glenn Aff. ¶ 14).

        Respectfully submitted,

        GLENN THOMPSON and
        SPLASH CREATIONS, INC.

        By their attorneys,


        /s/ Matthew F. Medeiros
        _____
        Matthew F. Medeiros (BBO #544915)
        LITTLE MEDEIROS KINDER
        BULMAN & WHITNEY, PC
        72 Pine Street
        Providence, RI  02903
        Tel:  (401) 272-8080
        Fax:  (401) 272-8195

        /s/ Michael L. Chinitz
        _____
        Michael L. Chinitz (BBO # 552915)
        Lisa A. Tenerowicz (BBO # 654188)
        ROSE & ASSOCIATES
        29 Commonwealth Avenue
        Boston, MA  02116
        Tel:  (617) 536-0040
        Fax:  (617) 536-4400

DATED: February 2, 2006

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 2, 2006.

      /s/ Michael L. Chinitz

      _____
      Michael L. Chinitz, Esq.