UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMPSON PRODUCTS, INC., )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>GLENN THOMPSON, and THOMPSON )<br>ENTERPRISES, INC., )<br>    Defendants. )<br>) | Civil Action<br>No. 05-11810-RGS |

### DEFENDANTS' SURREPLY MEMORANDUM
### IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY

The Reply Memorandum of plaintiff, Thompson Products, Inc. ("TPI"), in support of its motion to disqualify defense counsel is remarkable in two respects: for what it fails to say and for what it says erroneously. Defendants submit this Surreply Memorandum to point out the principal flaws in TPI's Reply in both respects.

Summary of Argument

Although titled a "Reply," TPI's Memorandum presented no rejoinder whatsoever to many points in defendants' Opposition Memorandum that now stand unrebutted, including:

- that the Current and the Prior Litigation are unrelated in virtually all respects (Opposition at 2);

- that, as attested to by Glenn Thompson in his Affidavit, TPI never discussed with Mr. Medeiros in the Prior Litigation the interpretation, validity or enforceability of the non-compete restriction contained in Mark Thompson's 1998 Employment Agreement (Opposition at 6);

- that the case law that defendants discussed (which TPI has almost entirely ignored in its "Reply") requires TPI to point out specific facts and issues that demonstrate the alleged substantial relationship between the two suits (Opposition at 10-14);

       and

- that because Glenn Thompson was the primary source of information disclosed to Mr. Medeiros in the Prior Litigation, Glenn would be free to disclose that same information to any lawyer representing him in the Current Litigation (Opposition at 14-15).

Moreover, the arguments that TPI chose to present in its Reply have their own deficiencies:

- TPI provides the Court with a truncated and misleading description of the case file from the Prior Litigation, through which TPI rummaged without success, to come up with supporting facts (see point "1" below);

- TPI has dramatically undermined its motion to disqualify by filing an Amended Complaint that eliminates even the appearance of any superficial relationship between the Prior Litigation and the Current Litigation (see point "2" below);

- TPI tries to create out of thin air alleged confidential communications in the Prior Litigation that in fact never occurred (see point "3" below); and

- failing to find any evidence to support its position, TPI has turned on its head the case law dealing with a presumption that confidential communications took place (see point "4" below).

Finally, as this Surreply will show, TPI has fallen far short of keeping the strident promise it made to this Court in its Memorandum opposing defendants' motion for leave to file this Surreply, (doc. no. 31), that TPI's review of the file from the Prior Litigation "revealed that, as currently remaining TPI personnel suspected, material statements in the Thompson Affidavit are false and arguments made in the Opposition Memorandum that rely on those statements are, at best, misleading." (Id. at 2). Those irresponsible accusations are unfortunate.

In view of all of the deficiencies in TPI's Reply, it is now evident why TPI went to such extraordinary lengths to preclude defendants from filing this very Surreply. TPI hoped that its misstatements of fact and law might slip by unchallenged.

1.  <u>TPI's Review of the Entire Prior Litigation File Came up Empty-Handed</u>

Only after defendants filed their Opposition Memorandum did TPI first request access to the Prior Litigation file on which its Motion to Disqualify is premised. Defendants gave TPI access to that file immediately. TPI's Reply only refers obliquely to that file. Full disclosure of the contents of that file demonstrates that what TPI discovered only further erodes its "substantial relationship" argument.

Appended as **Exhibit A** is a photo of the files that TPI's counsel inspected. They contain 40,000 or more pages of documents from the Prior Litigation. Included were all pleadings, time entries, correspondence (including copies of emails), interview memoranda, background facts memoranda, legal research materials, deposition transcripts and all other discovery materials. TPI's counsel requested copies of approximately 900 pages of documents from those files, which were provided to him before he left for the day.

Out of all those documents, TPI now presents to the Court just nine exhibits to support its position, which consist of 46 pages, all innocuous, out of the 40,000 produced:

- Exhibit A, a 5-page file memorandum dated May 7, 2002, only one sentence of which is pertinent: "A <u>fifth</u> potential counterclaim is for violation of [Mark's] non-compete." (<u>id</u>. at 5). Mr. Medeiros prepared this memorandum based on his very first meeting with Glenn Thompson, approximately 8 months before Mark's two-year restrictive covenants were scheduled to expire. How Exhibit A helps TPI's argument is anyone's guess.

- Exhibit B, a 2-page email dated December 5, 2002, between Mr. Medeiros and his associate regarding Glenn Thompson's request for a protective order in the Prior Litigation. TPI fails to inform the Court that the reason for that request, as stated in Exhibit B itself, has nothing to do with TPI's "substantial relationship" argument:

    > In addition, I spoke with Glenn regarding a protective order regarding business confidential and competitive sensitive info and documents. He'd like to have one because he is concerned about (especially the recent, 2001-present) sales

3

      and financial info being used by competitors including Mark.

