IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMPSON PRODUCTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-11810-RGS |
| ) | |
| GLENN THOMPSON, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## PLAINTIFF'S LOCAL RULE 56.1 STATEMENT

Pursuant to Local Rule 56.1, Plaintiff, Thompson Product, Inc. ("TPI"), submits this statement of material facts of record as to which it is contended that there exists a genuine issue to be tried, along with TPI's response to the statements set out by Defendants, Glenn Thompson ("Glenn") and Splash Creations, Inc. ("Splash") in Defendants' Local Rule 56.1 Statement. TPI notes here, however, that there are limited facts "of record" at this time. At the request of Glenn/Splash, the Court has held in abeyance the commencement of discovery pending resolution of Glenn/Splash's motion for partial summary judgment on Count III of the Amended Complaint. To the extent the pending motion relies upon facts outside the November 27, 1997 Asset Purchase Agreement (Tab D of Glenn/Splash's appendix filed in support of their motion) and the January 5, 1998 Employment Agreement (Tab F of that appendix), those facts are only partially developed on the record now by the declarations of Glenn, David Jansen, Cameron Read and Stephen Mallet. Consequently, TPI cannot provide here concise statements of all material facts in issue with references to a complete record. References are made, however, to those portions of the record to date which support a genuine issue of material fact.

A.  TPI'S RESPONSE TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT

1. On or about November 24, 1997 Glenn Thompson and the other shareholders of Thompson Paper Box Co., Inc., entered into an Asset Purchase Agreement with a newly-formed entity named Thompson Products, Inc. (the plaintiff in this case). A true and accurate copy of that Agreement is appended as Exhibit D. (Glenn Aff. ¶ 4).

RESPONSE: No dispute.

2. On January 5, 1998, Glenn entered into his first Employment Agreement with TPI, a true and accurate copy of which is appended as Exhibit F. Mr. Victor Kiarsis, a Board member, signed that agreement on behalf of TPI. (Glenn Aff. ¶ 5).

RESPONSE: No dispute.

3. Exhibit F. provided in paragraph 5 that its term was through December 31, 2000. In 2001 TPI proposed a new employment agreement, but Glenn rejected it as unacceptable, and he never signed it. TPI has never produced a signed copy. (Glenn Aff. ¶ 6).

RESPONSE: No dispute as to the stated term contained in Section 5 of Exhibit F. Who proposed a new employment agreement and when after December 31, 2000 are in dispute. See Declaration of David Jansen ¶ 4 and 5 and Declaration of Stephen Mallet ¶ 8. No dispute that TPI has never produced a signed copy of a 2001 proposed employment agreement.

4. Exhibit F also provided in paragraph 9 that certain restrictive covenants were to be in effect for "two (2) years following termination of Employee's employment hereunder." On November 22, 2002, approximately six weeks before those restrictive covenants were set to expire, David Jansen, who was then a TPI Director, proposed another version of a new employment agreement, a true and accurate copy of which is appended as Exhibit H. That agreement would have modified paragraph 9 by extending the period of the restrictive covenants

2

to two years after Glenn left TPI, whenever that might occur, but Glenn rejected it. That proposed agreement bears the initials "PCSF," which refers to the law firm of Pryor Cashman Sherman & Flynn, the same law firm that had drafted on behalf of TPI the Asset Purchase Agreement (Exhibit D) and Glenn's original Employment Agreement (Exhibit F). (Glenn Aff. ¶ 7).

**RESPONSE:** No dispute as to what Exhibit F says. What proposed employment contract drafts were provided by David Jansen to Glenn Thompson and when are in dispute. TPI disputes that Exhibit H would have modified paragraph 9 of Exhibit F as recited. TPI does not dispute that new contract terms were discussed with Glenn Thompson and no new contract was executed. TPI does not dispute that the initials "PCSF" on Exhibit H refer to Pryor Cashman Sherman & Flynn. TPI disputes whether Pryor Cashman drafted Exhibit D and Exhibit F. It is believed that Exhibits D and F were the product of negotiation between counsel for the buyers and sellers.

5.  After Exhibit F expired on December 31, 2000, Glenn continued to work for TPI as an employee at will. (Glenn Aff. ¶ 8).

**RESPONSE:** TPI does not dispute that Exhibit F expired on December 31, 2000 or that Glenn Thompson continued as president and employee of TPI after that date. In the absence of discovery, TPI disputes that Glenn's Thompson's employment status thereafter was "at will."

6.  As of early 2003 the duly-appointed directors of TPI were Victor Kiarsis, James Conlon and Glenn. During that time Glenn had ongoing discussions with the other directors about the terms of a new employment agreement. In connection with those discussions, Mr. Kiarsis hired Cameron Read, Esq., as new outside counsel for TPI, because regular corporate counsel also represented Glenn in personal matters such as estate planning. Mr. Kiarsis also

3

commissioned an independent salary survey, a copy of which is appended as Exhibit I. (Glenn Aff. ¶ 9).

**RESPONSE:** Because Conlon and Kiarsis are no longer associated with TPI, because they are expected to be antagonistic to TPI and because they have not been deposed, TPI disputes all statements in paragraph 6 except TPI agrees that Kiarsis, Conlon and Glenn Thompson were duly elected directors of TPI and that TPI hired Cameron Read in 2003 as outside corporate counsel.

