UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMPSON PRODUCTS, INC., )<br>a Delaware corporation, )<br>        Plaintiff, )<br>)<br>v.   )<br>)<br>GLENN THOMPSON and )<br>THOMPSON ENTERPRISES, INC., )<br>        Defendants. )<br>) | C.A. No. 05-11810-RGS |

## DECLARATION OF GLENN THOMPSON

Glenn Thompson declares under penalty of perjury as follows:

1. My name is Glenn Thompson, and I live in Barrington, Rhode Island. I am the President of defendant Splash Creations, Inc. ("Splash") (f/k/a Thompson Enterprises, Inc.).

2. I am submitting this Declaration in compliance with the Court's Order entered May 11, 2006, regarding supplementation of defendants' counterclaim on the issue of whether Robert Jackson was an agent of plaintiff, Thompson Products, Inc. ("TPI").

3. Except where otherwise indicated, I have personal knowledge that all of the statements contained in this Declaration are true.

4. I am 45 years old.

5. My great-grandfather founded Thompson Paper Box Company in approximately 1906. That company was the predecessor of TPI. My father was the President of Thompson Paper Box Company until his sudden death in 1979.

6. When my father died, I was a student at Stonehill College. I dropped out of school and took over the operation of the business at the age of 19.

7. I purchased the business from my mother in 1981, incorporated it that same year as Thompson Paper Box Co., Inc., and became President.

8. I worked for Thompson Paper Box and its successor, TPI, my entire business career, spanning some 27 years, until I left in the summer of 2005 to start a new business, Splash.

9. In approximately 1993 TPI hired Mr. Jackson as an outside sales representative. From then until I left TPI last year, I interacted with Mr. Jackson on a weekly basis, regarding sales, shipments, forecasting, changes in product configuration and other matters within his area of responsibility.

10. Throughout that period, Mr. Jackson travelled from Minneapolis to TPI's offices in Lakeville, Massachusetts at least four times a year, to assist in the design of new products for TPI. I also attended industry trade shows with Mr. Jackson, including one in Germany.

11. Throughout that period, TPI determined the prices for its products and the selection of the particular products offered to each of its customers. Mr. Jackson had no discretion in that regard.

12. TPI exercised sole authority over the accounts on which Mr. Jackson was permitted to call. For at least the last 8 years Mr. Jackson has called on only two accounts for TPI -- Target Stores and Shopko. He was never requested nor permitted to solicit any other potential customers of TPI.

13. TPI required Mr. Jackson to submit reports of all significant communications that he had with representatives of Target and Shopko.

14. TPI prohibited Mr. Jackson from representing any other vendors with respect to any of the product lines that TPI sold.

15. Mr. Jackson was the sole contact person by TPI with Target and Shopko -- two major customers of TPI -- on a regular basis.

16. Mr. Jackson's responsibilities for TPI were analogous to those of a sales manager. Among other things, he was required to monitor point-of-sale information weekly, for the purpose of recommending to Target changes in its product mix. He was obligated to make regular in-person visits to selected Target retail stores, to confirm that the color, quality and other characteristics of TPI's products were up to specification and had not degraded in shipment or in the store. Mr. Jackson also advised Target representatives of problems that he had observed with _other_ vendors' products, which was information that Target appreciated receiving. Mr. Jackson also had responsibility to negotiate with Target on behalf of TPI over returns or allowances that Target sought from TPI. He also took responsibility for entertaining representatives of Target, to engender good will for TPI.

17. TPI monitored and directed Mr. Jackson's sales presentations. For example, Mr. Jackson from time to time had problems with respect to attitudes he displayed toward TPI's customers, and TPI provided guidance to correct those problems.

18. For many years TPI has considered Mr. Jackson's office to be a location of TPI itself, for purposes of corporate taxes and other matters. As shown in Exhibit D to TPI's Supplemental Declaration of Talbot Briddell in this case (copy appended), TPI's

stationery lists Minneapolis as one of its "SALES OFFICES". TPI's only presence in Minneapolis is Mr. Jackson's office.

19. At around the same time that Mr. Jackson made the statements to Target upon which the Counterclaim is based, I am informed that he was brought back to TPI's offices and was given instruction in how to communicate with customers regarding my departure from TPI. I am informed that those instructions included some of the very falsehoods that are recited in the Counterclaim, and that TPI reported to him that it had drafted a letter to TPI's customers generally that contained the same misstatements. I am informed that at that same time TPI required Mr. Jackson to sign a statement that he would not communicate with me.

20. I believe, and expect that discovery would show, that Mr. Jackson did not have any independent knowledge on which to base the disparaging statements he made to Target, and that TPI must have provided him with those statements.

Executed this 30th day of May, 2006.

_____
GLENN THOMPSON



China Trip Summary

9/2/05 – 9/24/05

**REDACTED**

HEADQUARTERS: 310 Kenneth Welch Drive  Lakeville, MA 02347-1348 U.S.A.  ●  TELEPHONE: (508) 946-4500 FAX: (508)957-8586
SALES OFFICES: Hong Kong ● China ● Bentonville, AR ● Minneapolis, MN

EXHIBIT
D



**REDACTED**

HEADQUARTERS: 310 Kenneth Welch Drive  Lakeville, MA 02347-1348 U.S.A.  ●  TELEPHONE: (508) 946-4500 FAX: (508)957-8586
SALES OFFICES: Hong Kong ● China ● Bentonville, AR ● Minneapolis, MN





HEADQUARTERS: 310 Kenneth Welch Drive  Lakeville, MA 02347-1348 U.S.A.  ●  TELEPHONE: (508) 946-4500 FAX: (508)957-8586
SALES OFFICES: Hong Kong ● China ● Bentonville, AR ● Minneapolis, MN



**REDACTED**

I returned to Hong Kong on the afternoon of 9/21 to finish work on preparation for the Walmart Canada meeting on 9/22. When I arrived, I found out that Glenn Thompson had walked into our office earlier that afternoon. He apparently waited for someone to leave for lunch and grabbed the door and walked in. Philip and I then went to the security desk to both request that they keep him out of our office and to ask again if he had leased space in our building. The security people were very evasive and said that they couldn't reveal the names of any new tenants. Philip and I got back in the elevator and began to stop at every floor to look around. On the 9th floor, Philip stepped around a corner into a new office under construction and there was Helen Li. We later found out that Glenn's new business is called Splash Creations.



**REDACTED**

The next day, Betty and I completed this work and submissions were made on time to Walmart on 9/24. On 9/24, just before noon, I received a call from Philip to inform me that he had just heard from Henry Heng that Glenn Thompson was at our factory. Philip had also called Medy, who was boarding his flight, with this news. We asked that Henry try to get a photograph of Glenn at our facility and ask him to leave or have him ejected from the facility. Henry was able to take a few photos and Glenn left.

HEADQUARTERS: 310 Kenneth Welch Drive  Lakeville, MA 02347-1348 U.S.A. ● TELEPHONE: (508) 946-4500 FAX: (508)957-8586
SALES OFFICES: Hong Kong ● China ● Bentonville, AR ● Minneapolis, MN