UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11810-RGS

THOMPSON PRODUCTS, INC.

v.

GLENN THOMPSON, et al.

MEMORANDUM AND ORDER ON
MOTION FOR SUMMARY JUDGMENT ON
COUNT III OF THE AMENDED COMPLAINT

July 12, 2006

STEARNS, D.J.

The facts of this case are far more complicated than the narrow question of contract interpretation that is the subject of summary judgment. The issue presented is this: Does a survival clause that contains no time limitation trump a provision incorporated by reference that does? I conclude that the answer, at least in the circumstances of this case, is that it does not.

BACKGROUND

Thompson Paper Box Company (TPB) was established in 1906 by Glenn Thompson's grandfather. TPB, which manufactured specialty paper goods, photo albums, and gift boxes, prospered mightily. On November 24, 1997, TPB was sold by Glenn Thompson and other members of the Thompson family to Thompson Products, Inc. (TPI) for $45 million. Under the terms of the Asset Purchase Agreement (APA), Thompson agree to stay on as President of TPI and as a member of its Board of Directors. His employment contract included a fairly standard noncompetition agreement. TPI alleges

in Count III of the Amended Complaint that Thompson, who left TPI in 2005, breached the noncompetition agreement by creating Splash Creations, Inc. (Splash), to compete directly with TPI.[1]

In his January 5, 1998 Employment Agreement (1998 EA), Thompson promised that "during the Employment Term of this Agreement and for a period of two (2) years following termination of Employee's employment *hereunder*," he would not disclose any of TPI's confidential business information. 1998 EA, § 9(a) [emphasis supplied]. He also promised to refrain from soliciting TPI employees and from competing, directly or indirectly, with TPI. Id. §§ 9(b), 9(c). The Employment Term was stipulated to expire on December 31, 2000, "unless sooner terminated pursuant to section 8 hereof." Id. at § 5. Section 8 permitted either party upon notice to the other to terminate the agreement prior to the stipulated expiration date for whatever reason.

This brings us to the dispute. Section 9(g) of the 1998 EA provided that:

> [n]otwithstanding termination of this Agreement as provided in Section 8 herein or any other termination of Employee's employment with the Employer, the Employee's obligations under this Section 9 shall survive any termination of the Employee's employment with the Employer at any time and for any reason.

Section 2.4(b) of the APA, on which TPI focuses, states:

> [i]t is agreed and understood by and among the parties to this Agreement that the Restrictive Covenants incorporated by reference in subsection (a) above are each individually essential elements of this Agreement and that, but for the agreement of [Glenn Thompson] and [Mark Thompson] to comply

---

[1] Glenn Thompson moves for partial summary judgment on Count III only of the Amended Complaint. He does not dispute the existence of material (and as yet undeveloped) disputed facts that preclude any consideration of summary judgment on the remaining six Counts.

2

with such Restrictive Covenants, Purchaser would not have agreed to enter into this Agreement.[2]

The "Restrictive Covenants incorporated by reference" in paragraph 2.4(a) and "made a part hereof as if reinstated herein" are the noncompetition provisions of sections 9(a), (b), and (c) of the 1998 EA.[3] The APA, unlike the 1998 EA, contained no (post-closing) expiration date.

On April 21, 2003, in anticipation of a reconstitution of TPI's Board of Directors, the existing Board voted Thompson a new employment contract (the 2003 EA) with a substantial raise in salary.[4] The new agreement contained no restrictive covenants.[5] TPI maintains that Thompson executed the 2003 EA only after it had been "effectively withdrawn" by TPI.[6] Whatever the case, until the summer of 2005, things seemed to go swimmingly. Thompson remained a Director of TPI until the end of May of 2005, and

---

[2] Mark Thompson is Glenn Thompson's brother. Mark Thompson is an important figure in the larger lawsuit, but not in the instant motion.

[3] It is not clear to me that paragraph 2.4 of the APA in fact incorporated section 9(g) of the 1998 EA as the incorporating language refers to the "Restrictive Covenants" of section 9, of which section 9(g) was not. The parties, however, assume that section 9(g) is incorporated in the APA, and I have proceeded on their assumption.

[4] TPI maintains that the Directors were acting at Thompson's behest and in breach of their fiduciary duty to TPI in awarding him the 2003 EA. These allegations clearly raise disputes of fact.

[5] According to the Amended Complaint, the 1998 EA was replaced in 2001 by a new agreement modifying, among other terms, section 5 of the 1998 EA, to provide for automatic renewal of the EA on an annual basis. Whether the 2001 EA was ever executed is a matter of dispute.

[6] Thompson concedes that TPI's claim that the 2003 EA was withdrawn raises a disputed issue of fact. Thompson relies for summary judgment solely on the argument that the expiration of the covenants of the 1998 EA relieved him of any duty not to compete with TPI.

continued as TPI's President until July 12, 2005, when he resigned. On July 18, 2005, Thompson formed Splash. TPI's allegation that Splash was created for the purpose of competing with TPI must, for present purposes, be deemed true, and Thompson does not disagree. Rather, he argues that when he launched Splash as a competitor of TPI, he was no longer bound by the restrictive covenants of the 1998 EA.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Gaskell v. Harvard Co-op Soc., 3 F.3d 495, 497 (1st Cir. 1993). To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). If the moving party makes a prima facie case, the burden "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." Id. TPI agrees that purposes of Count III, it must show that a plausible interpretation of the APA, singly or in conjunction with the 1998 EA, bound Thompson to the noncompetition covenants at the time he left TPI in 2005.

