**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THOMPSON PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  05-11810-RGS |
| | ) | |
| GLENN THOMPSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff, Thompson Products, Inc. ("TPI"), by counsel, moves the Court for entry of an order enforcing settlement of this action on terms agreed upon by the parties, by counsel, in mid-September and for an award of TPI's attorneys fees and costs incurred in filing and prosecuting this motion.  Without explanation, or even response to telephone calls and emails, Defendants have refused to execute the agreed settlement documents and refused to perform the agreed terms.

A memorandum in support of the motion is filed herewith.

**THOMPSON PRODUCTS, INC.**

By its attorneys,

/s/  Andrew D. Kang
Terence P. McCourt   (BBO #555784)
Andrew D. Kang       (BBO #637476)
Greenberg Traurig, LLP
One International Place
Boston, MA  02110
Tel:  617.310.6000
Fax:  617.310.6001
and

Sandy T. Tucker
Monica McCarroll
WILLIAMS MULLEN, A PROFESSIONAL CORPORATION
1021 East Cary Street (23219)
Post Office Box 1320
Richmond, VA  23218-1320
Tel:  804.783.6418
Fax:  804.783.6507

DATED:  November 8, 2006


CERTIFICATE OF SERVICE

I, Andrew D. Kang, hereby certify that on the 8th day of November, 2006, I served the

foregoing by U.S. Mail to the following counsel of record:

Matthew F. Medeiros, Esq.
LITTLE MEDEIROS KINDER BULMAN & WHITNEY, P.C.
72 Pine Street
Providence, RI  02903

Michael S. Chinitz, Esq.
Lisa A. Tenerowicz, Esq.
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA  02110


/s/ Andrew D. Kang
Andrew D. Kang


1347612v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| THOMPSON PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-11810-RGS |
| | ) | |
| GLENN THOMPSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**AFFIDAVIT OF SANDY T. TUCKER**

| | |
|---|---|
| COMMONWEALTH OF VIRGINIA | ) |
| | ) to-wit |
| City of Richmond | ) |

This day Sandy T. Tucker appeared before me, the undersigned Notary Public, and upon being sworn, said as follows:

1.      I am an attorney and shareholder in the law firm of Williams Mullen in Richmond, Virginia.  Williams Mullen and Greenberg Traurig are counsel of record for Plaintiff, Thompson Products, Inc. ("TPI") in this action, and I am authorized by TPI to file this affidavit on its behalf in support of the Motion to Enforce Settlement Agreement.

2.      In May 2006 the parties began negotiating terms for settlement of this action which lead to agreement on all terms in September.

3.      Negotiations began by principals of the parties to this action meeting to discuss general terms.  At that initial meeting, the core terms of settlement were agreed upon:  in exchange for a release and dismissal of the action, defendant Glenn Thompson ("Mr. Thompson") would convey to TPI, or its designee, his stock in TPI's parent company, Thompson Products Holdings, Inc. ("TPHI"); Mr. Thompson would convey to TPI or its designee his

interest in a certain promissory note made by TPHI (the "Note"); and Mr. Thompson would use his best efforts to persuade two non-parties (the "Weingeroffs") to convey their stock in TPHI and their interest in the Note to TPI or its designee. A draft Settlement Agreement and two assignment agreements were initially drafted by Williams Mullen, at TPI's request, to be delivered by a TPI representative to Mr. Thompson and the Weingeroffs to begin discussion of the details of the core terms. That TPI principal delivered those initial drafts to Mr. Thompson when they met, along with the Weingeroffs and counsel for the Weingeroffs, Carl I. Freedman, an attorney with Chace Ruttenberg & Freedman, LLP in Boston, at the initial settlement meeting in May.

4.      Thereafter, Mr. Freedman assumed the representation of not only the Weingeroffs but also Mr. Thompson (and Splash Enterprises, Inc.) in negotiating settlement terms, and Mr. Freedman expressly represented to Williams Mullen that he was authorized to do so. Trial counsel for Mr. Thompson and co-defendant, Splash Enterprises, Inc. ("Splash"), in this action confirmed to me Mr. Freedman's authority to act for Mr. Thompson and Splash. I and trial counsel for Mr. Thompson and Splash also agreed to suspend all discovery in this action pending settlement negotiations.

5.      Between that initial meeting in early May to discuss core settlement terms and September 21, 2006,  Mr. Freedman carried on settlement negotiations with Alexander C. Graham, Jr., Monica McCarroll and/or me on behalf of TPI. Mr. Graham and Ms. McCarroll are also members of Williams Mullen who have been working with me on the pending action. These negotiations initially included how the contemplated transaction would be structured, and once the structure was determined, negotiations focused on specific provisions of the draft agreements. During this time Mr. Freedman and Williams Mullen exchanged revised drafts of the settlement

documents as terms were rejected, revised, rewritten, discussed and then resolved. See Exhibits A through U attached.

6.     The settlement documents included a Settlement Agreement among TPI, TPHI, Mr. Thompson and Splash; an Assignment Agreement between Mr. Thompson and TPHI; an Assignment and Release Agreement between Frederick L. Weingeroff and TPHI; and an Assignment and Release Agreement between Mr. Thompson and Frederick L. Weingeroff as Executor of the Estate of Gregg Weingeroff.

7.     On September 7, I sent Mr. Freedman revised versions of the four settlement documents. Thereafter, only the Settlement Agreement terms were further negotiated. The versions of the three assignment agreements were never again in issue. Exhibit K attached.

8.     On September 12, Mr. Freedman sent me by email his final, proposed substantive revisions to the Settlement Agreement. Exhibit N attached.

9.     At 4:35 p.m. on September 13, on behalf of TPI and with its authority, I advised Mr. Freedman that all of his final substantive revisions to the Settlement Agreement were acceptable to TPI, and I asked him to make three final non-substantive revisions to the Agreement and proceed with execution by his clients. Exhibit O attached.

10.    Almost a week passed with no further communication from Mr. Freedman about his clients' execution of the settlement documents. Therefore, I emailed him on September 20 asking about the status of document execution and reciting that "[w]e are in agreement on terms." Exhibit R attached.

11.    On September 21, Mr. Freedman advised me by email that he had made "the final changes to the Settlement Agreement and forwarded them to Glenn for his final review." He went on to say that he would "email it (i.e. the signed Settlement Agreement) when he authorizes

me to do so." Exhibit S attached.

12. A week or so passed with no further communication from Mr. Freedman about the completion of his tasks. Therefore, during the week ending September 29, I telephoned and left a message for him to call me about the status of execution. He did not return my call.

13. On September 29, I emailed him to express concern about the delay and his non-responsiveness, saying that "[i]t is my understanding that settlement has been reached, with all details agreed upon and only the formality of final form agreements being submitted and signed, followed by closing as provided in the Settlement Agreement." I also noted that if settlement were not finalized promptly, I intended to file a motion to enforce settlement. Exhibit V attached.

14. Mr. Freedman never contested the conclusions that settlement had been reached, that the versions of the three Assignment Agreements that I sent to him on September 7 (Exhibit K) were the finally agreed terms for those documents or that his September 12 version of the Settlement Agreement (Exhibit N) contained the finally agreed terms of the Settlement Agreement. Indeed, Mr. Freedman has not responded further to me in any way. He or his client holds the final agreed, revised Settlement Agreement, and to the best of my knowledge, none of the four settlement documents has been executed by Mr. Thompson, Splash or the Weingeroffs.

15. On October 1, Mr. Thompson advised a representative of TPI that he was reviewing the Settlement Agreement with his accountant. TPI suspects that Mr. Thompson is purposely delaying execution, and TPI is concerned that he has no intention of signing the settlement documents or performing the settlement terms.

Executed this 6th  day of November, 2006.

_SANDY T. TUCKER_
SANDY T. TUCKER

Subscribed and sworn to before me, the undersigned notary public, this 6th day of November, 2006.

_Karoline M. Boorsie_
NOTARY PUBLIC

My commission expires:  9/30/10                    .

1348589v1

## Tucker, Sandy T.

**From:** Carl I. Freedman [CFreedman@crfllp.com]
**Sent:** Friday, July 28, 2006 4:20 PM
**To:** Tucker, Sandy T.
**Subject:** Thompson

Sandy - A favor: could you email the Settlement Agreement as well as the Assignment Agreement and the Assignment and Release Agreements? It will be easier to pass along my feedback to you if I mark up an emailed version than to fax back hand written comments on the hard copies you expressed to me recently. Thanks a lot and have a good weekend.

Carl

Carl I. Freedman, Esq.
Chace Ruttenberg & Freedman, LLP
One Park Row    Suite 300
Providence, Rhode Island 02903
Telephone: 401.453.6400
Facsimile:  401.453.6411
Email: cfreedman@crfllp.com

To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**EXHIBIT A**

## Tucker, Sandy T.

**From:**    Tucker, Sandy T.
**Sent:**    Friday, July 28, 2006 4:36 PM
**To:**      'Carl I. Freedman'
**Subject:** RE: Thompson

I think these are the final versions sent to you earlier in the month.

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Friday, July 28, 2006 4:20 PM
**To:** Tucker, Sandy T.
**Subject:** Thompson

Sandy - A favor: could you email the Settlement Agreement as well as the Assignment Agreement and the Assignment and Release Agreements? It will be easier to pass along my feedback to you if I mark up an emailed version than to fax back hand written comments on the hard copies you expressed to me recently. Thanks a lot and have a good weekend.

Carl

Carl I. Freedman, Esq.
Chace Ruttenberg & Freedman, LLP
One Park Row    Suite 300
Providence, Rhode Island 02903
Telephone: 401.453.6400
Facsimile:  401.453.6411
Email: cfreedman@crfllp.com

To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**EXHIBIT B**

# DRAFT

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into on this _____ day of July, 2006, by and between Thompson Products, Inc., a Delaware corporation ("TPI") , Thompson Products Holdings, Inc., a Massachusetts corporation ("TPHI"),  Glenn Thompson of Barrington, Rhode Island ("GT"), and Splash Creations, Inc., a Rhode Island corporation (formerly, Thompson Enterprises, Inc.) ("Splash").

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, GT, Mark A. Thompson, Frederick L. Weingeroff and Gregg Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to TPI; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, TPHI, parent of TPI, executed and delivered to Box Company a Subordinated Promissory Note payable to Box Company in the original principal amount of FIVE MILLION DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, incident to closing on the Asset Purchase Agreement, GT purchased from TPHI 4,875 shares of TPHI common stock (the "Stock"); and

WHEREAS, after closing on the Asset Purchase Agreement, GT was employed by TPI as its President and CEO; and

WHEREAS, GT remained in the employ of TPI as its President until July 2005 when he resigned; and

WHEREAS, shortly after his resignation from TPI, GT formed Splash and began operations in competition with TPI; and

# **DRAFT**

WHEREAS, a dispute arose between TPHI and TPI, on the one hand, and GT and

Splash, on the other, as to GT's right to compete against TPI, resulting in the filing of an action

styled Thompson Products, Inc. v. Glenn Thompson and Splash Creations, Inc., CA No. 05-

11810-RGS, in the United States District Court for the District of Massachusetts (the

"Litigation") wherein claims and counterclaims were asserted by plaintiff and defendants against

each other; and

WHEREAS, the parties have now agreed upon terms for the compromise and settlement

of the Litigation and other claims among them and wish to reduce those terms to writing in this

Settlement Agreement;

NOW, THEREFORE, in exchange for the promises made each to the other herein, and

for other good and valuable consideration, the receipt and sufficiency of which are hereby

acknowledged, the parties agree as follows:

1.     Transfer of GT's Interest in Subordinated Note.  At Closing on settlement, GT

will execute and deliver the attached Assignment Agreement transferring to TPI, free and clear

of all liens and encumbrances, all of GT's right, title and interest in the Subordinated Note and in

all proceeds of the Subordinated Note.

2.     Transfer of Stock.  At Closing on settlement, GT will transfer to TPI, free and

clear of all liens and encumbrances, all issued and outstanding shares of Stock owned by GT by

endorsing all share certificates evidencing the Stock for transfer to TPI and delivering such

certificates to TPI.

3.     Dismissal of Litigation.  At Closing on settlement, counsel for the parties will

endorse and promptly thereafter tender to the Court for entry a Dismissal Order With Prejudice

2

**DRAFT**

in the form attached hereto. TPI's and TPHI's obligation under this paragraph is conditioned upon completion of performance of GT's obligations to TPI under paragraphs 1 and 2 above.

4.    General Release by GT and Splash. At Closing, upon performance of GT's obligations under paragraphs 1 and 2 herein, GT and Splash, on behalf of themselves, as well as on behalf of their respective officers, directors, agents, servants, employees, heirs, legal representatives, successors and assigns, as applicable, and on behalf of their respective parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, without further act or deed by any party, forever release, remise, discharge and quitclaim all claims, demands, actions and causes of action, and liabilities of any nature whatsoever, whether at law or in equity, which GT and Splash or either of them ever had, now has, or hereafter may have or claim to have against TPI and/or TPHI, as well as against their affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such affiliates, including all such claims, demands, actions and causes of action and liabilities of any nature whatsoever that are then known and all those that are not then known but which may thereafter be discovered, arising out of, pertaining to or relating in any way to any act, transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind whatsoever arising or occurring prior to the date hereof, including, without limitation, any such claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to the Asset Purchase Agreement; GT's employment by TPI; all employment contracts between GT and TPI; GT's resignation from TPI; GT's and Splash's activities in competition with TPI; and the Litigation or any other matter, including all claims and counterclaims made therein and all claims and counterclaims that might have been made by GT and Splash against TPI or against its parents, subsidiaries or affiliates therein.

3

**DRAFT**

5. <u>General Release by TPI and TPHI</u>.  At Closing, upon performance of GT's obligations under paragraphs 1 and 2 herein, TPI and TPHI, on behalf of themselves, as well as on behalf of their respective officers, directors, agents, servants, employees, successors and assigns, as well as on behalf of their respective parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, without further act or deed by any party, forever release, remise, discharge and quitclaim all claims, demands, actions and causes of action, and liabilities of any nature whatsoever, whether at law or in equity, which TPI and TPHI or either of them ever had, now has or hereafter may have or claim to have against GT and/or Splash, as well as against their affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such affiliates, arising out of, pertaining to or relating in any way to any act, transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind  whatsoever arising or occurring prior to the date hereof, including, without limitation, any such claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to the Asset Purchase Agreement; GT's employment by TPI; all employment contracts between GT and TPI; GT's resignation from TPI; GT's and Splash's activities in competition with TPI; and the Litigation or any other matter, including all claims and counterclaims made therein and all claims and counterclaims that might have been made by TPI against GT and Splash or against the parents, subsidiaries or affiliates of Splash or the heirs, successors, legal representatives, or assigns of GT therein.  This release is limited to such claims, demands, actions and causes of action that are known to TPI and/or TPHI as of the date of Closing and does not include any claims, demands, actions or causes of action that TPI or TPHI has against GT or Splash which are unknown to TPI or TPHI as of the date of Closing.

4

**DRAFT**

6.  Non-Solicitation.

(a) GT and Splash each agrees that for a period of one (1) year from the date of Closing on this Settlement Agreement, he/it will not, directly or indirectly, solicit, employ or hire, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was employed by TPI or TPHI or by any business in which TPI or TPHI has a material interest, either direct or indirect, as an officer, partner, shareholder or beneficial owner within the six-month period immediately preceding the date of such solicitation or employment.

(b) TPI and TPHI each agrees that for a period of one (1) year from the date of this Settlement Agreement, it will not, directly or indirectly, solicit, hire or employ, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was employed by GT or Splash or by any business in which GT or Splash has a material interest , either direct or indirect, as an officer, partner, shareholder or beneficial owner within the six-month period immediately preceding the date of such solicitation or employment.

7.  Confidentiality. GT and Splash acknowledge that GT possesses "Confidential Information" belonging to TPI and/or TPHI to which GT was exposed during his employment by TPI and by TPI's predecessors. "Confidential Information" shall mean all nonpublic information concerning TPI's business relating, without limitation, to its products, customer lists, pricing, trade strategies, competitive analysis, the substance of agreements with customers, marketing and concession arrangements, or other confidential agreements, which were obtained from TPI/TPHI or its predecessors, or which were learned, discovered, developed, conceived, originated or prepared during or as a result of the performance of any services by GT on behalf of TPI, TPHI or its predecessors. GT and Splash agree that they will not hereafter directly or

5

# **DRAFT**

indirectly divulge or use any of TPI's or TPHI's Confidential Information without the prior written consent of a duly empowered officer of TPI or TPHI except (i) as required by law, provided that prior to any such disclosure, notice of such requirement of disclosure is provided to TPI or TPHI and TPI or TPHI is afforded the reasonable opportunity to object to such disclosure, and (ii) as and to the extent that such information is either not unique to TPI/TPHI or generally available to the public and became generally available to the public other than as a result of a disclosure by GT or Splash in violation of this Settlement Agreement. GT and Splash shall take all reasonable steps to safeguard such Confidential Information and to protect such Confidential Information against disclosure, misuse, loss or theft.

8.    <u>Non-Disparagement.</u> Each of the parties hereto agrees to refrain from making disparaging, false or misleading oral or written statements about another party hereto which are intended to damage or otherwise harm such party's reputation in the marketplace.

9.    <u>Choice of Law</u>. All issues pertaining to the formation, interpretation, construction, performance or non-performance of this Settlement Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

10.    <u>Choice of Forum</u>. All disputes, actions and/or causes of action pertaining to or arising out of this Settlement Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Settlement Agreement agree that they shall be subject to the active jurisdiction of such Court for this purpose.

11.    <u>Counterpart Execution</u>. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

6

# **DRAFT**

12.    Facsimile Signatures.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

13.    Entire Agreement.  This Settlement Agreement contains all of the terms and provisions agreed upon by the parties for settlement of the Litigation and a general release of claims between them.  Each party hereby acknowledges that he/it has not relied upon any extraneous statements or documents in agreeing to the terms recited herein or in executing this Settlement Agreement.

14.    Authorization.  At Closing, each of the corporate parties to this Settlement Agreement shall deliver a certificate duly executed by its Clerk or Secretary, as applicable, dated within ten (10) days of the Closing, certifying that at a meeting of the board of directors of the corporation duly convened in accordance with the by-laws of the corporation and otherwise in accordance with law, the directors, by resolution duly adopted by requisite vote,  authorized the execution and delivery of this Settlement Agreement, and the performance by such corporation of the terms set out herein and further authorized  the person signing this Settlement Agreement on behalf of such corporation  to do so and that the action taken by the board of directors remains in full force and effect without amendment thereto.

15.    Closing.  Closing on this Settlement Agreement shall occur at the offices of Greenberg Traurig, One International Place, Boston, MA 02110 on July ___, 2006, at _____ (a.) (p.)m.

16.    Successors and Assigns.  This Settlement Agreement shall be binding upon and inure to the benefit of the undersigned parties and their successors, assigns, heirs, distributees and legal representatives, as applicable.

7

# **DRAFT**

Witness:                                    THOMPSON PRODUCTS, INC.


_____      By _____
                                           Its Authorized Representative


Witness:                                    THOMPSON PRODUCTS HOLDINGS, INC.


_____      By _____
                                           Its Authorized Representative



Witness:                                    SPLASH CREATIONS, INC. (Formerly,
                                           Thompson Enterprises, Inc.)


_____      By _____
                                           Its Authorized Representative

Witness:


_____      _____
                                           GLENN THOMPSON, Individually

1277891v3

8

*DRAFT 7/12/06*

## ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of July, 2006, by and between **GLENN THOMPSON** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS, INC.** (hereinafter referred to as "Assignee").

W I T N E S S E T H :

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Assignor, Mark A. Thompson, Gregg Weingeroff and Frederick L. Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to Assignee, Thompson Products Holdings, Inc., parent of TPI, executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company; and

WHEREAS, the four beneficiaries of the Trust, who are also all of the trustees of the Trust (collectively, the "Beneficiaries") and their respective percentages of beneficial interest therein as of the date hereof, are as follows:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weringeroff | 18.75% |

WHEREAS, the trustees of the Trust hold the Subordinated Note for the benefit of the Beneficiaries.

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign his beneficial interest in the Subordinated Note to Assignee and all of Assignor's right, title and beneficial interest in, to and under, the Subordinated Note, including,

without limitation, Assignor's right to receive and collect all principal, interest, fees, costs and expenses now or hereafter due relating to the Subordinated Note (collectively, the "Assigned Rights"), subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1. <u>Assignment of Beneficial Interest in Subordinated Note</u>.   Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, his entire beneficial interest in the Subordinated Note, including the Assigned Rights.

2. <u>Acceptance of Assignment of Beneficial Interest in Subordinated Note</u>.  Assignee does hereby accept Assignor's beneficial interest in the Subordinated Note, including the Assigned Rights, subject to the terms and conditions set forth herein.

3. <u>Representations and Warranties</u>.  The Assignor hereby represents and warrants to the Assignee that:

    (a)    Assignor has the full right and title to assign his beneficial interest in the Subordinated Note and that Assignor has made no other assignment, conveyance or other transfer of his beneficial interest in the Subordinated Note to any party.

    (b)    The Assigned Rights have not been previously released, subordinated, pledged, hypothecated or assigned by the Assignor.

    (c)    The terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by the holder of the Subordinated Note.

    (d)    The Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (e)    Assignor covenants not to sue or cause the trustees of the Trust to sue, whether in the name of the Trust or otherwise for payment on the Subordinated Note.

    (f)    No consent of the trustees of the Trust, the other Beneficiaries of the Trust, nor any third party is required to effect the assignments by Assignor to Assignee contemplated herein.

    (g)    Assignor has full authority to assign the beneficial interest in the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

2

4.     <u>Indemnity</u>. Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.     <u>Obligations of the Parties</u>. The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the rights and beneficial interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

6.     <u>Choice of Law.</u> This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

7.     <u>Choice of Forum</u>. All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

8.     <u>Counterpart Execution</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

9.     <u>Facsimile Signatures</u>. The parties agree that facsimile signatures shall be the equivalent of original signatures.

10.     <u>Entire Agreement</u>. This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof. This Agreement may be modified in writing signed by each of the parties hereto.

11.     <u>Successors and Assigns.</u> This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

**"ASSIGNOR"**


_____

GLENN THOMPSON

3

**"ASSIGNEE"**

**THOMPSON PRODUCTS, INC.**

By: _____
                    PRESIDENT

1294688v1

4

*DRAFT 7/12/06*

## ASSIGNMENT AND RELEASE AGREEMENT

**THIS ASSIGNMENT AND RELEASE AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of June, 2006, by and between **FREDERICK L. WEINGEROFF, AS EXECUTOR OF THE ESTATE OF GREGG WEINGEROFF** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

### W I T N E S S E T H :

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Assignor, Glenn Thompson, Mark A. Thompson and Frederick L. Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company; and

WHEREAS, the four beneficiaries of the Trust, who are also all of the trustees of the Trust (collectively, the "Beneficiaries") and their respective percentages of beneficial interest therein as of the date hereof, are as follows:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weringeroff | 18.75% |

WHEREAS, the trustees of the Trust hold the Subordinated Note for the benefit of the Beneficiaries.

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign his beneficial interest in the Subordinated Note to Assignee and all of Assignor's right, title and beneficial interest in, to and under, the Subordinated Note, including, without limitation, Assignor's right to receive and collect all principal, interest, fees, costs and expenses now or hereafter due relating to the Subordinated Note (collectively, the "Assigned Rights"), subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  Assignment of Beneficial Interest in Subordinated Note.   Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, his entire beneficial interest in the Subordinated Note, including the Assigned Rights.

2.  Acceptance of Assignment of Beneficial Interest in Subordinated Note.  Assignee does hereby accept Assignor's beneficial interest in the Subordinated Note, including the Assigned Rights, subject to the terms and conditions set forth herein.

3.  Representations and Warranties.  The Assignor hereby represents and warrants to the Assignee that:

    (a)   Assignor has the full right and title to assign his beneficial interest in the Subordinated Note and that Assignor has made no other assignment, conveyance or other transfer of his beneficial interest in the Subordinated Note to any party.

    (b)   The Assigned Rights have not been previously released, subordinated, pledged, hypothecated or assigned by the Assignor.

    (c)   The terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by the holder of the Subordinated Note.

    (d)   The Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (e)   Assign covenants not to sue or cause the trustees of the Trust to sue, whether in the name of the Trust or otherwise for payment on the Subordinated Note.

    (f)   No consent of the trustees of the Trust, the other Beneficiaries of the Trust, nor any third party is required to effect the assignments by Assignor to Assignee contemplated herein.

(g)    The executor, Frederick L. Weingeroff, has qualified as the executor of the Estate of Gregg Weingeroff and has full authority in his capacity as executor to assign the beneficial interest in the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

4.    <u>Indemnity</u>.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.    <u>Mutual Release</u>.  At Closing, upon performance of the obligations recited above, Assignor and Assignee, on behalf of themselves, as well as on behalf of their officers, directors, agents, servants, employees, successors, heirs and assigns, as well as on behalf of their parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, and without further act or deed by any party, release, remise, discharge and quitclaim all claims, demands, actions and causes of action, whether at law or in equity, against the other, as well as against its parents, subsidiaries and affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such parents, subsidiaries and affiliates, including all such claims, demands, actions and causes of action, whether known or unknown, arising out of, pertaining to or relating in any way to the Subordinated Note and Assignor's interest therein.

6.    <u>Obligations of the Parties</u>.  The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the rights and beneficial interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

7.    <u>Choice of Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

8.    <u>Choice of Forum</u>.  All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

9.    <u>Counterpart Execution</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

10.    <u>Facsimile Signatures</u>.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

11.   Entire Agreement.  This Agreement contains the entire agreement between the parties
hereto regarding the subject matter hereof.  This Agreement may be modified in writing
signed by each of the parties hereto.

12.   Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit
of the undersigned parties and their respective successors, assigns, heirs, distributees and
legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly
executed as of the date and year first above written.

"ASSIGNOR"

**ESTATE OF GREGG WEINGEROFF**

By: _____

    FREDERICK L. WEINGEROFF, EXECUTOR

"ASSIGNEE"

**THOMPSON PRODUCTS, INC.**

By: _____

         PRESIDENT

1286046v4

4

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Wednesday, September 13, 2006 5:05 PM |
| **To:** | 'Carl I. Freedman' |
| **Cc:** | 'Yemi Sonuga'; Brian Gleason; Graham Jr., Alexander C. |
| **Subject:** | RE: Thompson |

Carl, I forgot to mention that the Weingeroff agreements need to be finalized and executed as well. Can you get their signatures quickly?

> -----Original Message-----
> **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
> **Sent:** Tuesday, September 12, 2006 1:36 PM
> **To:** Tucker, Sandy T.
> **Cc:** gt@splashcreationsinc.com
> **Subject:** RE: Thompson
>
> Sandy - Thank you for your feedback. I understand your concern about not wanting to blur the distinction between the cooperation obligations and the general releases. As a result, I have separated the cooperation provision in order to make it clear that it is only disputes relating to the enforcement of that paragraph which would be the subject of local arbitration. I have also clarified that what Glenn had expected was only to be reimbursed for expenses incurred, not to be paid an hourly rate for his cooperation.
>
> Please look over this revised version and let me know if you have any further comments.
>
> Carl
>
>
> To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Tuesday, September 12, 2006 9:52 AM
**To:** Carl I. Freedman
**Cc:** Yemi Sonuga; Brian Gleason
**Subject:** RE: Thompson

Carl, as to your addition to para. 6 to provide for TPI/TPHI's payment of reasonable cooperation to Glenn Thompson for his cooperation, we can't agree to pay a witness in advance for his "cooperation". It would completely destroy his and our credibility as to anything he had to say as a witness and it's probably unethical to do so. We can agree to reimburse him for any costs expended in connection with his cooperation.
Second, your addition of the arbitration provision to para. 10 doesn't make sense to me. You're talking about arbitrating a dispute pertaining to performance or non-performance of the last sentence of para. 6. That sentence addresses actions filed against TPI or TPHI by third parties where the basis of the claim is

Message                                                                          Page 1 of 2

## Tucker, Sandy T.

**From:**  Tucker, Sandy T.
**Sent:**  Tuesday, August 08, 2006 11:17 AM
**To:**  'Carl I. Freedman'
**Subject:**  RE: Thompson

Any progress?

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Friday, July 28, 2006 4:40 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Thanks. That helps a lot.

Carl

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Friday, July 28, 2006 4:36 PM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

I think these are the final versions sent to you earlier in the month.

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Friday, July 28, 2006 4:20 PM
**To:** Tucker, Sandy T.
**Subject:** Thompson

Sandy - A favor: could you email the Settlement Agreement as well as the Assignment
Agreement and the Assignment and Release Agreements? It will be easier to pass along my
feedback to you if I mark up an emailed version than to fax back hand written comments on
the hard copies you expressed to me recently. Thanks a lot and have a good weekend.

Carl

Carl I. Freedman, Esq.
Chace Ruttenberg & Freedman, LLP
One Park Row    Suite 300
Providence, Rhode Island 02903
Telephone: 401.453.6400
Facsimile:  401.453.6411
Email: cfreedman@crfllp.com

11/6/2006                                                              **EXHIBIT C**

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Wednesday, August 16, 2006 3:14 PM |
| **To:** | 'Carl I. Freedman' |
| **Cc:** | 'Yemi Sonuga'; 'Brian Gleason' |

**Subject:** RE: Thompson

Carl, we really need to find out whether this is going to settle on the terms proposed or not. Please let me know as soon as possible. Thanks

---Original Message---
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Tuesday, August 08, 2006 11:50 AM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - I have a call into Glenn Thompson and will get back in touch after he and I connect.

Carl

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Tuesday, August 08, 2006 11:17 AM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

Any progress?

---Original Message---
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Friday, July 28, 2006 4:40 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Thanks. That helps a lot.

Carl

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Friday, July 28, 2006 4:36 PM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

I think these are the final versions sent to you earlier in the month.

**EXHIBIT D**

## Tucker, Sandy T.

**From:**  Carl I. Freedman [CFreedman@crfllp.com]

**Sent:**  Friday, August 18, 2006 3:03 PM

**To:**  Tucker, Sandy T.

**Subject:** RE: Thompson

Sandy – I believe we are still on track to complete the settlement of the litigation. I have attached a markup of the last version of the Settlement Agreement which you forwarded to me last month. As you can see, I have addressed two matters. The first is the need for the general releases being exchanged by the parties to be mirror images of one another. The second is my continuing concern that the confidentiality provision in the settlement agreement is an invitation for ongoing problems between the parties. I don't believe that deleting this section gives rise to any risk for either party, especially since Glenn has not been with TPI for more than a year.

My concern about the assignment agreements is two fold. First, I had anticipated that the assignors would not be assigning their beneficial interests in the subordinated note. Instead, I had expected that TPB Liquidating Trust would be terminated prior to the execution of the assignment documents and that the interests of the beneficiaries would have already been assigned, in connection with the liquidation, to the former beneficiaries, as tenants in common. Therefore, the assignment would simply be of all right, title, and interest of the assignor, not the assignor's beneficial interest. Second, the representations included in the assignment will need to be limited to the actions of each assignor.

I would appreciate your considering these comments and revising the agreements accordingly. Thanks in advance.

Carl


**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Wednesday, August 16, 2006 3:14 PM
**To:** Carl I. Freedman
**Cc:** Yemi Sonuga; Brian Gleason
**Subject:** RE: Thompson

Carl, we really need to find out whether this is going to settle on the terms proposed or not. Please let me know as soon as possible. Thanks

> -----Original Message-----
> **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
> **Sent:** Tuesday, August 08, 2006 11:50 AM
> **To:** Tucker, Sandy T.
> **Subject:** RE: Thompson
>
> Sandy – I have a call into Glenn Thompson and will get back in touch after he and I connect.
>
> Carl

**EXHIBIT E**

# **DRAFT**

## SETTLEMENT AGREEMENT

Deleted: July

This Settlement Agreement is entered into on this _____ day of _____, 2006, by and between Thompson Products, Inc., a Delaware corporation ("TPI") , Thompson Products Holdings, Inc., a Massachusetts corporation ("TPHI"),  Glenn Thompson of Barrington, Rhode Island ("GT"), and Splash Creations, Inc., a Rhode Island corporation (formerly, Thompson Enterprises, Inc.) ("Splash").

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, GT, Mark A. Thompson, Frederick L. Weingeroff and Gregg Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to TPI; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, TPHI, parent of TPI, executed and delivered to Box Company a Subordinated Promissory Note payable to Box Company in the original principal amount of FIVE MILLION DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, incident to closing on the Asset Purchase Agreement, GT purchased from TPHI 4,875 shares of TPHI common stock (the "Stock"); and

WHEREAS, after closing on the Asset Purchase Agreement, GT was employed by TPI as its President and CEO; and

WHEREAS, GT remained in the employ of TPI as its President until July 2005 when he resigned; and

WHEREAS, shortly after his resignation from TPI, GT formed Splash and began operations in competition with TPI; and

# DRAFT

WHEREAS, a dispute arose between TPHI and TPI, on the one hand, and GT and Splash, on the other, as to GT's right to compete against TPI, resulting in the filing of an action styled Thompson Products, Inc. v. Glenn Thompson and Splash Creations, Inc., CA No. 05-11810-RGS, in the United States District Court for the District of Massachusetts (the "Litigation") wherein claims and counterclaims were asserted by plaintiff and defendants against each other; and

WHEREAS, the parties have now agreed upon terms for the compromise and settlement of the Litigation and other claims among them and wish to reduce those terms to writing in this Settlement Agreement;

NOW, THEREFORE, in exchange for the promises made each to the other herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Transfer of GT's Interest in Subordinated Note.  At Closing on settlement, GT will execute and deliver the attached Assignment Agreement transferring to TPI, free and clear of all liens and encumbrances, all of GT's right, title and interest in the Subordinated Note and in all proceeds of the Subordinated Note.

2.    Transfer of Stock.  At Closing on settlement, GT will transfer to TPI, free and clear of all liens and encumbrances, all issued and outstanding shares of Stock owned by GT by endorsing all share certificates evidencing the Stock for transfer to TPI and delivering such certificates to TPI.

3.    Dismissal of Litigation.  At Closing on settlement, counsel for the parties will endorse and promptly thereafter tender to the Court for entry a Dismissal Order With Prejudice

2

# DRAFT

in the form attached hereto.  TPI's and TPHI's obligation under this paragraph is conditioned upon completion of performance of GT's obligations to TPI under paragraphs 1 and 2 above.

4.    <u>General Release by GT and Splash</u>.  At Closing, upon performance of GT's obligations under paragraphs 1 and 2 herein, GT and Splash, on behalf of themselves, as well as on behalf of their respective officers, directors, agents, servants, employees, heirs, legal representatives, successors and assigns, as applicable, and on behalf of their respective parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, without further act or deed by any party, forever release, remise, discharge and quitclaim all claims, demands, actions and causes of action, and liabilities of any nature whatsoever, whether at law or in equity, which GT and Splash or either of them ever had, now has, or hereafter may have or claim to have against TPI and/or TPHI, as well as against their affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such affiliates, including all such claims, demands, actions and causes of action and liabilities of any nature whatsoever that are then known and all those that are not then known but which may thereafter be discovered, arising out of,  pertaining to or relating in any way to any act, transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind whatsoever arising or occurring prior to the date hereof, including, without limitation, any such claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to the Asset Purchase Agreement; GT's employment by TPI; all employment contracts between GT and TPI; GT's resignation from TPI; GT's and Splash's activities in competition with TPI; and the Litigation or any other matter, including all claims and counterclaims made therein and all claims and counterclaims that might have been made by GT and Splash against TPI or against its parents, subsidiaries or affiliates therein.

3

**DRAFT**

5.    <u>General Release by TPI and TPHI</u>.  At Closing, upon performance of GT's

obligations under paragraphs 1 and 2 herein, TPI and TPHI, on behalf of themselves, as well as

on behalf of their respective officers, directors, agents, servants, employees, successors and

assigns, as well as on behalf of their respective parents and subsidiaries and all officers,

directors, agents, servants, employees, successors and assigns of such parents and subsidiaries,

thereupon, without further act or deed by any party, forever release, remise, discharge and

quitclaim all claims, demands, actions and causes of action, and liabilities of any nature

whatsoever, whether at law or in equity, which TPI and TPHI or either of them ever had, now

has or hereafter may have or claim to have against GT and/or Splash, as well as against their

affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such

affiliates, <u>including all such claims, demands, actions and causes of action and liabilities of any</u>

<u>nature whatsoever that are then known and all those that are not then known but which may</u>

<u>thereafter be discovered</u>, arising out of, pertaining to or relating in any way to any act,

transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind

whatsoever arising or occurring prior to the date hereof, including, without limitation, any such

claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to

the Asset Purchase Agreement; GT's employment by TPI; all employment contracts between GT

and TPI; GT's resignation from TPI; GT's and Splash's activities in competition with TPI; and

the Litigation or any other matter, including all claims and counterclaims made therein and all

claims and counterclaims that might have been made by TPI against GT and Splash or against

the parents, subsidiaries or affiliates of Splash or the heirs, successors, legal representatives, or

assigns of GT therein.        6.        <u>Non-Solicitation</u>.

> **Deleted:** This release is limited to such claims, demands, actions and causes of action that are known to TPI and/or TPHI as of the date of Closing and does not include any claims, demands, actions or causes of action that TPI or TPHI has against GT or Splash which are unknown to TPI or TPHI as of the date of Closing.¶

4

# DRAFT

(a) GT and Splash each agrees that for a period of one (1) year from the date of Closing on this Settlement Agreement, he/it will not, directly or indirectly, solicit, employ or hire, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was employed by TPI or TPHI or by any business in which TPI or TPHI has a material interest, either direct or indirect, as an officer, partner, shareholder or beneficial owner within the six-month period immediately preceding the date of such solicitation or employment.

(b) TPI and TPHI each agrees that for a period of one (1) year from the date of this Settlement Agreement, it will not, directly or indirectly, solicit, hire or employ, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was employed by GT or Splash or by any business in which GT or Splash has a material interest, either direct or indirect, as an officer, partner, shareholder or beneficial owner within the six-month period immediately preceding the date of such solicitation or employment.

7.    Intentionally omitted.

8.    Non-Disparagement.  Each of the parties hereto agrees to refrain from making disparaging, false or misleading oral or written statements about another party hereto which are intended to damage or otherwise harm such party's reputation in the marketplace.

9.    Choice of Law.  All issues pertaining to the formation, interpretation, construction, performance or non-performance of this Settlement Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

10.    Choice of Forum.  All disputes, actions and/or causes of action pertaining to or arising out of this Settlement Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Settlement

Deleted: Confidentiality. GT and Splash acknowledge that GT possesses "Confidential Information" belonging to TPI and/or TPHI to which GT was exposed during his employment by TPI and by TPI's predecessors. "Confidential Information" shall mean all nonpublic information concerning TPI's business relating, without limitation, to its products, customer lists, pricing, trade strategies, competitive analysis, the substance of agreements with customers, marketing and concession arrangements, or other confidential agreements, which were obtained from TPI/TPHI or its predecessors, or which were learned, discovered, developed, conceived, originated or prepared during or as a result of the performance of any services by GT on behalf of TPI, TPHI or its predecessors. GT and Splash agree that they will not hereafter directly or indirectly divulge or use any of TPI's or TPHI's Confidential Information without the prior written consent of a duly empowered officer of TPI or TPHI except (i) as required by law, provided that prior to any such disclosure, notice of such requirement of disclosure is provided to TPI or TPHI and TPI or TPHI is afforded the reasonable opportunity to object to such disclosure, and (ii) as and to the extent that such information is either not unique to TPI/TPHI or generally available to the public and became generally available to the public other than as a result of a disclosure by GT or Splash in violation of this Settlement Agreement. GT and Splash shall take all reasonable steps to safeguard such Confidential Information and to protect such Confidential Information against disclosure, misuse, loss or theft.

5

# DRAFT

Agreement agree that they shall be subject to the active jurisdiction of such Court for this purpose.

11. <u>Counterpart Execution</u>. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

12. <u>Facsimile Signatures</u>. The parties agree that facsimile signatures shall be the equivalent of original signatures.

13. <u>Entire Agreement</u>. This Settlement Agreement contains all of the terms and provisions agreed upon by the parties for settlement of the Litigation and a general release of claims between them. Each party hereby acknowledges that he/it has not relied upon any extraneous statements or documents in agreeing to the terms recited herein or in executing this Settlement Agreement.

14. <u>Authorization</u>. At Closing, each of the corporate parties to this Settlement Agreement shall deliver a certificate duly executed by its Clerk or Secretary, as applicable, dated within ten (10) days of the Closing, certifying that at a meeting of the board of directors of the corporation duly convened in accordance with the by-laws of the corporation and otherwise in accordance with law, the directors, by resolution duly adopted by requisite vote, authorized the execution and delivery of this Settlement Agreement, and the performance by such corporation of the terms set out herein and further authorized the person signing this Settlement Agreement on behalf of such corporation to do so and that the action taken by the board of directors remains in full force and effect without amendment thereto.

6

# DRAFT

15.    Closing.  Closing on this Settlement Agreement shall occur at the offices of Greenberg Traurig, One International Place, Boston, MA 02110 on July ___, 2006, at _____ (a.) (p.)m.

16.    Successors and Assigns.  This Settlement Agreement shall be binding upon and inure to the benefit of the undersigned parties and their successors, assigns, heirs, distributees and legal representatives, as applicable.

Witness:                                          THOMPSON PRODUCTS, INC.


_____          By _____
                                                    Its Authorized Representative


Witness:                                          THOMPSON PRODUCTS HOLDINGS, INC.


_____          By _____
                                                    Its Authorized Representative




Witness:                                          SPLASH CREATIONS, INC. (Formerly,
                                                  Thompson Enterprises, Inc.)


_____          By _____
                                                    Its Authorized Representative

Witness:


_____          _____
                                             GLENN THOMPSON, Individually


LIT/799143

7

**DRAFT**

8

Message                                                                                          Page 1 of 3

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Thursday, August 31, 2006 2:43 PM |
| **To:** | 'Carl I. Freedman' |
| **Cc:** | Graham Jr., Alexander C.; 'Read, Cameron' |

**Subject:** RE: Thompson

Carl, I have reviewed with the company your two primary objections to our version of the Settlement Agreement—namely, the confidentiality provision and the releases. As to the confidentiality provision, TPI/TPHI will agree to forego it. As to the releases, TPI/TPHI are also agreed that the releases may be mutual so that TPI and TPHI will release Glenn Thompson and Splash from all unknown, as well as known, claims, but with one important exception. The company is concerned about the possibility of third party claims against it based on acts or omissions of Thompson while in its employ, and we want to preserve indemnification and contribution claims against him in the event third party claims arise. Therefore, you will see the EXCEPT provision in para. 6 to preserve this narrow exception to the otherwise comprehensive release.
Also, we accept as well your general structure of the deal which contemplates termination of the nominee trust, conveyance of the note to the four trustees/beneficiaries as tenants in common and then conveyance by three of the four tenants in common of their respective interests in the note. The attached redraft of the Settlement Agreement so provides.
The assignment agreements for Glenn Thompson and Frederick Weingeroff, individually and as executor of the estate of Gregg Weingeroff, are also attached, and they have been redrafted to accomodate this structure.
I would be grateful for your prompt review of these redrafted documents. If they are acceptable, I would like to get them in final form for execution and begin the signing process as soon as possible.
If you have questions or concerns about the documents, please give me a call. Many thanks.


-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Friday, August 18, 2006 3:03 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - I believe we are still on track to complete the settlement of the litigation. I have attached a markup of the last version of the Settlement Agreement which you forwarded to me last month. As you can see, I have addressed two matters. The first is the need for the general releases being exchanged by the parties to be mirror images of one another. The second is my continuing concern that the confidentiality provision in the settlement agreement is an invitation for ongoing problems between the parties. I don't believe that deleting this section gives rise to any risk for either party, especially since Glenn has not been with TPI for more than a year.

My concern about the assignment agreements is two fold. First, I had anticipated that the assignors would not be assigning their beneficial interests in the subordinated note. Instead, I had expected that TPB Liquidating Trust would be terminated prior to the execution of the assignment documents and that the interests of the beneficiaries would have already been assigned, in connection with the liquidation, to the former beneficiaries, as tenants in common. Therefore, the assignment would simply be of all right, title, and interest of the assignor, not the assignor's beneficial interest. Second, the representations included in the assignment will need to be limited to the actions of each assignor.

I would appreciate your considering these comments and revising the agreements accordingly. Thanks in advance.

Carl

**EXHIBIT F**

# **DRAFT**

## **SETTLEMENT AGREEMENT**

This Settlement Agreement is entered into on this _____ day of _____, 2006, by and between Thompson Products, Inc., a Delaware corporation ("TPI") , Thompson Products Holdings, Inc., a Massachusetts corporation ("TPHI"), Glenn Thompson of Barrington, Rhode Island ("GT"), and Splash Creations, Inc., a Rhode Island corporation (formerly, Thompson Enterprises, Inc.) ("Splash").

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, GT, Mark A. Thompson ("MT"), Frederick L. Weingeroff ("FLW") and Gregg Weingeroff ("GW"), as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to TPI; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, TPHI, parent of TPI, executed and delivered to Box Company a Subordinated Promissory Note payable to Box Company in the original principal amount of FIVE MILLION DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, incident to closing on the Asset Purchase Agreement, GT purchased from TPHI 4,875 shares of TPHI common stock (the "Stock"); and

WHEREAS, after closing on the Asset Purchase Agreement, Box Company changed its name to TPB Liquidating Co., Inc. ("TPBLC"); and

WHEREAS, on or about April 13, 1998 the directors and shareholders of TPBLC executed an Agreement and Declaration of Trust of TPB Liquidating Trust creating a "trust" under Massachusetts General Laws, Chapter 182 (the "TPB Liquidating Trust") with Shares of Beneficial Interest in the TPB Liquidating Trust held by GT, MT, FLW and GW; and

# **DRAFT**

WHEREAS, GT, MT, FLW and GW, as shareholders and directors of Box Company, validly transferred the Subordinated Note to the TPB Liquidating Trust; and

WHEREAS, on or about August 28, 1998, GT, MT, FLW and GW, as trustees and beneficiaries of the TPB Liquidating Trust, entered into and executed an Amended and Restated Agreement and Declaration of Trust whereby the TPB Liquidating Trust was converted to a nominee trust under Massachusetts law ( the "Nominee Trust"); and

WHEREAS, since August 28, 1998, the Nominee Trust has held as an asset the Subordinated Note; and

WHEREAS, GT, MT, FLW and GW are all trustees of the Nominee Trust as well as beneficiaries to the extent of their respective percentages of interest in Nominee Trust assets, as follows:

| | |
|-----|------------|
| GT | 46.25% |
| MT | 10.00% |
| FLW | 25.00% |
| GW | 18.75%; and |

WHEREAS, GW has since died and his interest in the Nominee Trust has passed to, or is now controlled by, FLW as the personal representative of GT's estate; and

WHEREAS, after closing on the Asset Purchase Agreement, GT was employed by TPI as its President and CEO; and

WHEREAS, GT remained in the employ of TPI as its President until July 2005 when he resigned; and

WHEREAS, shortly after his resignation from TPI, GT formed Splash and began operations in competition with TPI; and

WHEREAS, a dispute arose between TPHI and TPI, on the one hand, and GT and Splash, on the other, as to GT's right to compete against TPI, resulting in the filing of an action

2

# **DRAFT**

styled <u>Thompson Products, Inc. v. Glenn Thompson and Splash Creations, Inc.</u>, CA No. 05-11810-RGS, in the United States District Court for the District of Massachusetts (the "Litigation") wherein claims and counterclaims were asserted by plaintiff and defendants against each other; and

WHEREAS, the parties have now agreed upon terms for the compromise and settlement of the Litigation and other claims among them and wish to reduce those terms to writing in this Settlement Agreement;

NOW, THEREFORE, in exchange for the promises made each to the other herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    <u>Termination of Nominee Trust</u>.  At Closing on the settlement described herein, GT, pursuant to paragraph 5 of the August 28, 1998 Amended and Restated Declaration of Trust of TPB Liquidating Trust, shall terminate the Nominee Trust by notice in writing to the other Trustees, and at that time GT shall insure that the Trustees transfer and convey the Subordinated Note, subject to any encumbrances, to GT, MT, FLW and the personal representative of GW, all of whom shall become tenants in common of the Subordinated Note, with each person holding the following percentage interest in such Subordinated Note:

| | |
|------|--------|
| GT   | 46.25% |
| MT   | 10.00% |
| FLW  | 25.00% |
| GW   | 18.75% |

GT shall execute, and see to execution by all Trustees and beneficiaries of the Nominee Trust, all documents that may be necessary to accomplish the Nominee Trust termination and conveyance of the Subordinated Note.

3

# **DRAFT**

2.    <u>Transfer of GT's Interest in Subordinated Note</u>.  At Closing on settlement, and following the transactions recited in paragraph 1 above, GT will execute and deliver the attached Assignment Agreement transferring to TPI, free and clear of all liens and encumbrances, all of GT's right, title and interest in the Subordinated Note and in all proceeds of the Subordinated Note.

3.    <u>Transfer of Stock</u>.  At Closing on settlement, GT will transfer to TPHI, free and clear of all liens and encumbrances, all issued and outstanding shares of Stock owned by GT by endorsing all share certificates evidencing the Stock for transfer to TPHI and delivering such certificates to TPHI.

4.    <u>Dismissal of Litigation</u>.  At Closing on settlement, counsel for the parties will endorse and promptly thereafter tender to the Court for entry a Dismissal Order With Prejudice in the form attached hereto.  TPI's and TPHI's obligation under this paragraph is conditioned upon completion of performance of GT's obligations to TPHI and TPI under paragraphs 1 through 3 above.

5.    <u>General Release by GT and Splash</u>.  At Closing, upon performance of GT's obligations under paragraphs 1 through 4 herein, GT and Splash, on behalf of themselves, as well as on behalf of their respective officers, directors, agents, servants, employees, heirs, legal representatives, successors and assigns, as applicable, and on behalf of their respective parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, without further act or deed by any party, forever release, remise, discharge and quitclaim all claims, demands, actions and causes of action, and liabilities of any nature whatsoever, whether at law or in equity, which GT and Splash or either of them ever had, now has, or hereafter may have or claim to have against TPI and/or TPHI, as

4

**DRAFT**

well as against their affiliates, and all officers, directors, agents, servants, employees, successors

and assigns of such affiliates, including all such claims, demands, actions and causes of action

and liabilities of any nature whatsoever that are then known and all those that are not then known

but which may thereafter be discovered, arising out of, pertaining to or relating in any way to

any act, transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any

kind whatsoever arising or occurring prior to the date hereof, including, without limitation, any

such claim, demand, action and cause of action arising out of, pertaining to, or relating in any

way to the Asset Purchase Agreement; GT's employment by TPI and his service as officer,

director, shareholder or employee of TPHI; all employment contracts between GT and TPI; GT's

resignation from TPI; GT's and Splash's activities in competition with TPI; and the Litigation,

including all claims and counterclaims made therein and all claims and counterclaims that might

have been made by GT and Splash against TPI or against its parents, subsidiaries or affiliates

therein.

      6.    <u>General Release by TPI and TPHI</u>. At Closing, upon performance of GT's

obligations under paragraphs 1 through 4 herein, TPI and TPHI, on behalf of themselves, as well

as on behalf of their respective officers, directors, agents, servants, employees, successors and

assigns, as well as on behalf of their respective parents and subsidiaries and all officers,

directors, agents, servants, employees, successors and assigns of such parents and subsidiaries,

thereupon, without further act or deed by any party, forever release, remise, discharge and

quitclaim all claims, demands, actions and causes of action, and liabilities of any nature

whatsoever, whether at law or in equity, which TPI and TPHI or either of them ever had, now

has or hereafter may have or claim to have against GT and/or Splash, as well as against their

affiliates and all officers, directors, agents, servants, employees, successors and assigns of such

**DRAFT**

affiliates, including all such claims, demands, actions and causes of action and liabilities of any

nature whatsoever that are then known and all those that are not then known but which may

thereafter be discovered, arising out of, pertaining to or relating in any way to any act,

transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind

whatsoever arising or occurring prior to the date hereof, including, without limitation, any such

claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to

the Asset Purchase Agreement; GT's employment by TPI and his service as officer, director or

employee of TPHI; all employment contracts between GT and TPI; GT's resignation from TPI;

GT's and Splash's activities in competition with TPI; and the Litigation, including all claims and

counterclaims made therein and all claims and counterclaims that might have been made by TPI

against GT and Splash or against the parents, subsidiaries or affiliates of Splash or the heirs,

successors, legal representatives, or assigns of GT therein EXCEPT that neither TPI, TPHI nor

any of its officers or directors (the "TPI Group") release GT from any claims for indemnification

or contribution based on acts or omissions of GT while serving as an officer, director or

shareholder of TPI or TPHI which the TPI Group or any one of them might hereafter assert

against GT, in response to a claim or cause of action asserted by any person not a party to this

Settlement Agreement against the TPI Group or any one or more of them.  In the event any

claims, demands, actions or causes of action are asserted by such non-party against the TPI

Group, or any one or more of them, GT will cooperate with the TPI Group, to the extent that is

necessary and appropriate, in defending such claims, demands, actions and causes of action.

 7. <u>Non-Solicitation</u>.

  (a) GT and Splash each agrees that for a period of one (1) year from the date of

Closing on this Settlement Agreement, he/it will not, directly or indirectly, solicit, employ or

# DRAFT

hire, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was or had been employed by TPI or TPHI or by any business in which TPI or TPHI has a material interest, either direct or indirect, as an officer, partner, shareholder or beneficial owner during the six-month period immediately preceding the date of such solicitation or employment.

(b) TPI and TPHI each agrees that for a period of one (1) year from the date of this Settlement Agreement, it will not, directly or indirectly, solicit, hire or employ, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was or had been employed by GT or Splash or by any business in which GT or Splash has a material interest , either direct or indirect, as an officer, partner, shareholder or beneficial owner during the six-month period immediately preceding the date of such solicitation or employment.

8.    <u>Non-Disparagement.</u>  Each of the parties hereto agrees to refrain from making disparaging, false or misleading oral or written statements about another party hereto which are intended to damage or otherwise harm such party's reputation in the marketplace.

9.    <u>Choice of Law</u>.  All issues pertaining to the formation, interpretation, construction, performance or non-performance of this Settlement Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

10.    <u>Choice of Forum</u>.  All disputes, actions and/or causes of action pertaining to or arising out of this Settlement Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Settlement Agreement agree that they shall be subject to the active jurisdiction of such Court for this purpose.

7

# **DRAFT**

11.    Counterpart Execution.  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

12.    Facsimile Signatures.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

13.    Entire Agreement.  This Settlement Agreement contains all of the terms and provisions agreed upon by the parties for settlement of the Litigation and a general release of claims between them.  Each party hereby acknowledges that he/it has not relied upon any extraneous statements or documents in agreeing to the terms recited herein or in executing this Settlement Agreement.

14.    Authorization.  At Closing, each of the corporate parties to this Settlement Agreement shall deliver a certificate duly executed by its Clerk or Secretary, as applicable, dated within ten (10) days of the Closing, certifying that at a meeting of the board of directors of the corporation duly convened in accordance with the by-laws of the corporation and otherwise in accordance with law, the directors, by resolution duly adopted by requisite vote,  authorized the execution and delivery of this Settlement Agreement, and the performance by such corporation of the terms set out herein and further authorized  the person signing this Settlement Agreement on behalf of such corporation  to do so and that the action taken by the board of directors remains in full force and effect without amendment thereto.

15.    Closing.  Closing on this Settlement Agreement shall occur at the offices of Greenberg Traurig, One International Place, Boston, MA 02110 on _____, 2006,  at _____ (a.) (p.)m.

8

# **DRAFT**

16.    <u>Successors and Assigns.</u>  This Settlement Agreement shall be binding upon and inure to the benefit of the undersigned parties and their successors, assigns, heirs, distributees and legal representatives, as applicable.

Witness:                                                      THOMPSON PRODUCTS, INC.

_____                        By _____
                                                                        Its Authorized Representative

Witness:                                                      THOMPSON PRODUCTS HOLDINGS, INC.

_____                        By _____
                                                                        Its Authorized Representative

Witness:                                                      SPLASH CREATIONS, INC. (Formerly,
                                                                 Thompson Enterprises, Inc.)

_____                        By _____
                                                                        Its Authorized Representative

Witness:

_____                        _____
                                                                 GLENN THOMPSON, Individually

1278991v5

9

*DRAFT 8/24/06*

## ASSIGNMENT AND RELEASE AGREEMENT

**THIS ASSIGNMENT AND RELEASE AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of June, 2006, by and between **FREDERICK L. WEINGEROFF, AS EXECUTOR OF THE ESTATE OF GREGG WEINGEROFF** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

<u>W I T N E S S E T H</u> :

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Gregg Weingeroff, Glenn Thompson, Mark A. Thompson and Frederick L. Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company (Gregg Weingeroff having since died with his interest having passed to Frederick L. Weingerhoff as Executor of the Estate of Gregg Weingeroff); and

WHEREAS, the Trust was terminated by action of one or more of the Trust beneficiaries (collectively, the "Beneficiaries")/trustees effective _____, 2006, and the trustees distributed the sole asset of the Trust, being the Subordinated Note, to the Beneficiaries as tenants in common as required by Paragraph 5 of the Trust; and

WHEREAS, the four Beneficiaries of the Trust hold the Subordinated Note as tenants in common in proportion to their respective percentages of beneficial interest which are as follows:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign his right, title and interest in the Subordinated Note to Assignee, subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  <u>Assignment of Interest in Subordinated Note</u>.  Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, his entire right, title and interest as a tenant in common in the Subordinated Note and all proceeds of the Subordinated Note.

2.  <u>Acceptance of Assignment of Interest in Subordinated Note</u>.  Assignee does hereby accept Assignor's interest in the Subordinated Note, subject to the terms and conditions set forth herein.

3.  <u>Representations and Warranties</u>.  The Assignor hereby represents and warrants to the Assignee that:

    (a)  Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

    (b)  To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

    (c)  To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (d)  No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

    (e)  The executor, Frederick L. Weingeroff, has qualified as the executor of the Estate of Greg Weingeroff and has full authority in his capacity as executor to assign the interest of the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

4.  <u>Indemnity</u>.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

2

5. <u>Mutual Release</u>.   At Closing, upon performance of the obligations recited above, Assignor and Assignee, on behalf of themselves, as well as on behalf of their officers, directors, agents, servants, employees, successors, heirs and assigns, as well as on behalf of their parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, and without further act or deed by any party, release, remise, discharge and quitclaim all claims, demands, actions and causes of action, whether at law or in equity, against the other, as well as against its parents, subsidiaries and affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such parents, subsidiaries and affiliates, including all such claims, demands, actions and causes of action, whether known or unknown, arising out of, pertaining to or relating in any way to the Subordinated Note and Assignor's interest therein.

6. <u>Obligations of the Parties</u>.   The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the rights and interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

7. <u>Choice of Law.</u>   This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

8. <u>Choice of Forum</u>.   All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

9. <u>Counterpart Execution</u>.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

10. <u>Facsimile Signatures</u>.   The parties agree that facsimile signatures shall be the equivalent of original signatures.

11. <u>Entire Agreement</u>.   This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.   This Agreement may be modified in writing signed by each of the parties hereto.

12. <u>Successors and Assigns.</u>   This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

3

**"ASSIGNOR"**

**ESTATE OF GREGG WEINGEROFF**


By: _____

      FREDERICK L. WEINGEROFF, EXECUTOR


**"ASSIGNEE"**

**THOMPSON PRODUCTS HOLDINGS, INC.**


By: _____

              PRESIDENT

1286046v4

4

*DRAFT 8/24/06*

## ASSIGNMENT AND RELEASE AGREEMENT

**THIS ASSIGNMENT AND RELEASE AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of June, 2006, by and between **FREDERICK L. WEINGEROFF, AS EXECUTOR OF THE ESTATE OF GREGG WEINGEROFF** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

<u>W I T N E S S E T H</u> :    ~~Gregg Weingeroff~~

WHEREAS, on November 24, 1997, ~~Thompson~~ Paper Box Co., Inc. ("Box Company") and its shareholders, who were ~~Assignor,~~ Glenn Thompson, Mark A. Thompson and Frederick L. Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company; and    *( Gregg Weingeroff having since died and his interest having passed to Frederick*

WHEREAS, the Trust was terminated by action of one or more of the trust beneficiaries *Weingeroff* (collectively, the "Beneficiaries")/trustees) effective _____, 2006, and the trustees distributed the sole asset of the Trust, being the Subordinated Note, to the Beneficiaries *Executor* as tenants in common as required by Paragraph 5 of the Trust; ~~and~~    *of the*

~~(b)~~  *B*    *Subordinate to tenants in common*    *Estate*

WHEREAS, the four ~~b~~eneficiaries of the Trust hold the Note in proportion to their    *of* respective percentages of ~~beneficial~~ interest which are as follows:    *Gregg*

*Weingeroff )*

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign his right, title and interest in the Subordinated Note to Assignee, subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  _Assignment of Interest in Subordinated Note_.  Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, his entire right, title and interest in the Subordinated Note *and in all property of the Subordinated Note*.

2.  _Acceptance of Assignment of Interest in Subordinated Note_.  Assignee does hereby accept Assignor's interest in the Subordinated Note, subject to the terms and conditions set forth herein.

3.  _Representations and Warranties_.  The Assignor hereby represents and warrants to the Assignee that:

    (a)  Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

    (b)  To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

    (c)  To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (d)  No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

    (e)  The executor, Frederick L. Weingeroff, has qualified as the executor of the Estate of Greg Weingeroff and has full authority in his capacity as executor to assign the interest of the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

4.  _Indemnity_.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

2

5.    <u>Mutual Release</u>.  At Closing, upon performance of the obligations recited above, Assignor and Assignee, on behalf of themselves, as well as on behalf of their officers, directors, agents, servants, employees, successors, heirs and assigns, as well as on behalf of their parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, and without further act or deed by any party, release, remise, discharge and quitclaim all claims, demands, actions and causes of action, whether at law or in equity, against the other, as well as against its parents, subsidiaries and affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such parents, subsidiaries and affiliates, including all such claims, demands, actions and causes of action, whether known or unknown, arising out of, pertaining to or relating in any way to the Subordinated Note and Assignor's interest therein.

6.    <u>Obligations of the Parties</u>.  The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the rights and interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

7.    <u>Choice of Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

8.    <u>Choice of Forum</u>.  All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

9.    <u>Counterpart Execution</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

10.    <u>Facsimile Signatures</u>.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

11.    <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.  This Agreement may be modified in writing signed by each of the parties hereto.

12.    <u>Successors and Assigns.</u>  This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

     IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

3

**"ASSIGNOR"**

**ESTATE OF GREGG WEINGEROFF**


By: _____
        FREDERICK L. WEINGEROFF, EXECUTOR


**"ASSIGNEE"**

**THOMPSON PRODUCTS HOLDINGS, INC.**


By: _____
                PRESIDENT


1286046-4

4

*DRAFT 8/30/06*

## ASSIGNMENT AND RELEASE AGREEMENT

THIS ASSIGNMENT AND RELEASE AGREEMENT (this "Agreement") is made and delivered as of the ___ day of August, 2006, by and between **FREDERICK L. WEINGEROFF** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

## W I T N E S S E T H:

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Assignor, Glenn Thompson, Mark A. Thompson and Gregg Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company (Gregg Weingeroff having since died with his interest having passed to Frederick L. Weingerhoff as Executor of the Estate of Gregg Weingeroff); and

WHEREAS, the Trust was terminated by action of one or more of the Trust beneficiaries (collectively, the "Beneficiaries")/trustees effective _____, 2006, and the trustees distributed the sole asset of the Trust, being the Subordinated Note, to the Beneficiaries as tenants in common as required by Paragraph 5 of the Trust; and

WHEREAS, the four Beneficiaries of the Trust hold the Note as tenants in common in proportion to their respective percentages of interest which are as follows:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign his right, title and interest in the Subordinated Note to Assignee, subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.    Assignment of Interest in Subordinated Note.  Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, his entire right, title and interest as a tenant in common in the Subordinated Note and in all proceeds of the Subordinated Note.

2.    Acceptance of Assignment of Interest in Subordinated Note.  Assignee does hereby accept Assignor's interest in the Subordinated Note, subject to the terms and conditions set forth herein.

3.    Representations and Warranties.  The Assignor hereby represents and warrants to the Assignee that:

   (a)    Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

   (b)    To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

   (c)    To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

   (d)    No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

   (e)    Assignor has full authority to assign the interest in the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

4.    Indemnity.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.    Mutual Release.  At Closing, upon performance of the obligations recited above, Assignor and Assignee, on behalf of themselves, as well as on behalf of their officers, directors, agents, servants, employees, successors, heirs and assigns, as well as on behalf of their parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, and without further

act or deed by any party, release, remise, discharge and quitclaim all claims, demands, actions and causes of action, whether at law or in equity, against the other, as well as against its parents, subsidiaries and affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such parents, subsidiaries and affiliates, including all such claims, demands, actions and causes of action, whether known or unknown, arising out of, pertaining to or relating in any way to the Subordinated Note and Assignor's interest therein.

6.     <u>Obligations of the Parties</u>.  The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the rights and interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

7.     <u>Choice of Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

8.     <u>Choice of Forum</u>.  All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

9.     <u>Counterpart Execution</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

10.    <u>Facsimile Signatures</u>.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

11.    <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.  This Agreement may be modified in writing signed by each of the parties hereto.

12.    <u>Successors and Assigns.</u>  This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

**"ASSIGNOR"**

By: _____

      FREDERICK L. WEINGEROFF

3

**"ASSIGNEE"**

**THOMPSON PRODUCTS HOLDINGS, INC.**


By: _____
                    PRESIDENT

1294722v1

*DRAFT 8/30/06*

## ASSIGNMENT AND RELEASE AGREEMENT

**THIS ASSIGNMENT AND RELEASE AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of August, 2006, by and between **FREDERICK L. WEINGEROFF** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

## W I T N E S S E T H :

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Assignor, Glenn Thompson, Mark A. Thompson and ~~Frederick L.~~ Gregg Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company; and *(Gregg Weingeroff having since died and with his interest having passed to Frederick L.*

WHEREAS, the Trust was terminated by action of one or more of the Trust beneficiaries *Weingeroff, Executor* (collectively, the "Beneficiaries")/trustees) effective *the* _____, 2006, and the *of the* trustees distributed the sole asset of the Trust, being the Subordinated Note, to the Beneficiaries *Estate* as tenants in common as required by Paragraph 5 of the Trust; and *of Gregg Weingeroff)*

WHEREAS, the four beneficiaries of the Trust hold the Note in proportion to their *Weingeroff)* respective percentages of ~~beneficial~~ interest which are as follows: *as tenants in common*

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign his right, title and interest in the Subordinated Note to Assignee, subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  <u>Assignment of Interest in Subordinated Note</u>.  Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, his entire right, title and interest in the Subordinated Note— *and in all proceeds of the Subordinated Note.* *It is a tenant in common*

2.  <u>Acceptance of Assignment of Interest in Subordinated Note</u>.  Assignee does hereby accept Assignor's interest in the Subordinated Note, subject to the terms and conditions set forth herein.

3.  <u>Representations and Warranties</u>.  The Assignor hereby represents and warrants to the Assignee that:

    (a)  Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

    (b)  To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

    (c)  To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (d)  No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

    (e)  Assignor has full authority to assign the interest in the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

4.  <u>Indemnity</u>.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.  <u>Mutual Release</u>.  At Closing, upon performance of the obligations recited above, Assignor and Assignee, on behalf of themselves, as well as on behalf of their officers, directors, agents, servants, employees, successors, heirs and assigns, as well as on behalf of their parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, and without further act or deed by any party, release, remise, discharge and quitclaim all claims, demands,

actions and causes of action, whether at law or in equity, against the other, as well as against its parents, subsidiaries and affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such parents, subsidiaries and affiliates, including all such claims, demands, actions and causes of action, whether known or unknown, arising out of, pertaining to or relating in any way to the Subordinated Note and Assignor's interest therein.

6. <u>Obligations of the Parties</u>. The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the rights and interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

7. <u>Choice of Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

8. <u>Choice of Forum</u>.  All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

9. <u>Counterpart Execution</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

10. <u>Facsimile Signatures</u>.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

11. <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.  This Agreement may be modified in writing signed by each of the parties hereto.

12. <u>Successors and Assigns.</u>  This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

**"ASSIGNOR"**

By: _____

      FREDERICK L. WEINGEROFF

3

**"ASSIGNEE"**

**THOMPSON PRODUCTS HOLDINGS, INC.**

By: _____
                    PRESIDENT

1294722v1

4

*DRAFT 8/30/06*

### ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of July, 2006, by and between **GLENN THOMPSON** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

### W I T N E S S E T H :

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Assignor, Mark A. Thompson, Gregg Weingeroff and Frederick L. Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assginee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company; and

WHEREAS, the four beneficiaries of the Trust, who are also all of the trustees of the Trust (collectively, the "Beneficiaries") had the following respective percentages of beneficial interest therein:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, the trustees of the Trust held the Subordinated Note for the benefit of the Beneficiaries; and

WHEREAS, pursuant to paragraph 5 of the August 28, 1998 Amended and Restated Declaration of Trust, has properly and validly terminated the Trust and the Subordinated Note has been validly transferred to the Beneficiaries as tenants in common with each Beneficiary

holding right, title and interest in the Subordinated Note, as a tenant in common, to the extent of his respective percentage interest recited above; and

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign all of Assignor's right, title and interest in, to and under, the Subordinated Note, including, without limitation, Assignor's right to receive and collect all principal, interest, fees, costs and expenses now or hereafter due relating to the Subordinated Note (collectively, the "Assigned Rights"), subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  <u>Assignment of All Right, Title and Interest in Subordinated Note</u>.  Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, all of his right, title and interest as a tenant in common in the Subordinated Note, including the Assigned Rights.

2.  <u>Acceptance of Assignment in Subordinated Note</u>.  Assignee does hereby accept Assignor's assignment of Assignor's right, title and interest as a tenant in common in the Subordinated Note, including the Assigned Rights, subject to the terms and conditions set forth herein.

3.  <u>Representations and Warranties</u>.  The Assignor hereby represents and warrants to the Assignee that:

    (a)  Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

    (b)  To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

    (c)  To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (d)  No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

    (e)  Assignor has full authority to assign the interest in the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

2

4.     <u>Indemnity</u>.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.     <u>Obligations of the Parties</u>.  The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the right, title and interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

6.     <u>Choice of Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

7.     <u>Choice of Forum</u>.  All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

8.     <u>Counterpart Execution</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

9.     <u>Facsimile Signatures</u>.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

10.     <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.  This Agreement may be modified in writing signed by each of the parties hereto.

11.     <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

    IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

**"ASSIGNOR"**

_____

GLENN THOMPSON

3

"ASSIGNEE"

**THOMPSON PRODUCTS HOLDINGS, INC.**

By: _____
                PRESIDENT

1294688v1

*DRAFT 8/30/06*

# ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of July, 2006, by and between **GLENN THOMPSON** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

## W̲I̲T̲N̲E̲S̲S̲E̲T̲H̲:

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Assignor, Mark A. Thompson, Gregg Weingeroff and Frederick L. Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company; and

WHEREAS, the four beneficiaries of the Trust, who are also all of the trustees of the Trust (collectively, the "Beneficiaries") and their respective percentages of beneficial interest therein as of the date hereof, are as follows:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, the trustees of the Trust hold the Subordinated Note for the benefit of the Beneficiaries; and

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign all of Assignor's right, title and beneficial interest in, to and under, the

*common, until each Beneficiary holding right, title and interest in the Subordinated Note, to the extent of his respective percentage interest recited above; (as a tenant in common) (end)*

Subordinated Note, including, without limitation, Assignor's right to receive and collect all principal, interest, fees, costs and expenses now or hereafter due relating to the Subordinated Note (collectively, the "Assigned Rights"), subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  *All Right, Title and* Assignment of ~~Beneficial~~ Interest in Subordinated Note.  Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, all of his right, title and interest in the Subordinated Note, including the Assigned Rights.  *as a tenant in common*

2.  Acceptance of Assignment ~~of Beneficial Interest~~ in Subordinated Note.  Assignee does hereby accept Assignor's assignment of Assignor's right, title and interest in the Subordinated Note, including the Assigned Rights, subject to the terms and conditions set forth herein.  *as a tenant in common*

3.  Representations and Warranties.  The Assignor hereby represents and warrants to the Assignee that:

    (a)  Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

    (b)  To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

    (c)  To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (d)  No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

    (e)  Assignor has full authority to assign the interest in the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

4.  Indemnity.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.  Obligations of the Parties.  The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be

right, title and interest

necessary or appropriate to vest more fully in the Assignee the ~~rights and beneficial~~ interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

6.     <u>Choice of Law.</u>  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

7.     <u>Choice of Forum.</u>  All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

8.     <u>Counterpart Execution.</u>  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

9.     <u>Facsimile Signatures.</u>  The parties agree that facsimile signatures shall be the equivalent of original signatures.

10.    <u>Entire Agreement.</u>  This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.  This Agreement may be modified in writing signed by each of the parties hereto.

11.    <u>Successors and Assigns.</u>  This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

**"ASSIGNOR"**

_____
GLENN THOMPSON

**"ASSIGNEE"**

**THOMPSON PRODUCTS HOLDINGS, INC.**

By: _____
         PRESIDENT

1294688v1

3

## Tucker, Sandy T.

**From:**    Carl I. Freedman [CFreedman@crfllp.com]

**Sent:**    Thursday, August 31, 2006 3:04 PM

**To:**      Tucker, Sandy T.

**Subject:** RE: Thompson

Sandy - Thank you for your email. I have a call into Glenn to review with him your email and revised documents. I want you to know that my initial reaction to the proposed reservation of indemnity and contribution rights by TPI and TPHI against Glenn is negative. It is difficult to believe that Glenn would be interested in signing a settlement agreement which does not include a complete release by all parties of all claims, known and unknown. I'll be back to you after Glenn and I discuss your drafts.

Carl

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, August 31, 2006 2:43 PM
**To:** Carl I. Freedman
**Cc:** Graham Jr., Alexander C.; Read, Cameron
**Subject:** RE: Thompson

Carl, I have reviewed with the company your two primary objections to our version of the Settlement Agreement—namely, the confidentiality provision and the releases. As to the confidentiality provision, TPI/TPHI will agree to forego it. As to the releases, TPI/TPHI are also agreed that the releases may be mutual so that TPI and TPHI will release Glenn Thompson and Splash from all unknown, as well as known, claims, but with one important exception. The company is concerned about the possibility of third party claims against it based on acts or omissions of Thompson while in its employ, and we want to preserve indemnification and contribution claims against him in the event third party claims arise. Therefore, you will see the EXCEPT provision in para. 6 to preserve this narrow exception to the otherwise comprehensive release.
Also, we accept as well your general structure of the deal which contemplates termination of the nominee trust, conveyance of the note to the four trustees/beneficiaries as tenants in common and then conveyance by three of the four tenants in common of their respective interests in the note. The attached redraft of the Settlement Agreement so provides.
The assignment agreements for Glenn Thompson and Frederick Weingeroff, individually and as executor of the estate of Gregg Weingeroff, are also attached, and they have been redrafted to accomodate this structure.
I would be grateful for your prompt review of these redrafted documents. If they are acceptable, I would like to get them in final form for execution and begin the signing process as soon as possible.
If you have questions or concerns about the documents, please give me a call. Many thanks.

     -----Original Message-----
     **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
     **Sent:** Friday, August 18, 2006 3:03 PM
     **To:** Tucker, Sandy T.
     **Subject:** RE: Thompson

     Sandy - I believe we are still on track to complete the settlement of the litigation. I have attached a markup of the last version of the Settlement Agreement which you forwarded to me last month. As you can see, I have addressed two matters. The first is the need for the general releases being exchanged by the parties to be mirror images of one another. The second is my continuing concern that the confidentiality provision in the settlement agreement is an invitation for ongoing

11/6/2006

**EXHIBIT G**

## Tucker, Sandy T.

**From:**    Tucker, Sandy T.
**Sent:**    Thursday, August 31, 2006 3:09 PM
**To:**       'Carl I. Freedman'
**Subject:** RE: Thompson

Then please get positive. This is a big deal for the company and we're talking about preserving only a pretty narrow claim description.

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Thursday, August 31, 2006 3:04 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - Thank you for your email. I have a call into Glenn to review with him your email and revised documents. I want you to know that my initial reaction to the proposed reservation of indemnity and contribution rights by TPI and TPHI against Glenn is negative. It is difficult to believe that Glenn would be interested in signing a settlement agreement which does not include a complete release by all parties of all claims, known and unknown. I'll be back to you after Glenn and I discuss your drafts.

Carl

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, August 31, 2006 2:43 PM
**To:** Carl I. Freedman
**Cc:** Graham Jr., Alexander C.; Read, Cameron
**Subject:** RE: Thompson

Carl, I have reviewed with the company your two primary objections to our version of the Settlement Agreement—namely, the confidentiality provision and the releases. As to the confidentiality provision, TPI/TPHI will agree to forego it. As to the releases, TPI/TPHI are also agreed that the releases may be mutual so that TPI and TPHI will release Glenn Thompson and Splash from all unknown, as well as known, claims, but with one important exception. The company is concerned about the possibility of third party claims against it based on acts or omissions of Thompson while in its employ, and we want to preserve indemnification and contribution claims against him in the event third party claims arise. Therefore, you will see the EXCEPT provision in para. 6 to preserve this narrow exception to the otherwise comprehensive release.
Also, we accept as well your general structure of the deal which contemplates termination of the nominee trust, conveyance of the note to the four trustees/beneficiaries as tenants in common and then conveyance by three of the four tenants in common of their respective interests in the note. The attached redraft of the Settlement Agreement so provides.
The assignment agrreements for Glenn Thompson and Frederick Weingeroff, individually and as executor of the estate of Gregg Weingeroff, are also attached, and they have been redrafted to accomodate this structure.
I would be grateful for your prompt review of these redrafted documents. If they are acceptable, I would like to get them in final form for execution and begin the signing process as soon as possible.
If you have questions or concerns about the documents, please give me a call. Many thanks.

11/6/2006                                                              **EXHIBIT H**

## Tucker, Sandy T.

**From:** Carl I. Freedman [CFreedman@crfllp.com]
**Sent:** Friday, September 01, 2006 3:03 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - I discussed your revised Settlement Agreement with Glenn. The only basis on which he will go forward is for all parties to be bound by general releases, without carve outs or exceptions.

Carl

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, August 31, 2006 3:09 PM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

Then please get positive. This is a big deal for the company and we're talking about preserving only a pretty narrow claim description.

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Thursday, August 31, 2006 3:04 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - Thank you for your email. I have a call into Glenn to review with him your email and revised documents. I want you to know that my initial reaction to the proposed reservation of indemnity and contribution rights by TPI and TPHI against Glenn is negative. It is difficult to believe that Glenn would be interested in signing a settlement agreement which does not include a complete release by all parties of all claims, known and unknown. I'll be back to you after Glenn and I discuss your drafts.

Carl

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, August 31, 2006 2:43 PM
**To:** Carl I. Freedman
**Cc:** Graham Jr., Alexander C.; Read, Cameron
**Subject:** RE: Thompson

Carl, I have reviewed with the company your two primary objections to our version of the Settlement Agreement--namely, the confidentiality provision and the releases. As to the confidentiality provision, TPI/TPHI will agree to forego it. As to the releases, TPI/TPHI are also agreed that the releases may be mutual so that TPI and TPHI will release Glenn Thompson and Splash from all unknown, as well as known, claims, but with one important exception. The company is concerned about the possibility of third party claims against it based on acts or omissions of Thompson while in its employ, and we want to preserve

**EXHIBIT I**

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Friday, September 01, 2006 3:24 PM |
| **To:** | 'Carl I. Freedman' |
| **Subject:** | RE: Thompson |

You clearly didn't get positive enough. I'll discuss with my people and get back to you early next week. This could be a showstopper.

> ----Original Message----
> **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
> **Sent:** Friday, September 01, 2006 3:03 PM
> **To:** Tucker, Sandy T.
> **Subject:** RE: Thompson
>
> Sandy - I discussed your revised Settlement Agreement with Glenn. The only basis on which he will go forward for is for all parties to be bound by general releases, without carve outs or exceptions.
>
> Carl

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, August 31, 2006 3:09 PM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

Then please get positive. This is a big deal for the company and we're talking about preserving only a pretty narrow claim description.

> ----Original Message----
> **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
> **Sent:** Thursday, August 31, 2006 3:04 PM
> **To:** Tucker, Sandy T.
> **Subject:** RE: Thompson
>
> Sandy - Thank you for your email. I have a call into Glenn to review with him your email and revised documents. I want you to know that my initial reaction to the proposed reservation of indemnity and contribution rights by TPI and TPHI against Glenn is negative. It is difficult to believe that Glenn would be interested in signing a settlement agreement which does not include a complete release by all parties of all claims, known and unknown. I'll be back to you after Glenn and I discuss your drafts.
>
> Carl

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, August 31, 2006 2:43 PM
**To:** Carl I. Freedman

**EXHIBIT J**

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Thursday, September 07, 2006 2:25 PM |
| **To:** | 'Carl I. Freedman' |
| **Cc:** | 'Read, Cameron'; 'bleason@phoenixmanagement.com'; 'Yemi Sonuga'; Graham Jr., Alexander C. |
| **Subject:** | RE: Thompson |

Carl, Yemi Sonuga and Glenn Thompson have discussed the release issue and the company is willing to make the release mutual with the same provision about Thompson's cooperation with TPHI or TPHI in the event either is sued and the suit involves Thompson's acts or omissions while an officer, director, shareholder or employee of either entity. Therefore, I have redrafted the Settlement Agreement to reflect the change, and I have added to each release a stop date for claims released; that is, neither of us releases the other for claims arising after the date of the Settlement Agreement.

The other documents are not affected by the change in the Settlement Agreement (GT assignment agreement and the Weingeroff assignments). Please let me know asap if the documents are now acceptable for settlement. We need to add a closing date, and we'd like it to be soon, if possible. I understand that all parties will be together tomorrow for a company shareholder meeting, so perhaps that will be a convenient opportunity for all to sign the documents and we can avoid a formal "closing" at Greenberg Traurig. Is that feasible?

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Friday, September 01, 2006 3:03 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - I discussed your revised Settlement Agreement with Glenn. The only basis on which he will go forward is for all parties to be bound by general releases, without carve outs or exceptions.

Carl

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, August 31, 2006 3:09 PM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

Then please get positive. This is a big deal for the company and we're talking about preserving only a pretty narrow claim description.

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Thursday, August 31, 2006 3:04 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - Thank you for your email. I have a call into Glenn to review with him your email and revised documents. I want you to know that my initial reaction to the proposed reservation of indemnity and contribution rights by TPI and TPHI against Glenn is negative. It is difficult to believe that Glenn would be interested in signing a settlement agreement

**EXHIBIT K**

# DRAFT

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into on this _____ day of _____, 2006, by and between Thompson Products, Inc., a Delaware corporation ("TPI") , Thompson Products Holdings, Inc., a Massachusetts corporation ("TPHI"),  Glenn Thompson of Barrington, Rhode Island ("GT"), and Splash Creations, Inc., a Rhode Island corporation (formerly, Thompson Enterprises, Inc.) ("Splash").

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, GT, Mark A. Thompson ("MT"), Frederick L. Weingeroff ("FLW") and Gregg Weingeroff ("GW"), as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to TPI; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, TPHI, parent of TPI, executed and delivered to Box Company a Subordinated Promissory Note payable to Box Company in the original principal amount of FIVE MILLION DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, incident to closing on the Asset Purchase Agreement, GT purchased from TPHI 4,875 shares of TPHI common stock (the "Stock"); and

WHEREAS, after closing on the Asset Purchase Agreement, Box Company changed its name to TPB Liquidating Co., Inc. ("TPBLC"); and

WHEREAS, on or about April 13, 1998 the directors and shareholders of TPBLC executed an Agreement and Declaration of Trust of TPB Liquidating Trust creating a "trust" under Massachusetts General Laws, Chapter 182 (the "TPB Liquidating Trust") with Shares of Beneficial Interest in the TPB Liquidating Trust held by GT, MT, FLW and GW; and

# **DRAFT**

WHEREAS, GT, MT, FLW and GW, as shareholders and directors of Box Company, validly transferred the Subordinated Note to the TPB Liquidating Trust; and

WHEREAS, on or about August 28, 1998, GT, MT, FLW and GW, as trustees and beneficiaries of the TPB Liquidating Trust, entered into and executed an Amended and Restated Agreement and Declaration of Trust whereby the TPB Liquidating Trust was converted to a nominee trust under Massachusetts law ( the "Nominee Trust"); and

WHEREAS,  since August 28, 1998, the Nominee Trust has held as an asset the Subordinated Note; and

WHEREAS, GT, MT, FLW and GW are all trustees of the Nominee Trust as well as beneficiaries to the extent of their respective percentages of interest in Nominee Trust assets, as follows:

| | |
|-----|------------|
| GT | 46.25% |
| MT | 10.00% |
| FLW | 25.00% |
| GW | 18.75%; and |

WHEREAS, GW has since died and his interest in the Nominee Trust has passed to, or is now controlled by, FLW as the personal representative of GT's estate; and

WHEREAS, after closing on the Asset Purchase Agreement, GT was employed by TPI as its President and CEO; and

WHEREAS, GT remained in the employ of TPI as its President until July 2005 when he resigned; and

WHEREAS, shortly after his resignation from TPI, GT formed Splash and began operations in competition with TPI; and

WHEREAS, a dispute arose between TPHI and TPI, on the one hand, and GT and Splash, on the other, as to GT's right to compete against TPI, resulting in the filing of an action

2

# **DRAFT**

styled Thompson Products, Inc. v. Glenn Thompson and Splash Creations, Inc., CA No. 05-

11810-RGS, in the United States District Court for the District of Massachusetts (the

"Litigation") wherein claims and counterclaims were asserted by plaintiff and defendants against

each other; and

WHEREAS, the parties have now agreed upon terms for the compromise and settlement

of the Litigation and other claims among them and wish to reduce those terms to writing in this

Settlement Agreement;

NOW, THEREFORE, in exchange for the promises made each to the other herein, and

for other good and valuable consideration, the receipt and sufficiency of which are hereby

acknowledged, the parties agree as follows:

1. <u>Termination of Nominee Trust</u>.  At Closing on the settlement described herein,

GT, pursuant to paragraph 5 of the August 28, 1998 Amended and Restated Declaration of Trust

of TPB Liquidating Trust, shall terminate the Nominee Trust by notice in writing to the other

Trustees, and at that time GT shall insure that the Trustees transfer and convey the Subordinated

Note, subject to any encumbrances, to GT, MT, FLW and the personal representative of GW, all

of whom shall become tenants in common of the Subordinated Note, with each person holding

the following percentage interest in such Subordinated Note:

| | |
|-----|--------|
| GT | 46.25% |
| MT | 10.00% |
| FLW | 25.00% |
| GW | 18.75% |

GT shall execute, and see to execution by all Trustees and beneficiaries of the Nominee Trust, all

documents that may be necessary to accomplish the Nominee Trust termination and conveyance

of the Subordinated Note.

3

# **DRAFT**

2.     Transfer of GT's Interest in Subordinated Note. At Closing on settlement, and following the transactions recited in paragraph 1 above, GT will execute and deliver the attached Assignment Agreement transferring to TPI, free and clear of all liens and encumbrances, all of GT's right, title and interest in the Subordinated Note and in all proceeds of the Subordinated Note.

3.     Transfer of Stock. At Closing on settlement, GT will transfer to TPHI, free and clear of all liens and encumbrances, all issued and outstanding shares of Stock owned by GT by endorsing all share certificates evidencing the Stock for transfer to TPHI and delivering such certificates to TPHI.

4.     Dismissal of Litigation. At Closing on settlement, counsel for the parties will endorse and promptly thereafter tender to the Court for entry a Dismissal Order With Prejudice in the form attached hereto. TPI's and TPHI's obligation under this paragraph is conditioned upon completion of performance of GT's obligations to TPHI and TPI under paragraphs 1 through 3 above.

5.     General Release by GT and Splash. At Closing, upon performance of GT's obligations under paragraphs 1 through 4 herein, GT and Splash, on behalf of themselves, as well as on behalf of their respective officers, directors, agents, servants, employees, heirs, legal representatives, successors and assigns, as applicable, and on behalf of their respective parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, without further act or deed by any party, forever release, remise, discharge and quitclaim all claims, demands, actions and causes of action, and liabilities of any nature whatsoever, whether at law or in equity, which GT and Splash or either of them ever had, now has, or hereafter may have or claim to have against TPI and/or TPHI, as

4

# **DRAFT**

well as against their affiliates, and all officers, directors, agents, servants, employees, successors

and assigns of such affiliates, including all such claims, demands, actions and causes of action

and liabilities of any nature whatsoever that are then known and all those that are not then known

but which may thereafter be discovered, arising out of,  pertaining to or relating in any way to

any act, transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any

kind whatsoever arising or occurring prior to the date hereof, including, without limitation, any

such claim, demand, action and cause of action arising out of, pertaining to, or relating in any

way to the Asset Purchase Agreement; GT's employment by TPI and his service as officer,

director, shareholder or employee of TPHI; all employment contracts between GT and TPI; GT's

resignation from TPI; GT's and Splash's activities in competition with TPI; and the Litigation,

including all claims and counterclaims made therein and all claims and counterclaims that might

have been made by GT and Splash against TPI or against its parents, subsidiaries or affiliates

therein.

      6.    <u>General Release by TPI and TPHI</u>.  At Closing, upon performance of GT's

obligations under paragraphs 1 through 4 herein, TPI and TPHI, on behalf of themselves, as well

as on behalf of their respective officers, directors, agents, servants, employees, successors and

assigns, as well as on behalf of their respective parents and subsidiaries and all officers,

directors, agents, servants, employees, successors and assigns of such parents and subsidiaries,

thereupon, without further act or deed by any party, forever release, remise, discharge and

quitclaim all claims, demands, actions and causes of action, and liabilities of any nature

whatsoever, whether at law or in equity, which TPI and TPHI or either of them ever had, now

has or hereafter may have or claim to have against GT and/or Splash, as well as against their

affiliates and all officers, directors, agents, servants, employees, successors and assigns of such

5

# **DRAFT**

affiliates, including all such claims, demands, actions and causes of action and liabilities of any

nature whatsoever that are then known and all those that are not then known but which may

thereafter be discovered, arising out of, pertaining to or relating in any way to any act,

transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind

whatsoever arising or occurring prior to the date hereof, including, without limitation, any such

claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to

the Asset Purchase Agreement; GT's employment by TPI and his service as officer, director or

employee of TPHI; all employment contracts between GT and TPI; GT's resignation from TPI;

GT's and Splash's activities in competition with TPI; and the Litigation, including all claims and

counterclaims made therein and all claims and counterclaims that might have been made by TPI

against GT and Splash or against the parents, subsidiaries or affiliates of Splash or the heirs,

successors, legal representatives, or assigns of GT therein EXCEPT that neither TPI, TPHI nor

any of its officers or directors (the "TPI Group") release GT from any claims for indemnification

or contribution based on acts or omissions of GT while serving as an officer, director or

shareholder of TPI or TPHI which the TPI Group or any one of them might hereafter assert

against GT, in response to a claim or cause of action asserted by any person not a party to this

Settlement Agreement against the TPI Group or any one or more of them.  In the event any

claims, demands, actions or causes of action are asserted by such non-party against the TPI

Group, or any one or more of them, GT will cooperate with the TPI Group, to the extent that is

necessary and appropriate, in defending such claims, demands, actions and causes of action.

      7.    <u>Non-Solicitation.</u>

      (a) GT and Splash each agrees that for a period of one (1) year from the date of

Closing on this Settlement Agreement, he/it will not, directly or indirectly, solicit, employ or

# **DRAFT**

hire, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was or had been employed by TPI or TPHI or by any business in which TPI or TPHI has a material interest, either direct or indirect, as an officer, partner, shareholder or beneficial owner during the six-month period immediately preceding the date of such solicitation or employment.

(b) TPI and TPHI each agrees that for a period of one (1) year from the date of this Settlement Agreement, it will not, directly or indirectly, solicit, hire or employ, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was or had been employed by GT or Splash or by any business in which GT or Splash has a material interest , either direct or indirect, as an officer, partner, shareholder or beneficial owner during the six-month period immediately preceding the date of such solicitation or employment.

8.      Non-Disparagement.  Each of the parties hereto agrees to refrain from making disparaging, false or misleading oral or written statements about another party hereto which are intended to damage or otherwise harm such party's reputation in the marketplace.

9.      Choice of Law.  All issues pertaining to the formation, interpretation, construction, performance or non-performance of this Settlement Agreement shall be governed by the laws of the Commonwealth of Massachusetts.

10.     Choice of Forum.  All disputes, actions and/or causes of action pertaining to or arising out of this Settlement Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Settlement Agreement agree that they shall be subject to the active jurisdiction of such Court for this purpose.

7

# DRAFT

11.   <u>Counterpart Execution.</u>  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

12.   <u>Facsimile Signatures.</u>  The parties agree that facsimile signatures shall be the equivalent of original signatures.

13.   <u>Entire Agreement.</u>  This Settlement Agreement contains all of the terms and provisions agreed upon by the parties for settlement of the Litigation and a general release of claims between them.  Each party hereby acknowledges that he/it has not relied upon any extraneous statements or documents in agreeing to the terms recited herein or in executing this Settlement Agreement.

14.   <u>Authorization.</u>  At Closing, each of the corporate parties to this Settlement Agreement shall deliver a certificate duly executed by its Clerk or Secretary, as applicable, dated within ten (10) days of the Closing, certifying that at a meeting of the board of directors of the corporation duly convened in accordance with the by-laws of the corporation and otherwise in accordance with law, the directors, by resolution duly adopted by requisite vote, authorized the execution and delivery of this Settlement Agreement, and the performance by such corporation of the terms set out herein and further authorized the person signing this Settlement Agreement on behalf of such corporation to do so and that the action taken by the board of directors remains in full force and effect without amendment thereto.

15.   <u>Closing.</u>  Closing on this Settlement Agreement shall occur at the offices of Greenberg Traurig, One International Place, Boston, MA 02110 on _____, 2006, at _____ (a.) (p.)m.

8

# **DRAFT**

16.    <u>Successors and Assigns.</u>  This Settlement Agreement shall be binding upon and inure to the benefit of the undersigned parties and their successors, assigns, heirs, distributees and legal representatives, as applicable.

Witness:                                                THOMPSON PRODUCTS, INC.

_____       By _____
                                                                Its Authorized Representative

Witness:                                                THOMPSON PRODUCTS HOLDINGS, INC.

_____       By _____
                                                                Its Authorized Representative

Witness:                                                SPLASH CREATIONS, INC. (Formerly, Thompson Enterprises, Inc.)

_____       By _____
                                                                Its Authorized Representative

Witness:

_____       _____
                                                                GLENN THOMPSON, Individually

1278991v5

9

*DRAFT 8/30/06*

## ASSIGNMENT AGREEMENT

**THIS ASSIGNMENT AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of July, 2006, by and between **GLENN THOMPSON** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

## W I T N E S S E T H :

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Assignor, Mark A. Thompson, Gregg Weingeroff and Frederick L. Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assginee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company; and

WHEREAS, the four beneficiaries of the Trust, who are also all of the trustees of the Trust (collectively, the "Beneficiaries") had the following respective percentages of beneficial interest therein:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, the trustees of the Trust held the Subordinated Note for the benefit of the Beneficiaries; and

WHEREAS, pursuant to paragraph 5 of the August 28, 1998 Amended and Restated Declaration of Trust, has properly and validly terminated the Trust and the Subordinated Note has been validly transferred to the Beneficiaries as tenants in common with each Beneficiary

holding right, title and interest in the Subordinated Note, as a tenant in common, to the extent of his respective percentage interest recited above; and

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign all of Assignor's right, title and interest in, to and under, the Subordinated Note, including, without limitation, Assignor's right to receive and collect all principal, interest, fees, costs and expenses now or hereafter due relating to the Subordinated Note (collectively, the "Assigned Rights"), subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1. <u>Assignment of All Right, Title and Interest in Subordinated Note</u>. Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, all of his right, title and interest as a tenant in common in the Subordinated Note, including the Assigned Rights.

2. <u>Acceptance of Assignment in Subordinated Note</u>. Assignee does hereby accept Assignor's assignment of Assignor's right, title and interest as a tenant in common in the Subordinated Note, including the Assigned Rights, subject to the terms and conditions set forth herein.

3. <u>Representations and Warranties</u>. The Assignor hereby represents and warrants to the Assignee that:

    (a) Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

    (b) To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

    (c) To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (d) No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

    (e) Assignor has full authority to assign the interest in the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

2

4.   Indemnity.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.   Obligations of the Parties.  The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the right, title and interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

6.   Choice of Law.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

7.   Choice of Forum.  All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

8.   Counterpart Execution.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

9.   Facsimile Signatures.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

10.  Entire Agreement.  This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.  This Agreement may be modified in writing signed by each of the parties hereto.

11.  Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

**"ASSIGNOR"**


_____
GLENN THOMPSON

**"ASSIGNEE"**

**THOMPSON PRODUCTS HOLDINGS, INC.**

By: _____
              PRESIDENT

1294683v1

*DRAFT 8/30/06*

## ASSIGNMENT AND RELEASE AGREEMENT

THIS ASSIGNMENT AND RELEASE AGREEMENT (this "Agreement") is made and delivered as of the ___ day of August, 2006, by and between **FREDERICK L. WEINGEROFF** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

### W I T N E S S E T H :

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Assignor, Glenn Thompson, Mark A. Thompson and Gregg Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company (Gregg Weingeroff having since died with his interest having passed to Frederick L. Weingerhoff as Executor of the Estate of Gregg Weingeroff); and

WHEREAS, the Trust was terminated by action of one or more of the Trust beneficiaries (collectively, the "Beneficiaries")/trustees effective _____, 2006, and the trustees distributed the sole asset of the Trust, being the Subordinated Note, to the Beneficiaries as tenants in common as required by Paragraph 5 of the Trust; and

WHEREAS, the four Beneficiaries of the Trust hold the Note as tenants in common in proportion to their respective percentages of interest which are as follows:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign his right, title and interest in the Subordinated Note to Assignee, subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  Assignment of Interest in Subordinated Note. Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, his entire right, title and interest as a tenant in common in the Subordinated Note and in all proceeds of the Subordinated Note.

2.  Acceptance of Assignment of Interest in Subordinated Note. Assignee does hereby accept Assignor's interest in the Subordinated Note, subject to the terms and conditions set forth herein.

3.  Representations and Warranties. The Assignor hereby represents and warrants to the Assignee that:

    (a)  Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

    (b)  To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

    (c)  To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (d)  No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

    (e)  Assignor has full authority to assign the interest in the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

4.  Indemnity. Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.  Mutual Release. At Closing, upon performance of the obligations recited above, Assignor and Assignee, on behalf of themselves, as well as on behalf of their officers, directors, agents, servants, employees, successors, heirs and assigns, as well as on behalf of their parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, and without further

2

act or deed by any party, release, remise, discharge and quitclaim all claims, demands, actions and causes of action, whether at law or in equity, against the other, as well as against its parents, subsidiaries and affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such parents, subsidiaries and affiliates, including all such claims, demands, actions and causes of action, whether known or unknown, arising out of, pertaining to or relating in any way to the Subordinated Note and Assignor's interest therein.

6.    Obligations of the Parties.  The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the rights and interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

7.    Choice of Law.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

8.    Choice of Forum.  All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

9.    Counterpart Execution.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

10.    Facsimile Signatures.  The parties agree that facsimile signatures shall be the equivalent of original signatures.

11.    Entire Agreement.  This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.  This Agreement may be modified in writing signed by each of the parties hereto.

12.    Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

**"ASSIGNOR"**

By: _____
         FREDERICK L. WEINGEROFF

**"ASSIGNEE"**

**THOMPSON PRODUCTS HOLDINGS, INC.**

By: _____
                    PRESIDENT

[294722v]

4

*DRAFT 8/24/06*

## ASSIGNMENT AND RELEASE AGREEMENT

**THIS ASSIGNMENT AND RELEASE AGREEMENT** (this "Agreement") is made and delivered as of the ___ day of June, 2006, by and between **FREDERICK L. WEINGEROFF, AS EXECUTOR OF THE ESTATE OF GREGG WEINGEROFF** (hereinafter referred to as "Assignor") and **THOMPSON PRODUCTS HOLDINGS, INC.** (hereinafter referred to as "Assignee").

<u>W I T N E S S E T H</u> :

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, who were Gregg Weingeroff, Glenn Thompson, Mark A. Thompson and Frederick L. Weingeroff, as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to Thompson Products, Inc. ("TPI"), a wholly-owned subsidiary of Assignee; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, Assignee executed and delivered to Box Company a Subordinated Promissory Note, dated January 5, 1998, payable to Box Company in the original principal amount of FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, Box Company changed its name to "TPB Liquidating Co., Inc. and all of its business and assets (including the Subordinated Note) were assigned to TPB Liquidating Trust pursuant to an Assignment and Assumption Agreement dated as of April 14, 1998; and

WHEREAS, under the terms of an Amended and Restated Declaration of Trust, dated August 28, 1998, the TPB Liquidating Trust was reorganized as a nominee trust (the "Trust") having no shares of beneficial interest and having as its beneficiaries the four former shareholders of Box Company (Gregg Weingeroff having since died with his interest having passed to Frederick L. Weingerhoff as Executor of the Estate of Gregg Weingeroff); and

WHEREAS, the Trust was terminated by action of one or more of the Trust beneficiaries (collectively, the "Beneficiaries")/trustees effective _____, 2006, and the trustees distributed the sole asset of the Trust, being the Subordinated Note, to the Beneficiaries as tenants in common as required by Paragraph 5 of the Trust; and

WHEREAS, the four Beneficiaries of the Trust hold the Subordinated Note as tenants in common in proportion to their respective percentages of beneficial interest which are as follows:

| | |
|---|---|
| Glenn Thompson | 46.25% |
| Mark Thompson | 10.00% |
| Frederick L. Weingeroff | 25.00% |
| Estate of Gregg Weingeroff | 18.75% |

WHEREAS, by its terms, the Subordinated Note is not yet due and payable; and

WHEREAS, the Assignor and Assignee have agreed that Assignor will irrevocably transfer and assign his right, title and interest in the Subordinated Note to Assignee, subject to the terms and conditions set forth herein.

NOW, THEREFORE, for and in consideration of the mutual covenants and conditions herein contained, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby agree as follows:

1.  <u>Assignment of Interest in Subordinated Note</u>.  Assignor does hereby irrevocably sell, transfer, assign, grant and convey to Assignee, its successors and assigns, his entire right, title and interest as a tenant in common in the Subordinated Note and all proceeds of the Subordinated Note.

2.  <u>Acceptance of Assignment of Interest in Subordinated Note</u>.  Assignee does hereby accept Assignor's interest in the Subordinated Note, subject to the terms and conditions set forth herein.

3.  <u>Representations and Warranties</u>.  The Assignor hereby represents and warrants to the Assignee that:

    (a)  Assignor has made no other assignment, conveyance or other transfer of his interest in the Subordinated Note to any party.

    (b)  To the knowledge of Assignor, the terms of the Subordinated Note have not been modified, waived, altered or amended in any respect by any holder of the Subordinated Note.

    (c)  To the knowledge of Assignor, the Subordinated Note has not been canceled, further subordinated, rescinded, pledged, hypothecated or assigned in any respect by the holder thereof, and no instrument to that effect has been executed.

    (d)  No consent of the other tenants in common, nor any third party is required to effect the assignment by Assignor to Assignee contemplated herein.

    (e)  The executor, Frederick L. Weingeroff, has qualified as the executor of the Estate of Greg Weingeroff and has full authority in his capacity as executor to assign the interest of the Subordinated Note held by Assignor and release Assignee from all claims related thereto.

4.  <u>Indemnity</u>.  Assignor agrees to indemnify and hold Assignee harmless from and against any claims, demands, liabilities and expenses (including, without limitation, court costs and attorneys' fees) incurred by Assignee arising out of any breach by Assignor of any of its representations and warranties in Section 3 hereof.

5.   Mutual Release.   At Closing, upon performance of the obligations recited above, Assignor and Assignee, on behalf of themselves, as well as on behalf of their officers, directors, agents, servants, employees, successors, heirs and assigns, as well as on behalf of their parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, and without further act or deed by any party, release, remise, discharge and quitclaim all claims, demands, actions and causes of action, whether at law or in equity, against the other, as well as against its parents, subsidiaries and affiliates, and all officers, directors, agents, servants, employees, successors and assigns of such parents, subsidiaries and affiliates, including all such claims, demands, actions and causes of action, whether known or unknown, arising out of, pertaining to or relating in any way to the Subordinated Note and Assignor's interest therein.

6.   Obligations of the Parties.   The Assignor and the Assignee agree to do such further acts and to execute and deliver any further agreements, instruments or documents as may be necessary or appropriate to vest more fully in the Assignee the rights and interest of Assignor in and to the Subordinated Note being transferred to Assignee and to carry out the purposes of this Agreement.

7.   Choice of Law.   This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.

8.   Choice of Forum.   All disputes, actions and/or causes of action pertaining to or arising out of this Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the District of Massachusetts, and all parties to this Agreement agree that they shall be subject to the jurisdiction of such Court for this purpose.

9.   Counterpart Execution.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

10.  Facsimile Signatures.   The parties agree that facsimile signatures shall be the equivalent of original signatures.

11.  Entire Agreement.   This Agreement contains the entire agreement between the parties hereto regarding the subject matter hereof.  This Agreement may be modified in writing signed by each of the parties hereto.

12.  Successors and Assigns.   This Agreement shall be binding upon and inure to the benefit of the undersigned parties and their respective successors, assigns, heirs, distributees and legal representatives, as applicable.

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be duly executed as of the date and year first above written.

3

**"ASSIGNOR"**

**ESTATE OF GREGG WEINGEROFF**


By: _____
     FREDERICK L. WEINGEROFF, EXECUTOR


**"ASSIGNEE"**

**THOMPSON PRODUCTS HOLDINGS, INC.**


By: _____
                  PRESIDENT

1286046v4

4

## Tucker, Sandy T.

**From:**    Carl I. Freedman [CFreedman@crfllp.com]
**Sent:**    Monday, September 11, 2006 5:59 PM
**To:**      Tucker, Sandy T.
**Cc:**      gt@splashcreationsinc.com
**Subject:** RE: Thompson

Sandy - I have attached your latest draft with a few edits to insure, to the extent possible, that the clean break we're looking for is achieved. Please let me know if these changes are acceptable.
Glenn, please double check the percentage interests in the trust to make certain that I'm working with the current numbers.

Carl


To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.


**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Monday, September 11, 2006 10:20 AM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

What is the status of the revised agreements?  If acceptable, I'd like to wind this up asap. Thanks

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Friday, September 01, 2006 3:03 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - I discussed your revised Settlement Agreement with Glenn. The only basis on which he will go forward is for all parties to be bound by general releases, without carve outs or exceptions.

Carl


**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, August 31, 2006 3:09 PM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

**EXHIBIT L**

# **DRAFT**

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into on this _____ day of _____, 2006, by and between Thompson Products, Inc., a Delaware corporation ("TPI") , Thompson Products Holdings, Inc., a Massachusetts corporation ("TPHI"),  Glenn Thompson of Barrington, Rhode Island ("GT"), and Splash Creations, Inc., a Rhode Island corporation (formerly, Thompson Enterprises, Inc.) ("Splash").

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, GT, Mark A. Thompson ("MT"), Frederick L. Weingeroff ("FLW") and Gregg Weingeroff ("GW"), as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to TPI; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, TPHI, parent of TPI, executed and delivered to Box Company a Subordinated Promissory Note payable to Box Company in the original principal amount of FIVE MILLION DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, incident to closing on the Asset Purchase Agreement, GT purchased from TPHI 4,875 shares of TPHI common stock (the "Stock"); and

WHEREAS, after closing on the Asset Purchase Agreement, Box Company changed its name to TPB Liquidating Co., Inc. ("TPBLC"); and

WHEREAS, on or about April 13, 1998 the directors and shareholders of TPBLC executed an Agreement and Declaration of Trust of TPB Liquidating Trust creating a "trust" under Massachusetts General Laws, Chapter 182 (the "TPB Liquidating Trust") with Shares of Beneficial Interest in the TPB Liquidating Trust held by GT, MT, FLW and GW; and

# DRAFT

WHEREAS, GT, MT, FLW and GW, as shareholders and directors of Box Company, validly transferred the Subordinated Note to the TPB Liquidating Trust; and

WHEREAS, on or about August 28, 1998, GT, MT, FLW and GW, as trustees and beneficiaries of the TPB Liquidating Trust, entered into and executed an Amended and Restated Agreement and Declaration of Trust whereby the TPB Liquidating Trust was converted to a nominee trust under Massachusetts law ( the "Nominee Trust"); and

WHEREAS, since August 28, 1998, the Nominee Trust has held as an asset the Subordinated Note; and

WHEREAS, GT, MT, FLW and GW are all trustees of the Nominee Trust as well as beneficiaries to the extent of their respective percentages of interest in Nominee Trust assets, as follows:

| | |
|------|------------|
| GT   | 46.25%     |
| MT   | 10.00%     |
| FLW  | 25.00%     |
| GW   | 18.75%; and |

WHEREAS, GW has since died and his interest in the Nominee Trust has passed to, or is now controlled by, FLW as the personal representative of GT's estate; and

WHEREAS, after closing on the Asset Purchase Agreement, GT was employed by TPI as its President and CEO; and

WHEREAS, GT remained in the employ of TPI as its President until July 2005 when he resigned; and

WHEREAS, shortly after his resignation from TPI, GT formed Splash and began operations in competition with TPI; and

WHEREAS, a dispute arose between TPHI and TPI, on the one hand, and GT and Splash, on the other, as to GT's right to compete against TPI, resulting in the filing of an action

2

# DRAFT

styled <u>Thompson Products, Inc. v. Glenn Thompson and Splash Creations, Inc.</u>, CA No. 05-

11810-RGS, in the United States District Court for the District of Massachusetts (the

"Litigation") wherein claims and counterclaims were asserted by plaintiff and defendants against

each other; and

WHEREAS, the parties have now agreed upon terms for the compromise and settlement

of the Litigation and other claims among them and wish to reduce those terms to writing in this

Settlement Agreement;

NOW, THEREFORE, in exchange for the promises made each to the other herein, and

for other good and valuable consideration, the receipt and sufficiency of which are hereby

acknowledged, the parties agree as follows:

1.    <u>Termination of Nominee Trust</u>.  At Closing on the settlement described herein,

GT, pursuant to paragraph 5 of the August 28, 1998 Amended and Restated Declaration of Trust

of TPB Liquidating Trust, shall terminate the Nominee Trust by notice in writing to the other

Trustees, and at that time GT shall cause the Trustees to transfer and convey the Subordinated

Note, subject to any encumbrances, to GT, MT, FLW and the personal representative of GW, all

of whom shall become tenants in common of the Subordinated Note, with each person holding

the following percentage interest in such Subordinated Note:

|     |        |
| --- | ------ |
| GT  | 46.25% |
| MT  | 10.00% |
| FLW | 25.00% |
| GW  | 18.75% |

GT shall execute, and see to execution by all Trustees of the Nominee Trust, all documents that

may be necessary to accomplish the Nominee Trust termination and conveyance of the

Subordinated Note.

**Deleted:** insure

**Deleted:** that

**Deleted:** and beneficiaries

3

**DRAFT**

2.     Transfer of GT's Interest in Subordinated Note. At Closing on settlement, and following the transactions recited in paragraph 1 above, GT will execute and deliver the attached Assignment Agreement transferring to TPI, free and clear of all liens and encumbrances, all of GT's right, title and interest in the Subordinated Note and in all proceeds of the Subordinated Note.

3.     Transfer of Stock. At Closing on settlement, GT will transfer to TPHI, free and clear of all liens and encumbrances, all issued and outstanding shares of Stock owned by GT by endorsing all share certificates evidencing the Stock for transfer to TPHI and delivering such certificates to TPHI.

4.     Dismissal of Litigation. At Closing on settlement, counsel for the parties will endorse and promptly thereafter tender to the Court for entry a Dismissal Order With Prejudice in the form attached hereto. TPI's and TPHI's obligation under this paragraph is conditioned upon completion of performance of GT's obligations to TPHI and TPI under paragraphs 1 through 3 above.

5.     General Release by GT and Splash. At Closing, upon performance of GT's obligations under paragraphs 1 through 4 herein and upon performance of TPI's and TPHI's obligations under paragraph 4, GT and Splash, on behalf of themselves, as well as on behalf of their respective officers, directors, agents, servants, employees, heirs, legal representatives, successors and assigns, as applicable, and on behalf of their respective parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, without further act or deed by any party, forever release, remise, discharge and quitclaim all claims, demands, actions and causes of action, and liabilities of any nature whatsoever, whether at law or in equity, relating to any activity which arose or occurred at

| Deleted: arising |
| --- |

4

**DRAFT**

any time prior to and including September ____, 2006, which GT and Splash or either of them

ever had, now has, or hereafter may have or claim to have against TPI and/or TPHI, as well as

against their affiliates, and all officers, directors, agents, servants, employees, successors and

assigns of such affiliates, including all such claims, demands, actions and causes of action and

liabilities of any nature whatsoever that are then known and all those that are not then known but

which may thereafter be discovered, arising out of,  pertaining to or relating in any way to any

act, transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind

whatsoever arising or occurring prior to the date hereof, including, without limitation, any such

claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to

the Asset Purchase Agreement; GT's employment by TPI and his service as officer, director,

shareholder or employee of TPHI; all employment contracts between GT and TPI; GT's

resignation from TPI; GT's and Splash's activities in competition with TPI; and the Litigation,

including all claims and counterclaims made therein and all claims and counterclaims that might

have been made by GT and Splash against TPI or against its parents, subsidiaries or affiliates

therein.

6.      General Release by TPI and TPHI.  At Closing, upon performance of GT's

obligations under paragraphs 1 through 4 herein, TPI and TPHI, on behalf of themselves, as well

as on behalf of their respective officers, directors, agents, servants, employees, successors and

assigns, as well as on behalf of their respective parents and subsidiaries and all officers,

directors, agents, servants, employees, successors and assigns of such parents and subsidiaries,

thereupon, without further act or deed by any party, forever release, remise, discharge and

quitclaim all claims, demands, actions and causes of action, and liabilities of any nature

whatsoever, whether at law or in equity, relating to any activity which arose or occurred at any

5

# DRAFT

Deleted: 8

time prior to and including September _____, 2006, which TPI and TPHI or either of them ever had, now has or hereafter may have or claim to have against GT and/or Splash, as well as against their affiliates and all officers, directors, agents, servants, employees, successors and assigns of such affiliates, including all such claims, demands, actions and causes of action and liabilities of any nature whatsoever that are then known and all those that are not then known but which may thereafter be discovered, arising out of, pertaining to or relating in any way to any act, transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind whatsoever arising or occurring prior to the date hereof, including, without limitation, any such claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to the Asset Purchase Agreement; GT's employment by TPI and his service as officer, director or employee of TPHI; all employment contracts between GT and TPI; GT's resignation from TPI; GT's and Splash's activities in competition with TPI; and the Litigation, including all claims and counterclaims made therein and all claims and counterclaims that might have been made by TPI against GT and Splash or against the parents, subsidiaries or affiliates of Splash or the heirs, successors, legal representatives, or assigns of GT therein.  In the event any claims, demands, actions or causes of action are hereafter asserted against TPHI, TPI, or any of its parents, subsidiaries, officers, directors, shareholders, agents, servants or employees pertaining to acts or omissions of GT while he was serving as an officer, director, shareholder or employee of TPHI or TPI, GT will cooperate with TPHI, TPI or such TPI/TPHI personnel, to the extent reasonably necessary and appropriate, and for reasonable compensation, in defending such claims, demands, actions and causes of action; provided, however, no dispute concerning the performance of the obligations of the parties in regard to this sentence shall limit, restrict, or otherwise affect in any

Deleted: the

6

# DRAFT

way the scope and enforceability of the general release by TPI and TPHI contained in this

paragraph 6.

7.   Non-Solicitation.

(a) GT and Splash each agrees that for a period of one (1) year from the date of

Closing on this Settlement Agreement, he/it will not, directly or indirectly, solicit, employ or

hire, as an employee or as an independent contractor, any person who, as of the time of such

solicitation or employment, was or had been employed by TPI or TPHI or by any business in

which TPI or TPHI has a material interest, either direct or indirect, as an officer, partner,

shareholder or beneficial owner during the six-month period immediately preceding the date of

such solicitation or employment.

(b) TPI and TPHI each agrees that for a period of one (1) year from the date of

this Settlement Agreement, it will not, directly or indirectly, solicit, hire or employ, as an

employee or as an independent contractor, any person who, as of the time of such solicitation or

employment, was or had been employed by GT or Splash or by any business in which GT or

Splash has a material interest , either direct or indirect, as an officer, partner, shareholder or

beneficial owner during the six-month period immediately preceding the date of such solicitation

or employment.

8.   Non-Disparagement.  Each of the parties hereto agrees to refrain from making

disparaging, false or misleading oral or written statements about another party hereto which are

intended to damage or otherwise harm such party's reputation in the marketplace.

9.   Choice of Law.  All issues pertaining to the formation, interpretation,

construction, performance or non-performance of this Settlement Agreement shall be governed

by the laws of the Commonwealth of Massachusetts,     10.     Choice of Forum.  Except as

| Deleted: ¶ |

7

**DRAFT**

Deleted: A

hereinafter provided, all disputes, actions and/or causes of action pertaining to or arising out of

this Settlement Agreement shall be subject to the exclusive jurisdiction of the United States

District Court for the District of Massachusetts, and all parties to this Settlement Agreement

agree that they shall be subject to the active jurisdiction of such Court for this purpose.

Notwithstanding the foregoing, any dispute pertaining to the performance or non-performance of

the last sentence of paragraph 6 shall be resolved by binding arbitration in Providence, Rhode

Island under the rules of the American Arbitration Association. The parties shall share the costs

of any such arbitration equally.

11.    Counterpart Execution.  This Settlement Agreement may be executed in one or

more counterparts, each of which shall be deemed an original, but all of which together shall

constitute one and the same document.

12.    Facsimile Signatures.  The parties agree that facsimile signatures shall be the

equivalent of original signatures.

13.    Entire Agreement.  This Settlement Agreement contains all of the terms and

provisions agreed upon by the parties for settlement of the Litigation and a general release of

claims between them.  Each party hereby acknowledges that he/it has not relied upon any

extraneous statements or documents in agreeing to the terms recited herein or in executing this

Settlement Agreement.

14.    Authorization.  At Closing, each of the corporate parties to this Settlement

Agreement shall deliver a certificate duly executed by its Clerk or Secretary, as applicable, dated

within ten (10) days of the Closing, certifying that at a meeting of the board of directors of the

corporation duly convened in accordance with the by-laws of the corporation and otherwise in

accordance with law, the directors, by resolution duly adopted by requisite vote,  authorized the

8

# DRAFT

execution and delivery of this Settlement Agreement, and the performance by such corporation of the terms set out herein and further authorized the person signing this Settlement Agreement on behalf of such corporation to do so and that the action taken by the board of directors remains in full force and effect without amendment thereto.

15.    Closing.  Closing on this Settlement Agreement shall occur at the offices of Greenberg Traurig, One International Place, Boston, MA 02110 on _____, 2006, at _____ (a.) (p.)m.

16.    Successors and Assigns.  This Settlement Agreement shall be binding upon and inure to the benefit of the undersigned parties and their successors, assigns, heirs, distributees and legal representatives, as applicable.

Witness:                                    THOMPSON PRODUCTS, INC.


_____          By _____
                                                Its Authorized Representative


Witness:                                    THOMPSON PRODUCTS HOLDINGS, INC.


_____          By _____
                                                Its Authorized Representative




Witness:                                    SPLASH CREATIONS, INC. (Formerly,
                                                Thompson Enterprises, Inc.)


_____          By _____
                                                Its Authorized Representative

Witness:

9

**DRAFT**

_____      GLENN THOMPSON, Individually

1778991v5

10

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Tuesday, September 12, 2006 9:52 AM |
| **To:** | 'Carl I. Freedman' |
| **Cc:** | 'Yemi Sonuga'; Brian Gleason |

**Subject:** RE: Thompson

Carl, as to your addition to para. 6 to provide for TPI/TPHI's payment of reasonable cooperation to Glenn Thompson for his cooperation, we can't agree to pay a witness in advance for his "cooperation". It would completely destroy his and our credibility as to anything he had to say as a witness and it's probably unethical to do so. We can agree to reimburse him for any costs expended in connection with his cooperation.
Second, your addition of the arbitration provision to para. 10 doesn't make sense to me. You're talking about arbitrating a dispute pertaining to performance or non-performance of the last sentence of para. 6. That sentence addresses actions filed against TPI or TPHI by third parties where the basis of the claim is some act or omission of Glenn Thompson and provides for his cooperation with TPI and TPHI in defending the claim. To be sure, our agreement cannot dictate arbitration of the third party claim against TPI or TPHI, and any claim TPI or TPHI would have against Glenn Thompson as an indemnification claim to pass on TPI's or TPHI's liability to third party. We attempted to preserve that claim in the prior draft of our release, but have since relented on that and are now providing for release of Glenn even as to such indemnification claims. The only other claim TPI or TPHI might make against Glenn arising out of para. 6 is a claim for breach of the Settlement Agreement by his non-cooperation. Perhaps that's what you are addressing in your arbitration provision. If so, I see no problem with agreeing to arbitrate that controversy, although I'm not convinced we are doing our clients a favor to carve this out for arbitration, but we need to be more specific about what's being preserved for arbitration if that's your intent. If it's not, please explain what you're attempting to preserve with this arbitration provision.

> ----Original Message----
> **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
> **Sent:** Monday, September 11, 2006 5:59 PM
> **To:** Tucker, Sandy T.
> **Cc:** gt@splashcreationsinc.com
> **Subject:** RE: Thompson
>
> Sandy - I have attached your latest draft with a few edits to insure, to the extent possible, that the clean break we're looking for is achieved. Please let me know if these changes are acceptable. Glenn, please double check the percentage interests in the trust to make certain that I'm working with the current numbers.
>
> Carl
>
>
> To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Monday, September 11, 2006 10:20 AM
**To:** Carl I. Freedman

**EXHIBIT M**

## Tucker, Sandy T.

**From:**     Carl I. Freedman [CFreedman@crfllp.com]

**Sent:**     Tuesday, September 12, 2006 1:36 PM

**To:**       Tucker, Sandy T.

**Cc:**       gt@splashcreationsinc.com

**Subject:** RE: Thompson

Sandy - Thank you for your feedback. I understand your concern about not wanting to blur the distinction between the cooperation obligations and the general releases. As a result, I have separated the cooperation provision in order to make it clear that it is only disputes relating to the enforcement of that paragraph which would be the subject of local arbitration. I have also clarified that what Glenn had expected is only to be reimbursed for expenses incurred, not to be paid an hourly rate for his cooperation.

     Please look over this revised version and let me know if you have any further comments.

Carl


To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.


**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Tuesday, September 12, 2006 9:52 AM
**To:** Carl I. Freedman
**Cc:** Yemi Sonuga; Brian Gleason
**Subject:** RE: Thompson

Carl, as to your addition to para. 6 to provide for TPI/TPHI's payment of reasonable cooperation to Glenn Thompson for his cooperation, we can't agree to pay a witness in advance for his "cooperation". It would completely destroy his and our credibility as to anything he had to say as a witness and it's probably unethical to do so. We can agree to reimburse him for any costs expended in connection with his cooperation. Second, your addition of the arbitration provision to para. 10 doesn't make sense to me. You're talking about arbitrating a dispute pertaining to performance or non-performance of the last sentence of para. 6. That sentence addresses actions filed against TPI or TPHI by third parties where the basis of the claim is some act or omission of Glenn Thompson and provides for his cooperation with TPI and TPHI in defending the claim. To be sure, our agreement cannot dictate arbitration of the third party claim against TPI or TPHI, and any claim TPI or TPHI would have against Glenn Thompson would be an indemnification claim to pass on TPI's or TPHI's liability to third party. We attempted to preserve that claim in the prior draft of our release, but have since relented on that and are now providing for release of Glenn even as to such indemnification claims. The only other claim TPI or TPHI might make against Glenn arising out of para. 6 is a claim for breach of the Settlement Agreement by his non-cooperation. Perhaps that's what you are addressing in your arbitration provision. If so, I see no problem with agreeing to arbitrate that controversy, although I'm not convinced we are doing our clients a favor to carve this out for arbitration, but we need to be more specific about what's being preserved for arbitration if that's your intent. If it's not, please explain what you're attempting to preserve with this arbitration provision.


**EXHIBIT N**

# DRAFT

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into on this _____ day of _____, 2006, by and between Thompson Products, Inc., a Delaware corporation ("TPI") , Thompson Products Holdings, Inc., a Massachusetts corporation ("TPHI"),  Glenn Thompson of Barrington, Rhode Island ("GT"), and Splash Creations, Inc., a Rhode Island corporation (formerly, Thompson Enterprises, Inc.) ("Splash").

WHEREAS, on November 24, 1997, Thompson Paper Box Co., Inc. ("Box Company") and its shareholders, GT, Mark A. Thompson ("MT"), Frederick L. Weingeroff ("FLW") and Gregg Weingeroff ("GW"), as sellers, entered into an Asset Purchase Agreement wherein the described assets of Box Company were sold to TPI; and

WHEREAS, as partial consideration for the transfer of Box Company's assets to TPI, TPHI, parent of TPI, executed and delivered to Box Company a Subordinated Promissory Note payable to Box Company in the original principal amount of FIVE MILLION DOLLARS ($5,000,000.00) (the "Subordinated Note"); and

WHEREAS, incident to closing on the Asset Purchase Agreement, GT purchased from TPHI 4,875 shares of TPHI common stock (the "Stock"); and

WHEREAS, after closing on the Asset Purchase Agreement, Box Company changed its name to TPB Liquidating Co., Inc. ("TPBLC"); and

WHEREAS, on or about April 13, 1998 the directors and shareholders of TPBLC executed an Agreement and Declaration of Trust of TPB Liquidating Trust creating a "trust" under Massachusetts General Laws, Chapter 182 (the "TPB Liquidating Trust") with Shares of Beneficial Interest in the TPB Liquidating Trust held by GT, MT, FLW and GW; and

# DRAFT

WHEREAS, GT, MT, FLW and GW, as shareholders and directors of Box Company, validly transferred the Subordinated Note to the TPB Liquidating Trust; and

WHEREAS, on or about August 28, 1998, GT, MT, FLW and GW, as trustees and beneficiaries of the TPB Liquidating Trust, entered into and executed an Amended and Restated Agreement and Declaration of Trust whereby the TPB Liquidating Trust was converted to a nominee trust under Massachusetts law ( the "Nominee Trust"); and

WHEREAS, since August 28, 1998, the Nominee Trust has held as an asset the Subordinated Note; and

WHEREAS, GT, MT, FLW and GW are all trustees of the Nominee Trust as well as beneficiaries to the extent of their respective percentages of interest in Nominee Trust assets, as follows:

| | |
|-----|--------|
| GT | 46.25% |
| MT | 10.00% |
| FLW | 25.00% |
| GW | 18.75%; and |

WHEREAS, GW has since died and his interest in the Nominee Trust has passed to, or is now controlled by, FLW as the personal representative of GT's estate; and

WHEREAS, after closing on the Asset Purchase Agreement, GT was employed by TPI as its President and CEO; and

WHEREAS, GT remained in the employ of TPI as its President until July 2005 when he resigned; and

WHEREAS, shortly after his resignation from TPI, GT formed Splash and began operations in competition with TPI; and

WHEREAS, a dispute arose between TPHI and TPI, on the one hand, and GT and Splash, on the other, as to GT's right to compete against TPI, resulting in the filing of an action

2

# DRAFT

styled Thompson Products, Inc. v. Glenn Thompson and Splash Creations, Inc., CA No. 05-

11810-RGS, in the United States District Court for the District of Massachusetts (the

"Litigation") wherein claims and counterclaims were asserted by plaintiff and defendants against

each other; and

WHEREAS, the parties have now agreed upon terms for the compromise and settlement

of the Litigation and other claims among them and wish to reduce those terms to writing in this

Settlement Agreement;

NOW, THEREFORE, in exchange for the promises made each to the other herein, and

for other good and valuable consideration, the receipt and sufficiency of which are hereby

acknowledged, the parties agree as follows:

1.      Termination of Nominee Trust.  At Closing on the settlement described herein,

GT, pursuant to paragraph 5 of the August 28, 1998 Amended and Restated Declaration of Trust

of TPB Liquidating Trust, shall terminate the Nominee Trust by notice in writing to the other

Trustees, and at that time GT shall cause the Trustees to transfer and convey the Subordinated

Note, subject to any encumbrances, to GT, MT, FLW and the personal representative of GW, all

of whom shall become tenants in common of the Subordinated Note, with each person holding

the following percentage interest in such Subordinated Note:

| | |
|-----|--------|
| GT  | 46.25% |
| MT  | 10.00% |
| FLW | 25.00% |
| GW  | 18.75% |

GT shall execute, and see to execution by all Trustees of the Nominee Trust, all documents that

may be necessary to accomplish the Nominee Trust termination and conveyance of the

Subordinated Note.

3

**Deleted:** insure

**Deleted:** that

**Deleted:** and beneficiaries

# DRAFT

2.    <u>Transfer of GT's Interest in Subordinated Note</u>.  At Closing on settlement, and following the transactions recited in paragraph 1 above, GT will execute and deliver the attached Assignment Agreement transferring to TPI, free and clear of all liens and encumbrances, all of GT's right, title and interest in the Subordinated Note and in all proceeds of the Subordinated Note.

3.    <u>Transfer of Stock</u>.  At Closing on settlement, GT will transfer to TPHI, free and clear of all liens and encumbrances, all issued and outstanding shares of Stock owned by GT by endorsing all share certificates evidencing the Stock for transfer to TPHI and delivering such certificates to TPHI.

4.    <u>Dismissal of Litigation</u>.  At Closing on settlement, counsel for the parties will endorse and promptly thereafter tender to the Court for entry a Dismissal Order With Prejudice in the form attached hereto.  TPI's and TPHI's obligation under this paragraph is conditioned upon completion of performance of GT's obligations to TPHI and TPI under paragraphs 1 through 3 above.

5.    <u>General Release by GT and Splash</u>.  At Closing, upon performance of GT's obligations under paragraphs 1 through 4 herein <u>and upon performance of TPI's and TPHI's obligation under paragraph 4</u>, GT and Splash, on behalf of themselves, as well as on behalf of their respective officers, directors, agents, servants, employees, heirs, legal representatives, successors and assigns, as applicable, and on behalf of their respective parents and subsidiaries and all officers, directors, agents, servants, employees, successors and assigns of such parents and subsidiaries, thereupon, without further act or deed by any party, forever release, remise, discharge and quitclaim all claims, demands, actions and causes of action, and liabilities of any nature whatsoever, whether at law or in equity, <u>relating to any activity which arose or occurred at</u>

| Deleted: arising |
|---|

4

# DRAFT

any time prior to and including September ____, 2006, which GT and Splash or either of them

ever had, now has, or hereafter may have or claim to have against TPI and/or TPHI, as well as

against their affiliates, and all officers, directors, agents, servants, employees, successors and

assigns of such affiliates, including all such claims, demands, actions and causes of action and

liabilities of any nature whatsoever that are then known and all those that are not then known but

which may thereafter be discovered, arising out of, pertaining to or relating in any way to any

act, transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind

whatsoever arising or occurring prior to the date hereof, including, without limitation, any such

claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to

the Asset Purchase Agreement; GT's employment by TPI and his service as officer, director,

shareholder or employee of TPHI; all employment contracts between GT and TPI; GT's

resignation from TPI; GT's and Splash's activities in competition with TPI; and the Litigation,

including all claims and counterclaims made therein and all claims and counterclaims that might

have been made by GT and Splash against TPI or against its parents, subsidiaries or affiliates

therein.

   6.    General Release by TPI and TPHI. At Closing, upon performance of GT's

obligations under paragraphs 1 through 4 herein, TPI and TPHI, on behalf of themselves, as well

as on behalf of their respective officers, directors, agents, servants, employees, successors and

assigns, as well as on behalf of their respective parents and subsidiaries and all officers,

directors, agents, servants, employees, successors and assigns of such parents and subsidiaries,

thereupon, without further act or deed by any party, forever release, remise, discharge and

quitclaim all claims, demands, actions and causes of action, and liabilities of any nature

whatsoever, whether at law or in equity, relating to any activity which arose or occurred at any

5

Deleted: 8

Deleted: arising

# DRAFT

Deleted: 8

time prior to and including September _____, 2006, which TPI and TPHI or either of them ever

had, now has or hereafter may have or claim to have against GT and/or Splash, as well as against

their affiliates and all officers, directors, agents, servants, employees, successors and assigns of

such affiliates, including all such claims, demands, actions and causes of action and liabilities of

any nature whatsoever that are then known and all those that are not then known but which may

thereafter be discovered, arising out of, pertaining to or relating in any way to any act,

transaction, practice, conduct, omission, or any manner, cause, effect, or thing of any kind

whatsoever arising or occurring prior to the date hereof, including, without limitation, any such

claim, demand, action and cause of action arising out of, pertaining to, or relating in any way to

the Asset Purchase Agreement; GT's employment by TPI and his service as officer, director or

employee of TPHI; all employment contracts between GT and TPI; GT's resignation from TPI;

GT's and Splash's activities in competition with TPI; and the Litigation, including all claims and

counterclaims made therein and all claims and counterclaims that might have been made by TPI

against GT and Splash or against the parents, subsidiaries or affiliates of Splash or the heirs,

successors, legal representatives, or assigns of GT therein.

    7.    Cooperation. Notwithstanding the exchange of mutual general releases, in the

Formatted: No underline
Deleted: 1

event any claims, demands, actions or causes of action are hereafter asserted against TPHI, TPI,

or any of its parents, subsidiaries, officers, directors, shareholders, agents, servants or employees

pertaining to acts or omissions of GT while he was serving as an officer, director, shareholder or

employee of TPHI or TPI, GT will cooperate with TPHI, TPI or such TPI/TPHI personnel, to the

Deleted: the

extent reasonably necessary and appropriate, in defending such claims, demands, actions and

causes of action; provided, TPI/TPHI reimburses GT for reasonable expenses incurred by him in

connection with such cooperation and, further provided, no dispute concerning the cooperation

6

# DRAFT

obligations of the parties in regard to this paragraph 7 shall limit, restrict, or otherwise affect in any way the scope and enforceability of the general release by TPI and TPHI contained in paragraph 6.

8.    Non-Solicitation.

> Deleted: 7

(a) GT and Splash each agrees that for a period of one (1) year from the date of Closing on this Settlement Agreement, he/it will not, directly or indirectly, solicit, employ or hire, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was or had been employed by TPI or TPHI or by any business in which TPI or TPHI has a material interest, either direct or indirect, as an officer, partner, shareholder or beneficial owner during the six-month period immediately preceding the date of such solicitation or employment.

(b) TPI and TPHI each agrees that for a period of one (1) year from the date of this Settlement Agreement, it will not, directly or indirectly, solicit, hire or employ, as an employee or as an independent contractor, any person who, as of the time of such solicitation or employment, was or had been employed by GT or Splash or by any business in which GT or Splash has a material interest , either direct or indirect, as an officer, partner, shareholder or beneficial owner during the six-month period immediately preceding the date of such solicitation or employment.

9.    Non-Disparagement.  Each of the parties hereto agrees to refrain from making disparaging, false or misleading oral or written statements about another party hereto which are intended to damage or otherwise harm such party's reputation in the marketplace.

> Deleted: 8

10.    Choice of Law.  All issues pertaining to the formation, interpretation, construction, performance or non-performance of this Settlement Agreement shall be governed

> Deleted: 9

7

**DRAFT**

by the laws of the Commonwealth of Massachusetts.    11.    Choice of Forum.  Except as

hereinafter provided, all disputes, actions and/or causes of action pertaining to or arising out of

this Settlement Agreement shall be subject to the exclusive jurisdiction of the United States

District Court for the District of Massachusetts, and all parties to this Settlement Agreement

agree that they shall be subject to the active jurisdiction of such Court for this purpose.

Notwithstanding the foregoing, any dispute pertaining to the performance or non-performance of

the cooperation obligations of the parties pursuant to paragraph 7 shall be resolved by binding

arbitration in Providence, Rhode Island under the rules of the American Arbitration Association.

The parties shall share the costs of any such arbitration equally.

    12.    Counterpart Execution.  This Settlement Agreement may be executed in one or

more counterparts, each of which shall be deemed an original, but all of which together shall

constitute one and the same document.

    13.    Facsimile Signatures.  The parties agree that facsimile signatures shall be the

equivalent of original signatures.

    14.    Entire Agreement.  This Settlement Agreement contains all of the terms and

provisions agreed upon by the parties for settlement of the Litigation and a general release of

claims between them.  Each party hereby acknowledges that he/it has not relied upon any

extraneous statements or documents in agreeing to the terms recited herein or in executing this

Settlement Agreement.

    15.    Authorization.  At Closing, each of the corporate parties to this Settlement

Agreement shall deliver a certificate duly executed by its Clerk or Secretary, as applicable, dated

within ten (10) days of the Closing, certifying that at a meeting of the board of directors of the

corporation duly convened in accordance with the by-laws of the corporation and otherwise in

Deleted: ¶

Deleted: 0

Deleted: A

Deleted: 1

Deleted: 2

Deleted: 3

Deleted: 4

# DRAFT

accordance with law, the directors, by resolution duly adopted by requisite vote, authorized the execution and delivery of this Settlement Agreement, and the performance by such corporation of the terms set out herein and further authorized the person signing this Settlement Agreement on behalf of such corporation to do so and that the action taken by the board of directors remains in full force and effect without amendment thereto.

16. _Closing._ Closing on this Settlement Agreement shall occur at the offices of Greenberg Traurig, One International Place, Boston, MA 02110 on _____, 2006, at _____ (a.) (p.)m.

17. _Successors and Assigns._ This Settlement Agreement shall be binding upon and inure to the benefit of the undersigned parties and their successors, assigns, heirs, distributees and legal representatives, as applicable.

Witness:                                    THOMPSON PRODUCTS, INC.

_____          By _____
                                                     Its Authorized Representative

Witness:                                    THOMPSON PRODUCTS HOLDINGS, INC.

_____          By _____
                                                     Its Authorized Representative

Witness:                                    SPLASH CREATIONS, INC. (Formerly,
                                                 Thompson Enterprises, Inc.)

_____          By _____
                                                     Its Authorized Representative

9

# DRAFT

Witness:

_____    _____
                           GLENN THOMPSON, Individually

1728991v5

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Wednesday, September 13, 2006 4:35 PM |
| **To:** | 'Carl I. Freedman' |
| **Cc:** | 'Yemi Sonuga'; Brian Gleason; Graham Jr., Alexander C. |

**Subject:** RE: Thompson

Carl, the revisions you have made are acceptable. Since the last version is on your system, why don't you do the following to wrap this up:
1. make the effective date on page 1 today, Sept. 13;
2. insert "13" into the date blank in paragraphs 5 and 6;
3. change para. 16 to provide for closing at your office on the soonest date when we can close it and let me know that date asap please;
4. send me the final form agreement and I will see to prompt execution by TPHI and return to you by fax the signature page bearing TPHI's execution;
5. see to immediate execution by Glenn Thompson for himself and Splash and fax to me a copy of their executed signature page;
6. draft the necessary documents and take any other action required asap to dissolve the nominee trust and convey the note interests, providing me with a copy of your documents for review and approval before execution. I will see to preparation of the dismissal order and motion, if necessary.
It's important to us to get the Settlement Agreement finalized and signed as soon as possible.  My client wants that done yesterday, so whatever you can do to finalize the agreement and have it signed would be most appreciated. Performance of the agreement may take a bit longer but time is important to us on closing as well.


-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Tuesday, September 12, 2006 1:36 PM
**To:** Tucker, Sandy T.
**Cc:** gt@splashcreationsinc.com
**Subject:** RE: Thompson

Sandy - Thank you for your feedback. I understand your concern about not wanting to blur the distinction between the cooperation obligations and the general releases. As a result, I have separated the cooperation provision in order to make it clear that it is only disputes relating to the enforcement of that paragraph which would be the subject of local arbitration. I have also clarified that what Glenn had expected is only to be reimbursed for expenses incurred, not to be paid an hourly rate for his cooperation.

Please look over this revised version and let me know if you have any further comments.

Carl


To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**EXHIBIT O**

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Wednesday, September 13, 2006 5:05 PM |
| **To:** | 'Carl I. Freedman' |
| **Cc:** | 'Yemi Sonuga'; Brian Gleason; Graham Jr., Alexander C. |
| **Subject:** | RE: Thompson |

Carl, I forgot to mention that the Weingeroff agreements need to be finalized and executed as well. Can you get their signatures quickly?

——Original Message——
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Tuesday, September 12, 2006 1:36 PM
**To:** Tucker, Sandy T.
**Cc:** gt@splashcreationsinc.com
**Subject:** RE: Thompson

Sandy - Thank you for your feedback. I understand your concern about not wanting to blur the distinction between the cooperation obligations and the general releases. As a result, I have separated the cooperation provision in order to make it clear that it is only disputes relating to the enforcement of that paragraph which would be the subject of local arbitration. I have also clarified that what Glenn had expected is only to be reimbursed for expenses incurred, not to be paid an hourly rate for his cooperation.

    Please look over this revised version and let me know if you have any further comments.

Carl


To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.


**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Tuesday, September 12, 2006 9:52 AM
**To:** Carl I. Freedman
**Cc:** Yemi Sonuga; Brian Gleason
**Subject:** RE: Thompson

Carl, as to your addition to para. 6 to provide for TPI/TPHI's payment of reasonable cooperation to Glenn Thompson for his cooperation, we can't agree to pay a witness in advance for his "cooperation". It would completely destroy his and our credibility as to anything he had to say as a witness and it's probably unethical to do so. We can agree to reimburse him for any costs expended in connection with his cooperation.
Second, your addition of the arbitration provision to para. 10 doesn't make sense to me. You're talking about arbitrating a dispute pertaining to performance or non-performance of the last sentence of para. 6. That sentence addresses actions filed against TPI or TPHI by third parties where the basis of the claim is

**EXHIBIT P**

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Carl I. Freedman [CFreedman@crfilp.com] |
| **Sent:** | Thursday, September 14, 2006 9:21 AM |
| **To:** | Tucker, Sandy T. |
| **Subject:** | RE: Thompson |

Sandy - I've been focused on the settlement agreement. I'll look over the assignment documents and, if in final form, will try to catch up with Mr. Weingeroff and see what his schedule it.

Carl

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Wednesday, September 13, 2006 5:05 PM
**To:** Carl I. Freedman
**Cc:** Yemi Sonuga; Brian Gleason; Graham Jr., Alexander C.
**Subject:** RE: Thompson

Carl, I forgot to mention that the Weingeroff agreements need to be finalized and executed as well. Can you get their signatures quickly?

        ——Original Message——
        **From:** Carl I. Freedman [mailto:CFreedman@crfilp.com]
        **Sent:** Tuesday, September 12, 2006 1:36 PM
        **To:** Tucker, Sandy T.
        **Cc:** gt@splashcreationsinc.com
        **Subject:** RE: Thompson

        Sandy - Thank you for your feedback. I understand your concern about not wanting to blur the distinction between the cooperation obligations and the general releases. As a result, I have separated the cooperation provision in order to make it clear that it is only disputes relating to the enforcement of that paragraph which would be the subject of local arbitration. I have also clarified that what Glenn had expected is only to be reimbursed for expenses incurred, not to be paid an hourly rate for his cooperation.
            Please look over this revised version and let me know if you have any further comments.

        Carl


        To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

**EXHIBIT Q**

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Wednesday, September 20, 2006 9:08 AM |
| **To:** | 'Carl I. Freedman' |
| **Subject:** | RE: Thompson |

Carl, I need to hear from you asap. I've left messages for you to call, but no response. Where are you on the document execution? We are in agreement on terms.

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Thursday, September 14, 2006 9:21 AM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - I've been focused on the settlement agreement. I'll look over the assignment documents and, if in final form, will try to catch up with Mr. Weingeroff and see what his schedule it.

Carl

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Wednesday, September 13, 2006 5:05 PM
**To:** Carl I. Freedman
**Cc:** Yemi Sonuga; Brian Gleason; Graham Jr., Alexander C.
**Subject:** RE: Thompson

Carl, I forgot to mention that the Weingeroff agreements need to be finalized and executed as well. Can you get their signatures quickly?

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Tuesday, September 12, 2006 1:36 PM
**To:** Tucker, Sandy T.
**Cc:** gt@splashcreationsinc.com
**Subject:** RE: Thompson

Sandy - Thank you for your feedback. I understand your concern about not wanting to blur the distinction between the cooperation obligations and the general releases. As a result, I have separated the cooperation provision in order to make it clear that it is only disputes relating to the enforcement of that paragraph which would be the subject of local arbitration. I have also clarified that what Glenn had expected is only to be reimbursed for expenses incurred, not to be paid an hourly rate for his cooperation.

Please look over this revised version and let me know if you have any further comments.

Carl

11/6/2006                                                              **EXHIBIT R**

## Tucker, Sandy T.

**From:** Carl I. Freedman [CFreedman@crfllp.com]
**Sent:** Thursday, September 21, 2006 12:52 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - I have made the final changes to the Settlement Agreement and forwarded them to Glenn for his final review. I will email it to you when he authorizes me to do so. I understand that your client would like the Settlement Agreement signed, as you said, yesterday.

Carl

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Wednesday, September 20, 2006 9:08 AM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

Carl, I need to hear from you asap. I've left messages for you to call, but no response.  Where are you on the document execution?  We are in agreement on terms.

>        -----Original Message-----
>        **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
>        **Sent:** Thursday, September 14, 2006 9:21 AM
>        **To:** Tucker, Sandy T.
>        **Subject:** RE: Thompson

>        Sandy - I've been focused on the settlement agreement. I'll look over the assignment documents and, if in final form, will try to catch up with Mr. Weingeroff and see what his schedule it.

>        Carl

---

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Wednesday, September 13, 2006 5:05 PM
**To:** Carl I. Freedman
**Cc:** Yemi Sonuga; Brian Gleason; Graham Jr., Alexander C.
**Subject:** RE: Thompson

Carl, I forgot to mention that the Weingeroff agreements need to be finalized and executed as well. Can you get their signatures quickly?

>        -----Original Message-----
>        **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
>        **Sent:** Tuesday, September 12, 2006 1:36 PM
>        **To:** Tucker, Sandy T.
>        **Cc:** gt@splashcreationsinc.com

**EXHIBIT S**

## Tucker, Sandy T.

**From:**    Tucker, Sandy T.

**Sent:**    Thursday, September 21, 2006 5:06 PM

**To:**      'Carl I. Freedman'

**Subject:** RE: Thompson

What about the Wiengeroff agreements?

    -----Original Message-----
    **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
    **Sent:** Thursday, September 21, 2006 12:52 PM
    **To:** Tucker, Sandy T.
    **Subject:** RE: Thompson

    Sandy - I have made the final changes to the Settlement Agreement and forwarded them to Glenn
    for his final review. I will email it to you when he authorizes me to do so. I understand that your
    client would like the Settlement Agreement signed, as you said, yesterday.

    Carl

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Wednesday, September 20, 2006 9:08 AM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

Carl, I need to hear from you asap. I've left messages for you to call, but no response.  Where are you on
the document execution?  We are in agreement on terms.

    -----Original Message-----
    **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
    **Sent:** Thursday, September 14, 2006 9:21 AM
    **To:** Tucker, Sandy T.
    **Subject:** RE: Thompson

    Sandy - I've been focused on the settlement agreement. I'll look over the assignment
    documents and, if in final form, will try to catch up with Mr. Weingeroff and see what his
    schedule it.

    Carl

**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Wednesday, September 13, 2006 5:05 PM
**To:** Carl I. Freedman
**Cc:** Yeml Sonuga; Brian Gleason; Graham Jr., Alexander C.
**Subject:** RE: Thompson

11/6/2006

**EXHIBIT T**

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Carl I. Freedman [CFreedman@crfllp.com] |
| **Sent:** | Friday, September 22, 2006 9:58 AM |
| **To:** | Tucker, Sandy T. |
| **Subject:** | RE: Thompson |

I'll be seeing Mr. Weingeroff next week and, hopefully, will get his signature at that time.

Carl


To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.


**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, September 21, 2006 5:06 PM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

What about the Wiengeroff agreements?

  ———Original Message———
  **From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
  **Sent:** Thursday, September 21, 2006 12:52 PM
  **To:** Tucker, Sandy T.
  **Subject:** RE: Thompson

  Sandy - I have made the final changes to the Settlement Agreement and forwarded them to Glenn for his final review. I will email it to you when he authorizes me to do so. I understand that your client would like the Settlement Agreement signed, as you said, yesterday.

  Carl


  **From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
  **Sent:** Wednesday, September 20, 2006 9:08 AM
  **To:** Carl I. Freedman
  **Subject:** RE: Thompson

  Carl, I need to hear from you asap. I've left messages for you to call, but no response.  Where are you on the document execution?  We are in agreement on terms.


**EXHIBIT U**

## Tucker, Sandy T.

| | |
|---|---|
| **From:** | Tucker, Sandy T. |
| **Sent:** | Friday, September 29, 2006 9:19 AM |
| **To:** | 'Carl I. Freedman' |
| **Cc:** | 'kanga@gtlaw.com'; 'Yemi Sonuga'; Brian Gleason |

**Subject:** RE: Thompson

Carl, we are concerned about the inordinate delay in getting the settlement documents signed and settlement closed. I called you earlier in the week to find out why, left a message for you to call me, but I have not received any communication from you in response. It is my understanding that settlement has been reached, with all details agreed upon and only the formality of final form agreements being submitted and signed, followed by closing as provided in the settlement agreement.
Settlement needs to be finalized asap. If it is not, then I intend to file a motion to enforce the settlement and schedule it for hearing as soon as possible.

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Friday, September 22, 2006 9:58 AM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

I'll be seeing Mr. Weingeroff next week and, hopefully, will get his signature at that time.

Carl


To ensure compliance with requirements imposed by U.S. Treasury Regulations, Chace Ruttenberg & Freedman, LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.



**From:** Tucker, Sandy T. [mailto:stucker@williamsmullen.com]
**Sent:** Thursday, September 21, 2006 5:06 PM
**To:** Carl I. Freedman
**Subject:** RE: Thompson

What about the Wiengeroff agreements?

-----Original Message-----
**From:** Carl I. Freedman [mailto:CFreedman@crfllp.com]
**Sent:** Thursday, September 21, 2006 12:52 PM
**To:** Tucker, Sandy T.
**Subject:** RE: Thompson

Sandy - I have made the final changes to the Settlement Agreement and forwarded them to Glenn for his final review. I will email it to you when he authorizes me to do so. I understand that your client would like the Settlement Agreement signed, as you said,

**EXHIBIT V**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THOMPSON PRODUCTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     C.A. No.  05-11810-RGS |
| | ) |
| GLENN THOMPSON, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff, Thompson Products, Inc. ("TPI"), by counsel, moves the Court for entry of an order enforcing settlement of this action on terms agreed upon by the parties, by counsel, in mid-September and for an award of TPI's attorneys fees and costs incurred in filing and prosecuting this motion.  Without explanation, or even response to telephone calls and emails, Defendants have refused to execute the agreed settlement documents and refused to perform the agreed terms.

A memorandum in support of the motion is filed herewith.

**THOMPSON PRODUCTS, INC.**

By its attorneys,

/s/  Andrew D. Kang_____
Terence P. McCourt   (BBO #555784)
Andrew D. Kang      (BBO #637476)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA  02110
Tel:  617.310.6000
Fax:  617.310.6001

and

Sandy T. Tucker
Monica McCarroll
WILLIAMS MULLEN, A PROFESSIONAL CORPORATION
1021 East Cary Street (23219)
Post Office Box 1320
Richmond, VA  23218-1320
Tel:  804.783.6418
Fax:  804.783.6507

DATED:  November 8, 2006

CERTIFICATE OF SERVICE

I, Andrew D. Kang, hereby certify that on the 8th day of November, 2006, I served the

foregoing by U.S. Mail to the following counsel of record:

Matthew F. Medeiros, Esq.
LITTLE MEDEIROS KINDER BULMAN & WHITNEY, P.C.
72 Pine Street
Providence, RI  02903

Michael S. Chinitz, Esq.
Lisa A. Tenerowicz, Esq.
ROSE & ASSOCIATES
29 Commonwealth Avenue
Boston, MA  02110

/s/ Andrew D. Kang
Andrew D. Kang

1347612v1