- Exhibit C, a 3-paragraph file memorandum dated December 31, 2002, in which paragraph 1 states "Malden Frames also sells photo albums, so it's something of a conflict of interest for Mark to be working for them." December 31, 2002 was the very last day of the 2-year non-compete period, and the memo obviously refers to consideration of Mark's possible violations up to then.

- Exhibit D, a 7-page comprehensive outline that Mr. Medeiros authored for his deposition preparation session with Glenn Thompson. It included 26 major topic headings, many of which contained multiple sub-headings. Twenty-five of those topics are not even remotely connected to the Current Litigation. Topic 19 is entitled "Mark's breach of non-compete," and TPI seizes upon the second bullet point, which reads "duration was 2 years after employment ended." Mark's employment ended December 31, 2000, so his non-compete obligation ended December 31, 2002. As defendants argued previously (Opposition at 5), and TPI has not contested, that claim has no substantial relationship to TPI's far-fetched claim in this case that the duration of the restrictive covenants in Glenn's 1998 employment agreement was open-ended.

- Exhibit E, a 1-page email dated June 20, 2003, between Glenn Thompson and Mr. Medeiros, regarding Mark's deposition testimony. Counsel asked Glenn, "at page 7 he says that JustCo has never been involved in the sale of photo albums since he left TPI. [D]o you believe him, or is that something that you think he may be lying about?" Glenn responded, "I think Mark has probably not sold any photo albums yet…." That exchange does not support TPI's position, but instead confirms what defendants told the Court in their Opposition, that the non-compete counterclaim was not pursued because of a lack of supporting evidence.[1]

- Exhibit F, an outline of potential legal issues entitled "pretrial memo issues" that was prepared by Mr. Medeiros' associate, in which point 15 for consideration was "[e]nforceability of non-competes; provision was of reasonable scope in time and place." The contemporaneous handwritten notes tell it all, about whether any such claim was being pursued in the Prior Litigation: "- No evidence on this claim (no proof) so just remain silent on it." Defendants appreciate TPI's highlighting this memo, which confirms what defendants previously advised the Court about the abandonment of that claim.

---

[1] If defendants' representation as to the abandonment of that claim were not correct, it is at least curious that TPI did not submit an affidavit to the contrary from Mark Thompson, whom TPI recently has interviewed about re-employment.

4

- Exhibits G and H, defendants' interrogatory answers and document requests respectively, from the Prior Litigation. TPI fails to mention that Exhibit G, the interrogatory answers, was executed on December 30, 2002 -- still within the 2-year restrictive covenant period. Such is the extent of TPI's efforts to come up with <u>any</u> evidence of a "substantial relationship."[2]

- Exhibit I, consisting of a "redacted" version of some 15 pages of excerpts from the 225-page transcript of Mark Thompson's deposition in the Prior Litigation. "Redactions" aside,[3] nothing in the few basic questions asked or answers given (such as why Mark had asked TPI for a $200,000 annual salary, Exhibit I at 127-129) during the course of a two-day deposition advances TPI's argument for disqualification.

<u>Exhibits A through I are the entirety of TPI's evidence of a "substantial relationship," even after TPI's comprehensive review of the file from the Prior Litigation.</u> They do not support TPI's position. "Underwhelming" comes to mind as an apt description of TPI's evidence. Defendants believe that it is important for the Court to have this context, missing from TPI's Reply, for resolution of the "substantial relationship" issue.

2.  <u>TPI Has Undermined Dramatically Its Disqualification Motion, By Its Subsequent Amendments to the Complaint</u>.

In its opening Memorandum in Support of its Motion to Disqualify, TPI argued that the linchpin for disqualification is that "the Restrictive Covenants in the <u>Employment Agreement at issue in the Current Litigation</u> are <u>identical</u> in form and content to the Restrictive Covenants at issue in the Prior Litigation." TPI's Memorandum in Support of Motion to Disqualify, at 4. (emphasis supplied). TPI filed its Motion to Disqualify and that Memorandum in Support on November 14, 2005. TPI has amended its Complaint twice since then, and in the process has jettisoned the very foundation of its Motion to Disqualify.

---

[2] For reasons unknown, TPI unilaterally has "redacted" most of the original Exhibits G and H. Doing so artificially highlights the minor extent to which the covenants were referred to at all in those documents.

[3] <u>See</u> note 2, <u>supra</u>. Defendants would be pleased to supply <u>complete</u> copies of Exhibits G, H and I, if the Court wishes to see them.

In its original Complaint, TPI repeatedly deleted the word "hereunder" from its otherwise verbatim recitation of the restrictive covenants, without disclosing that it had done so. Restoring the deleted words fatally undermined TPI's reliance on Glenn's 1998 Employment Agreement, as defendants have discussed in their opposition to TPI's Motion for Preliminary Injunction (to which TPI has never replied) and in their recently-filed Motion for Partial Summary Judgment. TPI attempted to fix that problem by filing an Amended Complaint. (doc. no. 35). The Amended Complaint now relies upon the November 1997 Asset Purchase Agreement as the supposed source of Glenn Thompson's continuing non-compete obligations. The Asset Purchase Agreement was not referred to at all in TPI's original Complaint, but has now taken over center stage. The 1998 Agreement has been relegated to a throw-in, at best.

In short, TPI's gossamer thread connecting the two lawsuits is now irreparably broken.

So the question now before the Court is the extent to which the restrictive covenants in the Asset Purchase Agreement were involved in the Prior Litigation. The answer is **not at all.** Those covenants were never pleaded; were never the subject of discovery or legal briefing; in short, they were not even mentioned in the Prior Litigation.

Having changed completely the focus and source of the non-compete allegations in its Amended Complaint, how does TPI establish the "substantial relationship" between its new claim under the Asset Purchase Agreement and the claims in the Prior Litigation? TPI does not even attempt to do so, but avoids the issue entirely.

As if that were not sufficient to warrant the denial of TPI's motion to disqualify, TPI also has changed its allegations in numerous other ways that add to the long list of "no substantial relationship" facts that defendants set forth at page 2 of their Opposition:

- TPI has added two new Counts, I and II, seeking to invalidate the 2003 Agreement -- **the Prior Litigation involved no such issues**.

6

- TPI has added a new claim seeking reimbursement by Glenn of salary paid to TPI's Chief Financial Officer, Medi Salyh (Amended Complaint, ¶ 48(c) -- **the Prior Litigation involved no such issue**.

- TPI has added a new Count IV for alleged misappropriation of a long list of alleged trade secrets -- **the Prior Litigation involved no such issues**.

In short, the Current Litigation bears even less relationship to the Prior Litigation than it did when TPI filed its Motion to Disqualify. This Court's observation remains accurate that the only relationship between the two lawsuits is that the word "non-compete" appears in both.

3.   <u>TPI's Bare Speculation as to Unspecified "Confidential" Communications Between Mr. Medeiros and Glenn Thompson is Belied by the Prior Litigation Case File</u>.

At page 2 of its Reply Memorandum, TPI speculates rhetorically that Messrs. Medeiros and Thompson must have discussed the following questions, during the course of the Prior Litigation:

- "Are [the restrictive covenants] reasonable for the needs of the employer, or are they too broad to meet his needs?"

- "Are they reasonable as to scope of activities prohibited?"

- "As to geography?"

- "As to duration of restriction?"

- "Are they overly restrictive for the employee?"

- "Is it in the public interest to enforce the covenants?"[4]

Glenn Thompson's Affidavit in support of defendants' Opposition to TPI's disqualification motion makes clear that there were no discussions of any of those topics at any time during the Prior Litigation. TPI simply asserted a compulsory counterclaim based on a

---

[4] TPI ignores the fact that even if there were such discussions as to Mark Thompson, they did not involve the issue whether 7-year-old restrictions as to Glenn are valid, nor what information that may have been confidential in 2000 is no longer (such as by reason of TPI's website disclosures).

7

written agreement that Mark Thompson indisputably had signed. Mark never put in issue any of those considerations as to its validity. Moreover, the non-compete counterclaim was never pursued.

TPI did not find a scrap of paper among the 40,000 pages in the Prior Litigation file to support any of its rank speculation. Mr. Medeiros' time entries in bills to TPI for the Prior Litigation were fully descriptive of the work performed, and TPI was given the opportunity to review dozens of pages of those time entries. If there were even a single time entry supporting TPI's mere speculation about "confidential" conversations between Messrs. Medeiros and Thompson, TPI would have submitted it with its Reply Memorandum. Moreover, it is not as if in the year 2000 Mr. Medeiros foresaw that in 2005 he would be the object of a disqualification motion and therefore sanitized his time entries to conceal a future "substantial relationship."

The same goes for interview memoranda. As TPI's counsel certainly observed, the Prior Litigation file contained numerous memoranda of substantive communications between Messrs. Medeiros and Thompson. Why isn't there a single sentence in any of those memoranda evidencing TPI's hypothetical discussions? The answer is because they did not occur.

Finally, TPI was given access to literally an entire box of legal research materials that Mr. Medeiros and his associate had prepared and compiled in the Prior Litigation. Surely TPI must have found some evidence that Mr. Medeiros had researched the hypothetical issues. But where is that evidence? There is none.

Ironically, this is a case where the reasons to deny disqualification have become stronger because of TPI's exhaustive search of the Prior Litigation case file, which came up empty-handed. Lacking any evidence to support its position, TPI is reduced to relying on a bare

"presumption" of confidential disclosures, but as the next section of this Memorandum shows, that argument likewise is unavailing for TPI.

4.  TPI's Last-Ditch Argument for a "Presumption" Distorts the Applicable Law.

TPI's last-ditch argument is that notwithstanding its abject failure to unearth any facts in support of its position, "[t]he Court must assume that confidential communications on the issue [of the non-compete covenant] occurred." TPI's Reply Memorandum at 3. Defendants already pointed out in their Opposition Memorandum that TPI misread the applicable case law. TPI's Reply offers no response to defendants' argument on this point, but merely repeats what TPI argued originally. In its Reply TPI continues to turn on its head the "presumption" cases.

On pages 3 and 4 of its Reply Memorandum, TPI cites a number of cases for the proposition that the Court must assume that Mr. Medeiros obtained confidential information during the Prior Litigation. TPI appears to argue that this presumption supports -- or even requires -- a finding that the two cases are substantially related and that disqualification is necessary. However, TPI has misconstrued the law governing such questions.

Under the Massachusetts Rules of Professional Conduct,

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in *the same or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless . . .

Mass. R. Prof. Cond. 1.9(a) (emphasis added). Under this rule, the justification for disqualification in "substantially related" matters is the court's assumption that *in such matters*, the attorney might have received confidential information that he or she might be tempted to use for the benefit of the new client. *See*, *e.g.*, Bays v. Theran, 418 Mass. 685, 691 (1994)("Under the 'substantial relationship' test, a subsequent representation is proscribed 'on the sole ground

9

that the later suit, simply because of its substantial relation to the former one, exposes the attorney to an intolerably strong temptation to breach his duty of confidentiality to the former client.'")(quoting Note, Developments in the Law: Conflicts of Interest in the Legal Profession, 94 Harv. L. Rev. 1244, 1318 (1981)).  The excerpts that TPI quotes from the Borges, Kevlik, and ebix.com cases simply recognize this underlying purpose of the substantial relationship test.

TPI's interpretation of those cases puts the cart before the horse.  No presumption arises *to establish* that there was a "substantial relationship" between two matters where, as here, the nature of the relationship between the two matters is disputed.  As the Supreme Judicial Court has explained, "absent any evidence on the subject, we shall not assume that [an attorney] has disclosed or used any confidential information of her former client, or that she will do so."  In re Adoption of Erica, 426 Mass. 55, 63 (1997).  In order to establish that two matters are substantially related, a party ordinarily must show that the two matters arise out of a common set of facts or that they involve identical issues.  Erica, 426 Mass. at 62 (collecting cases); *see also* Kevlik, 724 F.2d, 844, 851 (1st Cir. 1984) (finding a substantial relationship where second matter "arises from the same body of facts" as the first).  The burden remains on TPI to establish that there is a substantial relationship between the prior litigation and the current suit.  Erica, 426 Mass. at 62; *see also* ebix.com, 312 F. Supp. 2d 82, 90-91 (D.Mass. 2004).

    TPI has not met that burden.
Moreover TPI overlooks the common-sense question of why such a presumption should exist at all in circumstances like these, where the moving party has had full access to the extensive documentation of the conversations and disclosures that actually occurred.

Conclusion

It is unusual when an adversary's reply memo in support of a motion actually helps to defeat the motion. But that is the situation here. TPI has pulled out all the organ stops in support of disqualification, but the organ does not play any louder or truer than before.

For all of the foregoing reasons as well as the reasons stated in defendants' Opposition, the Court should deny TPI's Motion to Disqualify.

>
> Respectfully submitted,
>
> GLENN THOMPSON AND THOMPSON ENTERPRISES, INC.
>
> By their attorneys,
>
> /s/ Matthew F. Medeiros
> _____
> Matthew F. Medeiros (BBO #544915)
> LITTLE MEDEIROS KINDER BULMAN & WHITNEY, PC
> 72 Pine Street
> Providence, RI  02903
> Tel:  (401) 272-8080
> Fax:  (401) 272-8195
>
> /s/ Michael L. Chinitz
> _____
> Michael L. Chinitz (BBO # 552915)
> Lisa A. Tenerowicz (BBO # 654188)
> ROSE & ASSOCIATES
> 29 Commonwealth Avenue
> Boston, MA  02116
> Tel:  (617) 536-0040
> Fax:  (617) 536-4400

DATED: February 7, 2006

**CERTIFICATE OF SERVICE**

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 7, 2006.

            /s/ Michael L. Chinitz
            _____
            Michael L. Chinitz