7. Eventually a new Employment Agreement was prepared, a true and accurate copy of which is appended as Exhibit J. A TPI Board of Directors meeting was held on April 21, 2003, to discuss whether to approve that agreement. Glenn personally attended, as did Messrs. Kiarsis, Conlon and Read. The Directors discussed the reasons why Exhibit J was in the best interest of TPI. During that meeting, Mr. Kiarsis, on behalf of TPI, asked Mr. Read whether, if the agreement were signed, it would be valid and enforceable. Mr. Read, on behalf of TPI, responded "Yes." The directors then voted to approve it, as recorded in TPI's official Board minutes (copy appended as Exhibit K). Mr. Kiarsis (who had signed Glenn's original employment agreement, Exhibit F, on behalf of TPI) then signed it on behalf of TPI and handed it to Glenn for signature. Glenn stated that the wanted to review it with his legal counsel, which he did. Glenn then signed Exhibit J either that same day, April 21, 2003, or the following day, and immediately returned one fully-executed original to Mr. Kiarsis (Glenn Aff. ¶ 10).

**RESPONSE:** As to the statements in paragraph 7, TPI agrees that Exhibit J is what it purports to be and that it was "approved" at a TPI board meeting on April 21, 2003. All other statements in this paragraph are in dispute. Cameron Read did not attend the April 21, 2003 board of directors meeting (Read Declaration ¶ 9); no discussions were had with Read at the

4

meeting (Id.); Read did not say the agreement would be valid and enforceable (Id.); Glenn did not sign it on April 21 or 22 (Mallet Declaration ¶ 8).

8. Thereafter the parties proceeded to perform in accordance with Exhibit J. For one thing, Exhibit J increased Glenn's salary from $200,000 per year to $280,000. TPI paid Glenn the increased salary of $280,000 form 2003 through his departure from TPI, with the full knowledge and approval of its then-management. (Glenn Aff. ¶ 11).

**RESPONSE:** TPI denies that it began to perform Exhibit J. What salary Glenn Thompson drew after April 21, 2003 and when are in dispute. Who knew about the amount and timing of Glenn's salary payment and when they know are in dispute.

9. Exhibit J contained none of the Restrictive Covenants to which Glenn once had been subject in Exhibit F. (Glenn Aff. ¶ 12).

**RESPONSE:** As to the statement in paragraph 9, TPI does not dispute that Exhibit J contained no Restrictive Covenants. To the extent that the phrase "to which Glenn once had been subject" implies that he was not subject to Restrictive Covenants after April 22, 2003, and TPI disputes that "fact."

10. Exhibit J remained in effect until Glenn left TPI. Glenn resigned as a Director of TPI effective May 22, 2005 and as President on July 12, 2005 (see Exhibit L appended). (Glenn Aff. ¶ 13).

**RESPONSE:** TPI disputes that Exhibit J was ever "in effect." TPI does not dispute Glenn Thompson's resignation dates.

11. Splash has never entered into any agreements of any kind with TPI. (Glenn Aff. ¶ 14).

**RESPONSE:** No dispute.

B.  ADDITIONAL MATERIAL FACTS RELEVANT TO DEFENDANTS' MOTION AND NOT IN DISPUTE

1.   TPI is a wholly-owned subsidiary of TPHI.

2.   On March 6, 2003, notice of special shareholders meeting of TPHI for the purpose of removing Conlon and Kiarsis as directors was issued.

3.   Conlon, Kiarsis and Glenn conducted a TPI board of directors meeting on April 21, 2003 and voted to approve the April 21, 2003 Employment Agreement between TPI and Glenn.

4.   On May 1 at the special shareholders meeting of TPHI, Conlon and Kiarsis were removed as directors of TPHI and they were replaced by David Jansen and Stephen Mallet.

5.   Glenn terminated his employment with TPI on July 12, 2005.

6.   Shortly after his termination, he formed Splash Creations, Inc.

7.   Glenn and Splash have since employed several persons who were employed by TPI or businesses in which TPI has a material interest within the six-month period immediately preceding July 12, 2005.

8.   Since July 2005, Glenn has become an officer, director and shareholder in a company that has engaged in activities similar to and competitive with TPI, and Glenn and Splash continue to be engaged in activities in competition with TPI.

THOMPSON PRODUCTS, INC.

By its attorneys,

/s/ Andrew D. Kang
Terence P. McCourt   (BBO #555784)
Andrew D. Kang   (BBO #637476)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA  02110
Tel:  617.310.6000
Fax:  617.310.6001

and

Sandy T. Tucker
Monica McCarroll
WILLIAMS MULLEN, A PROFESSIONAL CORPORATION
1021 East Cary Street (23219)
Post Office Box 1320
Richmond, VA  23218-1320
Tel:  804.783.6418
Fax:  804.783.6507

DATED: February 22, 2006

## CERTIFICATE OF SERVICE

I, Andrew D. Kang, hereby certify that on the 22nd day of February, 2006, I served the foregoing by U.S. Mail to the following counsel of record:

Matthew F. Medeiros, Esq.
LITTLE MEDEIROS KINDER BULMAN & WHITNEY, P.C.
72 Pine Street
Providence, RI  02903

Michael S. Chinitz, Esq.
Lisa A. Tenerowicz, Esq.
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA  02110

/s/ Andrew D. Kang
Andrew D. Kang

bos-fs1\kanga\183940v01\2/22/06\90594.010100