"Contract interpretation questions, under Massachusetts law, are ordinarily questions of law for a court; contract law, unlike tort law, thus favors judicial resolution of disputes." Nadherny v. Roseland Property Co., Inc., 390 F.3d 44, 48 (1st Cir. 2004). "Whether or not a term as used by parties to a contract is ambiguous is a question of law. . . . However, where a term is ambiguous, its meaning presents a question of fact." Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp., 57 F.3d

56, 75 (1st Cir. 1995). "[T]he actual meaning of a contractual provision which can *reasonably* accommodate two or more interpretations should be left to the jury. . . . But the question whether a provision can reasonably support a proffered interpretation is a legal one, to be decided by the court." Fleet National Bank v. Anchor Media Television, Inc., 45 F.3d 546, 556 (1st Cir. 1995). Contract language is ambiguous "where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken." Fashion House, Inc. v. K Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989). "However, an ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other's." Jefferson Ins. Co. of N.Y. v. Holyoke, 23 Mass. App. Ct. 472, 475 (1987).

Thompson argues for summary judgment on two grounds: (1) that the restrictive covenants in the 1998 EA expired by their own terms on December 31, 2002; and (2) that the 1997 APA did not impose any covenant apart from those incorporated by reference to the 1998 EA.[7] The parties agreed at oral argument that the present dispute turns on the meaning of section 9(g) of the 1998 EA. More precisely, did the two-year noncompetition term stipulated in sections 9(a), (b), and (c) of the 1998 EA begin to run when the EA expired on December 31, 2000, or was it triggered by Thompson's resignation on July 12, 2005? The answer depends on the meaning of the phrase "following termination of Employee's employment hereunder." Thompson contends that the two-year term was intended to begin either on the date of his termination under section 8 or, if that did not

---

[7]As previously noted, a third argument that Glenn Thompson and TPI entered into a successor, fully-integrated EA in 2003 raises disputed issues of fact.

occur, on the date of the expiration of the EA on December 31, 2000. TPI maintains that the incorporation of the more loosely worded section 9(g) of the 1998 EA into paragraph 2.4 of the APA effectively annulled any time limit imposed by the noncompetition provisions of section 9.[8]

In legal parlance, "hereunder" means "in accordance with this document." Black's Law Dictionary (8th ed 2004). "This document," of course, refers to the 1998 EA itself. The practical intent of section 9(g) was to provide for the survival of the noncompetition agreements should Thompson's employment be terminated under section 8 of the EA. What the EA did not (at least in so many words) contemplate – is what happened. The EA expired on December 31, 2000, and contrary to the likely expectations of the drafters of the EA, TPI retained Thompson either under a new EA (as TPI contends), or at-will (as Thompson asserts).[9] Paragraph 2.4 of the APA is of little assistance to TPI in this regard. Paragraph 2.4 of the APA refers to "the Restrictive Covenants incorporated by reference in subsection (a) above." Subsection (a) of paragraph 2.4 in turn references the noncompetition provisions of section 9 of the EA, that is sections 9(a), (b), and (c). As Thompson accurately notes, where, as here, one contract incorporates a portion of another (the 1998 EA) by reference, the incorporated language must be construed as an integral part of the appropriating document (the APA). See Chelsea Indus., Inc. v. Florence, 358

---

[8] TPI complains that it is disadvantaged by the fact that Thompson's summary judgment motion also raises issues of disputed fact on which it has not been permitted to take discovery. This would be reason to deny the motion for summary judgment had Thompson not withdrawn all factually-based claims at oral argument and focused solely on the issue of contract interpretation.

[9] Another possibility posited by TPI is that Thompson agreed to be bound by the 2001 EA and that the superseding 2003 EA was a nullity. If so, TPI may have a viable cause of action under the alternate pleading language in paragraph 41 of Count III.

Mass. 50, 54-55 (1970); Burke v. Lappin, 1 Mass. App. Ct. 426, 430-431 (1973). Thus, under either paragraph 2.4 of the APA or section 9(g) of the 1998 EA, the restrictive covenants of section 9 expired on December 31, 2002.

### ORDER

For the foregoing reasons, Thompson's motion for summary judgment is ALLOWED as to so much of Count III as alleges that he was bound by the restrictive covenants of the 1998 EA. Insofar as Count III relies on the 2001 EA, the motion is DENIED. Because I am not persuaded that TPI will necessarily prevail on the merits of the litigation, the Motion for a Preliminary Injunction is DENIED. Pursuant to the parties' joint submission of January 12, 2006, the court orders that: (1) discovery commence as of the date of this Order; (2) that fact discovery be concluded by January 15, 2007; (3) that dispositive motions be filed by February 23, 2007; (4) that responses be filed no later than March 16, 2007; and (5) that all other terms of discovery be governed by the provisions of the Local Rules unless otherwise by order of the court.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE